UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ABBVIE, INC., PRODUCTS LIABILITY LITIGATION | Hon. Judge Matthew F. Kennelly |
| This Document Relates to All Cases | Master Docket Case No. 1:14-cv-01748 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
FOR ENTRY OF PROTECTIVE ORDER**

The Parties appeared before this Court via telephonic conference on May 16, 2014, for a status update regarding a stipulated Protective Order pursuant to Northern District of Illinois Local Rule 26.2. *See Pretrial Order No. 2,* attached as Exhibit A (originally directing counsel to meet and confer). Despite the Parties best efforts to agree to a stipulated Protective Order, the following issues require Court intervention:[1]

1) <u>"Counsel of Record" and the Sharing of Confidential Documents Amongst Plaintiffs' Counsel—Paragraphs 1(i), 5, and 9(a)</u>: In Paragraphs 1(i), 5, and 9(a) of their Proposed Protective Order, Defendants seek to limit the future Plaintiffs' leadership structure's (hereinafter, "PSC") ability to review *all* documents Defendants' produce. Specifically, Defendants seek to *exclude,* "*Liaison Counsel, Lead Counsel or any attorney designated to a steering or leadership committee* [access to confidential documents] . . . unless they have appeared as counsel in an action in the Litigation in which the Producing Party Defendant is a party." *Id.* Defendants seek this limitation *even though* the lawyer is a court appointed member of the PSC *and* the Protective Order *requires every* attorney submit to this Court's contempt power. Plaintiffs, in turn, propose that all members of the PSC be entitled to review confidential documents irrespective of whether or not they have a case on file against a particular Defendant. Plaintiffs' proposal allows *the entire* leadership team the ability to engage in the prosecution of these claims against Defendants as a whole. This is particularly important here given at least three Defendants

---

[1] The provisions of the Proposed Protective Order in dispute are found at ¶¶ 1(i), 5, 8, 9(a), 14, 15, 18, and 20.

proposed a multi-manufacturer MDL.[2] Plaintiffs need to organize themselves in a way to efficiently prosecute these cases. Defendants' proposal interferes with that fundamental right by *expressly limiting* who—on the future PSC—may or may not review Defendants' documents. Defendants' position finds no support in the law and ought to be rejected.

2) <u>Internal Redaction of Otherwise Relevant Documents—Paragraph 8</u>: Rule 34 of the Rules of Civil Procedure entitles a party to seek the production of *documents*. The producing party, in turn, may either choose to produce the documents so as to identify responsive documents by request *or* as they are kept "in the usual course of business." Because Rule 34 requires the production of *documents* as they are kept in the "usual course of business" (as opposed to portions of documents), Plaintiffs' proposal precludes Defendants from unilaterally redacting "irrelevant" information from otherwise relevant documents. *See Pltfs' Proposed Order* at ¶ 8.[3]

3) <u>Privilege Log—Paragraph 15 and Exhibit B</u>: Illinois law follows the "control group" rule to assess whether a document is privileged. In keeping with that obligation, Plaintiffs' proposed log requires Defendants to disclose every person who had access to privilege documents; Defendants' oppose this request. *See Proposed Log* at Column G. Regarding Paragraph 15, Defendants seek to place certain limitations on which privilege documents must be disclosed on the log; Plaintiffs' oppose certain limitations.

4) <u>Challenges to "Inadvertently" Produced Documents—Paragraph 18</u>: The primary differences to Paragraph 18 are as follows: Plaintiffs' proposal entitles them to contend that the inadvertent production resulted in a waiver of the privilege, and affords the Court the right to review the challenged document *in camera*. Conversely, Defendants' proposal seeks immunity from a waiver argument irrespective of the way in which the inadvertent production occurred and precludes the Court from reviewing the document *in camera*.[4]

---

[2] *See generally Response of AbbVie, Abbott Laboratories, Eli Lilly, and Endo Pharmaceuticals to Plaintiffs' Motion for Transfer, Coordination, and/or Consolidation*, attached as Exhibit B.

