IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

_____
                                    )
In re AbbVie Inc., et al.           )   Case No. 14-cv-1748
                                    )   Honorable Matthew F. Kennelly
_____)

This Document Relates to All Cases

# DEFENDANTS' BRIEF IN SUPPORT OF THEIR PROPOSED PROTECTIVE ORDER

Since the May 16 status hearing, the parties have exchanged several drafts of a proposed protective order, discussed those drafts at length on three conference calls and in numerous e-mail exchanges, and reached agreement on most but not all of its provisions.

Five issues remain: (1) the appropriate time period for producing a privilege log and the content of that log; (2) the parties' ability to redact irrelevant information; (3) the scope or impact of an inadvertent production; (4) the procedure for clawing back documents in the event of an unauthorized disclosure of confidential information; and (5) the use of confidential information by attorneys in other actions not involving the producing party.

The draft order attached as Exhibit A shows both the agreed language and the competing proposals; the draft order attached as Exhibit B shows Defendants' version of the protective order. This brief explains Defendants' position on the five disputed issues and identifies protective orders in other cases that appropriately resolved those issues.

**A.    The protective order should give a reasonable period of time for the production of a privilege log, and deny one onerous content request for the privilege log.**

The parties agree that the protective order should include a provision for the exchange of privilege logs. (*See* Ex. A ¶ 14.) The parties disagree on the period of time for such an exchange

(30 days vs. 60 days), and on one onerous field to be included in the privilege log requiring unduly burdensome custodian information from the Defendants.

> 1. **The privilege log timeframe should be 60 days from production.**

Plaintiffs propose 30 days from the date of production of a completed Custodial File. (*See* Ex. A ¶ 14.) Defendants propose 60 days. Given the level of detail required by the privilege log and the number of documents expected to be produced, Plaintiffs' narrow time frame is not feasible. This is particularly true given the volume of electronic documents to be produced and the fact that the privilege log requires narrative descriptions of the documents being withheld. The ability to automatically populate all of a privilege log as opposed to needing to manually populate many key fields of a log is an issue, and likely to vary among the Defendants based on their data systems and those of any vendors used in connection with production.

It is more reasonable, at this stage of the litigation, to allow Defendants additional time for a privilege log. Defendants' proposal is more than consistent with the time frame provided in other large pharmaceutical cases. *See, e.g.*, Ex. C, *In re Lipitor Mktg, Sales Prac. & Prods. Liab. Litig.*, MDL No. 2:14-mn-02502-RMG, Case Mgmt. Order No. 4 ¶ 38 (D.S.C. Apr. 25, 2014) ("*Lipitor* Order") ("Each party withholding materials shall provide opposing counsel a copy of the Privilege Log in electronic form contemporaneously with each production whenever possible, but in no case later than ninety (90) days after the production absent agreement of the parties."); Ex D, *In re Zoloft*, MDL No. 2342, Pretrial Order No. 8 (Protective Order) (Jul. 23, 2012) ("A privilege log shall be provided within 90 days after each production of documents by a party except that a receiving party shall be permitted to request from the producing party, through Plaintiffs' or Defendants' Lead or Liaison Counsel and on reasonable notice, that a

privilege log for a particular production be provided within a shorter time period if the receiving party has a good faith basis for such a request in connection with a scheduled deposition.").

### 2. Plaintiffs' duplicate custodian field should be rejected.

The parties have reached agreement with respect to 14 out of 15 fields for the privilege log: (1) Document Number, (2) Beginning Bates Number, (3) Ending Bates Number, (4) Document Date, (5) Title, (6) Custodian Name, (7) Author, (8) To, (9) From, (10) CC, (11) BCC, (12) Document Type (file extension of the document), (13) Privilege Withheld Reason (for example, attorney-client privilege, attorney work product), and (14) Privilege – Narrative Description (providing a description that further identifies the nature of the communication or tangible item without disclosing privilege). (*See* Exhibit B (form of privilege log) to Ex. A ¶ 14.) The field in dispute is "Duplicate Custodian Name(s)."

