IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION | ) Case No. 14 C 1748 )<br>) MDL 2545 ) |

This document relates to: ALL CASES

## APPLICATION OF CHRISTOPHER A. SEEGER SEEKING APPOINTMENT AS CO-LEAD COUNSEL FOR PLAINTIFFS

1. Pursuant to MDL Case Management Order No. 1, I, Christopher A. Seeger, respectfully submit this application to serve as Co-Lead Counsel for Plaintiffs and as a member of the Executive Committee of the Plaintiffs' Steering Committee in the above-captioned multidistrict litigation. I am counsel of record in *Prall et al. v. AbbVie, Inc. et al.*, No. 1:14-cv-04549 (N.D. Ill.), originally filed in the District of New Jersey and transferred to this Court as part of MDL 2545 by the Judicial Panel on Multidistrict Litigation.

2. Since founding Seeger Weiss LLP in 1999, I have earned leadership appointments from state and federal courts throughout the United States in many complex and noteworthy multidistrict litigations. Most recently, I was appointed co-lead counsel in the National Football League ("NFL") concussion injury litigation, where I successfully represented thousands of retired NFL players who suffered brain-related injuries resulting from their playing careers. I also have extensive experience litigating pharmaceutical mass tort actions, with specific experience in leadership positions in multidistrict litigation involving cardiovascular injuries, strokes, thrombolytic events and other life-threatening cardiac injuries. I have been nationally recognized for groundbreaking work in cases involving Vioxx, Zyprexa, Rezulin, PPA and Gadolinium, among others, which resulted in the recovery of over $8 billion for injured victims nationwide.

3. In 2012, the United States District Court for the Eastern District of Pennsylvania appointed me to lead the multidistrict litigation against the NFL arising out of concussion-related injuries sustained by thousands of former NFL players. I served as plaintiffs' chief negotiator in crafting a $765 million global settlement in August 2013. After the judge and some former players raised concerns about the scope of the proposed settlement, I worked with the court-appointed special master and all parties to address those concerns, and in June 2014 reached a revised settlement ensuring that players suffering neurological damage and disease will have access to an uncapped amount of funds for their treatment.

4. My experience in national pharmaceutical cases has been equally noteworthy. I was appointed to co-lead the Plaintiffs' Steering Committee and to serve as one of only three members of the Executive Committee in the Vioxx MDL before Judge Eldon Fallon in the Eastern District of Louisiana. In my leadership capacity, I led a team of over 100 law firms against Merck & Co. and was responsible for the overall litigation strategy governing approximately 27,000 individual cases. Following a half-decade of litigation spanning over 18

separate trials, my colleagues and I secured a settlement for the injured plaintiffs totaling $4.85 billion. Notable among those trials was my representation of Frederick "Mike" Humeston and his wife Mary, which resulted in a 2007 jury verdict in the amount of $47.5 million.

5. Similarly, I served as Chair of the Plaintiffs' Trial Committee in the multidistrict litigation involving massive property damage to approximately 30,000 homes and commercial properties resulting from the installation of defective Chinese-manufactured drywall in the aftermath of Hurricane Katrina. I served as lead trial counsel in the first Chinese-drywall trial in the country, resulting in a $2.7 million verdict for seven Virginia families. I also tried the second bellwether case, securing a $164,049 judgment for a Louisiana family, establishing a measure of damages for many thousands of other families and households similarly affected by the defective drywall. Following these trial victories, defendant-distributor Knauf Plasterboard (Tianjin) Co., Ltd. and related entities agreed in 2011 to pay $800 million in a nationwide settlement.

6. Some of my other notable leadership roles include the following:

(a) Served as a member of the Plaintiffs' Executive Committee in *In re Fresenius Granuflo/Naturalyte Dialysis Products Liability Litig.* (D. Mass.).

(b) Appointed to the Plaintiffs' Steering Committee in *In re Tylenol Marketing, Sales Practice and Products Liability Litig.* (E.D. Pa.).

(c) Lead Counsel on behalf of the International Union of Operating Engineers Local #68 Welfare Fund and other third-party payors in their suit against Merck to recover money paid for Vioxx prescriptions, resulting in a $80 million global resolution.

(d) Appointed to the Plaintiffs' Steering Committee in the Actos Product Liability MDL (W.D. La.), involving claims that Actos, produced by Takeda Pharmaceutical Co., was linked to an increased incidence of bladder cancer.

