IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE: TESTOSTERONE REPLACEMENT       Case No. 14 C 1748
THERAPY PRODUCTS LITIGATION       MDL No. 2545
THIS DOCUMENT RELATES TO ALL CASES

## DAVID S. RATNER'S APPLICATION FOR APPOINTMENT TO THE PLAINTIFF'S EXECUTIVE COMMITTEE OF THE PLAINTIFF'S STEERING COMMITTEE

1. This petition is submitted in support of my application for membership of the Testosterone Replacement Therapy (TRT) MDL Plaintiff's Executive Committee (PEC) of the Plaintiff's Steering Committee (PSC).
2. I am qualified to be on the executive committee as well as the PSC because of my general experience and my experience in this litigation. I have the time, energy and resources to work wholeheartedly on this litigation as well as the commitment and belief to see the litigation through to its conclusion.
3. I believe I have a unique skill set and background that will enable me to enhance the work the PEC and PSC will perform on behalf of TRT plaintiffs.
4. I am not just a 'mass tort' lawyer. I have litigated and tried a wide variety of cases including medical malpractice, catastrophic injury, commercial actions and employment discrimination matters. My partner Benedict Morelli and I recently obtained a $95 million verdict ($15 million compensatory, $80 million punitive) against a major corporation on behalf of a woman who was the victim of sexual harassment. In addition, for twelve years (1977 – 1989) I defended products liability actions including defending and trying personal injury cases for a major automobile manufacturer.
5. Morelli Alters Ratner, LLP has offices in New York City and Miami, Florida. We are currently litigating several mass torts in addition to TRT including Propecia, in which I serve on the PSC; Transvaginal Mesh; DePuy ASR and Pinnacle; Stryker ABGII/Rejuvenate and Trident; Fosamax; Levaquin; and Yaz. We are winding down our cases in Avandia, in which my partner Benedict Morelli served on the PSC; and Chantix in which I served on the PSC and as lead counsel in the New York State coordinated proceedings.
6. Since our work in Avandia and Chantix is virtually concluded we have the time and resources to commit fully to the TRT litigation.
7. I have been a lawyer for over forty years, admitted to practice in New York and the District of Columbia, all the U.S. District Courts in New York, the U.S. District Courts for the Western District of Michigan and the Southern District of Indiana, the Second and Ninth Circuit Courts of Appeal and the United States Supreme Court. In addition I have been admitted to numerous state and federal courts pro hac vice. I have tried all or parts of approximately 400 jury trials. I have taught CLE classes in both trial practice and substantive law areas, including mass tort litigation. I am on the Board of Directors and Executive Board of the New York State Trial Lawyers' Association (NYSTLA), Dean of

the New York State Trial Lawyers' Institute and Editor in Chief of the NYSTLA magazine *Bill of Particulars*.

