IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: TESTOSTERONE | ) | Case No. 14 C 1748 |
| REPLACEMENT THERAPY | ) | MDL No. 2545 |
| PRODUCTS LIABILITY LITIGATION | ) | |

This document relates to: **ALL ACTIONS.**

## APPLICATION OF TRENT B. MIRACLE SEEKING APPOINTMENT AS CO-LEAD COUNSEL FOR PLAINTIFFS

This Application is in support of my proposed appointment to the position of Co-Lead Counsel for Plaintiffs and as a member of the Executive Committee for the Plaintiffs' Steering Committee ("PSC") in the above captioned Multi-District Litigation ("MDL"). As such, I respectfully submit this Application with the consent and agreement of all other interested counsel comprising the proposed PSC that I serve as Co-Lead Counsel in these MDL proceedings, or in such other role as the Court deems appropriate and/or warranted.

1. I am a shareholder in the national law firm of Simmons Hanly Conroy LLC, where I am the supervising shareholder in charge of pharmaceutical litigation. My firm maintains offices in St. Louis, Missouri, Chicago, Illinois, Alton, Illinois, Los Angeles, California, San Francisco, California, and New York, New York, where we have a national practice focused on pharmaceutical mass torts and products liability cases generally. I am licensed to practice law in Illinois, Missouri, Texas and Pennsylvania, where I remain in good standing. I am also licensed to practice in the following federal districts: Central, Northern and Southern Districts of Illinois; Northern and Southern Districts of Texas; Eastern District of Missouri; Eastern and Western Districts of Arkansas; District of Colorado and the United States Court of Appeals for the Fifth Circuit.

2. I currently serve on the Plaintiffs' Executive Committee in *In Re: Propecia (Finasteride) Products Liability Litigation*, MDL No. 2331, and the Plaintiffs' Steering Committee in *In Re: DePuy Orthopaedics, Inc., Pinnacle Hip Implant Products Liability Litigation*, MDL No. 2244. Additionally, I served on the Plaintiffs' Steering Committees in *In Re: Yasmin and YAZ (Drospirenone) Marketing, Sales Practices and Products Liability Litigation*, MDL No. 2100 and as a member of the Discovery Committee in *In Re: DePuy Orthopaedics, Inc., ASR Hip Implant Products Liability Litigation*, MDL No. 2197.

3. Over the past decade and a half, I have litigated and resolved, collectively, thousands of cases in the following MDL litigations: *In Re: Ephedra Products Liability Litigation*, MDL No. 1598, *In Re: Phenylpropanolamine (PPA) Products Liability Litigation*, MDL No. 1407, *In Re: Oxycontin Products Liability Litigation*, MDL No. 2005, *In Re: Ortho Evra Products Liability Litigation*, MDL No. 1742, *In Re: Medtronic, Inc. Sprint Fidelis Leads Products Liability Litigation*, MDL No. 1905, *In Re: Zyprexa Products Liability Litigation*, MDL No. 1596, *In Re: Vioxx Products Liability Litigation*, MDL No. 1657, *In Re:*

*Bextra/Celebrex Marketing Sales Practices and Products Liability Litigation*, MDL No. 1699, *In Re: Yasmin and YAZ (Drospirenone) Marketing, Sales Practices and Products Liability Litigation*, MDL No. 2100, *In Re: Avandia Marketing, Sales Practices And Products Liability Litigation*, MDL No. 1871, *In Re: Chantix (Varenicline) Products Liability Litigation*, MDL No. 2092, and *In Re: Pradaxa (Dabigatran Etexilate) Products Liability Litigation* MDL No. 2385, and *In Re: Topamax Litigation* in the Court of Common Pleas, Philadelphia County, Pennsylvania.

4. My firm currently handles cases on behalf of plaintiffs in the following MDL litigations: *In Re: Actos (Pioglitazone) Products Liability Litigation*, MDL No. 2299, *In Re: Mirena IUD Products Liability Litigation*, MDL No. 2434, *In Re: Lipitor (Atorvastatin Calcium) Products Liability Litigation*, MDL No. 2502, *In Re: DePuy Orthopaedics, Inc., Pinnacle Hip Implant Products Liability Litigation*, MDL No. 2244, *In Re: DePuy Orthopaedics, Inc., ASR Hip Implant Products Liability Litigation*, MDL No. 2197, as well as the collective SSRI and Transvaginal Mesh MDL litigations. Additionally, I have been part of the trial selection process in the Avandia, Chantix and YAZ litigations, with clients being chosen for bellwether trials in the Eastern District of Pennsylvania, Northern District of Alabama and Southern District of Illinois, respectively.

