IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION | Case No. 14 C 1748 |
| | MDL No. 2545 |
| | Judge Matthew F. Kennelly |
| This document relates to: | |
| *All cases* | |

# PLAINTIFFS' EXECUTIVE COMMITTEE SUBMISSION CONCERNING FEDERAL-STATE COORDINATION

## INTRODUCTION

At the Case Management Conference on October 24, 2014, this Court directed the parties to provide simultaneous submissions to the Court concerning the potential coordination of this federal multi-district litigation with state court actions pending around the country against one or more the defendants involved in this MDL arising out of use of testosterone products, if the parties were unable to reach agreement on that subject by November 21, 2014. Because the parties have been unable to agree on an approach to federal-state coordination, the Plaintiffs' Executive Committee ("PEC") hereby presents to the Court its proposed federal-state coordination order (the "PEC Order," attached as Exhibit A) and this accompanying submission explaining the basis for the PEC's Order.

If a coordination order is to be entered, the Court should enter the PEC's Order because that order, unlike the one proposed by Defendants, is appropriate for the multi-defendant and multi-state forum nature of this litigation. The proposed order provides a flexible and workable framework for coordination within that context. The Defendants' order, by contrast, would disrupt the Court's carefully considered scheduling order and discovery plan by requiring Plaintiffs' counsel to participate in out-of-sequence discovery, and would place unnecessary burdens on Plaintiffs, their

counsel, and the Court. Accordingly, Defendants' order should be rejected in favor of that suggested by the PEC.

## THIS COURT SHOULD ENTER THE PEC'S PROPOSED FEDERAL-STATE COORDINATION ORDER

The Manual for Complex Litigation recognizes that coordination of related federal and state proceedings provides both benefits and disadvantages:

> State and federal judges, faced with the lack of a comprehensive statutory scheme, have undertaken innovative efforts to coordinate parallel or related litigation so as to reduce the costs, delays, and duplication of effort that often stem from such dispersed litigation. State judges, for example, can bring additional resources that might enable an MDL transferee court to implement a nationwide discovery plan or a coordinated national calendar. There are, however, potential disadvantages of cooperative activity. Coordination can delay or otherwise affect pending litigation, conferring an advantage to one side in contentious, high-stakes cases. Such litigation activates strategic maneuvering by plaintiffs and defendants.

Manual Complex Lit. § 20.31 (4th ed.) The Manual further explains that "[c]oordination approaches differ depending on the nature of the litigation." *Id.* at § 20.311. The Manual thus recognizes the need to tailor a coordination approach to the particular circumstances of the litigation to ensure that such coordination produces the benefits of efficiency, and not the disadvantages of delay, interference, or strategic maneuvering.

Consistent with this recognition, approaches to coordination in previous multi-district litigations have varied tremendously. In some MDLs, such as the Vioxx litigation, centralized in the Eastern District of Louisiana, the DePuy Pinnacle hip litigation centralized in the Northern District of Texas, and the Actos litigation in the Western District of Louisiana, no federal-state coordination order was entered. Other MDLs have involved close coordination between the federal court and a single state-court forum. *See, e.g., In re: Bextra and Celebrex Marketing Sales Practices and Product Liability Litigation*, MDL 1699, Case No. M:05-CV-01699-CRB, *Pretrial Order No. 4: Conduct of Discovery* (N.D. Cal. Feb. 7, 2006); *In re: New York Bextra and Celebrex Product*

*Liability Litigation*, No. 06-762000, *Case Management Order No. 5* (Sup. Ct. N.Y. Co. Apr. 27, 2006). Still others have relied on a looser and more informal form of coordination appropriate to the circumstances of the particular case. *See, e.g., In re: Zimmer Nexgen Knee Implant Products Liability Litigation*, MDL No. 2272, Master Docket Case No. 1:11-cv-05468, *Agreed Case Management Plan Regarding Coordination with Other Litigation: CMO 5* (N.D. Ill. Aug. 29, 2012) (Pallmeyer, J.). (Because Plaintiffs believe Judge Pallmeyer's Order in the *Zimmer Nexgen Knee Implant* litigation provides an appropriate model for this case, and have based their order to a large extent on that one, a copy of the *Zimmer Nexgen Knee Implant* federal-state coordination Order is provided as Exhibit B.) As the varying kinds of federal-state coordination orders show, there is no single, unified, standard approach that fits all cases. Rather, the Court's goal should be to find an approach best suited to the circumstances of the particular litigation.

