**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re:  TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION | ) ) ) MDL No. 2545 ) Master Docket Case  No. 1:14-cv-01748 |
| This Document Relates to All Cases | ) ) Honorable Matthew F. Kennelly |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
THEIR PROPOSED CASE MANAGEMENT ORDER
<u>FOR A DEPOSITION PROTOCOL</u>**

The *Manual for Complex Litigation* ("Manual") (4th ed., 2004) recognizes that

"[d]epositions are often overused and conducted inefficiently, and thus tend to be the most costly

and time consuming activity in complex litigation."  Manual § 11.45.  Accordingly, "[t]he judge

should manage the litigation so as to avoid unnecessary depositions, limit the number and length

of those taken, and ensure that the process of taking depositions is as fair and efficient as

possible."  *Id.*

Defendants' proposed Deposition Protocol carries out these goals; Plaintiffs' proposal

does not.  Defendants propose a structured approach that provides reasonable limits on Plaintiffs'

discovery and adheres to the spirit of the Federal Rules of Civil Procedure ("Federal Rules") and

the Manual.  Defendants' proposal also mirrors the deposition protocols entered in numerous

other multi-district litigation ("MDL") proceedings involving pharmaceutical products.  By

contrast, Plaintiffs ignore the Federal Rules and the Manual by insisting that there be no

presumptive limits on the number of depositions.  While Plaintiffs claim they are proposing a

"rule of reason," in reality, Plaintiffs have proposed nothing.  They simply want to begin

discovery without any deposition guideposts in place, thus forcing Defendants to seek relief from

this Court down the road when Plaintiffs request duplicative or irrelevant depositions. For these

reasons, this Court should enter Defendants' proposed Deposition Protocol (attached as Exhibit

"1" hereto) and reject Plaintiffs' proposal.

## BACKGROUND

After months of negotiations, the parties have been unable to reach agreement on six

provisions in a Deposition Protocol (see Exhibit "2" for a copy of the Deposition Protocol with

each disputed provision highlighted). The parties dispute the following provisions:

- **One Deposition Rule.** Defendants propose, but Plaintiffs oppose, a "one deposition rule," which would avoid unnecessary and duplicative depositions by ensuring that each witness is deposed (in a fact or representative capacity) only one time on the same subject matter. *See* Ex. 2, Section III.C.; *see also* Argument Section I.A., *infra*.

- **Number of Generic Corporate Depositions.** Defendants propose a reasonable presumptive limit of 75 fact and corporate representative of any Defendant depositions. In contrast, Plaintiffs ask the Court to impose no limit on the number of depositions that they may take. *See* Ex. 2, Section III.B.; *see also* Argument Section I.B., *infra*.

- **Preservation Depositions.** Plaintiffs further request, and Defendants oppose, that the Court allow for a second "preservation deposition" of each and every witness whose deposition is taken by Defendants for use as affirmative evidence at trial in lieu of live testimony. *See* Ex. 2, Section III.M.; *see also* Argument Section I.C., *infra*.

- **Duration.** Defendants propose a presumptive limit of seven hours, per Rule 30(d)(1), for all questioning on behalf of Plaintiffs. *See* Ex. 2, Section III.F.4. Plaintiffs propose two exceptions that render the limit meaningless. First, their proposal provides additional time, beyond the initial seven hours, if any Defendant conducts re-direct or re-cross. *See id.* Second, in their proposed time limit, Plaintiffs do not include examinations by state court counsel who are Participating Counsel under the Common Benefit Fee and Expense Funds Order (CMO No. 16), thereby discouraging coordination between state and federal lawyers and causing duplicative questioning. *See id.*; *see also* Argument Section I.D., *infra*.

- **Number of Examiners.** Defendants propose that examinations be conducted by one primary examiner on behalf of all Plaintiffs, with two examiners permitted for Rule 30(b)(6) depositions covering multiple different topics. *See* Ex. 2, Section III.F.1.a. In contrast, Plaintiffs request that two separate lawyers conduct all examinations (both fact and 30(b)(6)) on behalf of all MDL plaintiffs (but not on behalf of state court plaintiffs, even if the deposition is cross-noticed). *See id.*; *see also* Argument Section I.E., *infra*.

- **Production of All of a Witness's Prior Testimony.** Plaintiffs want to impose upon each Defendant the burden of producing all prior testimony of the witness prior to the deposition – regardless of when that testimony was taken and whether it is relevant to testosterone replacement therapy ("TRT") drugs and/or already publicly available. *See* Ex. 2, Section III.N.; *see also* Argument Section I.F., *infra*.

