**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION | MDL No. 2545 <br><br> Master Docket Case No. 1:14-cv-01748 <br><br> Honorable Matthew F. Kennelly |
| This Document Relates to All Cases | PSC' MEMORANDUM OF LAW REGARDING DEPOSITION PROTOCOL |

Over the past four months the Parties engaged in a lengthy process involving scores of meet-and-confers, telephone conferences, and email exchanges, in an effort to achieve and agreed-to Deposition Protocol. Unfortunately, the Parties did not succeed. *See Deposition Protocol* (Ex. 1). Specifically, three primary issues remain unresolved. They are:

    I.    The Presumptive limits on the number of depositions the PSC may take in this MDL (Paragraph III(B));

    II.    The so-called "one deposition rule" requiring the PSC combine 30(b)(6) and individual fact depositions (Paragraph III(C)); and

    III.    An effort to limit the PSC's ability to question a witness following rehabilitation (i.e. direct) by defense counsel (Paragraph III(F)(4) and (M)).

Defendants' positions find little, if any, support in the law and in many instance are entirely at odds with the Federal Rules. Worse, they create a scenario that fundamentally undercuts the proportionality doctrine this Court adopted in CMO No. 15. Conversely, the PSC's proposal reflects a model that MDL Courts routinely adopt and embraces both the intent of the *Manual for Complex Litigation*, as well as, the actual Rules of Civil Procedure themselves. As such, the PSC's approach safeguards both Parties' rights and preserves their respective obligations.[1]

---

[1] Beyond these three primary issues, the brief addresses two additional topics: 1) the allowance for more than one examiner during deposition; and 2) the production of prior testimony.

**A. *Paragraph III(B) "Number of Depositions" – Imposing a Limitation on the Number of Depositions the PSC May Take in this Case is, at Best, Premature and at Worse, Unfair; the PSC Should Face no Presumptive Limit on the Number of Depositions.***

Paragraph III(B) governs the number of depositions the PSC may take for the *entire* MDL. Specifically, Defendants ask the Court to limit the PSC to 75 total depositions, including *both* corporate *and* fact witnesses, for *all* Defendants. Conversely, the proposal contemplates *no limit* on the number of depositions Defendants may take involving individual plaintiffs. This is because Defendants intend to assert their "presumptive" right to take ten depositions in each individual plaintiff's case. To put this in perspective, an agreement to conduct discovery on a mere five bellwether cases per side per Defendant would result in up to 600 depositions. In short, the proposal contemplates allowing Defendants to conduct virtually unfettered discovery, while limiting the PSC to a mere 12 deposition per Defendant. It is both unworkable and unfair.

Worse, the proposal imposes a limitation with no evidence of either abuse by the PSC or that the case can actually be worked up in the limited number Defendants propose. The *Manual for Complex Litigation (Fourth)* notes, "The extent to which the judge considers each particular deposition, categories of depositions, or only the deposition program as a whole will depend on the circumstances of the litigation." *Manual for Complex Litigation, Fourth* § 11.451. The "circumstances of this litigation" are only now beginning to unfold. What is clear is that this MDL will involve hundreds of relevant custodians and millions of pages of documents. Even at this early stage of the case, AbbVie's 30(b)(6) Corporate Organizational Structure deposition revealed *over* 100 relevant custodians. In short, it is entirely premature to place limits on the PSC's ability to prosecute the case. Accordingly, the Court ought to reject Defendants' proposal.

    *1. Defendants incorrectly apply the presumptive limits of F.R.C.P. 30.*

Rule 30(a)(2)(i) imposes a limitation on the number of depositions "a party" may take—absent leave of court—to ten. Defendants rely on this Rule to suggest that the 700 plus (and

growing) Plaintiffs in this MDL be limited to 75 total depositions. At the outset, Defendants' highly technical, reading of the Rule can, and should, be greeted with an equally technical response; namely, the PSC is not "a party." In other words, each "party" (i.e., plaintiff) is entitled to a presumptive ten deposition. The Advisory Committee Notes to the 1993 amendments to Rule 30(a), recognize that in multi-party cases, given the presumptive limit on the number of depositions a party may take without leave of the Court (i.e. ten per party), the parties are expected to confer so as to identify the most needed depositions. In other words, the technical reading of the Rule is that each "party" receives ten depositions.[2]

