IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION | MDL No. 2545 |
| | Master Docket Case No. 1:14-cv-01748 |
| | Hon. Judge Matthew F. Kennelly |

This document relates to:


MEDICAL MUTUAL OF OHIO,                     No. 1:14-cv-08857

        Plaintiff,

v.


ABBVIE INC., ABBOTT LABORATORIES,
ABBOTT PRODUCTS, INC., SOLVAY
AMERICA, INC., SOLVAY NORTH
AMERICA, LLC, SOLVAY
PHARMACEUTICALS SARL, SOLVAY,
S.A., AUXILIUM, INC., ELI LILLY AND
COMPANY, LILLY USA, INC., ACRUX
LIMITED, ACTAVIS PLC, ACTAVIS, INC.,
ACTAVIS PHARMA, INC. WATSON
PHARMACEUTICALS, INC., WATSON
LABORATORIES, INC., ANDA, INC., and
ENDO PHARMACEUTICALS, INC.,

        Defendants.


**DEFENDANTS' REPLY IN SUPPORT OF
THEIR JOINT MOTION TO SEVER PLAINTIFF'S CLAIMS**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................2

I.      Defendants Will Suffer Prejudice If Medical Mutual's Claims Are Not Severed Now. .....2

II.     Severance Is Consistent With Proceedings Before The Judicial Panel On Multidistrict
        Litigation And This Court. ...............................................................................................3

III.    Medical Mutual May Not Join Defendants In A Single Action Sounding In Fraud
        Based On Allegations That Defendants Promote Their Respective Medications In
        "Similar," "Complementary," Or "Cooperative" Ways. ....................................................5

        A.      Conclusory Allegations Of "Complementary" Or "Cooperative" Conduct ........... 6

        B.      Isolated Allegations That Defendant Groups Used Some Of The Same Physicians,
                Third-party Firms, And Medical Studies. .............................................................. 9

        C.      Allegations Of Similar But Uncoordinated And Unconnected Efforts ................ 11

IV.     Medical Mutual's Claim That It Is "Investigating" A Possible Conspiracy Claim
        Underscores That Its Action Is Misjoined And Should Be Severed Now. .........................14

CONCLUSION ...................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In Re: AndroGel Prods. Liab. Litig.*,
 24 F. Supp. 3d 1378 (U.S. JPML 2014).................................................................4

*In re Asbestos Prods. Liab. Litig.*,
 No. 09-cv-61219, 2008 U.S. Dist. LEXIS 71913 (E.D. Pa. Sept. 18, 2008) ...........................4

*Bicycle Peddler, LLC v. Does 1-99*,
 No. 13 C 2375, 2013 WL 4080196 (N.D. Ill. Aug. 13, 2013)................................13

*Bryant v. Entm't Shopping, Inc.*,
 No. 11-CV-1013, 2011 WL 3511077 (N.D. Ill. Aug. 8, 2011) ................................2

*Dean v. City of Chicago*,
 No. 09 C 1190, 2009 WL 2848865 (N.D. Ill. Aug. 31, 2009)..........................13, 14

*In re EMC Corp.*,
 677 F.3d 1351 (Fed. Cir. 2012)......................................................................7, 8

*Ferenc v. Brenner*,
 927 F. Supp. 2d 537 (N.D. Ill. 2013) ...................................................................7

*Gelboim v. Bank of Am. Corp.*,
 135 S.Ct. 897 (2015)..........................................................................................4

*Malibu Media, LLC v. John Does 1-6*,
 291 F.R.D. 191 (N.D. Ill. 2013)........................................................................13

*Ex parte Novartis Pharm. Corp.*,
 975 So.2d 297 (Ala. 2007)................................................................................12

*In re Prempro Products Liability Litigation*,
 591 F.3d 613 (8th Cir. 2010) ............................................................................14

*Purzel Video GmbH v. Does 1-108*,
 No. 13 C 0792, 2013 WL 6797364 (N.D. Ill. Dec. 19, 2013) ................................13

*Ramos v. Playtex Products, Inc.*,
 Nos. 08 CV 2703, 08 CV 2828, 08 CV 3352, 2008 WL 4066250 (N.D. Ill.
 Aug. 27, 2008) ................................................................................................12

*United States v. Mississippi*,
 380 U.S. 128 (1965)..........................................................................................12

i

**Statutes**

28 U.S.C. § 1407 .................................................................................................................3, 4

