IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION | MDL No. 2545 <br><br> Master Docket Case No. 1:14-cv-01748 <br><br> Hon. Judge Matthew F. Kennelly |
| This document relates to: <br><br> MEDICAL MUTUAL OF OHIO, <br><br>         Plaintiff, <br><br> v. <br><br> ABBVIE INC., ABBOTT LABORATORIES, ABBOTT PRODUCTS, INC., SOLVAY AMERICA, INC., SOLVAY NORTH AMERICA, LLC, SOLVAY PHARMACEUTICALS SARL, SOLVAY, S.A., AUXILIUM, INC., ELI LILLY AND COMPANY, LILLY USA, INC., ACRUX LIMITED, ACTAVIS PLC, ACTAVIS, INC., ACTAVIS PHARMA, INC. WATSON PHARMACEUTICALS, INC., WATSON LABORATORIES, INC., ANDA, INC., and ENDO PHARMACEUTICALS, INC., <br><br>         Defendants. | No. 1:14-cv-08857 |

**SUPPLEMENTAL MEMORANDUM OF THE ACTAVIS DEFENDANTS
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND .....................................................................................................................3

STANDARD OF REVIEW ......................................................................................................4

ARGUMENT ...........................................................................................................................5

I.      MMO's RICO And Fraud-Based Claims Must Be Dismissed For Failure To
Satisfy The Pleading Requirement Of Rule 9(b) ...............................................................5

II.     The Complaint Fails To Allege Plausible Claims Under New Jersey's Consumer
Fraud Act or the Insurance Fraud Protection Act .............................................................10

        A.       MMO Cannot State A Plausible Claim Under The NJCFA ................................10

              1.      MMO Lacks Standing To Sue Under The NJCFA ..................................10

              2.      MMO Has Not Sufficiently Alleged Ascertainable Loss Or That The
Actavis Defendants Caused Any Such Loss ...............................................12

        B.       MMO Cannot State A Plausible Claim Under The NJIFPA ................................13

        C.       MMO's Complaint Does Not State A Claim For Violation Of The
Consumer Protection Statutes Of Any Jurisdiction ...............................................14

        D.       MMO Cannot State A Plausible Claim For Unjust Enrichment ...........................15

CONCLUSION.......................................................................................................................15

# TABLE OF AUTHORITIES

**Page**

### Federal Cases

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)........................................................................................................4

*Bank of Am., N.A. v. Knight,*
    725 F.3d 815 (7th Cir. 2013).......................................................................................6

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)........................................................................................................4

*Borsellino v. Goldman Sachs Gr. Inc.,*
    477 F.3d 502 (7th Cir. 2007).......................................................................................5

*Bracco v. Diagnostics, Inc. v. Bergen Brunswig Drug Co.,*
    226 F. Supp. 2d 557 (D.N.J. 2002)...........................................................................10

*Central Reg'l Employees Ben. Fund v. Cephalon, Inc.,*
    No. 09-3418 (MLC),
    2009 WL 3245485 (D.N.J. Oct. 7, 2009).............................................................11, 15

*Chan v. Daimler AG,*
    No. 11-5391 (JLL),
    2012 WL 5827448 (D. N.J. Nov. 9, 2012)..............................................................11

*Cooper v. Samsung Elecs. Am., Inc.,*
    374 F. App'x 250 (3d Cir. 2010).............................................................................11

*Costigan v. CitiMortgage, Inc.,*
    No. 10 Civ. 8776(SAS),
    2011 WL 3370397 (S.D.N.Y. Aug. 2, 2011).............................................................5

*District 1199P Health & Welfare Plan v. Janssen, L.P.,*
    784 F. Supp. 2d 508 (D.N.J. 2011).....................................................................passim

*Enger v. Chicago Carriage Cab Co.,*
    No. 14-cv-02117,
    2014 WL 7450434 (N.D. Ill. Dec. 29, 2014)...........................................................15

*Fidelity & Cas. Indem. Co. v. Southside Ford Truck Sales, Inc.,*
    No. 90 C 7124,
    1992 WL 208983 (N.D. Ill. Aug. 19, 1992)..............................................................6

*Government Employees Ins. Co. v. MLS Med. Gr. LLC*,
    No. 12-7281 (SRC),
    2013 WL 6384652 (D.N.J. Dec. 6, 2013)......................................................5, 13

*Green v. Green Mountain Coffee Roasters, Inc.*,
    279 F.R.D. 275 (D.N.J. 2011)................................................................12

*Indiana/Kentucky/Ohio Reg'l Counsel of Carpenters*
*Welfare Fund v. Cephalon, Inc.*,
    No. 13-7167,
    2014 WL 2115498 (E.D. Pa. May 21, 2014)............................................8

