UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION | ) Case No. 14 C 1748 ) ) MDL No. 2545 ) |
| This document relates to all cases | ) Judge Matthew F. Kennelly |

**REPLY IN SUPPORT OF SUBMISSION OF ABBVIE INC. AND ABBOTT LABORATORIES IN ADVANCE OF MAY 6, 2015
<u>CASE MANAGEMENT CONFERENCE</u>**

The parties' submissions, the May 6, 2015 Interim Case Management Conference ("CMC"), and the events of last week have brought into focus two issues for this Court's attention now, and have surfaced other potential issues that will require additional discussion in the coming weeks.

I. **The Court Should Modify CMO 14 To Allow The Parties To Submit Proposals For A Bellwether Selection Process On Or Before August 10, 2015.**

AbbVie's proposed 30-day extension of this interim deadline in CMO 14 does not disturb the October 31, 2015 date for selection of initial bellwether Plaintiffs under Case Management Order 14 ("CMO 14"). In their May 11 Opposition, Plaintiffs oppose the proposed modification, even after Plaintiffs' counsel, at the CMC, seemed amenable to a modest extension to the interim schedule. *Compare* Opposition at 9-11 *with* Transcript of May 6, 2015 Hearing, at 38 ("I don't have a problem giving Mr. Bernick 20, 30 days in anything. I'm never going to be the guy that says 'no' just for silly reasons.") ("May 6 Tr."). Plaintiffs took more time than AbbVie believes was necessary to produce PFSs and medical records, waiting until the last minute and then producing documents for hundreds of cases in the last few days before the May 8 deadline. AbbVie simply needs more time to analyze this newly obtained information.

Plaintiffs' stated reasons for opposing the modification suggest the parties do not agree on the work required to prepare a comprehensive and informed proposal for selecting truly representative bellwethers. Plaintiffs believe the July submissions need to address only "technical procedural matters," not "substantive issues;" indeed, Plaintiffs suggest a proposed bellwether CMO "could be prepared within the next few days." Opposition at 10-11.

It would be simple to install nothing more than a mechanical process whereby the parties select their "best" cases, strike a handful, and then proceed with case-specific discovery. But

1

that is not the robust selection plan the Court has ordered the parties to submit. To the contrary, we must "identify[] the process and parameters for selecting AbbVie-only bellwether plaintiffs," to "maximize the likelihood that the bellwether selection and trial process will be both representative and productive." CMO 14 at 1-2. To prepare an informed, productive proposal that is sensitive enough to capture the numerous groups and sub-groups comprising the pool, AbbVie must be afforded the opportunity to review the relevant PFSs and medical records produced by Plaintiffs. This will enable AbbVie to craft a proposal that identifies groups of cases by common elements or circumstances, all with an eye toward helping the Court to target groups of cases that should be tested for trial viability, and groups of issues that may be resolved efficiently for some or all cases. When trying to understand what the Plaintiff pool looks like, AbbVie necessarily operates at an information deficit; AbbVie has not spoken to Plaintiffs or their doctors, and AbbVie was not involved in the process whereby Plaintiffs' counsel identified and collected the medical records that purportedly support Plaintiffs' claims.

There is consensus that we should be identifying bellwether cases that are representative of the potential trial pool as a whole, rather than "best" and "worst" cases. *See, e.g.*, CMO 14 at 1; May 6 Tr. at 15 (Court and parties' counsel agreeing there will not be a "representative sample" if the parties select "good cases for both sides"); *see also Standards and Best Practices for Large and Mass-Tort MDLs* at 21-22, 27 (2014) ("*Standards and Best Practices*");[1] MANUAL FOR COMPLEX LITIGATION (FOURTH) § 22.315 (2004). Allowing AbbVie sufficient time to compile and analyze the information from the PFSs and produced medical records will further that goal, and Plaintiffs have offered no good reason to reject the proposed modification.

---

[1] *Available at* http://law.duke.edu/sites/default/files/centers/judicialstudies/standards_and_best_ practices_for_large_and_mass-tort_mdls.pdf.

2

## II. Only Plaintiffs Who Produce Fact Sheets And Medical Records By May 29 Should Be Eligible For Selection As Potential Bellwethers.

There is no dispute that there should be a "cut-off" date on which the bellwether pool becomes fixed, and only Plaintiffs who have produced PFSs and medical records by that date should be eligible for inclusion in the pool. The only dispute is whether that cut-off should be at the end of May or the end of July. In its submission and at the May 6 CMC, AbbVie suggested May 29 as a reasonable cut-off; this allows sufficient time for thorough analysis of the documents received by that date, but also provides the Court with an ample pool of 600+ cases from which to select bellwethers. Plaintiffs' counsel objected to a May 29 cut-off, but observed at the CMC that the parties could "probably compromise somewhere between [May 29th and July 11th]." May 6 Tr. at 31-32. Yet in their Opposition, Plaintiffs backtrack from that position, and for the first time propose a cut-off date of July 24, 2015. Opposition at 8 n.6. They offer no explanation for their changed position, and are now urging a cut-off that falls 13 days *after* the current date for the parties' bellwether process submissions.

