# EXHIBIT 14

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ANDREW CORZO, SIA HENRY, MICHAEL MAERLANDER, ALEXANDER LEO-GUERRA, BRANDON PIYEVSKY, BENJAMIN SHUMATE, BRITTANY TATIANA WEAVER, and CAMERON WILLIAMS, individually and on behalf of all others similarly situated,

*Plaintiffs*,

v.

BROWN UNIVERSITY, CALIFORNIA INSTITUTE OF TECHNOLOGY, UNIVERSITY OF CHICAGO, THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, CORNELL UNIVERSITY, TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, GEORGETOWN UNIVERSITY, MASSACHUSETTS INSTITUTE OF TECHNOLOGY, NORTHWESTERN UNIVERSITY, UNIVERSITY OF NOTRE DAME DU LAC, THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, WILLIAM MARSH RICE UNIVERSITY, VANDERBILT UNIVERSITY, and YALE UNIVERSITY,

*Defendants*.

Case No. 1:22-cv-00125

*Class Action*

**EXPERT REPORT OF GEORGE BULMAN, PH.D.**

May 14, 2024

**This Report references material designated by Defendants as Confidential or AEO under the Second Amended Confidentiality Order (ECF No. 576).**

top 25 national universities for undergraduate admissions in national surveys such as *U.S. News & World Report*. Compl. ¶ 244.

8. Counsel for Plaintiffs and the proposed Class have asked me to address the following:

a. Whether Defendants experienced substantial investment returns and endowment growth during the Class Period.

b. Whether statistical analyses of Defendants' endowment investment returns are consistent with the Overarching Agreement, and with Defendant's participation in it, and inconsistent with competition and unilateral conduct.

c. Whether and the extent to which, during the Class Period, each Defendant could have spent more of its endowment earnings on institutional aid than it did while still increasing its endowment in inflation-adjusted dollars.

## II. Summary of Conclusions

9. My primary findings are as follows:

a. **Defendants experienced substantial investment returns and endowment growth.** On average, Defendants' inflation-adjusted endowments more than doubled between 1991 and 2003 (122% real growth), and more than doubled again between 2003 and 2022 (144% real growth). By 2020, 14 of the 17 Defendants had endowments of more than $1 million per undergraduate student. Defendants' endowments grew largely because of substantial average cumulative investment returns: 322% between 2003 and 2020 and 479% between 2003 and 2022. During this period of endowment growth, Defendants also realized inflation-adjusted increases in revenue collected per student.

b. **My statistical analysis shows that Defendants spent less on institutional aid out of their "excess returns" on their endowment investments after the Challenged Conduct**

**began, a result that is consistent with the Overarching Agreement and Defendants' participation in it.** My regression analysis measures whether and to what extent institutions changed their use of endowment returns to increase institutional aid and reduce net and effective institutional prices after the introduction of the Challenged Conduct. The fact that institutions reduced the allocation of endowment returns to institutional aid relative to the years before the Challenged Conduct to a statistically significant degree indicates that when Defendants were not engaging in the Challenged Conduct, and thus setting effective institutional prices unilaterally in a more competitive fashion, Defendants charged members of the Class lower effective institutional prices. The regression analysis is thus consistent with Plaintiffs' allegations that Defendants were not competing in an unfettered way for students on the basis of price or setting those prices unilaterally when they were members of the 568 Group.

c. **All Defendants could have substantially increased their institutional aid during the Class Period while increasing the purchasing power of their endowments.** If each Defendant increased by 10-20% its annual institutional aid during the Class Period, each Defendant would still have increased its endowment's purchasing power (using either the higher-education price index or the consumer price index to measure inflation). Had Defendants not charged any tuition for each and every institutional aid recipient during the post-2003 period covering years of the Challenged Conduct, Defendants' endowments would have grown by 112%—that is, more than doubled. Defendants' endowments also would continue to grow substantially ten years into the future, through 2032, had they thus been 10-20% more generous.