UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION | **Case No. 1:14-CV-01748**<br>**MDL 2545**<br><br>**JUDGE MATTHEW F. KENNELLY** |

**SUBMISSION OF ABBVIE INC. AND ABBOTT LABORATORIES REGARDING
PRODUCTION OF CUSTODIAL FILES AND DEPOSITION COORDINATION**

Over the next several months, Plaintiffs in this MDL have the opportunity to take depositions of up to 43 AbbVie witnesses and obtain the custodial files of those individuals. To complete this discovery efficiently and in the time allowed by the Court's schedule, Defendants AbbVie Inc. and Abbott Laboratories (collectively "AbbVie")[1] have proposed that Plaintiffs should identify a limited number of key individuals, AbbVie should produce their custodial files, and Plaintiffs should take an initial round of depositions. Informed by that discovery, Plaintiffs can identify additional witnesses, get custodial files and take additional depositions, and repeat the process until Plaintiffs reach the 43-witness limit ordered by this Court in CMO 21.[2]

Plaintiffs have rejected this reasonable proposal and have requested files from 79 AbbVie custodians to determine which 43 witnesses they want to depose (and with no suggestion that additional custodial files will not be requested). There are three problems with Plaintiffs' position.

First, Plaintiffs already have more than enough information to choose witnesses for custodial file production and depositions. Plaintiffs have AbbVie's initial disclosures, which identified 23 potential witnesses with knowledge of the core issues in the litigation. Plaintiffs

---

[1] AbbVie was established in January 2013 as an independent, publicly traded company from the innovative pharmaceutical business of codefendant Abbott Laboratories, which no longer sells AndroGel in the United States.

[2] AbbVie reserves the right to object to Plaintiffs' request for any particular custodial file.

have millions of pages of documents from those 23 individuals' custodial files,[3] and approximately a million pages of AbbVie documents with no custodian (the "non-custodial" files). Plaintiffs also have organizational charts, related Rule 30(b)(6) deposition testimony, and interrogatory responses identifying an additional 12 witnesses with potentially relevant information. Indeed, the parties have already scheduled the first deposition, and AbbVie is producing that witness's custodial file.

Second, Plaintiffs' proposal is overly burdensome, impractical, and inefficient. Because Plaintiffs are only entitled to depose up to 43 AbbVie custodians, the burden/benefit calculus tilts in AbbVie's favor when Plaintiffs request the files for any custodian beyond the 43 to be deposed. Plaintiffs cannot demonstrate a need for the files of 36 custodians who will not be deposed in this litigation, or for any additional requests to come, and there is no justifiable reason to impose this discovery burden and expense on AbbVie when the potential returns are so minimal.

Finally, the delay caused by Plaintiffs' position has already impacted the scheduling and coordination of depositions. The MDL Plaintiffs and Plaintiffs with cases pending against AbbVie in other jurisdictions—most notably Cook County—have either been unable or unwilling to coordinate to create an agreed upon list of AbbVie deponents. As a result, Cook County Plaintiffs have identified witnesses for deposition, and MDL Plaintiffs have taken the position that those depositions should proceed without prejudice to MDL Plaintiffs' right to re-depose the witnesses. This is inefficient and unduly burdensome to AbbVie and the witnesses.

---

[3] AbbVie initially produced these 23 custodians' files in the Cook County litigation pursuant to search terms agreed to in those cases. AbbVie also produced these documents to the MDL Plaintiffs, and the productions made to date do not count as MDL custodial file productions. If MDL Plaintiffs requested "MDL files" for these same witnesses, as they have for witness Pablo Hernandez, AbbVie would produce these custodians' files using the MDL search terms. Alternatively, MDL Plaintiffs could determine that the Cook County production is sufficient.

MDL Plaintiffs should have to choose. They can participate in a non-MDL deposition that has been properly cross-noticed, and the deposition will count against their 43-witness limit. Or Plaintiffs can decline to participate, but they cannot later seek a second deposition of the witness in the MDL proceedings.