[3] Conversely, Defendants' proposed version expressly entitles them to unilaterally redact all, "[i]nformation that is wholly irrelevant to this Litigation and not reasonably calculated to lead to the discovery of admissible evidence . . . " The problem, of course, is that the *only* party that is *unilaterally entitled* to evaluate the purported "relevancy" objection are the Defendants.

[4] Specifically, Defendants' proposal states, "Inadvertent or unintentional production *may not be deemed a waiver* in whole or in part of the Producing Party's claim of privilege or immunity from discovery either as to specific documents and information disclosed or on the same or related subject matter based on the facts constituting the inadvertent production." *See Defs' Proposed Order* at ¶ 18 (emphasis supplied).

5) <u>The Duty to Report "Unauthorized Disclosure"—Paragraph 20</u>: Finally, despite the inherent contempt power of this Court, Defendants seek to impose additional reporting obligations for so-called "unauthorized" disclosure of confidential information. At best, the provision is wholly duplicative of Illinois' Rules of Professional Responsibility that govern conduct between Counsel and the Court; it ought to be rejected.

In the end, Plaintiffs' Proposed Protective Order ought to be approved because it will foster the prompt and efficient adjudication of this case. *See Plaintiffs' Proposed Protective Order, attached as Exhibit C.*

## ARGUMENT

I. **ISSUE ONE: DEFENDANTS' DEFINITION OF "COUNSEL OF RECORD" LIMITING THE FUTURE PSC'S ABILITY TO COLLECTIVELY REVIEW DOCUMENTS PRODUCED IN THIS CASE PRESENTS SCORES OF PRACTICAL CONCERNS, AND IS INCONSISTENT WITH PREVAILING PRECEDENT AS WELL AS THE *MANUAL FOR COMPLEX LITIGATION*.**

Plaintiffs, as is the custom in all mass-tort litigation, proposed that the future PSC have access to Defendants' confidential documents. Defendants, in turn, seek to implement a first-of-its-kind document production in a complex, consolidated litigation whereby disclosure is limited to attorneys on a case-by-case, defendant-by-defendant basis. Such a novel attempt to limit access to confidential documents in complex, consolidated litigation was expressly rejected in this District. *See In re: Zimmer NexGen Knee Implant Prods. Liability Litig.*, Protective Order ¶ 3 attached as Exhibit D (Pallmeyer, R.).

*In re: Zimmer* is directly on point. Specifically, in *Zimmer*, the defendant sought to impose the *exact same restriction* Defendants propose here; namely, an Order precluding all members of the PSC from reviewing *all* confidential documents. *Zimmer*—like this case—involved multiple products including three different femoral knee components and one different tibial component. Zimmer—like the Defendants here—sought to limit the disclosure of confidential documents to *only* those Plaintiffs' lawyers who actually had cases involving the

respective component part. Judge Pallmeyer rejected Zimmer's proposal opting instead to allow all "Plaintiffs' Lead Counsel, Plaintiffs' Liaison Counsel, and all members of the Plaintiffs' Steering Committee" access to "Product-Specific Confidential Document[s] and its contents." *Id.* at ¶ 3. Her rationale was simple: preventing a member of the PSC from reviewing documents relevant to the entire litigation is simply not how discovery occurs in complex, consolidated litigation.[5]

### A. In Complex Litigation, the Rule is Clear that the Entire Plaintiffs' Leadership Team is Afforded Access to Confidential Documents.

Plaintiffs' proposal is straightforward: the entire future PSC—whether in the context of an MDL or consolidated litigation limited to this District—should be afforded access to confidential documents produced in the *Testosterone Litigation*. Scores of courts, including courts in this District, endorse Plaintiffs' proposal in cases involving not only multiple products, but also multiple defendants. The rationale for this conclusion revolves around the infeasibility of hampering the PSC's ability to review millions of documents by effectively quarantining certain members of the PSC's access to certain documents. Based largely on the obvious inefficiency of allowing some, but not all, PSC members access to Zimmer's documents Judge Pallmeyer stated:

---

[5] The PSC is mindful that the Seventh Circuit has repeatedly afforded district courts broad discretion in the use of their contempt power to sanction litigants for a litany of wrongs including violation of orders for protection. *See generally Greviskes v. Universities Research Ass'n, Inc.*, 417 F.3d 752 (7th Cir. 2005) (citing *Barnhill v. U.S.*, 11 F.3d 1360, 1367 (7th Cir. 1993) (recognizing the district court's authority to dismiss case for discovery abuse); *Grove Fresh Distribs., Inc. v. John Labatt, Ltd.*, 299 F.3d 635 (7th Cir. 2002) (affirming sanctions for violation of a court order). In short, this Court is well armed to deal with mischievous plaintiffs lawyers bent on disclosing Defendants' "confidential" documents.

> Unless and until I see some abuse, I think it's appropriate to allow *the full steering committee* access.[6]

*In re: Zimmer*, *Transcript of Proceedings* at 92:7-9 attached as Exhibit E (emphasis supplied). Similarly, in *In re: Phenylpropanolamine (PPA) Prods. Liability Litig.*, MDL No. 1407, the court was confronted not only with multiple products *but also* multiple competing defendants who manufactured PPA. Despite this, the Protective Order allowed all "plaintiff's attorneys in this Litigation . . . *as well as plaintiffs' attorneys in other filed litigation involving PPA . . .*" access to the documents. *See Protective Order* at 6, li 22:26 attached as Exhibit F (emphasis supplied); *see also In re: Ephedra Prods. Liability Litig.*, MDL No. 1589, *Protective Order* at 3 (S.D.N.Y. 2004) attached as Exhibit G (allowing counsel "retained specifically for *any* of these actions" access to confidential documents). Finally, in *In re Welding Rods Prods. Liability Litig.*, MDL No. 1535, Judge O'Malley faced discovery in a case involving multiple competitors who maintained secret formulas for the production of welding consumable. The *only* limitation the court imposed involved access to the specific formulas. *All* other documents were available to *all* plaintiffs' counsel (and in many instances the competing defendants). *See* Exhibit H at 4. And, even with the defendants' formulas, the court allowed Lead Counsel—in their discretion—to discuss the information with other members of the PSC. *Id.* at 6. In short, the overwhelming practice in complex litigation and mass tort cases is to allow not only the PSC, but *all* counsel of record, access to confidential documents.

### B. Both the Manual for Complex Litigation and Case Law within this District Support Plaintiffs' Proposal.

Defendants' Proposal finds no support in either the *Manual for Complex Litigation* or case law in this District. Section 10.222 instructs: "Counsel in leadership positions should keep

---

[6] To date, Zimmer has produced roughly 8.6 million pages of documents with no allegations of abuse by the PSC's full access.

the other attorneys in the group advised of the progress of the litigation and consult them about decisions significantly affecting their clients." *Man. for Complex Litig.* § 10.222, at 47 (West 2011). The obligation to consult with counsel requires the need to have frank discussions regarding the strengths and weaknesses of a case involving *all Defendants*. The use of confidential documents in these discussions clearly makes the conversation more meaningful. Additionally, the *Manual* provides guidance regarding the use of protective orders. The sample order endorsed by the *Manual* affords access to *all* attorneys in the case, specifically stating:

> The parties agree that any discovery material produced in this litigation may be used *in all actions* encompassed by this [MDL/class action] litigation *and in any other action* brought by or on behalf of any other [insert product name] user who agrees to be bound by the term of this order.

*Man. for Complex Litig.* § 40.27, at 962 (emphasis supplied). In short, the *Manual* endorses Plaintiffs' proposal.

In addition to the *Zimmer* MDL, at least one other court in this District adopted Plaintiffs' position in a multi-party litigation. Specifically, in *Trading Techs. Int'l v. BGC Partners, Inc.*, 2011 WL 1547769 (N.D. Ill. April 22, 2011) the defendants sought to create multiple categories of discovery following consolidation of several patent infringement actions. The court made two key observations. First, the court observed that multiple categories for each defendant "[c]ould create significant problems . . ." in the discovery process. *Id.* at * 6. Second, the court noted:

> These cases have been consolidated precisely because . . . there is substantial overlap among the cases . . . Limiting access by defendants to documents designated as confidential by other defendants would impair these efficiencies and is unnecessary in light of the safeguards the protective order will contain.