With the disputed field, Plaintiffs are essentially requesting that Defendants list, for every document on the privilege log, any person who ever had access to the document or content for which Defendants are claiming privilege, on the speculative theory that some of the individuals who had access to some of the documents may be outside the "control group" to whom privilege applies in certain jurisdictions. This is, simply stated, a burdensome fishing expedition for potential waiver arguments.

The Court has wide discretion to police discovery and limit discovery requests that are "unreasonably cumulative or duplicative", that "can be obtained from some other source that is more convenient, less burdensome, or less expensive", or where "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C); *see also Tamburo v. Dworkin*, 2010 WL 4867346 (N.D. Ill.). It is well-recognized that information on privilege logs should be appropriately limited to readily identifiable information. *See* Hon. John M. Facciola & Jonathan Redgrave, "Asserting and Challenging Privilege Claims in Modern

3

Litigation: The Facciola-Redgrave Framework," FED. COURTS L. REV. 22 (2009) ("Facciola-Redgrave Framework") ("In recent years, discovery with regards to electronic information and privilege has grown increasingly burdensome. These burdens often come to light in the disputes over privilege logs …."). Plaintiffs' request to include this field should be denied for several reasons.

*First*, no more information is required under the federal rules than is contained in the 14 agreed fields. *See* Fed. R. Civ. P. 26(b)(5) (when asserting a privilege, the holder need only "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."). Similarly, Defendants' position that only readily identifiable custodian information (to, from, cc, bcc) should be included on the privilege log is consistent with the Seventh Circuit's Model Pilot ESI Order — which does not recommend custodian information outside of the readily identifiable custodian information (to, from, cc, bcc). *See* Ex. E, Seventh Cir. Model Privilege Order; *see also* Facciola-Redgrave Framework at 45. Had Plaintiffs' request for a list of every single person who potentially had access to a privileged document been a reasonable one, it would have been included in the recommended orders by the Seventh Circuit's rules committee.

*Second*, the amount of time and effort to try to identify all persons who ever had the potential ability to access a document will be incredible and wasteful when balanced against the potential benefit of the information (which is specious at best). It is unknown if it would even be possible to gather all of this information due to the nature of the information systems that each Defendant employs. There may be privileged files located in central electronic document storage filing systems or databases. The files in the cabinets, or the databases, may have different

restrictions or controls on the categories or identities of people who can access the file. These rights may change over time. Collecting and verifying that information would require a fact investigation into each central electronic document filing cabinet or database, each person who administered or controlled those central files, and each person who may have had access to each central electronic document filing cabinet or database. After that, each document would have its own list of unique individuals, which would have to be manually entered on the log for each document. It makes no sense to require Defendants to engage in all of this upfront time, effort and cost for this irrelevant information for each and every document on the privilege logs, especially when it is not required by the Federal Rules of Civil Procedure and the Seventh Circuit Model Order.

*Third*, although Defendants do not believe this information is required at all, if this Court determines that some information needs to be provided, Defendants can propose a solution that is less burdensome and still allows Plaintiffs to get information that they believe they need. For example, for shared sources of data (such as databases or the central electronic document filing cabinets where there is no one true owner of the files, but which may be accessed by a Custodian), Defendants can populate the "Custodian" field with an assigned name for the specific database or central electronic document filing cabinet from which any privileged document comes from. This will put Plaintiffs on notice that the document came from a "shared resource" that is not owned by any one Custodian. If, based on the substantial information that will be provided in the log already, Plaintiffs reasonably believe they need more information to better understand the privilege claim regarding a particular document or group of documents, they can in good faith request that information. The parties can then meet and confer on the issue in an effort to avoid the use of the Court's time. Defendants should not be required to go to great

lengths to manually create content for this information for every single document on a privilege log.