(e) Appointed to the Plaintiffs' Executive Committee in the DePuy Orthopaedics, Inc. ASR Hip Implant Products MDL (N.D. Ohio), following the August 2010 recall of hip replacement systems because of their high rate of failures.

(f) Served as a member of the Plaintiffs' Steering Committee for the Yasmin and Yaz MDL (S.D. Ill.), involving three brands of birth control pills, Yaz, Yasmin, and Ocella, that pose a much greater risk of health complications than other oral contraceptives currently on the market.

(g) Served as a member of the Executive Committee and Plaintiffs' Steering Committee in the Gadolinium-based contrast dyes (GBCAs) MDL (N.D. Ohio), involving a potentially fatal skin disorder. I was also appointed as Liaison Counsel in connection with the consolidated mass tort litigation against manufacturers of GBCAs in New Jersey.

(h) Served as lead trial counsel in the first case to be tried in New York against the manufacturer of Rezulin. In this trial, I obtained a $2 million verdict against Pfizer. I was also appointed to the Rezulin MDL Plaintiffs' Steering Committee (S.D.N.Y.).

    (i)    Served as Liaison Counsel and chief negotiator in connection with a national $700 million settlement with Eli Lilly & Co. for patients who claimed that they had developed diabetes or gained weight while taking Zyprexa.

    (j)    Served as principal negotiator and Co-Lead Counsel in the nationwide settlement of all PPA (phenylpropanolamine) related injuries resulting from the ingestion of Dexatrim; served on the federal MDL Plaintiffs' Steering Committee (W.D. Wash.) and the PPA New York state court litigation before Justice Helen Freedman. In the New York matter, I also served as Liaison Counsel.

    (k)    Served on the Propulsid Plaintiffs' Steering Committee in both the federal MDL (E.D. La.) and the New Jersey state litigation in Middlesex County.

    (l)    Represented children and property owners pursuing lead poisoning claims arising from one of the nation's most notorious hazardous waste sites, known as Tar Creek, in the former Picher Mining Field in Northeast Oklahoma, alleging irreversible brain damage.

    (m)    Served as Policyowner Representative for a class of more than 3.2 million New York Life Insurance policyowners with damages from allegedly improper sales practices, and settled nearly 53,000 separate claim arbitrations as Attorney Representative in the *In re Prudential Life Insurance Sales Practices Litigation* (D.N.J.).

    7.    I earned my law degree, *magna cum laude*, in 1990 from the Benjamin N. Cardozo School of Law, where I served as Managing Editor of the *Cardozo Law Review*, and which honored me with its Alumnus of the Year Award in 2009, the highest honor bestowed on an alumnus of the Law School. I received my undergraduate degree, *summa cum laude*, in 1987 from Hunter College of the City University of New York, which inducted me into its Alumni Hall of Fame in 2007. In recognition of my position in the trial bar, Hunter College honored me with its Distinguished Alumni Lawyer Award in 2013.

    8.    I respectfully submit that this application demonstrates that I have satisfied the primary criteria enumerated in CMO No. 1 to be used in making appointments to the leadership organization of this MDL, namely: (a) willingness and availability to commit to a time-consuming project; (b) ability to work cooperatively with others; (c) professional experience in this type of litigation; and (d) access to sufficient resources to advance the litigation in a timely manner.

    9.    My experience in pharmaceutical mass tort litigation, my record of successful MDL leadership, and my ability to build consensus and work collectively with counsel for plaintiffs and defendants make me an ideal candidate to serve as Co-Lead Counsel for Plaintiffs and as a member of the Executive Committee of the Plaintiffs' Steering Committee in this important litigation. It would be an honor to be so appointed. Thank you in advance for considering my application. I am available for an interview at the Court's convenience should Your Honor so desire.

Dated: July 3, 2014

                                                    Christopher A. Seeger

## **CERTIFICATE OF SERVICE**

I, Christopher A. Seeger, hereby certify that on the 3rd day of July 2014, I electronically transmitted a true and exact copy of the foregoing document, APPLICATION OF CHRISTOPHER A. SEEGER SEEKING APPOINTMENT AS CO-LEAD COUNSEL FOR PLAINTIFFS, to the Clerk of the Court using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all attorneys of record who are ECF registrants.

                                                Christopher A. Seeger