8. I became interested in possible litigation against TRT manufacturers as a result of being bombarded by their television and print advertisements which, I felt, targeted a vulnerable audience of aging men by concocting a disease with nebulous symptoms and offering a magic cure without warning of the potential harm TRT could cause.
9. In the fall of 2013, after reading a series of medical journal studies about the ill effects of TRT, I decided to investigate the possibility of pursuing litigation against the pharmaceutical companies that manufactured, marketed and sold these drugs.
10. To that end and because of the potential size of any ensuing litigation I called my friend Trent Miracle, Esq. of Simmons, Browder, Gianaris, Angelides & Barnerd LLC (now Simmons Hanley Conroy) to inquire if he would be interested in working with me in investigating this potential litigation. I chose Trent because I have worked with him in several mass torts including Bextra/Celebrex (where I served on the New York State PSC), Chantix (where I serve on the MDL PSC and was lead counsel of the NY State PSC) and Propecia (where I serve on the MDL PSC). Trent agreed that these were cases worth investigating and that we would see what potential clients existed.
11. We hosted Trent and his associate in our offices, provided them with binders of our research material and introduced them to the experts we had contacted.
12. Together, Trent and I traveled to New Hampshire; Boston, MA; and Washington DC to consult with these experts and to feel out what if any role they would be willing to play.
13. After meeting with the experts and doing further research Trent and I decided that we would file cases against AbbVie in the Northern District of Illinois since AbbVie had the largest market share of all the TRT manufacturers for its drug AndroGel.
14. At that point, we also contacted our friend Timothy Becker, Esq. of Johnson Becker PLLC to see if he would be interested in joining with us in this litigation. Again, I chose Tim based on my experience working with him in the Propecia MDL and serving as his local counsel in certain cases he files in New York. We are also co-counsel on several employment discrimination cases throughout the country. Tim was extremely interested in joining us in pursuing the TRT litigation.
15. Finally, we reached out to Ronald Johnson, Esq. of Schachter, Hendy & Johnson who we learned was also exploring the possibility of pursuing TRT cases.
16. The four of us presented CLE's on TRT across the country in order to build interest in TRT and share what we had learned with other firms.
17. After meeting with Ron and one of his colleagues, we (me, Trent, Tim, and Ron) agreed to work together on these cases and begin filing these cases in the U.S. District Court for the Northern District of Illinois.
18. To that end, I chose the five best cases from my inventory at that point- *Aurecchia v. AbbVie Inc., et al.*, 1:14-cv-772 (N.D. Ill.), *Benn v. AbbVie, Inc. et al.*, 1:14-cv-774 (N.D. Ill.), *Marino v. AbbVie, Inc. et al.*, 1:14-cv-777 (N.D. Ill.), *Gallagher v. AbbVie, Inc. et al.*, 1:14-cv-776 (N.D. Ill.), and *Myers v. AbbVie, Inc. et al.*, 1:14-cv-780 (N.D. Ill) – drafted the complaints, and filed them in this court with Trent serving as local counsel. These were the first five cases filed in the country.
19. Trent, Tim, Ron and I then pursued a strategy to work together on the cases, meet with and recruit other lawyers to join with us, move before this court to consolidate all pending cases before one judge, move in the JPML for an MDL in this court and try to

form a Plaintiffs' Steering Committee (PSC) in which we (Ron, Trent, Tim and I) would form the basis of an executive committee.
20. The strategy worked. Ron filed the initial petition before the JPML asking that the cases be consolidated in this court; I filed the second.
21. Although competing petitions were filed (for EDLA, NJ, NY, CO, EDPA, for example) the JPML, recognizing the advanced status of the cases filed here and the work we had done on those cases to date, including work on an ESI protocol, protective order, plaintiffs' fact sheet and briefing schedule for a motion to dismiss, ordered that an industry wide MDL be centralized in this Court.
22. After the JPML issued its order, I learned that Ron, Tim and Trent met with Christopher Seeger, Esq. and Russ Herman, Esq. in an attempt to put together an agreed slate for a PSC as well as lead counsel and a PEC.
23. I was informed after this meeting, without explanation as to why, that despite our earlier agreement I was to be excluded from serving on the PEC; I was suddenly only to serve on the PSC.
24. I agree that I should serve on the PSC because of my experience, contribution to this litigation to date, ability to work well with others and my firm's experience and resources.
25. However, in light of the foregoing, I should also serve on the executive committee.
26. Not only do I bring a wealth of experience to the table – both in and out of the courtroom- but I was an integral part of the team who brought the litigation to this court, and worked with the group to litigate the cases. Despite my exclusion from what could be called a back room deal, I am continuing to work with the other plaintiffs' lawyers on the brief opposing defendants' motion to dismiss, to gather experts and to investigate defendants' marketing of TRT by undertaking to track all advertising (both direct-to-consumer and direct-to-physicians) they placed in print and on air.

Respectfully submitted,

David S. Ratner

Morelli Alters Ratner, LLP
777 Third Avenue, 31st Floor
New York, NY 10017
Tel: (212) 751-9800
Fax: (212) 751-0046
Email: dratner@morellialters.com