5. With respect to this Testosterone Replacement Therapy litigation ("TRT Litigation"), I have been working on these cases since the summer of 2013. I was one of the first attorneys in the country to file cases against a testosterone manufacturer for clot-based and cardiovascular injuries. This firm currently has 33 cases filed in the Northern District of Illinois, most of which are part of the *In Re: AbbVie* consolidation that was pending before this Court prior to centralization in the current MDL.

6. Following centralization of cases in the Northern District of Illinois but prior to creation of an MDL, at the instruction of this Court I joined with several other counsel in spearheading lengthy negotiations with Defendants over preliminary procedural orders. I was heavily involved in the negotiation and briefing process regarding the ESI protocol and Protective Orders respectively. Likewise, I have been and continue to be involved in the briefing process regarding Defendants' Motions to Dismiss currently pending before this Court. Throughout this process, Ron Johnson and I have acted as *de facto* chairs of this informal group, organizing teams, implementing case strategy and engaging with counsel for Defendants in an effort to move the case as a whole forward.

7. In the effort to obtain section 1407 centralization of all TRT Litigation in the Northern District of Illinois, and specifically before this Court, I substantially assisted and supported Ron Johnson's original petition for transfer and coordination with the JPML. Since the JPML order granting section 1407 centralization, and in keeping with this Court's Case Management Order No. 1, I have endeavored to create a consensus amongst the various and disparate groups and individual lawyers seeking leadership roles in these cases. Along with Ron Johnson, Chris Seeger, and several other attorneys, I have had numerous in-person and telephonic conferences with lawyers who originally sought to propose an opposing slate for leadership in the litigation. I specifically reached out to and met with lawyers who had petitioned the JPML to transfer these cases to other venues, including the lawyers who advocated for the

Eastern District of Louisiana, the Eastern District of Pennsylvania, the District of Colorado, the Central District of California, the Middle District of Florida, the Southern District of Illinois, and the Eastern District of New York. Those efforts ultimately culminated in the proposed leadership slate set forth in the moving papers filed in connection with my Application (*see Joint Application for Appointment of the Plaintiffs' Steering Committee*). While ultimately we were unable to accommodate all interested attorneys and firms in the capacity in which they were interested in being involved, I believe we were able to reach a consensus amongst a very large and diverse group. I think this is indicative of the kind of inclusive yet decisive leadership necessary to successfully litigate this case.

8. My first priority is the zealous, ethical and competent representation of all of the Plaintiffs who have alleged injury as a result of the use of TRT. My request to serve as Co-Lead Counsel for this litigation is a direct result of my dedication and commitment to this litigation that has been ongoing since the summer of 2013. This litigation is the focal point of my practice has been for many months. My firm represents hundreds of men who have sustained very real and severe injuries, including death, and we are committed to the best representation possible on their behalf. In addition to my focus on this litigation in my daily practice, I am a founding co-chair of the Testosterone Therapy Litigation Group in the American Association of Justice ("AAJ") and am frequently asked to speak at legal seminars regarding TRT Litigation across the country.

9. We have endeavored to assemble the best team of lawyers to comprise the Plaintiffs' Steering Committee and I believe that that it is a group that can and will work well together to advance this litigation in an efficient and organized manner.

10. My firm possesses the requisite legal experience and financial ability to manage and prosecute the TRT Litigation. Simmons Hanly Conroy has a long and established track record of success in both mass tort and single event cases. Since its inception in 1999, Simmons Hanly Conroy has collected verdicts and settlements of over $5 billion dollars on behalf of its clients. The firm is debt free and has never been unable to prosecute a case due to financial constraints. Employing over 60 attorneys, Simmons Hanly Conroy has the resources available to successfully prosecute this or any other litigation.

11. I look forward to serving the Court as Co-Lead Counsel for the Plaintiffs' Steering Committee, as supported by the other lawyers who have agreed to serve on the proposed slate, and I respectfully submit that I would welcome any role the Court deems appropriate. Moreover, I am available for an interview at the Court's convenience.

July 3, 2014

_____
Trent B. Miracle

## CERTIFICATE OF SERVICE

I, Trent Miracle, hereby certify that on the 3rd day of July 2014, I electronically transmitted a true and exact copy of the foregoing document, to the Clerk of the Court using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all attorneys of record who are ECF registrants.

Trent B. Miracle