Moreover, as this Court well knows, the power of this Court over state court judges, litigants, and counsel in state-court jurisdictions is quite limited. *See, e.g.,* Manual Complex Lit. §§ 20.32, 22.4 (4th ed.); *see also In re: Genetically Modified Rice Litigation*, 764 F.3d 864 (8th Cir. 2014) (district court lacks the power to compel parties not before it; that some of the same attorneys may be before the federal court does not give that court the power over the plaintiffs to related state court actions). Thus, any federal-state coordination order should recognize that voluntary cooperation by the state court jurist, where feasible and practicable, must be the basis of whatever degree of coordination is appropriate to the particular case. Such coordination, however, is outside the scope of an order addressed to the parties before this Court.

In this case, the PEC believes that no coordination order is necessary. Nonetheless, if the Court prefers to formalize cooperation among the parties, it should enter the PEC Order because, as described in detail below, that Order recognizes and acknowledges the particular circumstances of this MDL, and provides an approach to federal-state coordination that is workable and appropriate. The Defendants' proposed

order, by contrast, is impractical and in conflict with the Case Management Orders already entered by this Court.

A. **The PEC Order Recognizes and Addresses the Particular Circumstances of this MDL and the Case Management Orders that Have Already Been Entered**

1. *The PEC Order Takes Account of the Multi-Defendant Nature of This MDL*

The PEC Order provides for coordination where practicable, but does not seek to coerce coordination that would disrupt the orderly management of this litigation. This litigation centralizes claims involving no less than seven different testosterone products that are manufactured, distributed, promoted and sold by six different sets of defendants. State court cases involving similar claims are pending in the courts of several states, including Illinois, Missouri, Pennsylvania, and California. There may also be state court cases in Indiana. Any attempt at federal-state coordination must address the multi-defendant and multi-forum nature of these cases. Only the PEC Order does so.

On November 6, 2014, this Court entered Case Management Order No. 14, Case Management Plan – Part 2. CMO 14 implements the Court's decision to address claims against the various defendants in sequence, rather than attempt to work up cases against six separate sets of defendants simultaneously. CMO 14 thus sets forth a discovery plan for cases against the AbbVie Defendants. It provides procedures for selection of AbbVie-only bellwether cases. Although some discovery deadlines involving groups of defendants have been established, *see* Case Management Order No. 13, Case Management Plan – Part 1, the focus of the discovery plan at this stage is on the AbbVie Defendants and on the selection on AbbVie-only bellwether cases for trial. CMO 14 thus establishes a discovery schedule for AbbVie cases which provides deadlines for both fact and expert discovery, a process for selecting AbbVie-only

bellwether cases, deadlines for summary judgment and *Daubert* motions in AbbVie-only bellwether cases, and trial dates for six AbbVie-only bellwether cases.

No comparable dates are provided for claims involving products manufactured by any of the other defendants. Rather, CMO 14 explains that "[t]he Court enters this schedule based on the express understanding, as discussed at the most recent case management conference, that counsel will promptly negotiate and present a proposed case management plan or plans for the non-AbbVie-only cases." CMO 14 at 1-2. Such a case management plan has not yet been presented. Thus, the non-AbbVie cases will, by necessity, be on a different track, with much of the discovery in these cases occurring well after the discovery concerning AbbVie.