In sum, Defendants support and Plaintiffs oppose provisions in the Deposition Protocol

that are intended to ensure a streamlined, efficient, and coordinated deposition process.

## <u>ARGUMENT</u>

### I. DEFENDANTS' PROPOSAL, LIKE THE FEDERAL RULES, RECOGNIZES THE BENEFITS OF PRESUMPTIVE LIMITS.

Defendants' proposal should be adopted over Plaintiffs' proposal because Defendants

embrace the concept of presumptive limits reflected in the Federal Rules. *See, e.g.*, Fed. R. Civ.

P. 16(b) (directing the court to limit the time allowed for discovery); Fed. R. Civ. P. 26(b)(2)(C)

(directing court to limit the "frequency or extent of use of the discovery methods"); Fed. R. Civ.

P. 26(f)(3) (requiring parties to address discovery limits in their proposed discovery plan); Fed.

R. Civ. P. 30(a)(2)(A)(i) (imposing presumptive limit of ten depositions); Fed. R. Civ. P.

30(a)(2)(A)(ii) (requiring leave of court if any witness is to be deposed in the action more than

once); Fed. R. Civ. P. 30(d)(1) (imposing presumptive durational limit of one seven-hour day for

any deposition); Fed. R. Civ. P. 33(a)(1) (establishing presumptive limit of twenty-five

interrogatories).

If a party wishes to exceed a presumptive limit, the Federal Rules – and Rule 30

regarding depositions in particular – are generally calibrated to place the burden on the party

seeking additional discovery to show good cause. *See In re Sulfuric Acid Antitrust Litig.*, No.

03-4576, MDL No. 1536, 2005 WL 1994105, at *4 (N.D. Ill. Aug. 19, 2005) (explaining that,

after the 1993 Amendments, Rule 30 takes a "strong interventionist approach to discovery

regulation," under which "the court is invested with substantial authority to control the formal

discovery process from the outset . . . [T]he inertia of the process has been largely altered: the court must affirmatively allow discovery beyond specified limits before it can take place") (internal quotation marks and citation omitted).

In contrast to the approach adopted by the Federal Rules, Plaintiffs propose a "rule of reason" approach that imposes no presumptive limits on the process. Plaintiffs' approach effectively shifts the burden to Defendants to oppose discovery, if they think it is unreasonably excessive. But as the Manual and the Federal Rules recognize, the deposition process requires more structure because of concerns about the costs and efficiencies of depositions. *See, e.g.*, Fed. R. Civ. P. 30(a), Advisory Committee Note to 1993 Amdt. (stating that because "counsel have a professional obligation to develop a mutual cost-effective plan for discovery in the case," leave to take more than ten depositions should be granted only when consistent with the rule of proportionality in Rule 26(b)(2), "and in some cases the ten-per-side limit should be reduced in accordance with those same principles"); Fed. R. Civ. P. 30(d), Advisory Committee Note to 2000 Amdt. ("The Committee has been informed that overlong depositions can result in undue costs and delays . . ."); Manual § 11.45 ("The judge should manage the litigation so as to avoid unnecessary depositions, limit the number and length of those taken, and ensure that the process of taking depositions is as fair and efficient as possible.").

Accordingly, for each of the disputed provisions in the Deposition Protocol set forth below, this Court should adopt Defendants' proposals because they impose presumptive limits that will decrease costs and maximize efficiencies in the deposition process. If Plaintiffs believe later in this case that they need to exceed those presumptive limits, Plaintiffs can meet and confer with Defendants or they can seek relief from this Court. Plaintiffs' proposals should be rejected for avoiding presumptive limits and needlessly increasing costs and burdens.

A.      The One Deposition Rule

Defendants' proposal includes a "one deposition rule" providing that "attorneys who are

Participating Counsel under the Common Benefit Fee and Expense Funds Order (CMO No. 16)

shall not be permitted to take a subsequent substantive 30(b)(6) deposition on the same subject

matter absent good cause.  Further, no fact witness will be re-deposed absent good cause."  Ex. 1,

Section III.C.  In other words, this provision generally prohibits deposing a witness twice, but it

does provide for exceptions based on good cause.  *See id.*

This provision is consistent with the approach adopted in the Federal Rules for both fact

and 30(b)(6) depositions.  *See* Fed. R. Civ. P. 30(a)(2)(A)(ii) (providing that party may take

testimony of any person without leave of court unless "the deponent has already been deposed in

the case"); Fed. R. Civ. P. 30(a), Advisory Committee Note to 1993 Amdt. (explaining that Rule