This litigation currently includes six principal Defendants (a number that will grow given AbbVie's refusal to explain in detail the terms and conditions of the Solvay acquisition and concession that a separate entity (Besins Healthcare) manufactures AndroGel). If their proposal *only* applied to the primary six Defendants, it would limit the PSC to an average of twelve depositions per Defendant. But, of course, the primary six Defendants are *not* the only Defendants in this MDL. There are at least eight secondary defendants. Future-filed cases will invariably bring more Defendants (including Solvay and Besins). But, Defendants' proposal expressly applies to *all* Defendants noting, "Plaintiffs shall be entitled to a total of seventy-five (75) depositions *of defendants collectively* in this MDL." In short, Defendants' proposal contemplates the PSC conduct seventy-five 75 deposition for *sixteen separate defendants*.

Finally, Defendants' proposal fails to meet any of the conditions set forth in Rule 26(b)(2)(C) that require the Court to limit the number of depositions. For instance, Defendants

---

[2] Worse, Defendants effectively concede as much given their refusal to engage in a similar limitation of the number of deposition they can take in the litigation. Specifically, when asked (rhetorically) if Defendants would agree to conduct no more than 75 depositions of all Plaintiffs for the entire MDL the answer was unambiguously clear: No.

provide no evidence that conducting more than 75 depositions will be unreasonably cumulative or duplicative. In fact, Defendants' own disclosures evidence that the number of relevant witnesses far exceeds 75 individual custodians. Conversely, the PSC's "Rule of Reason" proposal strikes a balance between Plaintiffs' need to conduct discovery and Defendants' desire to limit deposition testimony. Specifically, the proposal expressly contemplates the Parties meet and confer to limit duplicative depositions thereby safeguarding each side's rights. As such, the PSC's proposal is far more in line with the actual Rule and Advisory Committee's comments.

2. *It is evident that PSC will be required to conduct more than 75 depositions.*

Equally important, even at this early stage of the litigation, there is ample evidence to suggest—if not altogether prove—that the 75 deposition limit is inadequate. A presumptive limit of 75 depositions would disable the PSC's ability to try bellwether cases in a meaningful way and would not allow the PSC to even depose the custodians and persons with most knowledge Defendants identified in their Rule 26 disclosures. For example, in December the PSC took the Corporate Organizational Structure 30(b)(6) deposition of AbbVie. That deposition revealed well in excess of 100 custodians with potentially relevant information concerning issues in this litigation (AbbVie's Rule 26(a)(1) disclosures identified 23 potential custodians). The remaining principle Defendants' initial Rule 26 disclosures revealed over 70 individuals who were either custodians or persons most knowledgeable, as evidenced by the chart below.

| **Defendant** | **Persons most knowledgeable** | **Custodians** | **Total** |
|---|---|---|---|
| Auxilium | 5 | 11 | 16 |
| Watson/Actavis | 8 | 16 | 24 |
| Endo | 4 | 9 | 13 |
| Lilly | 5 | 4 | 9 |
| Pfizer | 4 | 4 | 8 |

|  |  | Total without AbbVie: | 70 |

In other words, the six primary Defendants have *at least* 170 relevant custodians—assuming Defendants' Rule 26(a)(1) disclosures are accurate. And, if AbbVie's Rule 26(a)(1) disclosures are a guide, the *actual* number of relevant custodians will likely by *substantially* greater than that reported by each Defendant. In short, of the hundreds of individual relevant witnesses (not counting corporate representative depositions), Defendants' want to limit the PSC to 12.5 depositions per Defendant. It is an ineffective use of the Court's time to set this deposition limit when the Parties already know this limit will require the PSC to move the Court for additional depositions. Accordingly, the Court ought to reject Defendants' proposal.[3]

> 3. *Defendants' Proposal Violates the Proportionality Standards Set Forth by this Court in CMO No. 15.*

Finally, Defendants' proposed 75 deposition limit disregards the proportionality standards set forth in Case Management Order No. 15. *See CMO No. 15* at ¶ A(3), Dkt. No. 469. In CMO No. 15, the Court adopted the proportionality standards set forth in Federal Rule of Civil Procedure 26(b)(2)(C). Rule 26 states, in part, that when a court is evaluating whether to limit discovery, it must consider "the needs of the case, the amount in controversy*, the parties' resources*, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." F.R.C.P. 26(b)(2)(C)(iii) (emphasis added). Defendants' proposal fails to remotely satisfy this threshold. At the outset, Defendants are large multi-national corporations who obtained significant revenue from the sale of testosterone. By some estimates, the total testosterone market

---

[3] Additionally, it is a misnomer to suggest the PSC will blindly wade through deposition after deposition simply for the sake of conducting more depositions. In reality the converse is true. Specifically, the PSC will endeavor to take as few depositions as necessary to present a *prima facie* case. The Court (and Defendants), however must appreciate that the PSC is preparing a general merits case for *all* the various plaintiffs in the MDL. The PSC intends to conduct efficient, non-duplicative depositions of witnesses who are relevant to prove a *prima facie* case—nothing more, nothing less.