**Rules**

Fed. R. Civ. P. 11 .................................................................................................................1, 14

Fed. R. Civ. P. 20 .................................................................................................................. passim

Fed. R. Civ. P. 20(a) ............................................................................................................5

Fed. R. Civ. P. 21 .................................................................................................................2

**Other Authorities**

Dr. Thomas Mulligan, *Prevalence of Hypogonadism in Males Aged at Least 45
    Years: the HIM Study*, available at
    http://www.ncbi.nlm.nih.gov/pmc/articles/PMC1569444 .......................................................11

National Center for Biotechnology Information website, at
    http://www.ncbi.nlm.nih.gov/pmc/articles/PMC1569444/citedby/ .........................................11

# INTRODUCTION

Plaintiff Medical Mutual of Ohio (Medical Mutual) urges the Court to deny Defendants' motion to sever without prejudice and wait "until the close of fact discovery" to determine whether Medical Mutual has misjoined its separate claims against the five defendant groups. Pl. Opp. 1, 3, 15. There is no reason to wait. Defendants filed their motion to sever now, because, as the Court indicated, misjoinder could "impact" subsequent proceedings and the Court was not in favor of allowing the issue to "fester." Exhibit A (transcript, Jan. 13, 2015) at 38. And, the motion is well taken because the complaint asserts only that the defendant groups engaged in ***similar*** but ***uncoordinated*** and ***unconnected*** conduct. Such allegations and arguments do not support joinder under Rule 20. Medical Mutual's assertion that it is "actively investigating" a possible conspiracy claim only underscores that (1) Medical Mutual's complaint does not allege that the different defendant groups conspired with one another, acted in concert, or coordinated in any way and (2) Medical Mutual cannot at present add such allegations to its pleading without violating Rule 11.

Furthermore, it is clear from Medical Mutual's complaint and opposition that Defendants will suffer prejudice and the Court's limited resources will be taxed if Medical Mutual's claims are not severed at the outset. The practical and efficient course of action is to sever the claims and require Medical Mutual to file individual complaints that can be challenged or answered by each defendant group fairly and efficiently. Medical Mutual does not claim that it will suffer undue prejudice if the claims are severed. Nor will severance prevent the Court from coordinating proceedings in separate cases when appropriate. Instead, severing claims will allow discovery and other pretrial proceedings to be coordinated rationally, based on well-pled allegations against each defendant group, and make litigation more efficient.

**ARGUMENT**

**I.    Defendants Will Suffer Prejudice If Medical Mutual's Claims Are Not Severed Now.**

Medical Mutual urges the Court to wait "until the close of fact discovery" to determine whether to sever Medical Mutual's claims.  Pl. Opp. 1, 3, 15.  Yet, the Court has already noted that the problem of misjoinder is likely to have an "impact" on pretrial proceedings, and indicated that it is "not in favor" of allowing the issue to "fester."  Exhibit A at 38.

This conclusion is well supported.  The Federal Rules provide the Court authority to remedy the misjoinder of defendants "at any time," and signal a preference for resolving problems of misjoinder as soon as they are recognized.  Fed. R. Civ. P. 21.  That is why courts routinely grant motions to sever at the beginning of a case based on the allegations set forth on the "face" of the complaint.  *See* Def. Mem. ISO Mot. to Sever 6-7, 9-12 (collecting cases).  Courts do not defer under these circumstances.  *Bryant v. Entm't Shopping, Inc.*, No. 11-CV-1013, 2011 WL 3511077, at *3 (N.D. Ill. Aug. 8, 2011).

Severance of Medical Mutual's claims now is necessary to avoid undue prejudice to Defendants and a drain on judicial resources.  It is clear from Medical Mutual's complaint and opposition that Medical Mutual's strategy in this action is to: (1) lump all the defendant groups together; (2) attack them collectively based on general allegations of parallel conduct, anecdotes, and data concerning promotional efforts and sales; and (3) avoid having to prove that any particular defendant group (a) actually made specific misstatements or omissions that were (b) received by an identifiable doctor, patient, or member of the putative plaintiff class, and (c) relied upon by that person when deciding to prescribe, purchase, or pay for a specific testosterone replacement therapy (TRT) medication.