*In re Actimmune Mktg. Litig.*,
    No. C08-02376 MHP,
    2010 WL 3463491 (N.D. Cal. Sep. 1, 2010).........................................5, 14

*In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*,
    No. MDL 08-1934 PSG (AGRx),
    2009 WL 1703285 (C.D. Cal. June 17, 2009)........................................8

*In re Gerber Probiotic Sales Practices Litig.*,
    No. 12-835 (JLL),
    2014 WL 3446667 (D.N.J. July 11, 2014)...........................................13

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
    No. 2:06–cv–5774 (SRC),
    2010 WL 2346624 (D.N.J. June 9, 2010)............................................15

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
    No. 2:06-cv-5774 (SRC),
    2009 WL 2043604 (D.N.J. July 10, 2009)......................................passim

*In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*,
    No. 08-939 (DRD),
    2009 WL 2940081 (D.N.J. Sep. 10, 2009)...........................................12

*In re Yasmin & Yaz (Drospirenone) Mktg.,*
*Sales Practices & Prods. Liab. Litig.*,
    Nos. 3:09–md–02100–DRH–PMF, 3:09–cv–20071–DRH–PM,
    2010 WL 3119499 (S.D. Ill. Aug. 5, 2010)..........................................14

*Jepson, Inc. v. Makita Corp.*,
    34 F.3d 1321 (7th Cir. 1994)..............................................................5, 6

*McCauley v. City of Chicago*,
    671 F.3d 611 (7th Cir. 2011)................................................................4

*Nieman v. Nationwide Mut. Ins. Co.*,
    706 F. Supp. 2d 897 (C.D. Ill. 2010)................................................................15

*Nirmul v. BMW of N. Am., LLC*,
    No. 10-cv-5586 (SDW),
    2011 WL 5195801 (D.N.J. Oct. 31, 2011).......................................................11

*Southern Ill. Laborers' & Employers Health & Welfare Fund v. Pfizer Inc.*,
    No. 08 CV 5175 (KMW),
    2009 WL 3151807 (S.D.N.Y. Sep. 30, 2009)..............................................6, 11

*Standard Fire Ins. Co. v. MTU Detroit Diesel, Inc.*,
    No. 07-3827 (GEB),
    2009 WL 2568199 (D.N.J. Aug. 13, 2009)......................................................10

*Swanson v. Citibank, N.A.*,
    614 F.3d 400 (7th Cir. 2010)..............................................................................5

*Sypala v. Mortgage Elec. Reg. Sys., Inc.*,
    655 F. Supp. 2d 451 (D.N.J. 2009)...................................................................10

*Travelers Indem. Co. v. Cephalon*,
    32 F. Supp. 3d 538 (E.D. Pa. 2014)....................................................................7

## State Statutes

New Jersey Consumer Fraud Act,
    N.J.S.A. § 56:8-1, *et seq.*................................................................................10

New Jersey Insurance Fraud Protection Act,
    N.J.S.A. § 17:33A-1, *et seq.*.....................................................................11, 13

N.J.S.A. § 2A:14-1.................................................................................................11

## Federal Rules

Fed. R. Civ. P. 8...........................................................................................passim

Fed. R. Civ. P. 9...........................................................................................passim

Fed. R. Civ. P. 12................................................................................................4

## PRELIMINARY STATEMENT

Defendants Actavis plc, Actavis, Inc., f/k/a Watson Pharmaceuticals, Inc., Actavis Pharma, Inc., Watson Laboratories, Inc., n/k/a Actavis Laboratories UT, Inc., and Anda, Inc. (the "Actavis Defendants") submit this Supplemental Memorandum in support of the Defendants' Motion to Dismiss the Complaint filed by Plaintiff Medical Mutual of Ohio ("MMO"). As set forth in Defendants' Joint Motion to Dismiss, in which the Actavis Defendants have joined, the Complaint fails to state plausible claims for relief against any of the Defendants. MMO's claims against the Actavis Defendants are also subject to dismissal for the additional reasons below.

MMO broadly alleges that five separate defendant groups, all competitors alleged to manufacture and distribute testosterone replacement therapy ("TRT") drugs, engaged in allegedly fraudulent marketing schemes to promote their respective products for treatment of "off-label" (non-FDA approved) conditions. MMO, an insurer and third-party payor ("TPP"), claims that, as a result, it has paid the costs of TRT prescriptions written for its beneficiaries, including prescriptions for the Actavis Defendants' Androderm product, that were allegedly unnecessary, ineffective, or unsafe for the prescribed use.