Plaintiffs offer no legitimate justification for such a late cut-off. Although they argue their proposal makes the pool larger, they offer nothing more than speculation to suggest the 812 cases filed to date are fundamentally different from the unidentified, hypothetical cases yet to be filed. Nor do Plaintiffs suggest the litigation is poised to increase exponentially in size, such that 600+ cases would no longer represent a sufficient percentage of the litigation as a whole. Although Plaintiffs suggest it would be unfair to impose an early cut-off, Opposition at 11-12, that argument rings hollow, for Plaintiffs have been on notice for months that those Plaintiffs who wish to be eligible for bellwether selection should file cases and produce PFSs in accordance with the Court's Orders.

Setting a cut-off date weeks or months from now thus does not further the goal of ensuring a representative group of bellwethers. On the other hand, postponing the cut-off date until June or July invites Plaintiffs to file an avalanche of new cases at the end of that period, and AbbVie will be analyzing a moving target. History has already shown that despite the best intentions of the PEC, AbbVie receives the vast majority of PFSs, authorizations, and medical records only when a deadline looms. Just last week, 237 Plaintiffs produced PFSs in the four days between AbbVie's submission and the May 8 deadline. This represents 42.63% of the total number of PFSs due by that date. By contrast, since last Friday AbbVie has only received two additional PFSs. Of the 205 AbbVie-only cases that have been filed since March 3, 2015, AbbVie has received PFSs in only 11 to date.

If the Court adopts Plaintiffs' proposal, we are likely to see history repeating itself, with hundreds of Complaints filed in the hours leading up to July 17, and hundreds of hastily-assembled and incomplete PFSs produced seven days later. Then, at a time when the parties should be focusing on the bellwether selection process, they instead will be forced to divert resources to analyze, address, and potentially litigate the inevitable deficiencies in the last group of eligible Plaintiffs.

Moreover, the real burden will be felt primarily by AbbVie, and the burden will only increase throughout the summer. For every week the pool remains open, Plaintiffs will be free to file more cases that add only incrementally to the composition of the pool, which then requires AbbVie to review the produced files, follow up with individual Plaintiffs' attorneys regarding deficiencies, potentially litigate those issues, and, if Plaintiffs have their way, collect comprehensive medical records in all the pool cases.

Thus, an early cut-off date will further the goals of this MDL. It will allow AbbVie the opportunity to understand the size and characteristics of the pool, and make informed recommendations about both the bellwether selection process and the actual bellwether cases to be litigated. It will fix the target sufficiently in advance so that the bellwether process will be meaningful, productive, and representative. And it will prevent any attempts to gain an advantage through ambush or "gaming" the system, by ensuring both parties are operating in a closed, well-defined universe of potential trial cases. AbbVie therefore respectfully asks the Court to set a deadline for the closing of the bellwether trial pool for May 29, 2015, or as soon as practicable thereafter.

### III. Although The Court Need Not Address The Issue Now, It Would Be Wasteful To Collect Complete Medical Records in 600+ Cases Prior To Identification Of The Bellwether Cases.

Although the parties agree the issue does not require the Court's immediate attention, AbbVie and Plaintiffs disagree as to the most efficient path going forward. AbbVie believes that the parties can select representative bellwether cases by analyzing the PFSs and records that Plaintiffs have produced, without the need to also collect and analyze more comprehensive medical records in the hundreds of cases that have been filed to date. Indeed, Plaintiffs have conceded their approach is to collect targeted medical records that will support their claims (presumably the records they have already produced with their PFSs). May 6 Tr. at 12. Thus, Plaintiffs presumably have all the information they need to make informed recommendations about bellwethers.

AbbVie's proposal levels the playing field, and prevents a situation where AbbVie must either collect and review complete medical records in hundreds of cases in a four-month period, or forego that process and risk that Plaintiffs, armed with superior information because of their

access to Plaintiffs and their doctors, will opportunistically target certain cases for medical record collection and bellwether treatment, thereby skewing the process.

Plaintiffs say we need to get the discovery process moving, but the discovery that is truly meaningful will occur in the 32 cases selected as bellwethers. That should be the parties' focus. Plaintiffs express concern that delaying medical record collection will cause the overall schedule to slip, but the reality is that collecting and reviewing medical records for every pool case will take all summer and fall—a problem that is exacerbated the longer the pool remains open. And requiring full medical record collection in hundreds of cases that will not be subject to discovery for years, if ever, is a significant cost, burden, and wasteful distraction. AbbVie is willing to continue exploring potential solutions that avoid this waste while keeping the bellwether schedule intact.

Dated: May 13, 2015                                         Respectfully submitted,

By:     */s / David M. Bernick*
        David M. Bernick
        DECHERT LLP
        1095 Avenue of the Americas
        New York, NY 10036-6797
        Tel: (212) 698-3500
        Fax: (212) 698-3599
        david.bernick@dechert.com

        Hope S. Freiwald
        DECHERT LLP
        2929 Arch St., Cira Centre
        Philadelphia, PA 19104-2808
        Tel: (312) 646-5827
        Fax: (312) 698-5858
        hope.freiwald@dechert.com

        ***Attorneys for AbbVie Inc. and
        Abbott Laboratories***

**CERTIFICATE OF SERVICE**

I, Christopher R. Boisvert, hereby certify that on May 13, 2015, the foregoing document was filed via the Court's CM/ECF system, which will automatically serve and send email notification of such filing to all registered attorneys of record.

*/s/ Christopher R. Boisvert*