## ARGUMENT

### I. The Court Should Modify CMO 13 To Require AbbVie To Produce Custodial Files Only For The 43 AbbVie Witnesses Plaintiffs Wish To Depose.

Plaintiffs have already tried, and failed, to get unfettered discovery of AbbVie witnesses. *See* PSC Motion to Adopt PSC Position re Deposition Protocol, at 2 ("[T]he PSC Should Face no Presumptive Limit on the Number of Depositions.") The Court rejected Plaintiffs' request. Under CMO 21, Plaintiffs are entitled to take depositions of 43 AbbVie witnesses. CMO 21 at II.B. This cap applies to fact witnesses and corporate representatives, and Plaintiffs may only get additional depositions with AbbVie's agreement or if otherwise ordered by this Court. *Id.* at III.B.-C.

Now, Plaintiffs seek to end-run this Order by seeking documents from an additional 36 custodians (with no limit in sight). But there is no reasonable justification for such an overreaching request. Plaintiffs already have more than enough information to narrow their list of 79 custodians to the 43 witnesses who may be deposed. Requiring AbbVie to produce 79 custodial files (or more) imposes an undue burden and expense, and the benefits are minimal. Plaintiffs have already received hundreds of thousands of documents from the files of 23 AbbVie witnesses, an additional million pages of "non-custodial" documents with non-custodial productions continuing on a bi-weekly basis, and have or will receive custodial files for an additional 43 witnesses. It is highly likely that collecting, reviewing, and producing the files of an additional 36 custodians (or more)—who will never sit for deposition—will uncover

information that is, at best, marginally relevant to Plaintiffs' claims. Conversely, if AbbVie were required to produce files for these 36 non-deponent custodians (and possibly more), it would divert resources needed to produce additional non-custodial files and prepare for the AbbVie witnesses' depositions, and would delay the entire deposition schedule by months since it appears to be the Plaintiffs' position that these custodial files must be produced prior to any depositions.

**A. Plaintiffs Have Enough Information To Identify An Initial Group Of Witnesses For Custodial File Production And Depositions, And The Discovery Obtained From This Initial Group Should Inform Plaintiffs' Discovery Plan Going Forward.**

Production of custodial files should be logically sequenced and take place on a rolling basis, in conjunction with rolling depositions. AbbVie has proposed that production proceed in this way, which allows Plaintiffs the opportunity to progressively tailor their requests based on information they learn during discovery. This is far more efficient than spending the next several months collecting, reviewing, and producing custodial files for individuals who will never be witnesses in this litigation.

Plaintiffs cannot credibly argue that they are unprepared to select an initial group of custodians for file collection and depositions. Plaintiffs already have:

1. AbbVie's initial disclosures, which identified 23 witnesses with potentially relevant information to the claims and defenses in this litigation;

2. AbbVie's interrogatory responses, which identified an additional 12 witnesses with potentially relevant information;

3. The custodial files for the 23 witnesses identified in the initial disclosures— consisting of 61,989 documents totaling 5,186,740 pages—which AbbVie produced to Plaintiffs in this case using the Cook County litigation search terms.

   This includes the custodial file for Pablo Hernandez (the first AbbVie fact witness scheduled for deposition by the Cook County Plaintiffs), which AbbVie is in the process of supplementing using the agreed upon MDL search terms;

4. Approximately a million pages of "non-custodial" documents;

4

5.      Dozens of organizational charts; and

6.      Two Rule 30(b)(6) depositions of AbbVie corporate representatives, which included testimony about AbbVie's corporate structure and the organizational charts.

Plaintiffs already have an enormous amount of information from AbbVie; certainly enough to identify an initial group of 5, 10, or 15 key witnesses Plaintiffs want to depose first.[4] If Plaintiffs thereafter identify additional custodians they want to depose, AbbVie can continue producing documents and witnesses on a rolling basis.