*Id*. at *7. This is the precise situation here: this District consolidated a series of cases because of the "substantial overlap" amongst the claims *and* defenses. As in *Trading Tech.*, limiting the PSC's access to certain aspects of Defendants' production is "unnecessary in light of the

6

[protective order's] safeguards."[7] *Id.* Accordingly, the Court ought to reject Defendants' proposal.

## II. ISSUE TWO: INTERNAL REDACTION OF OTHERWISE RELEVANT DOCUMENTS IS PRECLUDED BY RULE 34 AND REJECTED BY MOST COURTS.

Plaintiffs' Proposed Paragraph 8 precludes the use of "internal redaction" predicated upon a claim that a "portion" of an otherwise relevant document is "irrelevant" or "non-responsive." Rule 34 of the Rules of Civil Procedure governs the production of documents and entitles parties to request relevant documents during discovery. Nothing in the rule contemplates the partial production of documents based upon a claim that "portions" of the document are irrelevant. Instead, the rule merely entitles a party to produce documents as they are kept in the "usual course of business" (i.e., in a non-redacted manner). Fed. R. Civ. P. Rule 34(b)(2)(E)(ii). Despite the Rule's clarity, during the last several years defendants have endeavored to constrict the Rule to allow for the redaction of otherwise relevant documents. While the endeavor has met with limited success, the vast majority of courts evaluating the issue conclude a party may not redact "irrelevant" information from otherwise relevant documents.[8]

---

[7] It should not be lost on this Court that granting Defendants' proposal will have the unavoidable result of preventing different PSC members' access to different documents and will, therefore, prevent open and frank discussion about the case. Worse, it will entirely defeat the purpose of consolidating the *Testosterone Litigation*. Indeed, conducting discovery piecemeal where the PSC is fragmented and uninformed as to the contents of the very documents they may need to rely on to prevail on their claims creates unneeded chaos and is patently unfair.

[8] *See generally Country Life Ins. Co. v. St. Paul Surplus Lines Ins. Co.*, No. 03-1224, 2005 WL 3690565 (C.D. Ill. Jan. 31, 2005); *Beverage Distrib., Inc. v. Miller Brewing Co.*, No. 2:08-cv-827, 2010 WL 1727640 (S.D. Ohio Apr. 28, 2010); *Elena M. David v. J. Steele Alphin*, No. 3:07cv11, 2010 WL 1404722 (W.D.N.C. Mar. 30, 2010); *Consolidated Rail Corp. v. Grand Trunk Western R.R. Co.*, No. 09-cv-10179, 2009 WL 5151745 (E.D. Mich. Dec. 18, 2009); *Orion Power Midwest, L.P. v. The Am. Coal Sales Co.*, No. 2:05-cv-555, 2008 WL 4462301 (W.D. Pa. Sept. 30, 2008); *Gates v. Rohm and Haas Co.*, No. 06-1743, 2007 WL 295416 (E.D. Pa. Jan. 29, 2007); *Medtronic Sofamor Danek, Inc. v. Michelson*, No. 01-2373-GV, 2002 WL

In *In re: Zimmer*, Judge Pallmeyer dealt with this exact issue. In the end, the Court ordered:

> Confidential documents that are produced in this MDL pursuant to a valid Document Request, Deposition Notice or subpoena shall be produced in their entirety with no internal redaction with the exception of information that is covered by the attorney client privilege or work product doctrine.