### 3. There should be appropriate limits to the content of the privilege log.

The parties have agreed on a number of categories of documents that will be presumptively considered as privileged and excluded from the log. For instance, all parties agree communications between inside and outside counsel for Defendants are presumptively privileged and need not be logged. Disputes remain with respect to two discrete issues: (1) the need to log documents created after the filing of complaints and (2) how to log email threads.

*First*, Defendants propose that no party need list on a privilege log documents generated *after* the filing of the initial complaint relating to testosterone therapy commenced by or naming that party unless such documents fall within the scope of agreed or Court-ordered discovery. (*See* Ex. A ¶ 15.) Such documents in this case are presumptive work product and accordingly courts have recognized there is no need for their inclusion in a log. *See, e.g.*, *U.S. v. Bouchard Transp.*, 2010 WL 1529248, at *2 (E.D.N.Y.) ("Privilege logs are commonly limited to documents created before the date litigation was initiated….[I]n many situations, it can be assumed that all documents created after…a lawsuit has been filed and withheld on the grounds of privilege were created 'because of' that pending litigation."); *Ryan Inv. v. Pedregal De Cabo San Lucas*, 2009 WL 5114077, at *3 (N.D. Cal.) ("[C]ounsel's communications with the client and work product developed once the litigation commences are presumptively privileged and need not be included on any privilege log."); *see also Prism Tech. v. Adobe Syst.*,2011 WL 5523389, at *2 (D. Neb.) (same). Under the terms of Defendants' proposal, to the extent that any documents or categories of documents created after the initiation of litigation fall within the scope of discovery, either by agreement or Court Order, the parties would be required to provide a privilege log relating to documents withheld from that production to the extent that they do not

fall within the other exceptions to the requirement to provide a privilege log. Defendants respectfully request this Court follow suit.

*Second*, Defendants propose a provision stating that email threads may be logged as a single entry. (*See* Ex. A ¶ 15.) This will save all parties considerable time and expense given the likely volume of email production expected in this case. Instead of logging each individual email in a 15 email chain, for instance, parties could log the "last in time" email and clearly designate it on the log as such. *See* Facciola-Redgrave Framework 49 ("The parties should index or log the 'last-in-time' email in each string provided that (a) each separate communication in the chain is at some point the 'last in time' email in a string, and (b) the index or privilege log notes that the e-mail communication is part of a string.'"). The parties should not be required to spend considerable time and money on logging each individual email in a string when the same purpose can be accomplished in a more efficient manner. This benefits the recipient as well, who will not have to spend needless time reviewing multiple entries in a log when one will suffice.

**B.      The parties should have the ability to redact information that is irrelevant to any claims in this litigation and that is not calculated to lead to the discovery of admissible evidence.**

The parties agree that certain information, such as privileged information, attorney work product, or information protected by federal law, can be redacted from documents produced. (*See* Ex. A ¶ 8.) The parties disagree on whether irrelevant information that is not calculated to lead to the discovery of admissible evidence may be redacted from produced documents. Plaintiffs propose that confidential documents produced cannot be redacted based on a claim or contention that it is irrelevant or nonresponsive, regardless of how far removed that information is from any issues or subjects relating to these cases. (*Id*.) Defendants propose that the

7

protective order allow redaction in confidential documents of irrelevant information not calculated to lead to the discovery of admissible evidence. (*Id*.)

Defendants' proposal is more reasonable. The very nature of the documents at issue in this order is *confidential*, which means that the producing party reasonably and in good faith believes the documents are of the type protectable under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure or are required to be kept confidential by law or by agreement with a third party or otherwise. This may be because it includes information such as trade secrets, or research, technical, regulatory, commercial or financial information that the party has maintained as confidential. It is not information otherwise publicly available, and is sensitive by its very nature. The only reason Plaintiffs even have access to this information is on the premise that it is relevant to their claims or that it is information reasonably calculated to lead to the discovery of admissible evidence.