This circumstance – phased discovery in this MDL beginning exclusively with the AbbVie Defendants – greatly complicates any attempt at across the board, generic federal-state coordination. Some of the state court cases involve only one of the products, and the defendant (or defendants) associated with that product. For example, cases pending in state court in Pennsylvania involve predominantly Auxilium. Moreover, to the extent that cases are brought and remain in state court in Indiana, it is possible that such cases will involve predominantly Eli Lilly (which is headquartered in Indiana). Any workable coordination of discovery must recognize that the different timing for discovery in Auxilium and Eli Lilly state-court cases limits (without by any means eliminating) the opportunities for coordination of discovery in this MDL, where the parties have been directed to focus their attention, in the first instance, on discovery involving AbbVie.

For this reason, the PEC Order requires the parties to "make reasonable efforts to coordinate with each other, to the extent practicable and feasible in light of the more limited number of defendants and the different schedules in the various state court litigations, the conduct of the litigation in the MDL with other TRT cases pending in state courts." PEC Order at 1. The PEC Order further provides that "The PSC shall,

where practicable . . . coordinate their requests with the plaintiffs in the state court litigations to reduce duplicative discovery." *Id.* at 2. In addition, the PEC Order provides that "It is . . . contemplated by this Court and the parties that all discovery conducted in these parallel proceedings may be utilized in both the MDL and related state court actions, consistent and in accordance with applicable substantive state law, rules of civil procedure, and applicable rules of evidence, subject to and conditioned upon an appropriate cost-sharing provision between the federal and coordinated state litigations." *Id.* Moreover, the PEC Order recognizes that:

> In order to achieve the full benefits of this MDL proceeding, this Court may make efforts to coordinate with the state courts presiding over related TRT cases, to the extent that such state courts desire such coordination and cooperation. These coordination efforts may include joint orders that will permit the parties in state court actions to fully utilize any discovery conducted in the MDL proceedings and vice versa, without prejudice to either the state or federal actions. The Court expects parties in the MDL proceeding to take reasonable steps to assure such coordination is achieved, whenever practicable.

PEC Order at 2.

Together, these provisions ensure that such coordination as is feasible will take place, and that discovery taken in one forum may be used in another. But the PEC Order does not attempt to synchronize discovery where no such synchronization is possible. PEC Order thus provides a flexible tool to balance the efficiencies of coordination with the divergent schedules and divergent circumstances of the various state court litigations involving testosterone products, and this Court's Orders.

The PEC Order also provides the mechanism for additional future coordination, as needed. Appointment of a single Plaintiffs' liaison counsel to report to the Court on the state-court proceedings, and the provision for reporting at each status conference assure that this Court will be kept apprised of developments in the state court cases in a timely and efficient manner. As and if circumstances develop or warrant, the Court can

determine what, if any, additional (or reduced) coordination is appropriate to meet the needs of this proceeding.

　　　　2.　　*The PEC Order Is Consistent with this Court's Common Benefit Order*

　　　　The PEC Order is also consistent with Case Management Order No. 16, entered by this Court on November 24, 2014.  CMO 16 addresses the issue of common benefit fees and expenses.  CMO 16 applies not only to counsel with cases in this MDL, but also to counsel with cases filed in state court who elect to sign a Participation Agreement. The Order provides that:

> Participating Counsel shall be entitled to receive all the common benefit work product performed by the PSC.  Counsel who choose not to execute the Participation Agreement are not entitled to receive common benefit work product. . . .

CMO 16 at 3.

　　　　CMO 16 thus recognizes an additional limitation on the possibilities for coordination in this case:  federal-state coordination that requires, without limitation, sharing of the PSC's work product with state court counsel imposes an unfair burden on the PSC and undermines the purpose of the common benefit order.  Coordination should, instead, allow the sharing of work-product where appropriate without permitting state court counsel to become "free riders" on the work of counsel in this MDL.