30(a)(2)(B), as it was then enacted in 1993 (it is now Rule 30(a)(2)(A)(ii)), "requires leave of

court if any witness is to be deposed in the action more than once"); *In re Sulfuric Acid Antitrust

Litig.*, 2005 WL 1994105, at *1-6 (holding that the one deposition rule in the Federal Rules

applies to depositions under Rule 30(b)(6)).[1]

Defendants' proposal is also consistent with deposition protocols entered in other

pharmaceutical MDL proceedings.[2]  There is good reason why this kind of one deposition rule is

---

[1] Defendants' proposal is also consistent with trial practice, where each witness testifying at trial is generally called only once to testify on all subjects.

[2] *See, e.g.*, *In re: Am. Med. Sys., Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2325, No. 12-2325 (S.D. W. Va. Feb. 20, 2013) (Pretrial Order #41: Deposition Protocol, entered at Doc. 469) (attached as Exhibit "3") at p. 2 ("Absent exigent circumstances, as a general rule, no witness should be deposed in this MDL proceeding on the same subject matter more than once. The parties may agree to designate a 30(b)(6) witness also in his or her individual capacity.  A party seeking to take a second deposition of a witness shall provide the opposing party its basis for an exception.  Second depositions on new subject matter shall be permitted only upon

commonly adopted – it minimizes unnecessary burden and expenses by limiting duplication of

witness preparation and the need to reconvene all parties a second time to re-depose the same

witness. *See* 7-30 Moore's Federal Practice – Civil § 30.02 (stating that depositions "often

comprise the most . . . costly pretrial segment of a case").

During negotiations over the Deposition Protocol, Plaintiffs had expressed certain

concerns about a one deposition rule, but Defendants' proposal specifically addresses those

concerns. For example, Plaintiffs expressed concern that Defendants will, prior to production of

custodial files, designate key fact witnesses as corporate representatives under Rule 30(b)(6),

thereby precluding subsequent fact depositions of those witnesses in their individual capacity.

But the proposed one deposition rule applies to "substantive" 30(b)(6) depositions, rather than

barring a subsequent deposition of a witness who is designated for a purely administrative

30(b)(6) topic such as corporate organization. *See* Ex. 1, Section III.C. As further protection,

---

consent of the parties or an Order of this Court issued for good cause shown."); *In re: Bextra & Celebrex Mktg., Sales Practices & Prod. Liab. Litig.*, MDL No. 1699, No. 05-1699 (N.D. Cal. Feb. 7, 2006) (Pretrial Order No. 4: Conduct of Discovery, entered at Doc. 169) (attached as Exhibit "4") at p. 7 ("As a general rule, absent good cause or the agreement of the parties, no witness shall be deposed on the same subject more than once in these proceedings."); *In re: Chantix (Varenicline) Prods. Liab. Litig.*, MDL No. 2092, No. 09-2039 (N.D. Ala. Feb. 24, 2010) (Pretrial Order No. 4: Discovery Plan, entered at Doc. 25) (attached as Exhibit "5") at p. 13 ("Absent leave of court, no witness currently or formerly employed by Pfizer may be deposed more than once."); *In re: Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.,* MDL No. 1708, No. 05-1798 (D. Minn. Jan. 6, 2006) (Pretrial Order No. 3, available at 2006 WL 196943) (attached as Exhibit "6") at p. *2 ("No further deposition by any party having receiving notice of the original deposition will be permitted, except upon order of the MDL No. 05-1708 (DWF/AJB) Court on good cause shown."); *In re: Prempro Prods. Liab. Litig.*, MDL No. 1507, No. 03-1507 (E.D. Ark. July 2, 2003) (Practice and Procedure Order No. 2: Depositions, entered at Doc. 18) (attached as Exhibit "7") at p. 11 ("[W]itnesses shall not be subjected to more than one deposition, nor to repetitive and redundant questioning."); *In re: Vioxx Prods. Liab. Litig.*, MDL No. 1657, No. 05-1657 (E.D. La. April 15, 2005) (Pretrial Order #9: Deposition Guidelines, entered at Doc. 267) (attached as Exhibit "8") at p. 9 ("As a general rule, no witness should be deposed on the same subject more than once in this proceeding.").