5

exceeds $2 Billion annually. Today, there are no less than 700 cases pending in this MDL. That number continues to grow every day. The result is that *even if* Rule 30 were read to impose some form of limitation on the PSC, the scope of this litigation easily justifies deviating from the Rule.

More important, Defendants' proposal evidences a total lack or proportional discovery. While Defendants seek to profoundly limit the PSC's opportunity to conduct discovery, they impose no like-kind limitation of the discovery they may conduct of plaintiffs. Conversely, the PSC's proposal *does contemplate* some form of limitation by affording each party the opportunity to stop the other side from taking unnecessary depositions *vis-à-vis* a "meet and confer" process followed by Court resolution. The PSC's proposal is not only fair, it is endorsed by scores of other MDL courts who each recognize the Rules purporting to limit the number of depositions are not effectively applied in MDL proceedings.[4] Accordingly, the Court ought to adopt the PSC's proposal.

### B. Paragraph III(C) "One Deposition Rule" – The PSC Should be Allowed to Select Fact Witnesses Without Regard to Whether a Defendant Designated the Same Person as a Corporate Designee.

Defendants next propose that the Deposition Protocol *require* the PSC combine 30(b)(6) depositions *and* individual fact witness testimony where the Custodian's file is produced 20 days prior to the deposition. Specifically, Defendants' proposal imposes the following limitations: 1)

---

[4] *See In re Propecia (Finasteride) Products Liab. Litig.*, MDL 2331 (E.D.N.Y. 2014) (imposing rule of reason requirement for number of depositions) (*Ex. A* at ¶ 1); *In re C.R. Bard, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, MDL 2187 (S.D.W.Va. 2012) (precluding application of deposition limits) (*Ex. B* at ¶ C); *In re Ethicon, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, MDL 2327 (S.D.W.Va. 2013) (same) (*Ex. C* at ¶ C); *In re Boston Scientific Corp., Pelvic Repair Sys. Prod. Liab. Litig.*, MDL 2326 (S.D.W.Va. 2013) (same) (*Ex. D* at ¶ C); *In re American Medical Systems, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, MDL 2325 (S.D.W.Va. 2013) (same) (*Ex. E* at ¶ C); *In re Mirena IUD Prod. Liab. Litig.*, MDL 2434 (S.D.N.Y. 2013) (no deposition limits) (*Ex. F* at ¶ VI(27)); *In re Vioxx Prod. Liab. Litig.*, MDL 1657 (E.D.La. 2005) (9 depositions per month of Merck custodians) (*Ex. G* at ¶ II(C)); *In Re Actos (Pioglitazone) Prod. Liab. Litig.*, MDL 1657 (W.D.La. 2013) (8 depositions per month) (*Ex. H* at ¶ V(G)(1)).

it requires the PSC take *both* the fact deposition and corporate structure deposition simultaneously (even if the PSC is not prepared to take the fact deposition); 2) it counts the combined deposition as *two separate depositions* further eroding the actual number of depositions the PSC may take; and 3) it is silent on the total time the PSC may examine the witness. There are a litany of issues why Defendants' proposal is unworkable—not the least of which is Defendants' disregard of the differences between fact witness and 30(b)(6) deponent testimony. For these reasons, Plaintiffs oppose inclusion of the so-called "one deposition" rule.