The prejudice that Defendants will suffer if they are required to challenge fraud allegations that are generic or pertain to the supposed schemes and enterprises of ***other*** defendant groups is clear and present, not hypothetical and illusory. In addition, Defendants are likely to face prejudice challenging Medical Mutual's allegations in fact discovery, summary judgment and class certification proceedings, and at trial. Likewise, this Court will have to expend its limited time and resources (1) parsing which allegations, arguments, and evidence correspond to a particular defendant group and (2) determining how to manage a monolithic unit of litigation involving claims against different defendant groups, based on alleged conduct occurring over different time periods, involving different third parties, and relating to the promotion of different prescription medications. Given the risk of prejudice and drain on judicial resources, Defendants' motion to sever should be granted now, prior to the parties' briefing on motions to dismiss.

## II. Severance Is Consistent With Proceedings Before The Judicial Panel On Multidistrict Litigation And This Court.

Medical Mutual argues that Defendants "have conceded" that its claims against them arise out of the "same…series of transactions or occurrences" in past filings before the Judicial Panel on Multidistrict Litigation (JPML) and this Court concerning the TRT product liability cases. Pl. Opp. 2-4. Medical Mutual is wrong. No filing by any party before the JPML addressed Rule 20's requirement that claims against multiple defendants in a single action arise out of the "same…series of transactions or occurrences." Nor did any filing address the specific question of whether a plaintiff may join multiple defendant groups in a ***single action*** based on allegations of separate fraudulent schemes and enterprises to promote their respective TRT medications. Indeed, proceedings before the JPML concern different issues, implicating different legal principles and different statutes and rules. Proceedings before the JPML arise

under 28 U.S.C. § 1407 and concern the transfer of "civil actions involving one or more common questions of fact…pending in different districts" solely for coordination or consolidation of pretrial proceedings.  Cases filed in, or transferred to, an MDL court retain their separate identities, and each case in the MDL remains subject to Rule 20's requirements.  *See Gelboim v. Bank of Am. Corp.*, 135 S.Ct. 897, 904 (2015) ("Cases consolidated for MDL pretrial proceedings ordinarily retain their separate identities…. Section 1407 refers to individual 'actions' which may be transferred to a single district court, not to any monolithic multidistrict action created by transfer.").  As such, an MDL transferee court may remedy misjoinder in any given case in an MDL.  *See In re Asbestos Prods. Liab. Litig.*, No. 09-cv-61219, 2008 U.S. Dist. LEXIS 71913, at *17 (E.D. Pa. Sept. 18, 2008) (although plaintiffs' claims were "part of [the same] multi-district…litigation," they "clearly d[id] not arise out of the same…series of transactions or occurrences, and [were] therefore not related within the meaning of [Rule] 20").

The parties' briefs before the JPML underscore this point.  No party suggested that a plaintiff could bring a single action against the entire industry for personal injury under product liability laws, much less for economic injuries based on allegedly separate fraudulent schemes and enterprises.  The parties' briefs primarily concerned the court in which cases alleging claims for personal injury under product liability laws should be consolidated.  *See In Re: AndroGel Prods. Liab. Litig.*, 24 F. Supp. 3d 1378 (U.S. JPML 2014).

The JPML's decision also supports this point.  It favored a single industry-wide MDL, including hundreds or possibly "thousands" of ***separate*** personal injury cases arising under product liability laws, because the product liability cases were likely to "share factual questions regarding general causation and the background science regarding the role of testosterone in the aging body…."  *Id.* at 1379.  The JPML decision does not conclude, or even suggest, that a

plaintiff could bring a ***single action*** against the entire industry based on allegations of separate fraudulent schemes and enterprises promoting different groups' competing medications.

Medical Mutual's arguments about proceedings in this Court are similarly off base. The Court's rulings on the motions to dismiss product liability claims do not conclude or even suggest that a plaintiff may sue all five defendant groups in a single action sounding in fraud based on allegations of similar but uncoordinated and unconnected fraudulent conduct. Nor has the Court ever addressed that issue in any written order or decision.[1] Likewise, Defendants have not "conceded" that Medical Mutual may join separate fraud claims against all five defendant groups simply by proposing a briefing schedule for a motion to dismiss the operative complaint. On the contrary, Defendants raised the misjoinder problem along with the proposed briefing schedule because misjoinder could impact subsequent proceedings. The Court agreed and wanted to address it "up front[.]" Exhibit A at 38.[2]

### III. Medical Mutual May Not Join Defendants In A Single Action Sounding In Fraud Based On Allegations That Defendants Promote Their Respective Medications In "Similar," "Complementary," Or "Cooperative" Ways.