Despite the sweeping allegations of industry-wide marketing schemes, MMO alleges comparatively little about the Actavis Defendants collectively and nothing specific as to the individual Actavis Defendants. Instead, the allegations directed to the Actavis Defendants are generic and lack the detail, specificity, and particularity required by the pleading standards of Rules 8(a) and 9(b). The Complaint lacks concrete allegations regarding any specific misrepresentations by (or attributable to) the Actavis Defendants, the time, place or content of any such misrepresentations, or the identity of the individuals who made any misrepresentations, and provides no detail as to what each or any Actavis Defendant did in furtherance of the alleged scheme. Moreover, the Complaint fails to identify a single (1) patient or physician who received

- 1 -

and relied on specific representations made by the Actavis Defendants, (2) representation received and relied on by MMO, its pharmacy benefit managers, or a pharmacy and therapeutics committee, or (3) prescription for Androderm that MMO reimbursed for one of its beneficiaries.

Based solely on generalized allegations, MMO asserts claims against the Actavis Defendants for: (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Compl. ¶¶ 678-691, 748-761, 836-855); (2) conspiracy to violate RICO (*id.* ¶¶ 916-928); (3) violations of the New Jersey Consumer Fraud Act ("NJCFA") (*id.* ¶¶ 993-1002); (3) violations of the consumer protection statutes of 49 states (*id.* ¶¶ 1003-1006); (4) violations of the New Jersey Insurance Fraud Protection Act ("NJIFPA") (*id.* ¶¶ 1007-1015); (5) common law fraud (*id.* ¶¶ 1035-1043); (6) negligent misrepresentation (*id.* ¶¶ 1044-1052); (7) unjust enrichment (*id.* ¶¶ 1053-1063); and (8) equitable relief (*id.* ¶¶ 1064-1071). As set forth in Defendants' Joint Memorandum, MMO's claims fail because, among other reasons, MMO has not alleged facts to support injury-in-fact or causation to establish Article III standing or RICO standing, MMO's RICO and state-law claims are time-barred, and MMO cannot bring statutory or common law claims under the laws of states other than Ohio. *See* Joint Memo. at 7-21, 24-31, 33-38.

MMO's claims against the Actavis Defendants are also subject to dismissal for the following additional reasons. First, MMO's fraud-based claims – for violations of RICO, the NJCFA, the NJIFPA, common law fraud, and negligent misrepresentation – fail to describe the alleged conduct of the Actavis Defendants with the particularity required by Rule 9(b). Second, MMO lacks statutory standing to assert a claim under the NJCFA, and it has failed to sufficiently allege an ascertainable loss caused by the Actavis Defendants. Third, MMO's NJIFPA is deficient because the Complaint fails to identify a single specific statement made by the Actavis

Defendants to MMO or one insurance claim that MMO reimbursed as a result, and, thus, does not state a plausible claim for relief under Rule 8(a).  <u>Fourth</u>, MMO has failed to allege a plausible claim for relief under any jurisdiction's consumer protection statutes.  <u>Fifth</u>, MMO has failed to allege a plausible claim for unjust enrichment because none of the alleged fraudulent conduct underlying that claim is actionable.

**BACKGROUND**[1]

MMO is an Ohio insurance company that provides individual and group health benefits. (Compl. ¶ 30.)  As an insurer, MMO reimburses medical costs, including costs related to prescription drugs, of its beneficiaries.  (*See id.*)  MMO alleges that the Actavis Defendants manufactured and/or distributed the TRT drug Androderm.  (*See id.* ¶¶ 44-48, 57, 628.)

MMO alleges that the collective Defendants engaged in similar marketing schemes to create a disorder – labeled "Andropause," "Low T," or low testosterone – and expand the diagnoses of hypogonadism.  (*Id.* ¶¶ 1-2, 4-10.)  Specifically, MMO alleges that Defendants marketed TRT drugs for off-label uses and that Defendants' TRT drugs were ineffective, unsafe, or otherwise more expensive than alternative drugs for those uses.  (*Id.* ¶¶ 17-22.)  MMO claims that these off-label marketing practices improperly: (1) convinced patients that they could benefit from TRT drugs; (2) caused physicians to write prescriptions for TRT drugs; and (3) caused MMO to reimburse claims for TRT drugs that were unnecessary, ineffective, and/or unsafe for the prescribed off-label uses and to pay for medical services for unnamed beneficiaries that may result from adverse events associated with TRT drug use.  (*Id.* ¶¶ 23-28, 610-611.)

As to the Actavis Defendants, the Complaint makes only sweeping and conclusory allegations of misconduct.  MMO baldly alleges that the Actavis Defendants formed three

---

[1]     Additional background regarding MMO's Complaint is set forth in the Defendants' Joint Memorandum, which the Actavis Defendants have joined and which they incorporate by reference herein.

enterprises to promote Androderm for off-label use, but provides almost no detail regarding these alleged schemes or the participants therein. (Compl. ¶¶ 678-691, 748-761, 836-855, 916-928.) MMO claims that the Actavis Defendants participated in an "Androderm Peer Selling Enterprise" to promote Androderm through the use of seminars, speaking events and other presentations and publications (*see id.* ¶ 685), created an "Androderm Publication Enterprise" through which they convinced physicians and researchers to publish articles promoting off-label use of Androderm (*see id.* ¶ 755), and engaged in an "Androderm DTC (Direct-to-Consumer) Enterprise" to promote off-label use of Androderm directly to consumers (*see id.* ¶ 845). MMO's allegations against the Actavis Defendants fall short of both the Rule 8(a) pleading standard and the heightened standard applicable to its fraud-based claims under Rule 9(b).