### B.  It Would Be Unduly Burdensome And Inefficient To Require AbbVie To Produce Files For Custodians Who Will Not Be Deposed.

The Federal Rules of Civil Procedure give courts authority to limit discovery to lessen burden, control litigation costs, and promote efficiency.  *See* Fed. R. Civ. P. 1 (The Rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding"); *see also* Fed. R. Civ. P. 26(b)(2)(C)(1), (2) (requiring consideration of whether "the discovery sought is unreasonably cumulative or duplicative … [or] the burden of the discovery outweighs its utility").  Discovery is not "an invitation to the proverbial fishing expedition."  *In re FedEx Ground Package Sys.*, 2007 WL 79312, *1 (N.D. Ind. Jan. 5, 2007).

Courts routinely impose limitations on custodial file productions, to reduce burden and cost, and to promote efficiency.  *See, e.g.*, *In re Effexor (Venlafaxine Hydrochloride) Products Liability Litigation*, MDL No. 2458, Case Management Order No. 11 (E.D. Pa. June 11, 2014) ("[T]he parties will meet and confer about a … maximum limit of custodial files to be produced

---

[4] Indeed, in November 2014, Plaintiffs initially requested the production of files for 11 custodians (10 of whom were among the 23 witnesses disclosed by AbbVie).  Plaintiffs tabled that request, and have now taken the extreme position that they will not identify witnesses for deposition until AbbVie produces the custodial files requested.  If Plaintiffs want to begin with those 11 witnesses, AbbVie would be amenable to that compromise.

and depositions to be taken."); *Default Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI")*, U.S. Dist. Ct. D. Del. ¶1(b), ("Parties are expected to . . . [identify] appropriate limits to discovery, including limits on custodians[.]")[5]; *see also Principles Relating to the Discovery of Electronically Stored Information,* 7th Cir. Elec. Discovery Comm. 1.02 (Aug. 1, 2010), ("The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.")[6]; Rothstein, Barbara J. et al., *Managing Discovery of Electronic Information: A Pocket Guide for Judges, Second Edition*, Fed. Jud. Ctr. 15 (2012), ("The judge should encourage the lawyers to **stage the discovery** by first searching for the ESI associated with the **most critical or key players**, examining the results of that search, and **using those results to refine subsequent searches**.")[7] (emphasis added).

Here, Plaintiffs seek to impose the unreasonable burden and cost of producing dozens of custodial files (and possibly more) for individuals who will never serve as witnesses. Compounding the problem, Plaintiffs are unwilling to engage in a meaningful meet and confer to sequence the production of custodial files in a way that is efficient and will get AbbVie employee depositions under way in coordination with state Plaintiffs. Plaintiffs' most recent proposal calls for AbbVie to produce 33 custodial files in 35 days, 24 additional custodial files within 70 days, and another 21 custodial files within 90 days. Even more troubling, Plaintiffs have suggested they will request the files of even more custodians in the future.

The Cook County Plaintiffs have requested the deposition of Pablo Hernandez as the first AbbVie fact witness for deposition. The MDL Plaintiffs have stated their desire to participate in

---

[5] *Available at* http://www.ded.uscourts.gov/sites/default/files/pages/Electronic%20Discovery%20Default%20Standard.pdf

[6] *Available at* http://www.discoverypilot.com/sites/default/files/Principles8_10.pdf

[7] *Available at* http://www.fjc.gov/public/pdf.nsf/lookup/eldscpkt2d_eb.pdf/$file/eldscpkt2d_eb.pdf