*See Exhibit D at* ¶ 8. Similarly, in *In re: Propecia (Finasteride) Prods. Liability Litig.*, 12-MD-2331 (E.D.N.Y.), the court, after noting that the relevancy of the information is "not typically a basis on which to redact documents," stated:

> I am skeptical of – I believe and I hope that – I more than hope, I basically expect and have every reason to respect that the parties and their attorneys will appropriately redact documents. But it opens up too many areas of potential mischief and there are too many close calls that somebody is going to have to make, and I just – it's something that I don't – I just don't think that we should let the parties make a determination about. I mean, in other words – *I mean, relevance is in the eye of the beholder*, let's put it that way. *And making a call to what's relevant and what's not relevant is not one that I think should be ceded to the parties.*

*In re: Propecia*, *Transcript of Proceeding* at 11:15-12:1 attached as Exhibit I (emphasis supplied). Not surprisingly, other courts reach the same conclusion.

In *Beverage Distribs.*, the court conducted a detailed review of the cases addressing this issue. The facts of the case were simple: the defendant produced "many thousands" of pages, redacting portions of the production for "irrelevant" material. Like here, the redaction did not involve any claim of privilege. Plaintiff objected to the production. Commencing its analysis with Rule 34, the court noted that, "'[t]here is no express or implied support' in the Rules of Civil Procedure for a procedure allowing 'a party [to] scrub responsive documents of nonresponsive information.'" *Id.* at *4 (quoting *Orion Power v. American Coal Sales Co.*, 2008 WL 4462301, at *2 (W.D. Pa. Sept. 30, 2008)). After reviewing the landscape of cases the court

---

33003691 (W.D. Tenn. Jan. 30, 2002); *In Re Atlantic Fin. Fed. Sec. Litig.*, No. 89-0648, 1991 WL 153075 (E.D. Pa. Aug. 6, 1991).

made three observations: 1) that redaction is the exception rather than the rule and typically limited to small productions; 2) that redaction is potentially disruptive and unnecessary where a protective order is in place to safeguard the producing parties' interests; and 3) that an *in camera* review of a large production places an improper burden on the court. Based on these observations, the court ordered the defendant reproduce the documents.

This is precisely the case here. The production here will involve tens of millions of pages produced pursuant to a protective order. There are no less than five defendants in this case. In the typical mass tort case the defendant will produce between five and ten million pages. In the context of this case that means the likely production will range between 25 and 50 million pages. The sheer size of the production makes an *in camera* review process not only impractical, but impossible.[9] Further, the protective order in this case adequately safeguards Defendants' interests even if the information is truly irrelevant. As the *Orion Power* court observed, "Defendants' novel interpretation of their discovery obligations is not supported by the text of Fed. R. Civ. P. 34 and would open fertile new field for discovery battles." *Orion Power*, 2008 WL 4462391, at *2. Rule 34's guidance is clear: it affords parties the right to seek the production of documents. Given the clear text of the Rule, the size of the production, the existence of a protective order and the potential burden on the Court, the Court ought to accept Plaintiffs' Proposal.

**III.     ISSUE THREE: DEFENDANTS' ATTEMPTS TO LIMIT THE SCOPE AND CONTENT OF THE PRIVILEGE LOG ARE CONTRARY TO RULE 26 AND**

---

[9]     In fact, those cases within this District that allowed so-called internal redaction of non-responsive material are *wholly consistent* with this proposition. For example, in *RBS Citizen, N.A. v. Husain*, 291 F.R.D. 209, 221-224 (N.D. Ill. 2013) Chief Judge Castillo allowed the use of internal production. But, unlike here, the case involved a small production with *only* 506 documents actually redacted for purported "non-relevancy." *Id.* at 223. Here, the number of documents that will involve internal redaction will grossly eclipse 506.

**WILL UNDULY INTERFERE WITH THE COURT'S ABILITY TO PROPERLY ASSESS CLAIMS OF PRIVILEGE.**

Rule 26(b) requires that a party who withholds otherwise discoverable information on the basis of privilege must: (i) expressly make the claim, and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed in a manner that, without revealing the privileged information, will enable other parties to assess the claim. Fed. R. Civ. P. 26(b)(5)(A). These obligations are usually met through the provision of a privilege log. Courts in this District require that a privilege log identify each separate document being withheld, and identify for each the date, author, all recipients along with their capacities, the document's subject matter, the purpose for its production, and a specific explanation for why the document is immune from discovery. *See Allendale Mut. Ins. Co. v. Bull Data Sys.*, 145 F.R.D. 84, 88 (N.D. Ill. 1992); *Acosta v. Target Corp.*, 281 F.R.D. 314, 320 (N.D. Ill. 2012). This is precisely the information Plaintiffs' proposed privilege log seeks.