Accordingly, the parties are not entitled to obtain confidential business information that has nothing to do with this litigation. For example, Defendants may have confidential documents containing, among other things, personal information regarding employees that has no bearing on witness identification or other matters relevant to the issues in these cases, information concerning business decisions and strategies that are unrelated to any conduct relevant to the manufacture, marketing, and sale of testosterone therapy products, and adverse event reporting information with respect to products that have no connection with the products at issue here. While it is anticipated that there may be confidential documents that contain both relevant and irrelevant information, Plaintiffs have no basis to insist that irrelevant confidential information be revealed simply because it is located within the same document. The scope of discovery only extends to "any nonprivileged matter that is *relevant* to any party's claim or

defense." Fed. R. Civ. P. 26(b)(1) (emphasis added). The redaction provision proposed by Defendants is accordingly in line with this language.

This Court and others have routinely entered protective orders allowing for such redactions. *See, e.g.*, Ex. F, *Pharmacia v. Apotex*, 1:13-cv-02034, ECF No. 50 ¶ 12 (N.D. Ill. July 3, 2013) (Kennelly, J.) ("Documents and things produced or made available for inspection may be subject to redaction, in good faith by the Producing Party, of information that is (i) neither relevant to the subject of this litigation nor reasonably calculated to lead to the discovery of admissible evidence."); *see also* Ex. G, *Jenkins v. White Castle Mgmt.*, 12-cv-07273, ECF No. 65 ¶ 5(d) (N.D. Ill. Dec. 4, 2013) ("a party may redact confidential business information unrelated to the subject matter of the Action from Discovery Material to be produced, provided that the party indicates on the document that the information has been 'Redacted.'").[1]

Redaction of irrelevant information that is not calculated to lead to the discovery of admissible evidence will have no effect on the ability of plaintiffs to pursue their claims, nor on the substance of this case. The protective order should include a provision allowing for redaction of irrelevant information as proposed by Defendants.

**C.    The protective order should not provide that an inadvertent production of confidential information constitutes waiver of any privilege or protection.**

The parties disagree on the scope and extent of an inadvertent production of confidential information. (*See* Ex. A ¶ 18.)

Defendants propose:

---

[1] Plaintiffs have argued in discussions on the subject that such redactions will render the redacted documents confusing and "unusable" at trial; however, if there is ever such an issue with a document containing redactions, the parties or the Court should be able to fashion an appropriate solution at the time such a document is offered for admission at trial.

9

> "[i]nadvertent or unintentional production may not be deemed a waiver in whole or in part of the Producing Party's claim of privilege or immunity from discovery either as to specific documents and information disclosed or on the same or related subject matter based on the facts constituting the inadvertent production. This provision is, and shall be construed as, an Order under Rule 502(d) of the Federal Rules of Evidence. Accordingly, as is explicitly set forth in Rule 502(d), a Party's production of documents, whether inadvertent or intentional, is not a waiver of any privilege or protection 'in any other federal or state proceeding.' Fed. R. Evid. 502(d)."

Defendants' proposal does no more than track explicit protection provided by Rule 502 of the Federal Rules of Evidence. As set forth in Rule 502(b), when made in a federal proceeding, a Party's production of documents does not operate as a waiver if the disclosure is inadvertent, the holder of the privilege or protection took reasonable steps to prevent disclosure, and the holder promptly took reasonable steps to rectify the error. Fed. R. Evid. 502(b). Rule 502(d) extends the umbrella of this protection, providing that, when a Court enters a non-waiver order pursuant to Rule 502(b) "the disclosure is not a waiver in any other federal or state proceeding." Fed. R. Evid. 502(d). Plaintiffs disregard the Rule, proposing that "inadvertent or unintentional production *may be* deemed a waiver in whole or in part of the Producing Party's claim of privilege or immunity from discovery . . . ." (emphasis added) (*See* Ex. A ¶ 18.)