　　　　The PEC Order provides an appropriate framework for the implementation of CMO 16 in the context of federal-state coordination.  The PEC Order contains an explicit recognition that any efforts at coordination must be "subject to and conditioned upon an appropriate cost-sharing provision between the federal and coordinated state litigations."  PEC Order at 2.  The PEC Order specifically conditions the requirement of coordination of discovery with plaintiffs in state court litigations to on "appropriate provisions for the payment of fees and costs related to common benefit work."  *Id.* These provisions balance the benefits of federal-state coordination with provisions

ensuring fairness to the members of the PEC, the PSC, and those who do common benefit work. The PEC Order permits coordination to the maximum extent feasible within the parameters of the common benefit order, without requiring PSC and PEC members to share their work product with lawyers who have not agreed to the Participation Agreement.

> 3. *The PEC Order Is Similar to the Federal-State Coordination Order Entered by Judge Pallmeyer in the* Zimmer NexGen Knee *Litigation*

The PEC Order is based on sound precedent as well. The order regarding coordination with other litigation entered by Judge Pallmeyer in the *Zimmer NexGen Knee* litigation is forms the basis for and is quite similar to the PEC Order proposed here. As is the case with the PEC Order, Judge Pallmeyer's order envisions cooperation between the parties and use of discovery taken in one forum in the other fora where similar cases are pending. As is true for the PEC Order, however, Judge Palmeyer's order does not attempt to regulate or micromanage the specifics of that coordination, to impose the MDL judge's will on state court judges, nor to impose specific burdens on plaintiffs' counsel. Rather, like the PEC Order, Judge Pallmeyer's order provides a flexible framework for coordination that is responsive to the needs and circumstances of the particular case. Judge Pallmeyer's order, moreover, recognizes the need for appropriate cost-sharing arrangements before work-product from the MDL is provided to state court counsel. Use of Judge Pallmeyer's order as a template for the PEC Order ensures that the PEC's proposal provides a time-tested and effective framework for federal-state coordination in a pharmaceutical or device MDL.

> **B.** **Defendants' Proposed Order Is Unworkable, Inefficient, and Inconsistent with the Court's Prior Case Management Orders**

This Court should reject Defendant's proposed coordination order as unworkable, inefficient, and inconsistent with the Court's prior case management orders. In particular, Defendants' proposed order calls for an unworkable degree of

mandatory and inflexible coordination with respect to depositions, including a presumption that MDL counsel will attend depositions noticed in state-court cases absent agreement by the Defendants or an order from this Court to the contrary. This is simply not feasible.

As discussed above, cases pending in Pennsylvania involve claims against a defendant as to whom discovery will not commence in this action until some point in the future, after substantial discovery has been taken with respect to claims against AbbVie. In particular, discovery in Pennsylvania is proceeding predominantly with Auxilium, while in the MDL, discovery from and concerning Auxilium is scheduled to occur later. A presumption that counsel for federal plaintiffs' counsel will attend depositions noticed in these state court actions is both unfair to plaintiffs – because the defendants involved in those state-court cases will not have produced documents in this MDL – it would also immediately wreak havoc with the Case Management Plan entered by this Court for management of this MDL. In order promptly and efficiently to take the necessary discovery for the AbbVie-only bellwether trials, the PSC must focus its attention on discovery from AbbVie. To the extent that the PSC is distracted by the need to attend depositions involving Auxilium or other defendants, or to negotiate with Defendants or seek relief from the Court to avoid such attendance, completion of AbbVie discovery in the timeframe provided in CMO 14 will necessarily be delayed. Plaintiffs will, in effect, be required to take discovery involving all six products simultaneously. This is precisely the result this Court sought to avoid in setting up its Case Management Plan reflected in CMO 14. The Court's considerable efforts on the AbbVie cases prior to the centralization of claims involving the other Defendants will be wasted by diffusing the focus of the parties and the Court among the various defendants, the AbbVie cases will, of necessity, be delayed, and the Court's carefully constructed scheduling derailed.