the one deposition rule proposed by Defendants also includes a mechanism by which Defendants may produce the custodial file of a designated corporate representative prior to his or her deposition, so that the deposition may proceed in both a representative as well as individual capacity. *See id.* Defendants' proposal therefore strikes the right balance between avoiding duplicative second depositions, on the one hand, and allowing for fair and comprehensive discovery, on the other hand.[3]

In contrast, Plaintiffs want the opportunity to re-depose any witness, and would place the burden on Defendants to oppose a second deposition. *See* Ex. 2, Plaintiffs' Section III.C. This is in direct contradiction to the approach selected in Rule 30(a)(2)(A)(ii) and the efficiency interests it serves. Plaintiffs' proposal, which allows the same witness to be deposed multiple times on the same subject matter, would needlessly extend the time needed to complete discovery, and would quickly clog the Court's docket each time a Defendant would have to seek a protective order to prevent a duplicative deposition. Plaintiffs' proposal is also burdensome and unfair to the deponents themselves, whose time is valuable to them as well to their companies. Therefore, in the interest of efficiency and minimizing undue burdens, this Court should adopt Defendants' proposal of the one deposition rule and reject Plaintiffs' proposal.

**B.** **Number of Generic Corporate Depositions**

Defendants propose a presumptive limit of 75 total depositions (of fact and corporate representatives of Defendants) available to Plaintiffs. *See* Ex. 1, Section III.B. Defendants' proposal is consistent with the Federal Rules, which also set a presumptive limit (ten depositions

---

[3] Defendants' proposed one deposition rule contains other limits rendering it reasonable, including that it applies only to depositions conducted by attorneys who are Participating Counsel under the Common Benefit Fee and Expense Funds Order (CMO No. 16), and does not apply to depositions of fact witnesses who are later designated as experts. *See id.*

per side). *See* Fed. R. Civ. P. 30(a)(2)(A)(i) (imposing ten-deposition limit); Fed. R. Civ. P.

30(a), Advisory Committee Note to 1993 Amdt. (stating that the rules imposes a "ten-per-side"

limit); *Gadsby v. Norwalk Furniture Corp.*, No. 93-0420, 1994 WL 16197510, at *1 (N.D. Ill.

Feb. 8, 1994) (stating that depositions "are limited to 10 per side"). Defendants' proposal is also

consistent with deposition protocols entered in other MDLs involving pharmaceutical products,

which commonly include presumptive limits on the number of depositions permitted per side.[4]

Further, the particular presumptive limit that Defendants propose here – 75 total

depositions (fact and corporate representatives of any Defendant) – is a fair number at this stage

of the litigation. Defendants' proposal recognizes that there are multiple defendants in this MDL

proceeding and allows Plaintiffs an ample number of depositions for each.[5] Defendants'

proposal also provides Plaintiffs with the flexibility to allocate the number depositions among

---

[4] *See, e.g.*, Ex. 4 (*Bextra & Celebrex*, MDL No. 1699) at p. 8 (presumptive limit of five
depositions per month inclusive of 30(b)(6) depositions); Ex. 5 (*Chantix*, MDL No. 2092) at p.
12 (presumptive limit of 25 depositions inclusive of 30(b)(6) depositions); Ex. 6 (*Guidant*, MDL
No. 1708) at p. *2 (presumptive limit of 20 fact and 5 30(b)(6) depositions); *In re Pradaxa
(Dabigatran Etexilate) Prods. Liab. Litig.*, MDL No. 2385, No. 12-2385 (S.D. Ill. Oct. 3, 2012)
(Case Management Order Number 8 Regarding Deposition Protocol, entered at Doc. 44)
(attached as Exhibit "9") at p. 11 (presumptive limit of 22 depositions); *In re: Tylenol
(Acetaminophen) Mktg., Sales Practices & Prods. Liab. Litig.*, MDL No. 2436, No. 13-2436
(E.D. Pa. Oct. 3, 2013) (Case Management Order No. 14: Deposition Protocol for Non-Expert
Witnesses, entered at Doc. 69) (attached as Exhibit "10") at p. 2 (presumptive limit of 20
depositions inclusive of 30(b)(6) depositions). Because of the unique nature of MDLs, it appears
that MDL courts generally adhere to the spirit of Rule 30 but often permit more than ten
depositions per side.