"A deposition pursuant to Rule 30(b)(6) is substantially different from a witness's deposition as an individual." *DSM Desotech Inc. v. 3D Sys. Corp.*, No. 08 C 1531, 2011 WL 117048, at *10 (N.D. Ill. Jan. 12, 2011) (quoting *DHL Express (USA), Inc. v. Express Save Industries Inc.*, 2009 WL 3418148, at *1 n. 4 (S.D.Fl. Oct.19, 2009)). "A 30(b)(6) witness testifies as a representative of the entity, his answers bind the entity and he is responsible for providing all the relevant information known or reasonably available to the entity." *Id.* In contrast, during a fact deposition, an individual testifies as to her personal knowledge. Even though the same person may be testifying at each deposition, the source of the information the person is obligated to provide is fundamentally different. This is further complicated by the fact that an individual employee's testimony *may* bind the corporation, whereas a 30(b)(6) deponent's testimony *does* bind the corporation. *See Smith v. Gen. Mills, Inc.*, No. C2 04-705, 2006 WL 7276959, at *5 (S.D. Ohio Apr. 13, 2006) ("the testimony of a witness noticed as an individual does not bind an entity as a 30(b)(6) witness does."); *Aldridge v. Lake Cnty. Sheriff's Office*, No. 11 C 3041, 2012 WL 3023340, at *3 (N.D. Ill. July 24, 2012) ("purpose of a Rule 30(b)(6) witness is to present the organization's position on the listed topic and that person, then, provides binding answers on behalf

of the organization.") As a result, each question will—literally—be asked twice as the PSC attempts to ascertain who is testifying in that particular moment: the individual or the corporation.

The substantive and practical differences between these two types of witnesses are repeatedly reflected in case law. Specifically, the selection of the 30(b)(6) deponent is uniquely the province of the defendant; the corporation must select a representative and charge that designee with knowledge to answer questions on its behalf. *See e.g.*, *In re Vitamins Antitrust Litig.*, 216 F.R.D. 168, 174 (D.D.C. 2003) ("[T]he two forms of discovery are not equivalent. While the governmental submissions constitute admissions by Bioproducts, its Rule 30(b)(6) deposition is a sworn corporate admission that is binding on the corporation."). At its own discretion, the corporation may name multiple individuals to speak on the subjects contained in a single 30(b)(6) notice. *Alexander v. F.B.I.*, 186 F.R.D. 137, 141 (D.D.C. 1998) ("Obviously, the purpose of a Rule 30(b)(6) deposition is to get answers on the subject matter described with reasonable particularity by the noticing party, not to simply get answers limited to what the deponent happens to know."). On the other hand, selection of fact witnesses is uniquely the province of the PSC. Rule 30(a)(1) expressly states, "[a] party may, by oral questions, *depose any person…*". *See* Fed.R.Civ.P. 30(a)(1) (emphasis added). Defendants' proposal turns these fundamental rights on their head by allowing Defendants to determine when fact depositions are taken simply by designating an individual as a 30(b)(6) witness.

In addition, Defendants propose that when a witness is deposed as a corporate designee and in his individual capacity, it is counted as two depositions. Under this proposal, if Defendants designated five 30(b)(6) witnesses and the PSC conducted fact depositions for all five witnesses, this would count as ten depositions. Such method of counting, is in direct conflict to the Advisory Committee Notes to the 1993 amendments to Rule 30(a) which states that a 30(b)(6) deposition

8

should, "be treated as a single deposition even though more than one person may be designated to testify." According to the Advisory Committee, if Defendants designated five 30(b)(6) witnesses and the PSC conducted fact depositions for all five witnesses, this would count as only six witnesses (1 + 5 = 6). Defendants' proposal not only eliminates the PSC's ability to decide *when* or *if* an individual will be deposed, but fundamentally rewrites the Rule governing the method used to count depositions. This is intentionally unfair given Defendants' proposal limiting the number of overall deposition.

Finally, Defendants' proposal repeatedly limits the length of depositions to seven (7) hours *for all examination including re-cross*. At the same time, Defendants propose to combine 30(b)(6) and individual fact witness depositions. Of course, Defendants' proposal is utterly silent regarding the amount of additional time (if any) they intend to supply the PSC for the combined depositions.[5] To the extent Defendants' position is that the combined deposition is limited to seven hours, it is wholly inconsistent with the Rules governing time limits. Specifically, the "depositions of an individual who is noticed as an individual witness pursuant to Fed.R.Civ.P. 30(b)(1) and who is also produced as a corporate representative pursuant to Fed.R.Civ .P. 30(b)(6) are presumptively subject to independent seven-hour time limits." *Sabre v. First Dominion Capital, LLC*, No. 01CIV2145BSJHBP, 2001 WL 1590544, at *1 (S.D.N.Y. Dec. 12, 2001). In the end, Defendants' proposal is unfair for three reasons and ought to be rejected: 1) it imposes real practical limitations on how the witnesses is questioned (i.e. "are you saying that in your personal capacity, corporate capacity or both?"); 2) it intrudes on the PSC's right to structure the prosecution of the case as it