Medical Mutual concedes that, under Rule 20, the different defendant groups may be joined in a single action only if Medical Mutual's claims against them arise out of the "same…series of transactions or occurrences." Pl. Opp. 2, 9-10; *see* Fed. R. Civ. P. 20(a). It also concedes that, to support joinder, the alleged transactions or occurrences that give rise to its

---

[1] Medical Mutual's arguments about industry-wide hearings conducted by the advisory committees of the FDA also are unavailing. Because federal agencies are not governed by Rule 20 in conducting their internal affairs, the scope of hearings conducted by the FDA has no bearing on the structure or organization of civil actions sounding in fraud under Rule 20.

[2] Defendants support the coordination of pretrial proceedings concerning questions of law and fact common to separate actions against the defendant groups. To that end, Defendants' motion seeks severance of Medical Mutual's monolithic action into separate actions that can be coordinated more rationally and fairly based on well-pled allegations as to each defendant group's supposed fraudulent schemes and enterprises.

separate claims against the defendant groups must be related to one another in a "logical" and "reasonable" way. Pl. Opp. 2, 9-10.

There is also no serious dispute between the parties about Medical Mutual's complaint. Medical Mutual concedes the complaint asserts separate claims against five different defendant groups for alleged acts of fraud, deception, and omission that supposedly occurred in connection with each group's respective efforts to promote its own particular TRT prescription medication. Pl. Opp. 6. Medical Mutual concedes that (1) the defendant groups are competitors; (2) their efforts allegedly occurred over different time periods, with the assistance of different groups of third parties, and with an intent to promote competing medications; (3) each group's alleged schemes and enterprises were separate and distinct from those of the other defendant groups; (4) there are no concrete allegations that the defendant groups conspired with one another, acted in concert, or coordinated their conduct; and (5) each group may be held liable for damages caused only by its alleged schemes or enterprises and not those of any other defendant group. *Id.*

Nevertheless, Medical Mutual contends that it may join claims against the different defendant groups in a single action because (1) the groups' respective promotional schemes and enterprises were supposedly "similar" and "complementary[;]" (2) the defendant groups purportedly "cooperat[ed,]" in an unspecified manner, to increase public awareness of testosterone deficiency; and (3) some defendant groups assertedly used some of the same physicians, third-party firms, and medical studies. Pl. Opp. 2, 5-7, 10. These arguments fail.

A.     **Conclusory Allegations Of "Complementary" Or "Cooperative" Conduct**

There are only three sentences in the entire 336-page complaint that allege the defendant groups engaged in "complementary" conduct and "cooperat[ed]" with one another. Paragraph 4 alleges simply that "Defendants' respective but complementary marketing strategies specifically targeted for off-label TRT drug use patients with age appropriate testosterone levels and patients

with erectile dysfunction, diabetes, depression and obesity (among other off-label promotions)…." Paragraph 8 alleges that the defendant groups worked "rapidly and cooperatively…to inflate the hypogonadism prevalence numbers." And paragraph 69 alleges "complementary" efforts to "distort[] and pollut[e] the medical discourse and medical literature surrounding the TRT drugs[.]" These isolated assertions of "complementary" and "cooperative" conduct are vague and conclusory, and not supported by any well-pled factual allegation that the Court may appropriately credit. *Ferenc v. Brenner*, 927 F. Supp. 2d 537, 547 (N.D. Ill. 2013) ("[t]hreadbare" allegations are not accepted as true). Furthermore, they do not relate to any element of the 38 counts asserted in the complaint.[3]

More detailed allegations of parallel business activities or independent but "complementary" promotional efforts would not alter the conclusion that Medical Mutual has misjoined the defendant groups in a single action. To support the joinder of separate claims against separate defendants concerning allegedly separate fraudulent schemes and enterprises, Rule 20 requires more than well-pled allegations of parallel or "complementary" business activities. Such allegations do not have the type of "logical" or "reasonable" relationship to each other and to the separately asserted fraud claims that Rule 20 demands.