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 8(a) and 12(b)(6), a complaint must be dismissed for failure to state a claim upon which relief may be granted where it fails to set forth sufficient factual allegations to support a plausible right to recovery. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In assessing a motion to dismiss, the Court must ignore allegations that merely offer "labels and conclusions," "'a formulaic recitation of the elements of a cause of action,'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). The Court may credit only those allegations that are pled with sufficient factual content to raise a plausible, not merely a "probable," right to recovery. *Id.* Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n] – that the pleader is entitled to relief'" and must be dismissed. *Id.* at 678-79.

The Seventh Circuit "ha[s] interpreted *Twombly* and *Iqbal* to require the plaintiff to provid[e] some specific facts to support the legal claims asserted in the complaint," recognizing

that "[t]he required level of factual specificity rises with the complexity of the claim." *McCauley v. City of Chicago*, 671 F.3d 611, 616-617 (7th Cir. 2011) (brackets in original; citations and internal quotation marks omitted). "A more complex case . . . will require more detail, both to give the opposing party notice of what the case is about and to show how . . . the dots should be connected." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010).

Moreover, because MMO's claims for relief sound in fraud, those claims must be pled with particularity under Rule 9(b). *See Borsellino v. Goldman Sachs Gr. Inc.*, 477 F.3d 502, 507 (7th Cir. 2007); *In re Actimmune Mktg. Litig.*, No. C08-02376 MHP, 2010 WL 3463491, at *9 (N.D. Cal. Sep. 1, 2010) (applying Rule 9(b) to fraud-based claims alleging off-label marketing). At a minimum, Rule 9(b) "requires the plaintiff to state the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327 (7th Cir. 1994).

## ARGUMENT

### I. MMO's RICO And Fraud-Based Claims Must Be Dismissed For Failure To Satisfy The Pleading Requirement Of Rule 9(b)

MMO's statutory claims under RICO, the NJCFA, and the NJIFPA, and its common law claims for fraud and negligent misrepresentation all sound in fraud and are subject to the heightened pleading requirement of Rule 9(b). *See Jepson*, 34 F.3d at 1327; *Government Employees Ins. Co. v. MLS Med. Gr. LLC*, No. 12-7281 (SRC), 2013 WL 6384652, at *8 (D.N.J. Dec. 6, 2013) (dismissing NJIFPA claim "for failure to meet even the basic pleading requirement of Rule 8(a), much less the heightened standard applicable to fraud claims"); *Costigan v. CitiMortgage, Inc.*, No. 10 Civ. 8776(SAS), 2011 WL 3370397, at *9 (S.D.N.Y. Aug. 2, 2011) (dismissing NJCFA claim for failure to plead with particularity under Rule 9(b)); *In re Schering-*

*Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774 (SRC), 2009 WL 2043604, at *24-26, 32-33 (D.N.J. July 10, 2009) (dismissing RICO, fraud, and negligent misrepresentation claims under Rule 9(b)) [hereinafter, "*In re Schering-Plough*"].  MMO does not satisfy Rule 9(b); it relies on general, generic allegations of fraudulent marketing enterprises and pleads no concrete, particularized allegations as to the Actavis Defendants' alleged conduct.

Initially, the Complaint makes no effort to distinguish the specific alleged conduct of each of the Actavis Defendants and simply lumps all six entities together.  The Complaint, in fact, is made up largely of allegations targeted at all Defendants collectively.  This deficiency alone warrants dismissal of MMO's claims.  *See Jepson, Inc.*, 34 F.3d at 1328 (lumping distinct corporations together is insufficient to satisfy Rule 9(b)); *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("A complaint based on a theory of collective responsibility must be dismissed."); *Fidelity & Cas. Indem. Co. v. Southside Ford Truck Sales, Inc.*, 90 C 7124, 1992 WL 208983, at *3 (N.D. Ill. Aug. 19, 1992) (dismissing fraud claim because "the complaint fail[ed] to delineate which defendant is responsible for the various fraudulent acts").