the deposition and therefore have requested the production of his file in accordance with the MDL search terms. It has taken roughly five weeks to collect, review, and produce the MDL custodial file for Pablo Hernandez. His file—consisting of approximately 155,000 documents—had to be gathered, processed, and then reviewed for responsiveness, privilege, and confidentiality.[8] If the Court accepts Plaintiffs' proposal and requires the production of an additional 78 custodial files (and possibly more), it will take months to accomplish, even with AbbVie devoting all of its attention to this task. It will be impossible to comply with CMO 13's presumption that custodial files be produced within 45 days of the request. *See* CMO 13, at III.B.3. It will also impose significant costs on AbbVie, and it will detract from AbbVie's ability to get other work done in this litigation, such as producing non-custodial files, preparing for and defending depositions, addressing Plaintiffs' requests for information contained in the Defense Fact Sheets ("DFS") (which is the subject of a separate motion), and preparing for the bellwether selection in the fall. If the parties wait until the fall or winter to begin deposing AbbVie witnesses in earnest, it will be impossible for the parties to do the other work required to prepare for dispositive motion practice and potential bellwether trials. Given that Plaintiffs have already requested, and continue to request massive amounts of information from AbbVie, it will be very difficult to meet this Court's schedule as it stands. Plaintiffs have made no good-faith effort to limit the custodial files they seek. They have requested the files of 79 custodians, to be produced in three tiers in 90 days, and have said that they may request additional files in the future.

---

[8] It is easy for Plaintiffs, once they have the produced custodial file, to run electronic searches across the documents to locate relevant information. The burden on AbbVie, on the other hand, is much greater. AbbVie has to get the files, ensure they are processed in the electronic form agreed to by the parties, and then, using the search terms that apply in the MDL litigation, identify potentially responsive documents from that larger collection. Then, AbbVie has to review the potentially relevant documents page-by-page for responsiveness, privilege, and confidentiality.

Plaintiffs have refused AbbVie's repeated requests to identify a smaller set of key witnesses so that the custodial file productions are reasonably limited and rationally sequenced to get at the key documents and witnesses as quickly as possible. Plaintiffs' blunderbuss approach to discovery will ensure delay and waste, and impose undue burden and cost on AbbVie.

These burdens and efficiency concerns greatly outweigh the at best minimal benefits of requiring AbbVie to double its custodial file production (with no limit in sight). Plaintiffs can state no legitimate need for these additional 36 files (let alone additional files as Plaintiffs have already suggested), particularly where they have not taken fact depositions and have not made an effort to meaningfully limit their requests to those custodians who will be deposed. If Plaintiffs are concerned that they may "miss" a potential witness unless they have access to all of these custodians' files, that concern is better addressed by proceeding initially with discovery of a limited number of core custodians, which will afford Plaintiffs the opportunity to learn from those efforts and select additional witnesses who will be more likely to have relevant information. It is premature at this stage for Plaintiffs to take the extreme position that they "need" documents from 79 custodial files, before they have begun taking fact depositions. By allowing Plaintiffs to refine their deponent and custodian selections as the record evolves, this Court will not waste precious time now waiting for the parties to collect, process, and review files from irrelevant custodians.

Accordingly, AbbVie requests this Court to modify Paragraph III.B.3 of CMO 13 to add the following language:

> Plaintiffs may not receive more than 43 custodial files from AbbVie, absent consent or by leave of the Court. Depositions of custodians shall occur on a rolling basis within a reasonable time after their custodial files are produced.

AbbVie should not be asked to waste time and expense gathering, reviewing, and producing custodial files for at least twice as many witnesses as Plaintiffs are entitled to depose. Consistent with the goals of this MDL, this Court should require Plaintiffs to reasonably tailor their discovery to the custodial files that are relevant—i.e., the witnesses who will be deposed—so AbbVie can produce the files in an organized and timely manner.

## II. This Court Should Modify CMO 21 To Clarify That Previously Deposed AbbVie Witnesses May Not Be Deposed A Second Time In The MDL.

At the same time MDL Plaintiffs refuse to compromise on custodial files or identify additional witnesses for deposition, Plaintiffs' counsel in the Cook County litigation—including counsel who are also in this MDL—have requested the depositions of AbbVie witnesses. Coordinating across multiple jurisdictions has become necessary and routine in modern mass torts, and it is no different here. As the Court has recognized, the "goal is to engage in a cooperative effort to coordinate, to the extent practicable, parallel and overlapping proceedings in the federal and state cases, in order to reduce costs and avoid unnecessary duplication of effort." CMO 17 at 1.