### A. *The Defendants' Refusal to Identify Duplicate Custodians will Impede the Court's and Plaintiffs' ability to Assess Claims of Privilege.*

Because diversity of citizenship is the basis for subject matter jurisdiction in these consolidated cases, this Court must apply state law to claims of attorney-client privilege. *Trustmark Ins. Co. v. General & Cologne Life Re of America*, 2000 WL 1898518, at *2 & n.7 (N.D. Ill. Dec. 20, 2000). Illinois follows the "control group test" for privilege claims. *See Sullivan v. Alcatel-Lucent USA, Inc.*, 2013 WL 2637936, at *3 (N.D. Ill. June 12, 2013). The Illinois Supreme Court defines a control group as consisting of: (1) "top management persons who have the responsibility of making final decisions" and (2) "employee[s] whose advisory role to top management in a particular area is such that a decision would not normally be made without [their] advice or opinion, and whose opinion[s] in fact forms the basis of any final

decision by those with actual authority." *Id.* (quoting *Consolidated Coal Co. v. Bucyrus-Erie Co.*, 89 Ill.2d 103, 120, 59 Ill. Dec. 666, 432 N.E.2d 250 (Ill. 1982)). Even if the attorney-client privilege otherwise applies, distribution of privileged documents to non-control group members destroys the privilege. *Id.* at 4.

It is a common practice within pharmaceutical corporations for multiple persons to have access to shared documents. It is for this reason that Plaintiffs seek to require Defendants to identify "duplicate custodial names" in connection with any documents that were withheld from production. Unless Defendants are required to provide the identity of duplicate custodial names, this Court and Plaintiffs will be unable to adequately assess the application of any privilege to shared documents. As Courts in this District recognize, the failure to disclose the identity of *everyone* who received allegedly privileged communication creates an inadequate list. *See, e.g., Acosta v. Target Corporation*, 281 F.R.D. 314, 320 (N.D. Ill. 2012). This is because, without full disclosure, it is impossible to determine whether the privilege was properly asserted. *Id.* For instance, it is certainly possible—if not altogether plausible—that in this case, privileged documents in shared databases were disclosed to non-control members. Assuming this is true, the privilege is lost. The *only* way to effectively make this determination is by requiring the Defendants to disclose all recipients who had access to the shared. *RBS Citizens, N.A. v. Husain,* 291 F.R.D. 209, 219 (N.D. Ill. 2013) ("Without a complete list of who received certain documents . . . there is no way to know if the communications were kept confidential . . .").

### B. Defendants' Efforts to Limit the "Content" on the Privilege Log are not Well Founded—Paragraph 15 "Limits to Privilege Content."

Next, Defendants attempt to make three limitations to the information they are required to disclose in the log: 1) documents that were produced after the commencement of this case; 2)

disclosure of entire email strings as one document; and 3) certain "presumptive" privilege material.[10] Each will be discussed in turn.

1.  *All documents that were produced after commencement of this litigation.*

Defendants seek to avoid disclosing documents on a privilege log that were filed after an initial complaint. *See Defs' Proposal* at ¶ 15(1). Frankly, Plaintiffs are not entirely certain what this language means. The provision was submitted late in the negotiations and first appeared on the Monday of Memorial Day weekend. While Plaintiffs continue to negotiate with Defendants, they offer the following: the rule in this District is clear that Defendants must provide their "reasons for redaction"—i.e., the privilege they asserted—*and* provide a narrative description outlining the document's subject matter. *Acosta*, 281 F.R.D. at 320. A generic description of the claimed privilege, without this additional detail, will not allow the Court or Plaintiffs to assess the Defendants' claim of privilege as required by Rule 26(b)(5). *RBS Citizens*, 291 F.R.D at 219. As such, this provision appears to be beyond the scope of the rules. Nonetheless, Plaintiffs will continue to negotiate with Defendants prior to the hearing in an effort to resolve this issue.