On numerous occasions, this Court has entered protective orders consistent with the federal rule and with Defendants' proposal. *See, e.g.*, Ex. H, *WC Wolverine Holdings v. Huehoco Grp.*, 1:14-cv-2482, ECF No. 37 ¶ 11 (N.D. Ill. Apr. 24, 2014) (Kennelly, J.) ("The inadvertent production of any Discovery material that includes any such privileged information during discovery in this matter *shall be without prejudice* to any later claim that such material is privileged under the attorney-client privilege, work-product doctrine or any other legally recognized privilege or immunity, and no Party shall be held to have waived any rights by such inadvertent production."); Ex. I, *In re Text Messaging Antitrust Litig.*, 08-cv-7082, ECF No. 294

¶ 14 (N.D. Ill. July 12, 2011) (Kennelly, J.) ("*Messaging* Protective Order") ("If information subject to a claim of attorney-client privilege, work product protection, or any other privilege or immunity is inadvertently produced, such production *shall in no way prejudice or otherwise constitute a waiver of*, or estoppel as to, any claim of privilege, work product protection or other ground for withholding production to which any Producing Party would otherwise be entitled."); Ex. J, *Kilburg v. Enea Software*, 1:13-cv-8065, ECF No. 22 ¶ 8 (N.D. Ill. Apr. 4, 2014) (Kennelly, J.) ("The inadvertent production of any confidential or privileged materials or other materials exempt from production or disclosure by any party making production or disclosure of materials in this case *shall not be deemed a waiver* or impairment of any claim of confidentiality or privilege or exemption…") (emphasis added to all). Other courts have come to the same conclusion in product liability matters. *See, e.g.*, Ex. C, *Lipitor* Order ¶ 10; Ex. K, *In re Chantix Prods. Liab. Litig.*, 2:09-cv-2039-IPJ, MDL No. 2092, Pretrial Order No. 3 ¶¶ 29, 33 (N.D. Ala. Feb. 24, 2010) ("*Chantix* Protective Order").

The Federal Rules and precedent demonstrate that the protective order should include Defendants' proposal regarding the scope and impact of inadvertent disclosure, and that inadvertent disclosure should *not* constitute waiver of any privilege or protection.

**D.     The protective order should include a procedure for clawing back documents in the event of an unauthorized disclosure of confidential information.**

The parties cannot agree on the provision for the unauthorized disclosure of Confidential Information. (*See* Ex. A ¶ 20.) Defendants propose including a specific procedure in the protective order to address this issue so as to ensure there is a process in place if a party discloses confidential information to anyone who should not have it. Plaintiffs want the protective order to remain silent on this issue. (*Id.*)

11

Defendants propose a procedure whereupon learning of an authorized disclosure, the receiving party must: (a) notify in writing the producing party of the unauthorized disclosure, (b) use its best efforts to retrieve all copies of the confidential information, (c) inform the person or persons to whom unauthorized disclosure was made of all the terms of the protective order, and (d) request such person or persons to execute the confidentiality agreement. Defendants also propose that the receiving party shall keep the producing party apprised of its remedial efforts under (b) through (d).

Defendants' proposal is necessary given the confidential nature of certain documents to be produced and the number of competitor Defendants involved. It is conceptually similar to the procedure for remedying inadvertent production of privileged information.

This Court, in fact, has not hesitated to enter protective orders containing sections on unauthorized disclosures. *See, e.g.*, Ex. L, *Fox v. Prime Grp. Realty Trust*, 12-cv-9350, ECF No. 42 § K (N.D. Ill. Dec. 7, 2012) (Kennelly, J.) (entitled "Unauthorized Disclosure Of Designated Discovery Material"); Ex. I, *Messaging* Protective Order ¶ 19 ("If any person subject to this Protective Order becomes aware that he or any other person has [disclosed Confidential Information] to someone not authorized to receive such Material under this Protective Order, counsel of record for the Party involved shall immediately inform the Producing Party's counsel of record about the unauthorized disclosure, and also shall use his or her best efforts to obtain the return of all improperly disseminated copies…").