The same is true with respect to Defendants' efforts to coordinate document production. This portion of Defendant's order similarly ignores the different schedules for document production for the different Defendants. Plaintiffs in the MDL would either have to become actively involved in document requests for all Defendants at a time earlier than that ordered by this Court, at the expense of readying the AbbVie-only bellwether cases for trial, or risk being bound by the work done by state-court lawyers. This is especially problematic where the state-court discovery rules differ significantly from the Federal Rules of Civil Procedure, or where the permissible scope of discovery is different.

Defendants' order is also cumbersome and burdensome, requiring multiple federal-state liaisons (with, presumably, more to be added if cases are filed in additional states). Such a plan places significant burdens on such liaison counsel, and on plaintiffs' counsel generally, to effectuate the complicated and detailed coordination Defendants envision. This is especially true because the Court is unable to compel lawyers in the state-court proceedings to cooperate or coordinate or otherwise comply with any of its orders. Accordingly, virtually all of the burden of coordination would fall upon the PSC, which would be without authority or leverage to enforce any coordination or cooperation on state court counsel. This MDL proceeding would be reduced to a me-too after-thought, as decisions made in the state court proceedings would be made binding on plaintiffs' counsel in these proceedings without input from this Court or counsel before this Court. Even where the Court is asked, or may seek, to revisit issues in that context, duplication and inefficiency would be unavoidable. Defendants' proposal would, indeed, require each forum to take account of how discovery disputes have been resolved in each other forum, *even when the applicable substantive and procedural law governing discovery may be entirely different*. Rather than providing efficiencies, such procedures will ensure inefficiency in the resolution of disputes in these proceedings.

Finally, although the Defendants' proposed order disclaims any intent to require the PSC to share its work product with state court lawyers who have not executed a Participation Agreement, the proposal contains no mechanism to prevent this result. Instead, their proposal would require access to documents that are the result of the PSC's efforts without regard to the Participation Agreement called for in CMO 16. This approach would involve the parties and the Court in needless wrangles about the extent to which documents and other discovery in fact reflect the PSC's work-product. Such disputes are entirely unnecessary (and disruptive), and can be readily avoided by enforcement of CMO 16 and the implementation of the more flexible PEC Order.

## CONCLUSION

For the foregoing reasons, the PEC respectfully requests that the Court reject the Defendants' proposed federal-state coordination order and enter the PEC Order or none at all.

Dated: December 3, 2014            Respectfully Submitted,

*By:*
/s/ *Brian J. Perkins*
MEYERS & FLOWERS, LLC
225 West Wacker Drive, Suite 1515
Chicago, IL 60606
Phone: (312) 214-1017
Fax: (630) 845-8982
Email: bjp@meyers-flowers.com
*Plaintiffs' Co-Liaison Counsel*

/s/ *Ronald Johnson, Jr.*
SCHACHTER, HENDY & JOHNSON PSC
909 Wrights Summit Parkway, Suite 210
Ft. Wright, KY 41011
Phone: (859) 578-444
Fax: (859) 578-4440
Email: rjohnson@pschacter.com
*Plaintiffs' Co-Lead Counsel*

/s/ Trent B. Miracle
SIMMONS HANLY CONROY
One Court Street
Alton, IL 62002
Phone: (618) 259-2222
Fax: (618) 259-2252
Email: tmiracle@simmonsfirm.com
*Plaintiffs' Co-Lead Counsel*

/s/ Christopher A. Seeger
SEEGER WEISS LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
Email: cseeger@seegerweiss.com
*Plaintiffs' Co-Lead Counsel*

<u>**CERTIFICATE OF SERVICE**</u>

I, Brian J. Perkins, hereby certify that on December 3, 2014, I electronically transmitted a true and exact copy of the foregoing document, to the Clerk of the Court using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all attorneys of record who are ECF registrants.

*/s/ Brian J. Perkins*