[5] Plaintiffs are concerned that a presumptive limit of 75 depositions is too few because, taken
together, Defendants disclosed over one hundred witness names on their initial disclosures. But
not every single witness disclosed as a custodian on the initial disclosures will need to be
deposed. Many witnesses possess the same knowledge of the same topics. For example, if a
regulatory affairs director is deposed, then not every lower-level employee in the regulatory
affairs department must be deposed. As the Federal Rules recognize by adopting a presumptive
limit to the number of depositions, Plaintiffs must be strategic in selecting who to depose; they
cannot depose every possible witness with knowledge.

Defendants as Plaintiffs see fit.[6]  In the event that discovery may reveal the need to take

additional depositions beyond 75, Plaintiffs are able to seek consent from Defendants or leave of

Court.  *See* Ex. 1, Section II.B.  This measured, structured approach is consistent with the

Federal Rules.  *See, e.g.*, Fed. R. Civ. P. 30(a)(2)(A)(i) (requiring leave of court or agreement of

the parties if one side wishes to exceed the presumptive limit on the number of depositions).

In contrast, Plaintiffs' proposal contemplates "***no presumptive limit*** to the number of"

depositions that Plaintiffs may take.  Ex. 2, Plaintiffs' Section III.B (emphasis added).  This

removes entirely the need for Plaintiffs to strategically select deponents, and directly contradicts

Rule 30's recognition "that counsel have a professional obligation to develop a mutual cost-

effective plan for discovery."  Fed. R. Civ. P. 30(a), Advisory Committee Note to 1993 Amdt.

Plaintiffs' proposal also contradicts Rule 30(a)(2)'s recognition that presumptive limits

on the number of depositions are necessary to ensure that the burden of discovery remains

proportional to its likely relevance.  *See id.* (explaining that "[o]ne aim" of the presumptive limit

on the number of depositions "is to assure judicial review under the standards stated in Rule

26(b)(2) before any side will be allowed to take more than ten depositions in a case without

agreement of the other parties"); *see also* Fed. R. Civ. P. 26(b)(2)(C) ("On motion or on its own,

---

[6] Indeed, Defendant AbbVie Inc. ("AbbVie") recognizes that it is the largest defendant in the litigation and has offered to be subject to 25 of the 75 depositions.  Without agreeing to AbbVie's proposed limit on the number of its depositions, the Principal Non-AbbVie Defendants (as defined in CMO No. 19) note that the flexibility provided to the PSC by AbbVie to use more than a fixed *per capita* number of depositions on each Defendant individually further supports the 75 deposition limit and ensures that the lesser-named Defendants do not face more than the presumptive limits of Rule 30(a)(2)(A)(i).  In turn, the proposed 75-deposition limit, and the resulting proportionality of discovery against the lesser-named Defendants, is also consistent with the JPML's comments that concerns from the non-AbbVie Defendants that inclusion in a multi-defendant MDL would result in increased and unnecessary litigation costs "can be accommodated by the transferee judge in a manner that guarantees the just and efficient resolution of all cases."  Transfer Order, MDL No. 2545, at p. 3 (J.P.M.L. June 6, 2014) (entered at Doc. 211).

the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit . . .").  Indeed, without any presumptive limit to the number of depositions, the burden on Defendants of preparing and producing witness after witness who Plaintiffs notice for depositions will far outweigh the likely benefits of each such deposition.  *See* Fed. R. Civ. P. 26(b)(2)(C) (setting forth proportionality test for all discovery).  This Court will be burdened too – without a presumptive limit of the number of depositions, Defendants will be forced to seek a protective order from the Court each time Plaintiffs seek an unnecessary or duplicative deposition.

For these reasons, this Court should adopt Defendants' proposal of a presumptive limit of 75 total generic corporate depositions available to Plaintiffs.

### C.      Preservation Depositions

Defendants' proposal to eliminate a provision permitting so-called "preservation depositions" enhances efficiency and minimizes undue burdens.  Plaintiffs propose a provision providing that, if a Defendant "wish[es] to 'preserve' the testimony of a witness for use as affirmative evidence at trial," then that witness must appear for a second "preservation deposition," which would occur ***a minimum of two days after*** that witness had first appeared for a deposition. Ex. 2, Plaintiffs' Section III.M.  In other words, if Defendants perform a direct examination following Plaintiffs' cross examination, Plaintiffs want the ability, two days later (or longer), to perform further cross-examination of that same witness at another, subsequent deposition. *See id.*  This provision should be rejected for multiple reasons.