---

[5] The PSC's proposed paragraph III(F)(4) reads, in pertinent part, "In the event that a witness is produced as both a corporate representative pursuant to Fed. R. Civ. P. 30(b)(6) and in his or her individual capacity, the witness will be subject to two separate depositions. *The length of examination set forth herein will apply to each such deposition separately.*" *See Depo. Protocol* at ¶III(F)(4) (emphasis supplied). Defendants oppose insertion of this language suggesting the absence of specific language allowing two seven hours days for the combined 30(b)(6) fact witness deposition was intentional.

9

sees fit; and 3) it artificially inflates the number of actual depositions conducted while failing to expressly entitle the PSC to seven hours for each deposition. In short, the proposal is both unfair and unworkable.

### C. Paragraph III(F)(4) "Length of Examination" and III(M) "Preservation Depositions" – The PSC Should be Afforded Time to ask Questions on Re-cross and Entitled to Preservations Depositions Where the Defendants Seek to Conduct "Direct Examination" of Unavailable Witnesses.

Paragraph III(F)(4) and (M) govern time limitations and follow-on examination by an adverse party (e.g., rehabilitation examination, direct, etc.). Both Parties' proposals endorse the presumptive seven hours of examination per witness subject to a meet and confer process if either Party requires additional time. Where the proposals differ is over the use of rehabilitation/direct examination and the time limits associated with follow on examinations. Specifically, in Paragraph III(F)(4) the PSC proposed that any rehabilitation: (1) be limited to the subject matter of the initial examination; and (2) that the PSC be afforded equal time following the defense's questioning to address issues the Defendant raised. Paragraph III(M), in turn, imposes a requirement that where a Defendant seeks to conduct a true direct examination—i.e. an examination that is beyond the scope of the initial examination *or* intended to preserve trial testimony, that the PSC have an additional opportunity to cross examine the witness with the benefit of the deposition transcript.

Conversely Defendants' proposal provides no limitation on the scope of rehabilitation *and* requires the PSC reserve some of its seven hours for re-cross—at the risk of losing the time altogether in the event Defendant opts not to conduct any follow-on examination. Where the PSC uses the entire seven hours, the proposal precludes *any follow-on questions* even where the Defendant examines the witness on topics wholly beyond the scope of the original examination. Similarly, Defendants propose they should be allowed to conduct preservation depositions immediately after the PSC deposes a witness, without giving the PSC *any* opportunity to cross-

10

examine that witness *based on the Defendants' direct examination*.  This proposal both disturbs the discovery process and violates the Federal Rules of Evidence.  In fact, the proposal is so far outside the hearsay rule it will likely render the preservation deposition inadmissible.  In the end, the PSC's proposal is fair, consistent with the Rules and ought to be adopted.

> 1. *Rule 30 entitles a party to conduct seven hours of deposition examination and equal time to conduct additional examination following an effort by the opposing party to rehabilitate a witness.*

The 2000 Comments to Rule 30 suggest a liberal reading of the seven-hour limit in MDL cases: "In multi-party cases, the need for each party to examine the witness may warrant additional time, although duplicative questioning should be avoided and parties with similar interests should strive to designate one lawyer to question about areas of common interest." Advisory Committee's 2000 Comment to Fed. R. Civ. P. 30(d); *see also Marshall v. GE Marshall, Inc.*, No. 2:09 CV 198, 2012 WL 405714, at *1 (N.D. Ind. Feb. 8, 2012).  Here, the PSC does not ask the Court to lift the seven-hour presumption.  Instead, the PSC only ask for a meet-and-confer process when certain depositions merit more time and the Court's involvement when the meet-and-confer is unsuccessful.