One of the cases cited by Medical Mutual strongly supports this point. In *In re EMC Corp.*, 677 F.3d 1351, 1356 (Fed. Cir. 2012), the Federal Circuit addressed Rule 20's "same…series of transactions or occurrences" requirement in cases where a patent holder sues multiple defendants for infringement. The court explained that while allegations of joint

---

[3]        Paragraph 8, in particular, is a perfect example of the prejudice defendants will suffer if Medical Mutual's claims are not severed now. It alleges in a vague and conclusory manner that the different defendant groups acted "rapidly and cooperatively" ***in 2004***; yet, Defendant Endo Pharmaceuticals and the Eli Lilly Defendants are not alleged to have entered the market for TRT medications with their respective medications until ***seven years later*** in 2011, long after the market for TRT medications was "mature[.]" Compl. ¶¶ 7, 8, 17, 53-58.

liability, conspiracy, or concerted action are not prerequisites for joinder, the absence of such

allegations is a ***factor*** to be considered when determining whether claims against multiple

defendants arose from the "same…series of alleged transactions or occurrences." *Id*. at 1356,

1359-60. The court further explained that in the absence of well-pled allegations of joint

liability, conspiracy, or concerted action, separate claims against independent defendants could

be joined in a single action only if the claims had the same "aggregate of operative facts" such

that there would be not merely some common questions of law or fact but a "substantial

evidentiary overlap in the facts giving rise to the cause of action against each defendant." *Id.* at

1358. The court held that a plaintiff could join multiple defendants in a single infringement

action only when the complaint alleged (1) the defendants' infringing products or processes were

the same and (2) "an actual link" between the defendants, including "the same time period,"

"some relationship" to one another, "identically sourced components," or mutual "technology

agreements." *Id.* at 1358-60.

The same legal principles support the conclusion that Medical Mutual's claims are

misjoined and more detailed allegations of parallel business activities and "complementary"

promotional efforts would not cure the misjoinder. Medical Mutual claims that each defendant

group is severally liable for promotional efforts by that group that (1) deceived doctors, patients,

and third-party payors about the prevalence of testosterone deficiency and the safety and

effectiveness of that defendant group's TRT medication and (2) resulted in prescriptions,

purchases, and payments for that group's particular TRT medication. While Medical Mutual's

separate claims against the defendant groups raise some common questions, the claims do not

(and cannot) arise from the same "aggregate of operative facts." The opposition's list (at 14-15)

of "common" questions demonstrates the absence of substantial overlap. It asks: (1) "Whether

Defendants misrepresented the safety and efficacy of TRT therapy for off-label conditions including 'age-related' hypogonadism;" (2) "Whether Defendants made material misrepresentations of fact, or omitted to state material facts regarding the several cardiovascular risks associated with TRT therapy;" and (3) "When Defendants knew or should have known of alleged link between TRT use and cardiovascular risk[.]"

These questions are not capable of "common" answers for all the defendant groups. Each group is alleged to have made separate representations about the prevalence of hypogonadism and the safety and efficacy of the group's particular TRT medication, over different time periods, in different media and fora. And those alleged representations were received by different physicians, patients, and third-party payors prior to any prescription, purchase, or payment of a specific defendant group's medication. Thus, the "aggregate of operative facts" necessary to answer these questions necessarily will be ***different*** for each defendant group. Put another way, there will not be (and cannot be) the type of "***substantial*** evidentiary overlap in the facts ***giving rise to the cause of action*** against each defendant" described in *EMC*, 677 F.3d at 1358. Medical Mutual's action therefore is misjoined and must be severed now.

> **B.**    **Isolated Allegations That Defendant Groups Used Some Of The Same Physicians, Third-party Firms, And Medical Studies.**

Medical Mutual's other allegations are similarly insufficient. Contrary to the opposition, the complaint does ***not*** allege that the defendant groups have used many of the "same" physicians and marketing firms to assist them in promoting their respective medications. Pl. Opp. 2 n.1, 12. The complaint actually alleges that the defendant groups used ***different*** third parties. Compl. ¶¶ 65-69, 70-107, 108-24, 125-46. There also are no allegations—fact-based or conclusory—that the defendant groups "often" sponsored events "jointly" to promote public awareness of testosterone deficiency and sales of their respective medications. Pl. Opp. 2 n.1,

12. There are only isolated suggestions that **two** of the defendant groups provided similar levels of financial support to **a single 2013 meeting** of the American Association of Family Practitioners. Compl. ¶ 408.

In any event, generic allegations that the different defendant groups used many of the "same" physicians and vendors and "often" engaged in joint sponsorships of medical presentations or conferences would not support joinder. At a minimum, Medical Mutual would need to set forth concrete, factual allegations identifying (1) any alleged joint promotional efforts that involved the same third parties, (2) any alleged misstatements and omissions made in connection with such efforts, and (3) the physicians, patients, and third-party payors, who allegedly heard or read, and relied upon, the deceptive statements when prescribing, purchasing, or paying for a TRT medication. Yet, there are no such allegations in the complaint.