Like similar TPP plaintiffs that have alleged off-label marketing based claims, MMO also fails to allege the details of a pattern of racketeering activity under RICO, based on allegations of mail and wire fraud, or other fraudulent conduct with the requisite particularity.  *See District 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 527-28 (D.N.J. 2011) (dismissing TPP's RICO and fraud claims based on alleged off-label marketing for failure to satisfy Rule 9(b)); *Southern Ill. Laborers' & Employers Health & Welfare Fund v. Pfizer Inc.*, No. 08 CV 5175 (KMW), 2009 WL 3151807, at *4 (S.D.N.Y. Sep. 30, 2009) (same); *In re Schering-Plough*, 2009 WL 2043604, at *24-26.

First, the Complaint does not allege the existence of any specific misrepresentations made by (or attributable to) the Actavis Defendants, when or where any such misrepresentations were made, the manner in which they were made, or the specific individuals who made them. The Complaint also does not identify a single specific person that allegedly received or relied on a representation traceable to the Actavis Defendants. MMO fails to name a single individual patient, yet alone a beneficiary of MMO, or any specific physician who received an alleged misrepresentation from the Actavis Defendants regarding Androderm. *See Janssen*, 784 F. Supp. 2d at 531 ("Plaintiffs do not plead that they, or any of their prescribing doctors, received a misrepresentation"); *In re Schering-Plough*, 2009 WL 2043604, at *26, 33. Similarly, MMO fails to identify any particular representations or statements that it allegedly received from the Actavis Defendants. *See In re Schering-Plough*, 2009 WL 2043604, at *26, 33 (TPP plaintiffs "plainly failed" to satisfy Rule 9(b) for RICO claims where "[t]hey never once allege that any of the Defendants communicated with any of the individual consumer or [TPP] plaintiffs").

Instead, the Complaint cites only to a few alleged statements contained on an Actavis related website (*see* Compl. ¶¶ 436, 445, 448-49, 453), and two studies that allegedly "published selective results" (*see id.* ¶ 442). Yet, MMO does not identify when those statements were made, how those statements or studies were fraudulent, whether those statements or studies were provided to or seen by MMO, one of MMO's beneficiaries, or any prescribing physician, or how those statements and studies, in particular, specifically impacted MMO or fit into the alleged fraudulent marketing scheme. These allegations fall short of Rule 9(b). *See Travelers Indem. Co. v. Cephalon*, 32 F. Supp. 3d 538, 551 (E.D. Pa. 2014) ("allegations that at some point in the last thirteen years unidentified members of the defendants' sales team made unspecified false statements or misrepresentations about [the subject drugs] to unidentified doctors somewhere in

the United States are insufficient under even a generous construction of Rule 9(b)"); *Janssen*, 784 F. Supp. 2d at 528.

Similarly, while the Complaint devotes numerous paragraphs to generically describing the alleged Peer Selling, Publication, and DTC Enterprises, it fails to allege the specific details of those enterprises. For example, MMO alleges that the enterprises were comprised of the Actavis Defendants, physicians, and medical marketing firms. (*See* Compl. ¶¶ 680, 750, 838.) But, the Complaint identifies only five physicians and one alleged marketing firm with any alleged connection to the Actavis Defendants, and provides no detail whatsoever as to any specific conduct by or the role of those physicians and that firm in the alleged enterprises. (*See id.* ¶¶ 84, 99, 436-37.) Nor does the Complaint plead with any specificity one particular seminar, continuing medical education program, publication (whether ghostwritten or not), or other medium through which the alleged Actavis enterprises allegedly disseminated false representations regarding Androderm. Instead, MMO relies on general allegations regarding unspecific information disseminated to unnamed individuals through unidentified programs, publications, and direct advertisements. And, although MMO contends that the Actavis Defendants provided benefits to "thought leaders" to promote off-label use of Androderm, it does not identify those "thought leaders," the specific conduct of such "thought leaders," or what benefits were provided, who provided them, or how the recipients acted upon receiving them. These general allegations are insufficient to support MMO's fraud-based claims. *See Indiana/Kentucky/Ohio Reg'l Counsel of Carpenters Welfare Fund v. Cephalon, Inc.*, No. 13-7167, 2014 WL 2115498, at *5 (E.D. Pa. May 21, 2014) ("it is simply insufficient to allege off-label promotion by the Defendants without describing the 'who, what, when, where and how' of any scheme to defraud"); *Janssen*, 784 F. Supp. 2d 508, 528 (D.N.J. 2011) (rejecting general

allegations of fraudulent programs and dissemination of false information through alleged thought leaders); *In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, No. MDL 08-1934 PSG (AGRx), 2009 WL 1703285, at *6 (C.D. Cal. June 17, 2009) ("Rule 9(b) requires MMOs to explain how specific information booklets, CME programs, and promotional materials that [were] provided to physicians were false or deceptive").