To further that goal, Plaintiffs' counsel should coordinate amongst themselves and reach consensus on the depositions they want to take in these litigations. If they are unable to do so, however, AbbVie and its witnesses should not suffer the burden, expense, and inconvenience of duplicative discovery. AbbVie has proposed a solution that avoids this risk while preserving Plaintiffs' access to the discovery they request. Simply put, AbbVie proposes an "opt-in" system whenever a company witness is scheduled for deposition in another jurisdiction. AbbVie will cross-notice the deposition for the MDL as well as other state jurisdictions. Plaintiffs can then elect whether they want to attend and participate or not. Should Plaintiffs elect to participate, the deposition counts towards the 43 AbbVie witness depositions permitted in the MDL by CMO 21.

Should Plaintiffs decline, they will be precluded from taking the deposition of that witness in the MDL proceedings. Plaintiffs will still have access to the deposition transcript and video (subject to any protective orders), and will receive the documents produced from the witness's custodial file.[9]

AbbVie's proposal allows fair and comprehensive discovery that complies with this Court's schedule and expectations for coordination with state cases, and prevents duplicative second depositions. The proposal avoids the inefficiency and burden of multiple depositions, and respects the time and other commitments of the deponents. AbbVie's proposed CMO modification does not require this Court to interfere with ongoing litigation in Cook County or elsewhere. Rather, it simply prevents Plaintiffs from taking duplicative depositions in the MDL or circumventing CMO 21 to get more than the 43 AbbVie depositions permitted by this Court.

Because it would be unduly burdensome to require AbbVie and its witnesses to bear the consequences of MDL Plaintiffs' failure or refusal to coordinate with other Plaintiffs' counsel, AbbVie respectfully requests this Court to adopt AbbVie's proposed modification to CMO 21, Paragraph III.B, and add the following language:

> Where a scheduled deposition of an AbbVie witness is cross-noticed for this MDL, Plaintiffs' counsel may elect to participate in the deposition. If counsel elects to participate, AbbVie will produce a custodial file for the witness using the search terms to which the parties agreed in this MDL. The cross-noticed deposition will be part of the discovery in this MDL, and will count toward the deposition limits contained in this CMO.

> Any AbbVie witness who is deposed in the MDL or in Testosterone Replacement Therapy litigation pending in another jurisdiction may not be deposed again in this MDL, unless AbbVie consents or by Order of this Court.

---

[9] If Plaintiffs "opt in," AbbVie will produce a custodial file using the MDL-agreed search terms. Otherwise, AbbVie will produce the file as it is produced to the Cook County plaintiffs.

## <u>CONCLUSION</u>

For the reasons set forth above, AbbVie respectfully requests this Court to modify CMO

13 and CMO 21 as set forth above.


Dated: June 29, 2015                                        Respectfully submitted,


                                        By:     */s / Hope S. Freiwald*
                                                Hope S. Freiwald
                                                DECHERT LLP
                                                2929 Arch St., Cira Centre
                                                Philadelphia, PA 19104-2808
                                                Tel: (312) 646-5827
                                                Fax: (312) 698-5858
                                                hope.freiwald@dechert.com

                                                David M. Bernick
                                                DECHERT LLP
                                                1095 Avenue of the Americas
                                                New York, NY 10036-6797
                                                Tel: (212) 698-3500
                                                Fax: (212) 698-3599
                                                david.bernick@dechert.com

                                                ***Attorneys for AbbVie Inc. and Abbott***
                                                ***Laboratories***

### CERTIFICATE OF SERVICE

I, Christopher R. Boisvert, hereby certify that on June 29, 2015, the foregoing document was filed via the Court's CM/ECF system, which will automatically serve and send email notification of such filing to all registered attorneys of record.

*/s/ Christopher R. Boisvert*