2.  *Separate emails within a strand should be listed as separate documents unless the strand is limited to a distinct and identifiable set of individuals.*

Defendants seek to be allowed to identify an email thread as a single entry in the privilege log. Courts are divided about whether it is sufficient to list an email chain as a single

---

[10] Plaintiffs' agree that certain communication is so inherently protected that it need not be included on a privilege log. The dispute between Plaintiffs and Defendants on this issue revolves around the scope of the protected communication. Plaintiffs' proposal—unlike Defendants—endeavors to limit the scope to *real* communication between lawyers and their clients as follows:
**Plaintiffs' Version-Paragraph 15:** The following types of documents are deemed presumptively privileged and need not be disclosed on the privilege log: (a) communication between out-side counsel and in-house counsel; (b) internal communication between a law firm or any court approved leadership structure including, but not limited to Co-Lead Counsel, Plaintiffs' Executive Committee or Plaintiffs' Steering Committee; and (c) communication between a Plaintiff and their lawyer, law firm or any employee of a Court Appointed leadership firm.

entry or whether each individual email within the chain must be identified. *Acosta*, 281 F.R.D. at 320 (collecting cases). Courts allowing the listing of an email string as a single entry analogize an email string to a single conversation or meeting. However, this analogy is lacking here because email strings frequently are not similar to single conversations or meetings. *See In re: Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 673 (D. Kan. 2005). For instance, email strands may span several days, which make them very different from a "single" meeting or conversation. In addition, the individuals receiving or copied on the emails within a strand frequently vary—certain individuals may receive only a portion of a strand while others receive the entire strand. And perhaps most significantly, one email within a strand in which counsel are senders, recipients, or are copied may contain entirely factual and thus non-privileged information, while another email within the same strand may clearly seek or render legal advice. As Magistrate Judge O'Hara recognized, it might be appropriate to only list a single entry "where each and every separate e-mail within a strand is limited to a distinct and identifiable set of individuals, all of whom are clearly within the attorney-client relationship in which legal advice is being sought or given." *In re: Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. at 673. However, the blanket limitation that Defendants seek is likely to lead to a large volume of documents being improperly withheld and, therefore, should be rejected. *Id.* (noting that had the Court not pressed this issue, nearly 20% of the documents that the Defendant claimed as privileged would have been improperly withheld from Plaintiffs); *accord Helm v. Alderwoods Group, Inc.*, 2010 WL 2951871 (N.D. Cal July 27, 2010); *But see Muro v. Target Corp.*, 250 F.R.D. 350, 363 (N.D. Ill. 2007).[11]

---

[11] If the Court is inclined to adopt Defendants' approach, Defendants should still be required to identify every recipient of withheld communication. For instance, "if listing only the

### 3. There is no basis for Defendants' claim of presumptive privilege.

Defendants seek a "presumptive privilege" for certain communications within: (i) a law firm[12], (ii) a legal assistance organization; (iii) a governmental law office; or (iv) a legal department of a corporation or of another organization. There is no legal doctrine that would support a *per se* "presumptive privilege" for communications (ii) – (iv). *Defs' Proposal* ¶ 15(3). Assessments of whether such communications are privileged should be addressed on a case-by-case basis. *In re: Plasma-Derivative Protein Therapies Antitrust Litigation,* 2013 WL 791432 at *3 (N.D. Ill) (mere fact that entity is a trade association does not automatically establish that all communications by trade association's counsel with its members are privileged).

## IV. ISSUE FOUR: DOCUMENTS INADVERTENTLY PRODUCED SHOULD NOT RECEIVE WHOLESALE IMMUNITY FROM *IN CAMERA* REVIEW.

The divergence in Paragraph 18 stems from Defendants' position that inadvertently produced documents may not be deemed a waiver of either the designation or privilege, and that the Court is precluded from reviewing the documents *in camera* so as to determine whether the document is either "Confidential" or "privileged." In other words, under Defendants' proposal, if Plaintiffs challenge the designation of an "inadvertently" produced document they are precluded from presenting either: evidence of Defendants' negligence associated with the "inadvertence," *or* a copy of the actual document to the Court for review.