Other pharmaceutical MDLs have done the same. *See, e.g.*, Ex. M, *In re Fresenius Granulfo/Naturalyte Dialysate Prods. Liab. Litig.*, MDL No. 1:13-md-2428-PDW, ECF No. 413, Case Mgmt. Order No. 5 ¶ 32 (D. Mass. Nov. 15, 2013) ("Should any Confidential Information be disclosed through inadvertence or otherwise to a person not authorized to receive such

information under this Protective Order, then the Disclosing Party shall use its best efforts to recover any documents, pleading, motions or transcripts containing Confidential Information and to bind such person to the terms of this Protective Order."); Ex. K, *Chantix* Protective Order ¶¶ 27, 34.

Including a procedure for addressing unauthorized disclosures will save the parties and the Court time in resolving disputes down the road, as well as protect the parties' confidential information. The protective order should include Defendants' proposed procedure for mitigating the effects of unauthorized disclosure of confidential information.

E. **The use of confidential information should be restricted to only those attorneys who have appeared as counsel of record in the action in which it was produced, or in actions involving the producing party.**

The parties agree on most of the ways in which confidential information can be used, but disagree in one important respect. Plaintiffs propose that confidential information may be disclosed to *any* attorney who represents a party in *any* litigation against *any* Defendant that involves claims that testosterone replacement therapy caused cardiovascular, clotting, or stroke events, provided that they sign a Confidentiality Agreement. (*See* Ex. A ¶¶ 5, 9(a).) Defendants instead propose allowing Counsel of Record (as defined by Defendants in Definitions (i) at 3) to use such confidential information *only* in connection with the actions in which it was produced or in actions involving the same Defendant that produced the confidential information. (*Id.*)

At this point in the litigation, at least four different Defendants have appeared. There will likely be more. The number of actions against each Defendant, however, varies. The substantial majority of cases were filed against Defendants Abbott and AbbVie. There are fewer cases filed against the other Defendants. Defendants' proposal is reasonable, particularly given the number of Defendants involved in the litigation and the extent to which certain Defendants are not and will not be a party to many other lawsuits involving another Defendant. To put the issue into

13

practical perspective, adoption of Defendants' proposed limitation would mean that an attorney representing a plaintiff in a state court action against AbbVie only, for instance, could not obtain or use the confidential documents of another defendant, such as Endo, in that case, or for any other purpose. Under normal circumstances, that attorney whose client is suing only AbbVie would not otherwise have access to Endo's documents marked confidential without demonstrating a viable legal basis for obtaining that confidential information. There is no justification for permitting unlimited access here.

Plaintiffs' counsel are not entitled under the federal rules to unrestricted use of documents produced by the Defendants in this action. *See, e.g., Foltz v. State Farm*, 331 F.3d 112, 1133-34 (9th Cir. 2003). Although courts do "favor access to discovery materials to meet the needs of parties engaged in collateral litigation," *id.* at 1131 (citations omitted), there is no authority to support the distribution of confidential discovery to parties not engaged in litigation against the defendant that produced those materials in the litigation. Rather, such discovery is properly restricted to attorneys actively pursuing claims against the producing defendant. *See, e.g., Langenbach v. Wal-Mart Stores*, 2013 WL 3224583 (E.D. Wis.) ("[I]f discovery obtained in one action would not be discoverable in a second action, a party gains a windfall if permitted to use the documents obtained in the first action against its opponent in the second action. The court sees an appropriate compromise. The court will permit plaintiff's counsel to use the discovery produced in this action in other actions they have brought or may bring against Wal–Mart, but only to the extent that the documents would also be discoverable in such other litigation."); *Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66 (S.D.N.Y. 2010) (discovery unusable in other cases unless Gristede's named as defendant). *See also Milsen Co. v. Southland Corp.*, 1972 WL 536, at *1 (N.D. Ill.) ("Plaintiffs shall confine their use of the following

documents produced by defendants to that necessary for the prosecution of the instant action."); *Crosswhite v. Lexington Ins.*, 321 Fed. Appx. 365, 368 (5th Cir. 2009) ("The protective order permits inquiry into the employment-related matters at issue in Crosswhite's complaint and excludes only privileged materials or those that are unrelated to his employment and would provide an undue advantage to related adversaries of LIC in an unrelated case.").