First, it is not supported by the Federal Rules, which do not distinguish between so-called "discovery" depositions and "preservation" depositions.  *See, e.g.*, *United States v. IBM*, 90

10

F.R.D. 377, 381 (S.D.N.Y. 1981) (discussing Rule 32). Instead, the Federal Rules impose a presumptive seven-hour limit on the party taking the deposition to take all the testimony they think they may need. *See* Fed. R. Civ. P. 30(d)(1). Plaintiffs must use their judgment about how to use this time. *See Wright Root Beer Co. v. Dr. Pepper Co.*, 414 F. 2d 887, 890 (5th Cir. 1969) ("Whether the cross [during the deposition] was extended or limited was left to counsel's judgment, and to the strategy that is inherent in a trial lawyer's decision."); *see also IBM*, 90 F.R.D. at 381 ("The admission of unfavorable deposition records was a risk the government assumed when it chose to limit its questioning."). Plaintiffs can choose, for example, to reserve time out of their seven hours for re-cross, after Defendants' direct examination. If Plaintiffs are still concerned that they will need more than seven hours total, then they may seek Defendants' consent or leave of court for additional time. *See* Ex. 1, Section III.F.4. (affording Plaintiffs with seven hours of examination time, absent agreement of the parties or leave of court). Plaintiffs' attempt to shift the burden to Defendants to seek leave of court to prevent additional examination time should be rejected.

Second, Plaintiffs' proposal for preservation depositions is inefficient and burdensome. It will require reconvening all counsel and the witness for a second time – and not even the very next day after the witness first appeared, but instead, a minimum of two days later. *See* Ex. 2, Plaintiffs' Section III.M. In light of the recognition that depositions are often the most costly part of the entire discovery process, this provision should be rejected. *See, e.g.*, 7-30 Moore's Federal Practice – Civil § 30.02; Manual § 11.45.

Third, perhaps because of their tendency to needlessly run up costs and inconvenience witnesses, provisions providing for additional preservation depositions are not commonly

11

included in deposition protocols entered in pharmaceutical MDLs.[7] The provision should likewise be rejected here.

### D. Duration of Depositions

Defendants propose a presumptive limit of seven hours, per Rule 30(d)(1). *See* Ex. 1, Section III.F.4. This limit applies to MDL lawyers as well as to state court counsel who are Participating Counsel under the Common Benefit Fee and Expense Funds Order (CMO No. 16), *See id.* Defendants' proposal therefore encourages coordination between state and federal lawyers, which is consistent with this Court's preference for state/federal coordination. *See* CMO No. 17, Section C.6. ("If plaintiffs in the MDL Proceeding intend to take the same witness's deposition [as state court counsel], counsel for plaintiffs and defendants are to use their best efforts to coordinate the taking of the witness's deposition in a way that will avoid unreasonable duplication of effort."). It is also consistent with other deposition protocols entered in other pharmaceutical MDLs, which also adopt the default limit of seven hours per Rule 30.[8]

Although Plaintiffs initially appear to agree to a presumptive limit of seven hours, they insist upon two exceptions that render the limit meaningless. First, their proposal provides

---

[7] *See, e.g.*, Ex. 3 (*Am. Med. Sys.*, MDL No. 2325); Ex. 4 (*Bextra & Celebrex*, MDL No. 1699); Ex. 5 (*Chantix*, MDL No. 2092); Ex. 6 (*Guidant*, MDL No. 1708); Ex. 7 (*Prempro*, MDL No. 1507); Ex. 8 (*Vioxx*, MDL No. 1657); Ex. 9 (*Pradaxa*, MDL No. 2385); *In re Propecia (Finasteride) Prod. Liab. Litig.*, MDL No. 2331, No. 12-2331 (E.D.N.Y. Sept. 3, 2013) (Practice and Procedure Order No. 6: Deposition Protocol, entered at Doc. 132) (attached as Exhibit "11"); *In re: Zimmer Nexgen Knee Implant Prods. Liab. Litig.*, MDL No. 2272, No. 11-5468 (N.D. Ill. June 4, 2013) (Case Management Order No. 7: Deposition Protocol, entered at Doc. 881) (attached as Exhibit "12"); *In re: Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, MDL No. 2342, No. 12-2342 (E.D. Pa. July 19, 2013) (Pretrial Order No. 30: Deposition Protocol, entered at Doc. 521) (attached as Exhibit "13").