Furthermore, the PSC's request for time equal to the defense's rehabilitation time perfectly aligns with Rule 30(d).  Specifically, Rule 30(d) states, "The court must allow additional time consistent with Rule 26(b)(2) if needed to fairly examine the deponent . . ." Fed. R. Civ. P. 30(d)(2); *see, e.g. In re Heraeus Kulzer*, No. 3:09-CV-530 RM, 2011 WL 6012926, at *2 (N.D. Ind. Dec. 1, 2011) (granting a deposition extension to cover later-produced documents). Nothing in the rule requires a party "reserve" time in anticipation of the other party rehabilitating the witness.  As such, if the PSC expends their seven hours and then Defendants examine the witness on an issue, the PSC must be entitled to additional time to fairly examine the deponent.  *See Ex.* I

11

at ¶ D(2) (affording plaintiffs' an equal amount of time following rehabilitation); *Ex*. J at ¶ D(2) (same); *Ex*. F at ¶ VI(27) (same). In sum, the PSC requests a deposition protocol rooted in the Federal Rules: a presumptive seven-hour limit, equal time for follow-up questions, and an opportunity to meet-and-confer to negotiate exceptions to these presumptions.

> 2. III(M) "Preservation Depositions" – The PSC should be entitled to separately cross examine witnesses following Defendants' preservation depositions.

In recent MDLs, the strategy of conducting so-called "direct" examinations immediately following a PSC deposition has become in vogue. This is particularly true for former employees who reside beyond the subpoena power of the Court. Specifically, the former employee—who is almost always represented by the manufacturer's lawyers—sits for a prepared direct examination so as to "preserve" the witness's testimony *at trial*. Of course, the PSC receive no advance notice of this impending direct and no transcript to impeach the witness. It is, in every sense of the saying: trial by ambush. Recognizing as much, the PSC proposed two safeguards to protect against this tactic. The first (as discussed above) limits rehabilitation testimony to the subject matter of the original examination (*see* ¶ III(F)(4)). The second, articulated in Paragraph III(M), entitles the PSC to conduct follow-on examinations (with the benefit of a transcript) where the defendant takes a so-called direct examination. Defendants rejected both proposals.

In *In re Tylenol (Acetaminophen) Mktg., Sales Practices & Products Liab. Litig.*, MDL 2436 (E.D.Pa. 2013), the MDL endorsed a similar approach. Specifically, the Court allowed the PSC to conduct a discovery deposition prior to the preservation deposition. *See Ex. L*. at ¶ 21. One reason for that was because, "The examination and cross-examination of a deponent proceed as they would at trial *under the Federal Rules of Evidence*, except Rules 103 and 615." Fed. R. Evid. 615(b) (emphasis supplied). In other words, a defendant's preservation depositions of a former employee is only admissible at trial if the witness is unavailable *and* the PSC had "an opportunity

and similar motive to develop [testimony] by direct, cross-, or redirect examination." Fed. R. Evid. 804(b). Where the PSC does not have sufficient "opportunity" to "develop" its cross examination, the testimony is likely inadmissible hearsay.

Here, if Defendants wish to admit the direct testimony of a former employee, whom they represent, the PSC must be able to "develop" adequate and meaningful cross-examination. *Id.* Even though Defendants' direct examination follows the PSC's deposition of a witness, developing—by cross examination—those areas Defendants will seek to introduce at trial may be entirely unique from the topics the PSC addressed in their deposition. Alternatively, the PSC may merely conduct a truly exploratory deposition designed *only* to gather information as opposed to impeach the witness. Even where the PSC engages in an examination that is effectively cross examination, that examination cannot be fairly viewed as "developing" adequate cross examination where the "direct" testimony is wholly unrelated to the PSC's examination. In fact, the Seventh Circuit has held that, "Mere 'naked opportunity' to cross-examine is not enough; there must also be a perceived real need or incentive to thoroughly cross-examine at the time of the deposition." *United States v. Feldman*, 761 F.2d 380, 385 (7th Cir. 1985) (internal citations and quotation marks omitted); *see also Pillsbury Co. v. Conboy*, 459 U.S. 248, 259 (1983) ("But even if the direct examination is limited to the questions and answers in the immunized transcript, there remains the right of cross examination, a right traditionally relied upon expansively to test credibility as well as to seek the truth." (footnote omitted)). In short, a party is entitled to conduct a fulsome cross-examination to ascertain the credibility of the witness. That cannot be accomplished where the "direct" occurs on the fly, following the PSC's examination of a former employee because this methodology fails to afford the PSC the opportunity to prepare and deliver a meaningful cross-examination. Accordingly, the PSC requests the Court allow a full and fair

cross-examination of every witness whose testimony Defendants wish to preserve, regardless of whether PSC have already deposed the witness.