Medical Mutual's assertion that the defendant groups have cited the same medical studies also is insufficient to show that its claims against Defendants are predicated on the "same…series of transactions or occurrences." The single medical study referenced repeatedly in the complaint is the 2005 HIM Study by Dr. Thomas Mulligan and others, which was peer-reviewed and selected for publication in July 2006 by the editors of the International Journal of Clinical Practice. The HIM Study estimated, based on blood samples, the prevalence of hypogonadism in men aged 45 years or older visiting primary care practices in the United States. The study found, among other things, that 38.7% of men tested positive for hypogonadism. And it concluded that

> [a] prevalence of this magnitude warrants consideration by the primary care
> doctor as the main provider of health care; however, controversy exists about the
> risks associated with the long-term safety of testosterone replacement therapy,
> particularly in older men. Therefore, men with low testosterone who present to the
> primary care office with medical conditions that often occur concomitantly with

low testosterone should be evaluated and, if symptomatic and without
contraindications, possibly considered for treatment.

Dr. Thomas Mulligan, *Prevalence of Hypogonadism in Males Aged at Least 45 Years: the HIM Study*, available at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC1569444.[4]

The mere allegation that this study has been cited by the various defendant groups does not demonstrate that Medical Mutual's separate claims against Defendants are based on the same "aggregate of operative facts" or that there will be "substantial" overlap in the evidence needed to prove the separate claims. In fact, the complaint does not allege that the HIM Study misstated or omitted any material facts, or that physicians, patients, or third-party payors received or relied on the study when prescribing, purchasing, or paying for any defendant group's TRT medication.

### C. Allegations Of Similar But Uncoordinated And Unconnected Efforts

Disregarding the unsupported claims and innuendos in Medical Mutual's opposition, we are back to where we began: the well-pleaded allegations in the complaint allege, at most, that the defendant groups engaged in *similar* but *uncoordinated* and *unconnected* efforts to promote awareness of hypogonadism and their respective TRT prescription medications to doctors, patients, and third-party payors. As a matter of law, such allegations are insufficient to show that Medical Mutual's claims against Defendants arise out of the "same…series of transactions or occurrences" and can properly be joined in one action. *See* Def. Mem. ISO Motion to Sever 7, 9-12 (collecting cases severing claims based on the pleadings).

Medical Mutual ignores the vast majority of cases cited in Defendants' opening memorandum. Yet, these cases support the uncontroversial principle that claims against multiple defendants are misjoined and must be severed when based on allegations of similar but

---

[4] Since 2006, the HIM Study has been cited by medical researchers in at least 39 other peer-reviewed articles in independent medical journals. *See* National Center for Biotechnology Information website, at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC1569444/citedby/ (providing list of articles).

uncoordinated and unconnected conduct. In particular, Medical Mutual does not address the *DirecTV* line of cases, which, like the complaint here, involved claims against multiple defendants who allegedly engaged in parallel transactions and conduct that supposedly caused the plaintiff economic injuries. Likewise, Medical Mutual ignores *Ex parte Novartis Pharm. Corp.*, 975 So.2d 297, 300-05 (Ala. 2007), which relied on a decision of this Court in holding that a plaintiff may not join claims against different pharmaceutical companies based on allegations of similar, yet separate, acts of deceptive and unfair "pricing and marketing" of the companies' respective prescription medications.[5]

Furthermore, Medical Mutual's cited cases do not actually support joinder here. For example, in *United States v. Mississippi*, 380 U.S. 128, 130, 142 (1965), the Supreme Court held that the United States could bring claims for voting rights violations against multiple county voting registrars because the registrars' alleged conduct was part of a single "state-wide system designed to enforce the registration laws in a way that would inevitably deprive [African-Americans] of the right to vote solely because of their color." The Court emphasized that all of these state officials were governed by, and acting to enforce, the same "state constitution, one of the chief purposes of which was…to restrict [African Americans'] franchise and to establish and perpetuate white supremacy and racial segregation in Mississippi." *Id.* at 132. In contrast,

---

[5]      Medical Mutual's arguments (Pl. Opp. 13 n.6) attempting to distinguish *Ramos v. Playtex Products, Inc.*, Nos. 08 CV 2703, 08 CV 2828, 08 CV 3352, 2008 WL 4066250, at *4 (N.D. Ill. Aug. 27, 2008), are misguided. In *Ramos*, the plaintiffs sued multiple defendants in a single action for unfair and deceptive acts and practices, breach of implied warranty of merchantability, negligence, and unjust enrichment concerning the manufacture and marketing of coolers designed for holding breast milk but that allegedly contained dangerous amounts of lead. The products allegedly were marketed in a parallel fashion by all defendants, and the claims raised common questions. Yet, that was insufficient for joinder because the aggregate of the operative facts needed to prove plaintiff's claims was different for each defendant. This case is similar.