Second, MMO's fraud-based claims are deficient because the Complaint does not provide any detail regarding MMO's alleged injuries or describe how the Actavis Defendants caused such alleged injuries. The Complaint does not allege or identify a single specific payment made by MMO for an Androderm prescription written for one of its beneficiaries. Indeed, MMO fails to identify any specific Androderm prescription, yet alone one that was actually unnecessary, ineffective, or unsafe as to one of its beneficiaries. *See Janssen*, 784 F. Supp. 2d at 522-22 (finding no injury where plaintiffs "d[id] not identify any [beneficiary] who received an ineffective or unsafe off-label Risperdal prescription"); *In re Schering-Plough*, 2009 WL 2043604, at *13. Moreover, the Complaint lacks a single allegation that a specific physician issued a prescription as a result of or in reliance on the Actavis Defendants' alleged marketing practices. *See Janssen*, 784 F. Supp. 2d at 530 ("Plaintiffs do not plead that they, or any of their prescribing doctors, . . . relied on [Defendant's] misrepresentation in deciding to prescribe Risperdal or in deciding to place Risperdal on their formulary").

In short, MMO's allegations against the Actavis Defendants "resemble prefabricated claims lacking any detail." *See In re Schering-Plough*, 2009 WL 2043604, at *25-26. As such, MMO's fraud-based claims do not satisfy the heightened pleading requirements of Rule 9(b), and its claims under RICO, the NJCFA, the NJIFPA, common law fraud, and negligent misrepresentation should be dismissed.

## II. The Complaint Fails To Allege Plausible Claims Under New Jersey's Consumer Fraud Act Or The Insurance Fraud Protection Act

MMO cannot assert claims under the state consumer protection and insurance fraud statutes of states other than Ohio pursuant to applicable choice-of-law rules and principles of standing. *See* Joint Memo. at 33-36. Nevertheless, even assuming it could assert claims against the Actavis Defendants under the NJCFA and the NJIFPA, MMO's claims still fail.[2]

### A. MMO Cannot State A Plausible Claim Under The NJCFA

The NJCFA prohibits fraud in the sale or advertisement of merchandise. *See* N.J.S.A. § 56:8-1, *et seq.* Under the NJCFA, MMO must allege that: (1) defendants engaged in unlawful conduct; (2) it suffered an ascertainable loss; and (3) the defendants' alleged unlawful conduct caused the alleged loss. *See Sypala v. Mortgage Elec. Reg. Sys., Inc.*, 655 F. Supp. 2d 451, 457 n.15 (D.N.J. 2009). A consumer suffers an "ascertainable loss" when it receives something of a lesser value than what was promised. *Id.* at 437 (citing cases).

### 1. MMO Lacks Standing To Sue Under The NJCFA

MMO lacks standing to seek relief under the NJCFA. It is well settled that only "consumers" have standing to bring claims under the NJCFA. *See Standard Fire Ins. Co. v. MTU Detroit Diesel, Inc.*, No. 07-3827 (GEB), 2009 WL 2568199, at *5 (D.N.J. Aug. 13, 2009); *Bracco v. Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 (D.N.J. 2002). An entity such as MMO has standing as a "consumer" only if it directly uses the goods at issue. *See In re Schering-Plough*, 2009 WL 2043604, at *32.

In *In re Schering-Plough*, the court dismissed TPP plaintiffs' NJCFA claim based on allegations of off-label marketing similar to those asserted here because the TPPs did not

---

[2] For the reasons set forth in Defendants' Joint Memorandum, Plaintiff's NJCFA claim and its NJIFPA claim are time-barred by the 6-year statutes of limitations applicable to such claims. *See* Joint

purchase the prescription drugs for their own consumption; instead, the TPPs paid for the drugs for their beneficiaries or reimbursed the beneficiaries' purchases. *Id.* at *31. Thus, the TPPs did not have statutory standing because they did not consume the prescription drugs, but "essentially serve[d] as middlemen or insurers, paying all or part of the cost of a beneficiary's drugs in return for a stream of payments from the beneficiary." *Id.* at *32. Other courts have similarly held that a TPP may not bring NJCFA claims. *See Central Reg'l Employees Ben. Fund v. Cephalon, Inc.*, No. 09-3418 (MLC), 2009 WL 3245485, at *3 (D.N.J. Oct. 7, 2009) ("[b]ecause [TPPs] do not use or consume prescription medications themselves, they are not 'consumers' within the meaning of the NJCFA"); *Southern Ill. Laborers*, 2009 WL 3151807, at *9-10 ("the weight of New Jersey authority supports a finding that . . . [TPP] Plaintiff is not a consumer within the meaning of the [NJCFA] because it does not use Lipitor in a way that diminishes or destroys its utility"). Like the TPP plaintiffs in *In re Schering-Plough*, MMO is not a "consumer" because it has not alleged, nor can it allege, that it purchased Androderm for its own consumption. MMO admits that it is an insurer and that it pays for or reimburses prescription drugs purchased by or for its beneficiaries. (*See* Compl. ¶ 30.) As such, MMO lacks standing under the NJCFA.