Plaintiffs' proposal takes the exact opposite tact, entitling the PSC to argue the "inadvertent" production effectuates a waiver *and* allowing them to supply a copy to this Court for its review. The harm to Defendants from this approach is exactly zero. If the documents are filed with a motion to compel they will be done so under seal and any documents found to be

---

recipients of the last e-mail in a chain fails to disclose everyone to whom an allegedly privileged communication has been sent, the listing cannot be adequate." *Acosta*, 281 F.R.D. at 320.

[12] For the reasons set forth in fn. 10, Plaintiffs do not oppose the request related to communication within a law firm.

privileged after an *in camera* review will be destroyed. Instead of allowing the Parties an opportunity to effectively settle any disputes arising from inadvertent productions, Defendants would treat the documents as privileged and prevent the Court from reviewing or otherwise ruling on any challenges. This is simply unfair.

V.  **ISSUE FIVE: DEFENDANTS' ATTEMPT TO REQUIRE A RECEIVING PARTY TO REPORT "UNAUTHORIZED DISCLOSURES" IS DUPLICATIVE OF THE COURT'S CONTEMPT POWER AND RULES OF PROFESSIONAL CONDUCT.**

Defendants' proposed Paragraph 20 seeks to add additional reporting obligations for a *receiving party* if they learn "by inadvertence or otherwise, it has disclosed Designated Confidential Information . . ." *Defs' Proposal* at ¶ 20. Defendants fail to assert any support for such a provision given all counsel are subject to the Court's contempt power for violating the Protective Order and, by appearing before the Court *pro hac vice* or otherwise, are subject to the applicable Rules of Professional Conduct. Specifically, IL ST CH Rules 3.3 and 3.4 govern a lawyer's candor before the Court and precludes a lawyer from disobeying "an obligation under the rules of a tribunal." Under the Rules, counsel are already required to "take reasonable remedial measures, including, if necessary, disclosure to the tribunal" if a lawyer knows "a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding." IL ST CH Rule 3.4. In other words, if a receiving party violates the Protective Order by disclosing confidential information they are required to "take reasonable remedial measures" *with or without* Paragraph 20. *See id.* Defendants' "strenuous objection" notwithstanding, there are ample state and federal requirements governing counsel's obligations to comply with the Protective Order and keep confidential disclosures confidential. Any further protections required by Defendants' proposal is duplicative and unnecessary.

Date: May 27, 2014   Respectfully submitted,

*/s/ Trent B. Miracle*
Trent B. Miracle
Brendan A. Smith
**SIMMONS BROWDER GIANARIS ANGELIDES & BARNERD LLC**
One Court Street
Alton, IL 62002
(618) 259-2222 (Tel.)
(618) 259-2251 (Fax)
tmiracle@simmonsfirm.com
bsmith@simmonsfirm.com

Ronald E. Johnson, Jr.
**SCHACHTER HENDY & JOHNSON PSC**
909 Wright's Summit Parkway, Suite #210
Ft. Wright, KY 41011
Tel. 859-578-4444
rjohnson@pschachter.com

Tim Becker
**JOHNSON BECKER, PLLC**
33 South Sixth Street, Suite 4530
Minneapolis, MN 55402
Tel. 612-436-1804
tbecker@johnsonbecker.com

Bill Robins III
**HEARD ROBINS CLOUD LLP**
2000 West Loop South, Suite 2200
Houston, TX 77027
Tel. 713-650-1200
robins@heardrobins.com

**Attorneys for Plaintiffs**

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 27, 2014 the foregoing documents were filed via the Court's CM/ECF system, which will automatically serve and send email notification of such filing to all registered attorneys of record.

*/s/ Trent B. Miracle*
Trent B. Miracle