Unless a plaintiff's attorney can demonstrate that he or she is actively involved in related collateral litigation against the producing defendant, and that the documents produced in this litigation would be discoverable in such litigation, he or she does not have a right to receive access to a producing defendant's confidential documents and information. *See Foltz*, 331 F.3d 1132. Allowing such information sharing could improperly subvert the limitations on discovery imposed in other cases, *id.* (citing *Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1300 (7th Cir. 1978)), and risks significant harm to the producing party's proprietary and business interests.

The protective order here should restrict use of confidential information to only those attorneys who have appeared as Counsel of Record in the actions in which such information is produced, or to those who represent a plaintiff in an action against the *same* Defendant who produced the confidential information. *See, e.g.*, Ex. N, *In re Neomedic Pelvic Repair Syst. Prods. Liab. Litig.*, MDL No. 2511, Pretrial Order #8, Stip. Protective Order § II B(6) ("Any document or other material which is marked Confidential…or the contents thereof, may be used by a party, or a party's attorney, expert witness, consultant, or other person to whom disclosure is made, *only for the purpose of this action*." (emphasis added).

Dated: May 27, 2014                                  Respectfully submitted,

                                                     WINSTON & STRAWN LLP

                                            By:      */s/ Bryna J. Dahlin*
                                                     James F. Hurst
                                                     Thomas J. Frederick
                                                     Scott P. Glauberman
                                                     Bryna J. Dahlin

                                                     **WINSTON & STRAWN LLP**
                                                     35 West Wacker Drive
                                                     Chicago, Illinois 60601
                                                     Tel: (312) 558-5600
                                                     Fax: (312) 558-5700
                                                     sglauberman@winston.com
                                                     tfrederick@winston.com
                                                     jhurst@winston.com
                                                     bdahlin@winston.com

                                                     *Attorneys for AbbVie Inc. and Abbott Laboratories*

                                                     David E. Stanley (pro hac vice)
                                                     **REED SMITH LLP**
                                                     355 S. Grand Avenue, Suite 2900
                                                     Los Angeles, CA 90071
                                                     Tel: (213) 457-8000
                                                     dstanley@reedsmith.com

                                                     Timothy R. Carraher
                                                     **REED SMITH LLP**
                                                     10 South Wacker Drive, 40th Floor
                                                     Chicago, IL 60606
                                                     Tel: (312) 207-6549
                                                     Fax: (312) 207-6400
                                                     tcarraher@reedsmith.com

                                                     *Attorneys for Eli Lilly and Company and Lilly USA LLC*

                                                     Andrew K. Solow
                                                     **KAYE SCHOLER LLP**
                                                     425 Park Avenue
                                                     New York, NY 10022
                                                     Tel: (212) 836-7740

Fax: (212) 836-6776

Pamela J. Yates
**KAYE SCHOLER LLP**
1999 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067
Tel: (310) 788-1278
Fax: (310) 788-1200

*Attorneys for Endo Pharmaceuticals Inc.*

Tinos Diamantatos
**MORGAN, LEWIS & BOCKIUS LLP**
77 West Wacker Drive, 5th Floor
Chicago, IL 60601
Tel: (312) 324-1145
Fax: (312) 353-2067
tdiamantatos@morganlewis.com

James D. Pagliaro (*pro hac vice*)
Thomas J. Sullivan (*pro hac vice*)
Ezra D. Church (*pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
1701 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5000
Fax: (215) 963-5001
jpagliaro@morganlewis.com
tsullivan@morganlewis.com
echurch@morganlewis.com

*Attorneys for Auxilium Pharmaceuticals Inc.*

## CERTIFICATE OF SERVICE

I, Scott Ahmad, hereby certify that on May 27, 2014, the foregoing document was filed via the Court's CM/ECF system, which will automatically serve and send email notification of such filing to all registered attorneys of record.

/s/ Scott Ahmad