[8] *See, e.g.*, Ex. 3 (*Am. Med. Sys.*, MDL No. 2325) at p. 4; Ex. 6 (*Guidant*, MDL No. 1708) at p. *3; Ex. 8 (*Vioxx*, MDL No. 1657) at p. 3; Ex. 10 (*Tylenol*, MDL No. 2346) at pp. 7-8; Ex. 11 (*Propecia*, MDL No. 2331) at p. 6; Ex. 12 (*Zimmer*, MDL No. 2272) at p. 4.

additional time, above and beyond the initial seven hours, if any party conducts re-direct or re-cross. *See* Ex. 2, Plaintiffs' Section III.F.4. This needlessly increases deposition length. As the Federal Rules recognize, seven hours is sufficient time to take all the testimony Plaintiffs think they may need; additional time "can result in undue costs." Fed. R. Civ. P. 30(d), Advisory Committee Note to 2000 Amdt. Second, Plaintiffs' proposed time limit is exclusive of all state court counsel, thereby discouraging coordination between state and federal lawyers and causing duplicative examinations. *See* Ex. 2, Plaintiffs' Section III.F.4. Defendants' proposal for the duration of depositions is preferable because it would include state court counsel who are Participating Counsel under CMO No. 16, thereby encouraging state/federal coordination. *See id.*, Defendants' Section III.F.4.

### E.     Number of Examiners

Defendants' proposal further enhances efficiency by streamlining the number of examiners permitted on behalf of Plaintiffs. Defendants propose that there will generally be one examiner on behalf of all Plaintiffs.[9] *See* Ex. 1, Section III.F.1.a. This is in accord with several other deposition protocols entered in other pharmaceutical MDLs, which also presumptively permit only one principal examiner per side.[10] Defendants recognize, however, that where a Rule 30(b)(6) notice contains multiple topics, it may be helpful to divide the  examination between two attorneys for Plaintiffs. *See id.* Defendants' proposal is thus fair to Plaintiffs while

---

[9] The primary examiner is on behalf of Plaintiffs' MDL lawyers as well as state court counsel who are Participating Counsel under the Common Benefit Fee and Expense Fund Order (CMO No. 16). *See* Ex. 1, Section III.F.1.b. Then non-duplicative questioning by other state court counsel, if any, is permitted. *See id.*

[10] *See, e.g.*, Ex. 3 (*Am. Med. Sys.*, MDL No. 2325) at p. 3; Ex. 5 (*Chantix*, MDL No. 2092) at p. 15; Ex. 6 (*Guidant*, MDL No. 1708) at p. *3; Ex. 7 (*Prempro*, MDL No. 1507) at pp. 4-5; Ex. 8 (*Vioxx*, MDL No. 1657) at p. 3; Ex. 12 (*Zimmer*, MDL No. 2272) at pp. 3-4.

at the same time encouraging coordination between state and federal counsel to conduct a non-duplicative examination.

In contrast, Plaintiffs' proposal allows for two MDL examiners for all depositions (both fact and 30(b)(6)), which invites unnecessarily duplicative questioning. *See* Ex. 2, Plaintiffs' Section III.F.1.a. Defendants recognize that two examiners may be helpful for a 30(b)(6) examination with multiple different topics, but there is no need for more than one examiner for fact witnesses. For those depositions, Plaintiffs' counsel can coordinate before and during the deposition regarding the areas of examination that the primary examiner can pursue. In addition, Plaintiffs' proposal is also problematic because it allows for an ***unlimited*** number of state court examiners in addition to the MDL examiners, which further invites duplicative examinations from many different attorneys and fails to encourage state and federal coordination. *See id.* Plaintiffs' proposal should therefore be rejected.

## F.      Production of All of a Witness's Prior Testimony

Plaintiffs' proposed Deposition Protocol should also be rejected because Plaintiffs want to require that, as a general rule for ***every*** witness, ***all*** of the witness's prior testimony must be produced prior to the deposition – regardless of when it was taken and regardless of its relevance or whether the testimony is publicly available and therefore equally as accessible to Plaintiffs as it is to Defendants. *See* Ex. 2, Plaintiffs' Section III.N. In contrast, Defendants recognize that, to the extent feasible, it may be helpful to produce in advance a copy of the witness's curriculum vitae, *see* Ex. 2, Defendants' Section III.N., but requiring production of all prior testimony for every single witness goes too far.[11]

---

[11] Defendants are not aware of a deposition protocol entered in any other pharmaceutical MDL that includes such a provision.