> **D. The Court Ought to Adopt the PSC's Miscellaneous Provisions related to the Number of Examiners and Production of Prior Testimony.**
>
> *1. III(F)(1)(a) "Number of Examiners" – The occasional use of more than one questioner will create efficiencies and aid the litigation.*

In Paragraph III(F)(1)(a) the PSC asks the Court to allow it to designate more than one deposition questioner in certain, limited circumstances. Oddly enough, Defendants do not oppose the use of multiple examiners for *30(b)(6) deponents* but do oppose the use of multiple examiners for fact witnesses. Despite multiple meet and confers, emails and phone conference, Defendants have yet to offer *any* explanation why two examiners is appropriate for a corporate deponent but not for a fact witness. The reality is pharmaceutical litigation is complex. Some depositions—whether fact witness depositions or Rule 30(b)(6) depositions—will cover an array of different topics, spanning over multiple days. There is no real reason to artificially preclude a party from breaking up the assignment of a particular witness as it sees fit.[6]

> *2. Paragraph III(N) "Production of Curriculum Vitae and Prior Testimony" – Witnesses should produce any prior testimony 14 days before their deposition.*

Defendants oppose the production of prior testimony before the witness's deposition. However, in their proposed "One Deposition Rule" section (III(C)), Defendants acknowledge that fact witnesses may also offer expert opinions under Federal Rule of Civil Procedure 26. A party is entitled to explore "potential inconsistencies between the views [the expert] intends to express in the underlying case, and the testimony and opinions he has given" in prior cases or on related

---

[6] In fact, Defendants' position is inconsistent with many other MDL courts that have recognized the potential efficiencies gained by allowing multiple attorneys to question witnesses. *See Ex.* K at ¶ E(1); *Ex.* L at ¶ 10(d); *Ex.* I at ¶ D(2); *Ex.* J at ¶ C(3); *Ex.* M at ¶ II(A); *Ex.* G at ¶ II(A); *Ex.* N at ¶ K(1).

subjects. *Expeditors Int'l of Washington, Inc. v. Vastera, Inc*., No. 04 C 0321, 2004 WL 406999, *2 (N.D.Ill. Feb. 26, 2004). In addition, "bias is of course one of the quintessential bases for impeachment of a witness." *Phillips v. Raymond Corp*., 213 F.R.D. 521, 524 (N.D. Ill. 2003). That bias can occur where the deponent repeatedly testifies for the defendant or be demonstrated where the deponent takes mutually exclusive positions from one case the next. In either event, the prior testimony allows to the Parties to bring any potential bias to light during the deposition. As such, it is clearly relevant and should be produced prior to their depositions.

## CONCLUSION

The PSC's proposed Deposition Protocol provides a fair method to conduct depositions in this MDL. As noted throughout, it is consistent with the Rules of Procedure, endorsed by the Advisory Committee and in harmony with this Circuit's case law. More important, it is fair. It strikes a balance between each Parties' need to conduct sufficient, but not duplicative, discovery. Accordingly, the Court ought to adopt the PSC's proposed deposition protocol.

Respectfully submitted,

DATED: January 6, 2015          Respectfully submitted,

    /s/ Timothy J. Becker
Timothy J. Becker, Esq.
JOHNSON BECKER PLLC
33 S. 6th Street, Suite 4530
Minneapolis, MN 55402
Phone: (612) 436-1804
Fax: (612) 436-1801
Email: tbecker@johnsonbecker.com

*(signatures continued on next page)*

15

*Plaintiffs' Co-Lead Counsel.*

Ronald Johnson, Jr.
SCHACHTER, HENDY & JOHNSON PSC
909 Wrights Summit Parkway, Suite 210
Ft. Wright, KY 41011
Phone: (859) 578-4444
Fax: (859) 578-4440
Email: rjohnson@pschacter.com

Trent B. Miracle
SIMMONS HANLY CONROY
One Court Street
Alton, IL 62002
Phone: (618) 259-2222
Fax: (618) 259-2252
Email: tmiracle@simmonsfirm.com

Christopher A. Seeger
SEEGER WEISS LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
Email: cseeger@seegerweiss.com

## Certificate of Service

I hereby certify that on January 6, 2015, a copy of the foregoing PSC' Memorandum of Law Regarding Deposition Protocol was electronically filed with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Timothy J. Becker
Timothy J. Becker, Esq.
JOHNSON BECKER, PLLC
33 South Sixth Street, Suite 4530
Minneapolis, MN 55402
Phone: (612) 436-1800
Fax: (612) 436-1801
Email: tbecker@johnsonbecker.com