Medical Mutual does not (and cannot) allege that the different defendant groups in this case are agents of a single sovereign state, acting to enforce the same unconstitutional state-wide laws.

*Malibu Media, LLC v. John Does 1-6*, 291 F.R.D. 191 (N.D. Ill. 2013), *Bicycle Peddler, LLC v. Does 1-99*, No. 13 C 2375, 2013 WL 4080196 (N.D. Ill. Aug. 13, 2013), and *Purzel Video GmbH v. Does 1-108*, No. 13 C 0792, 2013 WL 6797364 (N.D. Ill. Dec. 19, 2013), are cases involving the BitTorrent software protocol. In those cases, this Court concluded that a copyright holder could join in a single action multiple defendants who allegedly downloaded parts of an illegal copy of the same movie. However, these conclusions were premised on the unique technical architecture of BitTorrent. The defendants did not merely act ***in parallel***. Rather, each defendant "participat[ed] in the same BitTorrent swarm" to download the same movie. *Malibu Media*, 291 F.R.D. at 202. Each defendant "downloaded the same [computer file] that was created by the same initial [uploader], intending to: 1) utilize other [swarm members'] computers to download pieces of the same [file], and 2) allow his…own computer to be used in the infringement by other peers and Defendants in the same swarm." *Id.* (internal quotation marks omitted). Even with this participation in the same "swarm," the joinder question was a close call. *See id.* at 202-03 (noting that other courts had reached contrary conclusions on identical facts). Here, the allegations are not remotely similar: Medical Mutual does not allege that the defendant groups literally utilized one another's computers to propagate the exact same contraband file. It alleges that the defendant groups used ***similar*** techniques to promote ***similar but competing*** products.

*Dean v. City of Chicago*, No. 09 C 1190, 2009 WL 2848865 (N.D. Ill. Aug. 31, 2009), also does not help Medical Mutual. In *Dean*, this Court concluded that plaintiffs could jointly sue their same employer for alleged employment discrimination because the plaintiffs'

13

supervisors took adverse employment actions against them based on a single, unlawful company policy adopted by the defendant. *Dean*, 2009 WL 2848865, at *2-3. Again, the decision does not support Medical Mutual's efforts to sue **multiple** defendants based on allegations of **similar but uncoordinated** fraudulent schemes and enterprises.[6]

Consistent with the weight of authority, therefore, Medical Mutual's claims against the separate defendant groups here do not arise from the "same…series of transactions or occurrences" and thus, must be severed into five separate actions.

## IV. Medical Mutual's Claim That It Is "Investigating" A Possible Conspiracy Claim Underscores That Its Action Is Misjoined And Should Be Severed Now.

Finally, Medical Mutual attempts to shift the focus from its operative complaint (which plainly does not satisfy Rule 20) with dramatic and self-serving assertions that it is "actively investigating" a possible conspiracy claim against all five defendant groups and that it may amend its pleading in the future to assert such a conspiracy claim. Pl. Opp. 1, 2 n.2. Medical Mutual's cavalier assertions only underscore that (1) Medical Mutual's operative complaint does not allege that the different defendant groups conspired with one another, acted in concert, or coordinated in any way and (2) Medical Mutual cannot presently add such allegations to its pleading without violating Rule 11 of the Federal Rules of Civil Procedure. If Medical Mutual were able truthfully to add such allegations against the defendant groups, it could have sought to file an amended complaint. Instead, it chose to oppose severance of its existing complaint. Based on the existing allegations, Medical Mutual's claims are misjoined and should be severed.