MMO also lacks standing because the NJCFA does not apply to transactions outside of New Jersey. *See Chan v. Daimler AG*, No. 11-5391 (JLL), 2012 WL 5827448, at *10-11 (D. N.J. Nov. 9, 2012). MMO is an Ohio entity that does not allege any direct loss or injury that it has suffered in New Jersey. That MMO alleges that some of the Actavis Defendants have a principal place of business in New Jersey is not enough to support standing. *See Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 255 (3d Cir. 2010); *Nirmul v. BMW of N. Am., LLC*, No. 10-cv-5586 (SDW), 2011 WL 5195801, at *5 (D.N.J. Oct. 31, 2011).

---

Memo. at 38-39; *see also* N.J.S.A. § 2A:14-1 (6-year statute of limitations applicable to NJCFA claims); N.J.S.A. § 17:33A-7e (6-year statute of limitations for NJIFPA claims).

**2.** **MMO Has Not Sufficiently Alleged Ascertainable Loss Or That The Actavis Defendants Caused Any Such Loss**

As set forth in Defendants' Joint Memorandum, all of MMO's claims fail because MMO has not sufficiently alleged causation or a cognizable injury sufficient to support Article III standing or to state any plausible claims for relief.  *See* Joint Memo. at 7-21, 35.  MMO's NJCFA claim fails for the same reasons.

First, MMO has not sufficiently alleged an "ascertainable loss."  *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 282 (D.N.J. 2011).  Under the NJCFA, a plaintiff must plead specific facts to quantify the difference in value between the promised product and the product received.  *See id.*  Here, the Complaint fails to provide any details regarding its alleged ascertainable loss; it lacks allegations stating, or even suggesting, the amount for which it allegedly paid for off-label Androderm prescriptions or other Androderm-related medical expenses, how it calculated any alleged loss, or how the alleged reimbursement amounts were greater than what MMO would have paid absent the alleged conduct.  *See In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, No. 08-939 (DRD), 2009 WL 2940081, at *13 (D.N.J. Sep. 10, 2009) ("Regarding the ascertainable loss, the Plaintiffs fail to allege . . . how much they paid for the HD DVD Players; and how much regular DVD players cost at the time. . . .").

More fundamentally, the Complaint does not allege the existence of a single actual prescription for Androderm that it reimbursed and that was ineffective, unnecessary, or unsafe as to a specific beneficiary of MMO.  This is fatal; MMO's general allegations that it reimbursed unnamed beneficiaries who were prescribed Androderm are insufficient to state an ascertainable loss under the NJCFA.  *See Janssen*, 784 F. Supp. 2d at 521-22, 530; *In re Schering-Plough*, 2009 WL 2043604, at *31 (dismissing TPPs' NJCFA claims for failure to sufficiently allege an

ascertainable loss). MMO has alleged no more than a "hypothetical" or "illusory" loss and its

NJCFA claim should be dismissed. *See In re Gerber Probiotic Sales Practices Litig.*, No. 12-

835 (JLL), 2014 WL 3446667, at \*2-3 (D.N.J. July 11, 2014).

Second, MMO cannot demonstrate that the Actavis Defendants caused any alleged

ascertainable loss. *See* Joint Memo. at 19-22. The Complaint does not identify: (1) how, or if,

any of MMO's beneficiaries sought prescriptions for Androderm as a result of the alleged

marketing conduct of the Actavis Defendants; (2) how, or if, any prescribing physicians received

and relied on specific representations of the Actavis Defendants in prescribing Androderm to

MMO's beneficiaries; or (3) which, if any, specific prescriptions for Androderm paid for by

MMO were for off-label uses. MMO not only fails to allege sufficient fact-based allegations to

support an inference of causation, but, as other courts have held in similar cases, MMO's theory

of causation "is too speculative and attenuated to be cognizable." *Janssen*, 784 F. Supp. 2d at

530-31; *see also* Joint Memo. at 8-19, 21-22.

### B. MMO Cannot State A Plausible Claim Under The NJIFPA

MMO's NJIFPA claim is equally deficient, does not satisfy the Rule 8(a) pleading

requirements, and fails to set forth a plausible claim for relief. The NJIFPA "prohibits the

presentation of 'any written or oral statement as part of, or in support of or opposition to, a claim

for payment or other benefit pursuant to an insurance policy . . . knowing that the statement

contains false or misleading information concerning any fact or thing material to the claim.'"

*Government Employees Ins. Co.*, 2013 WL 6384652, at \*7 (quoting N.J.S.A. § 17:33A-4a(1)).