The burden of producing every single prior deposition transcript for every single witness – regardless of subject matter or time period – is tremendous. Many of Defendants' witnesses are unlikely to have worked for the same pharmaceutical company, or even worked in the pharmaceutical industry, for their entire career. This means, under Plaintiffs' proposal, that defense counsel will have to assume the undue burden of attempting to obtain deposition transcripts from other pharmaceutical companies or other companies outside the pharmaceutical industry who are not defendants in this MDL proceeding. In addition, many Defendants are large pharmaceutical companies that sell many different types of drugs besides TRT drugs. Accordingly, many witnesses will have previously been deposed about various other drugs besides TRT drugs. Those deposition transcripts are not relevant here, but Plaintiffs' proposal would nonetheless require their production. Finally, deposition transcripts from other proceedings are often subject to protective orders and related confidentiality obligations and procedures requiring notification and approval before they can be produced. This will enormously complicate the logistical problems, burden, and delay caused by a requirement that every deposition transcript for every witness be produced. The proposal should therefore be rejected.

## CONCLUSION

For the reasons set forth above, Defendants respectfully urge the Court to enter their proposed Deposition Protocol (Ex. 1 hereto) and reject Plaintiffs' proposal in its entirety.

Dated: January 6, 2015

By: /s/ Thomas J. Sullivan
James D. Pagliaro (pro hac vice)
Thomas J. Sullivan (pro hac vice)
Ezra D. Church (pro hac vice)
**MORGAN, LEWIS & BOCKIUS, LLP**

15

1701 Market Street
Philadelphia, PA 19103
Phone: (215) 963-5000
Fax: (215) 963-5001
Email: jpagliaro@morganlewis.com
Email: tsullivan@morganlewis.com
Email: echurch@morganlewis.com
*Attorneys for Auxilium Pharmaceuticals
Inc.*

Tinos Diamantatos
**MORGAN, LEWIS & BOCKIUS, LLP**
77 West Wacker Drive, 5th Floor
Chicago, IL 60601
Phone: (312) 324-1145
Fax: (312) 353-2067
Email: tdiamantatos@morganlewis.com
*Attorney for Auxilium Pharmaceuticals
Inc.*

James F. Hurst
Scott P. Glauberman
Bryna J. Dahlin
Nicole E. Wrigley
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, IL 60601
Phone: (312) 558-5600
Fax: (312) 558-5700
Email: sglauberman@winston.com
Email: jhurst@winston.com
Email: bdahlin@winston.com
Email: nwrigley@winston.com
*Attorneys for AbbVie Inc. and Abbott
Laboratories*

David E. Stanley (pro hac vice)
Janet H. Kwuon (pro hac vice)
**REED SMITH LLP**
355 S. Grand Avenue, Suite 2900
Los Angeles, CA 90071
Phone: (213) 457-8000
Email: dstanley@reedsmith.com
Email: jkwuon@reedsmith.com
*Attorneys for Eli Lilly and Company and
Lilly USA LLC*

16

Andrew K. Solow
**KAYE SCHOLER LLP**
250 West 55th Street
New York, NY 10022
Phone: (212) 836-7740
Fax: (212) 836-6776
Email: Andrew.Solow@kayescholer.com
*Attorney for Endo Pharmaceuticals Inc.*

Pamela J. Yates
**KAYE SCHOLER LLP**
1999 Avenue of the Stars, Suite 1700
Los Angeles, CA 90067
Phone: (310) 788-1278
Fax: (310) 788-1200
Email: Pamela.Yates@kayescholer.com
*Attorneys for Endo Pharmaceuticals Inc.*

Loren H. Brown
Cara D. Edwards
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
New York, NY 10020
Phone: (212) 335-4500
Fax: (212) 335-4501
Email: loren.brown@dlapiper.com
Email: cara.edwards@dlapiper.com
*Attorneys for Pfizer Inc. and Pharmacia &*
*Upjohn Company LLC*

Matthew A. Holian
Jessica C. Wilson
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110
Phone: (617) 406-6000
Fax: (617) 406-6001
Email: matt.holian@dlapiper.com
Email: jessica.wilson@dlapiper.com
*Attorneys for Pfizer Inc. and Pharmacia &*
*Upjohn Company LLC*

Joseph P. Thomas
Jeffrey F. Peck
K.C. Green

Jeffrey D. Geoppinger
**ULMER & BERNE LLP**
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Phone: (513) 698-5000
Fax: (513) 698-5001
E-mail: jthomas@ulmer.com
E-mail: jpeck@ulmer.com
E-mail: kcgreen@ulmer.com
E-mail: jgeoppinger@ulmer.com
*Attorneys for Actavis, Inc., Actavis*
*Pharma, Inc., Anda, Inc., and Watson*
*Laboratories, Inc., a Nevada corporatio*

18