---

[6]     Medical Mutual's reliance on *In re Prempro Products Liability Litigation*, 591 F.3d 613 (8th Cir. 2010), also is misplaced. *Prempro* concerned federal removal jurisdiction under the unsettled doctrine of "fraudulent misjoinder." Applying a strong presumption against removal and in favor of remand, the *Prempro* court held that a clear showing of "egregious" misjoinder is required before a nondiverse defendant will be ignored for purposes of establishing complete diversity. *Id.* at 622. As Medical Mutual ultimately concedes, this stringent standard does not apply to a conventional motion to sever under Rule 20.

## CONCLUSION

Although Medical Mutual opposes Defendants' motion to sever, it does not argue that severance would cause it to suffer undue prejudice or bear an unfair burden. Nor does Medical Mutual identify any "substantial case management inefficiencies" that will result if Defendants' motion to sever is granted. Pl. Opp. 1. Rather, Medical Mutual concedes that the Court has the power to coordinate fact discovery and other proceedings across separate cases in the MDL. Severance, therefore, will allow discovery and other pretrial proceedings to be coordinated rationally, based on well-pled allegations against each defendant group. This can only make discovery and pretrial litigation more efficient. Accordingly, the Court should sever Medical Mutual's claims into five separate actions and direct Medical Mutual to file separate complaints against each defendant group.

Dated: February 13, 2015

Respectfully submitted,

*/s/ David E. Stanley*

David E. Stanley (*pro hac vice*)
Janet H. Kwuon (*pro hac vice*)
Robert D. Phillips, Jr. (*pro hac vice*)
Margaret M. Grignon (*pro hac vice*)
**REED SMITH LLP**
355 S. Grand Avenue, Suite 2900
Los Angeles, CA 90071
Tel: (213) 457-8000
Fax: (213) 457-8080
dstanley@reedsmith.com
jkwuon@reedsmith.com
rphillips@reedsmith.com
magrignon@reedsmith.com

*Attorneys for Defendants Eli Lilly and
Company and Lilly USA, LLC*

/s/ William F. Cavanaugh, Jr.

William F. Cavanaugh, Jr. (*pro hac vice*)
Jonah M. Knobler (*pro hac vice*)
Scott C. Caplan (*pro hac vice*)
**PATTERSON BELKNAP WEBB
& TYLER LLP**
1133 Avenue of the Americas
New York, NY 10036
Tel: (212) 336-2000
Fax: (212) 336-2222
wfcavanaugh@pbwt.com
jknobler@pbwt.com
scaplan@pbwt.com

*Attorneys for Defendants AbbVie, Inc., Abbott
Laboratories, and Abbott Products, Inc.*

/s/ Andrew K. Solow

William Hoffman (*pro hac vice*)
**KAYE SCHOLER LLP**
The McPherson Building
901 Fifteenth Street, NW
Washington, DC  20005-2327
Tel: (202) 682-3550
Fax: (202) 414-0355
william.hoffman@kayescholer.com

Andrew K. Solow (*pro hac vice*)
**KAYE SCHOLER LLP**
425 Park Avenue
New York, NY  10022
Tel:  (212) 836-7740
Fax:  (212) 836-6776
andrew.solow@kayescholer.com

*Attorneys for Defendants Endo
Pharmaceuticals, Inc. and Auxilium
Pharmaceuticals, Inc.*

/s/ Robert W. Sparkes, III
James W. Matthews (*pro hac vice*)
Robert W. Sparkes, III (*pro hac vice*)
**K&L GATES LLP**
State Street Financial Center
One Lincoln Street
Boston, MA 02111
Tel: (617) 261-3100
Fax: (617) 261-3175
james.matthews@klgates.com
robert.sparkes@klgates.com

Joseph P. Thomas
**ULMER & BERNE LLP**
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Tel: (513) 698-5000
Fax: (513) 698-5001
jthomas@ulmer.com

*Attorneys for Defendants Actavis, Inc., Actavis
Pharma, Inc., Watson Pharmaceuticals, Inc.,
& Watson Laboratories, Inc.*

  /s/  Daniel L. Ring
Daniel L. Ring
Michael A. Olsen
Craig A. Woods
**MAYER BROWN LLP**
71 S. Wacker Drive
Chicago, IL 60606
Tel: 312-701-8520
Fax: 312-701-8675
dring@mayerbrown.com
molsen@mayerbrown.com
cwoods@mayerbrown.com

*Attorneys for Defendant Solvay America, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 13, 2015, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which sent notification of such filing to all

registered attorneys of record.

*/s/ David E. Stanley*
David E. Stanley
*Attorney for Eli Lilly and Company and*
*Lilly USA, LLC*