The Complaint is entirely devoid of facts to show that MMO reimbursed any prescription

or claim based on a specific false or misleading statement made directly to it by any one of the

Actavis Defendants. *See id.* at \*8. The Complaint does not allege what, if any, false or

misleading information was presented by the Actavis Defendants to MMO, what, if any, false or

misleading information it relied upon or caused it to pay a particular prescription for Androderm, or any other details regarding specific Androderm-related insurance claims. *See id.* (dismissing NJIFPA claim because complaint "contains no claim-specific allegation of fraud" and "presents no claim-by-claim analysis" as to specific allegedly fraudulent statements). Accordingly, MMO has not pled factual allegations to support a plausible claim for relief under the NJIFPA, which fails to satisfy both Rule 8(a) and Rule 9(b). *See id.*

### C. MMO's Complaint Does Not State A Claim For Violation Of The Consumer Protection Statutes Of Any Jurisdiction

MMO purports to assert claims under the consumer protection statutes of 49 states, the District of Columbia, and Puerto Rico. *See* Compl. ¶¶ 1003-1006.[3] It cannot do so. First, the application of choice-of-law principles mandates that Ohio law applies to all of MMO's state law claims and, therefore, the state statutory claims for states other than Ohio should be dismissed. *See* Joint Memo. at 33-35. And, MMO's claims under the Ohio Consumer Sales Practices Act fail as a matter of law. *See id.* at 35-40.

Second, MMO, an Ohio entity, lacks standing to assert claims under state statutes and common law other than Ohio law. *See In re Actimmune Mktg. Litig.*, No. C08-02376 MHP, 2009 WL 3740648, at *17 (N.D. Cal. Nov. 6, 2009) (dismissing state statutory claims for all states lacking a representative plaintiff that had standing to assert claims thereunder); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, Nos. 3:09–md–02100–DRH–PMF, 3:09–cv–20071–DRH–PM, 2010 WL 3119499, at *12 n.12 (S.D. Ill. Aug. 5, 2010) (considering common law claims under the law of the state in which Plaintiffs resided).

---

[3]    Although Plaintiff purports to assert claims under the consumer protection statute of every state, it does not allege violations of the consumer protection statutes of Alabama, Georgia, Maine, Massachusetts, Mississippi, Texas, and West Virginia against any Defendant.

Third, MMO's mere recitation of state statutes is insufficient because such a "'catch-all' listing of statutes does not meet the most basic pleading requirements." *Janssen*, 784 F. Supp. 2d at 531; *Nieman v. Nationwide Mut. Ins. Co.*, 706 F. Supp. 2d 897, 907 (C.D. Ill. 2010).

### D. MMO Cannot State A Plausible Claim For Unjust Enrichment

MMO's unjust enrichment claim also fails because it cannot establish that the Actavis Defendants received any unjust benefit, as none of the underlying alleged fraudulent conduct is actionable. *See Enger v. Chicago Carriage Cab Co.*, No. 14-cv-02117, 2014 WL 7450434, at *4 (N.D. Ill. Dec. 29, 2014) (dismissing unjust enrichment claim based on alleged conduct underlying other equally futile claim); *Central Reg'l Employees*, 2010 WL 1257790, at *5 (same). "Having failed to allege a violation of [its] rights under any cognizable theory of relief, . . . Plaintiff[] do[es] not establish how it would work an injustice for [the Actavis Defendants] to retain the money [allegedly] paid by . . . Plaintiff[] for the Subject Drugs." *In re Schering Plough*, No. 2:06–cv–5774 (SRC), 2010 WL 2346624, at *12 (D.N.J. June 9, 2010).

### CONCLUSION

For the foregoing reasons, as well as those set forth in Defendants' Joint Memorandum in Support of their Motion to Dismiss, the Actavis Defendants respectfully request that the Court: (1) dismiss with prejudice all claims asserted against the Actavis Defendants in the Complaint; and (2) grant such other relief as the Court deems just and necessary.

Dated:    March 16, 2015                    Respectfully submitted,


By:    _/s/ James W. Matthews_____
          James W. Matthews (*pro hac vice*)
          Robert W. Sparkes, III (*pro hac vice*)
          K&L GATES LLP
          State Street Financial Center
          One Lincoln Street
          Boston, MA 02111
          Tel:  (617) 261-3100
          Fax:  (617) 261-3175
          E-mail: james.matthews@klgates.com
          E-mail: robert.sparkes@klgates.com

          *Counsel for Defendants Actavis plc, Actavis, Inc.,*
          *Actavis Pharma Inc., Watson Pharmaceuticals,*
          *Inc., Watson Laboratories, Inc. and Anda, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing was filed through the Electronic Court Filing system on March 16, 2015, and a copy thereof will be sent electronically to the registered recipients and counsel of record as identified on the Notice of Electronic Filing.


*/s/ James W. Matthews*
James W. Matthews