**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION | MDL No. 2545<br><br>Master Docket Case No. 1:14-cv-1748<br><br>Honorable Matthew F. Kennelly |
| THIS DOCUMENT APPLIES TO ALL CASES IN WHICH AUXILIUM IS A DEFENDANT | Judge: Hon. Matthew F. Kennelly<br><br>**THE PLAINTIFFS' STEERING COMMITTEE'S BRIEF IN SUPPORT OF MOTION TO COMPEL PRIVILEGE LOG INFORMATION** |

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... ii

TABLE OF AUTHORITIES. ............................................................................... iii

INTRODUCTION ................................................................................................ 1

FACTS .................................................................................................................. 2

ARGUMENT ........................................................................................................ 4

I.      THIS COURT SHOULD LOOK TO THE APPLICATION OF PENNSYLVANIA STATE COURT LAW TO EVALUATE WHETHER THE FUNCTIONAL EQUIVALENCY DOCTRINE IS RECOGNIZED IN PENNSYLVANIA ......... 4

II.     THE DOCUMENTS ARE NOT PRIVILGED BECAUSE AUXILIUM FAILED TO ESTABLISH THEY CONTAIN PRIVILEGED COMMUNICATIONS OR IN THE ALTERANTIVE THAT IF THEY DO, THAT IT DID NOT WAIVE THE PRIVILEGE.....................................................................................6

        A.     *The Attorney-Client Privilege in Pennsylvania Only Protects Communication Directly between a Lawyer and a Client. Because the Communication Defendant Seeks to Protect is—At Best—Indirect Communication it is Not Protected under Pennsylvania Law*...................................................................................7

              1.    *Auxilium cannot satisfy its burden that the communication is privileged*...................................................................................8

        B.     *Even if the Documents Fall within the Scope of Pennsylvania's Privilege Law they Must Still be Produced Because Auxilium Waived the Privilege by Disclosing them to its Third-Party Marketing Vendor—Heartbeat*.....................9

              1.    *Pennsylvania does not recognize the "Functional Equivalency" doctrine; as such, Defendant's disclosure of the documents to its third party marketing vendor resulted in a waiver of the privilege*...................9

              2.    *Even if the Court were inclined to conclude that the Pennsylvania Supreme Court would adopt the functional equivalency test, the doctrine still does not apply*...................12

              3.    *At a minimum this Court should conduct an in camera review of the documents*...................15

CONCLUSION ..................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*A.H. ex rel. Hadjih v. Evenflo Co., Inc.*, No. 10-cv-02435-RBJ-KMT, 2012 WL 1957302 (D. Colo. May 31, 2012) .................................................................................................................13

*Am. Nat'l Bank & Trust Co. of Chicago v. Equitable Life Assurance Soc'y of the U.S.*, 406 F.3d 867 (7th Cir.2005)......................................................................................................15

*Banco Do Brasil v. 275 Washington St. Corp.*, No. 09-11343-NMG, 2012 U.S. Dist. LEXIS 51358 (D. Mass. Apr. 12, 2012) ..............................................................................................13

*Bonds v. Bonds*, 455 Pa.Super. 610 (1997) ................................................................1,8

*Budinich v. Becton Dickinson & Co.*, 486 U.S. 196 (1988) .............................................6

*Commonwealth v. Simmons*, 719 A.2d 336 (Pa.Super. 1998) .......................................13

*Commonwealth v. Stewart*, 547 Pa. 277 (1997) ........................................................13

*Commonwealth v. Chmiel*, 558 Pa. 478 (1999) .....................................................1,9,11

*Commonwealth v. Mrozek*, 657 A.2d 997 (1995) ......................................................8

*Ebner v. Ewiak*, 484 A.2d 180 (1984) ....................................................................7

*Erie R.R. v Tompkins*, 304 U.S. 64 (1938).........................................................4,5,6

*Exp.-Imp. Bank of the U.S. v. Asia Pulp & Paper Co.*, 232 F.R.D. 103 (S.D.N.Y. 2005) ............13

*Fed. Trade Comm'n v. GlaxoSmithKline*, 294 F.3d 141 (D.C.Cir.2002) .......................................13

*Flagstar Bank, FSB v. Freestar Bank, N.A.*, No. 09 C 1941, 2009 WL 2706965 (N.D.Ill. Aug. 25, 2009). ...............................................................................................................6

*Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415 (1996).............................................6

*Gillard v. AIG Ins. Co.*, 15 A.3d 44 (Pa. 2011) ........................................................7,8

*Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316 (N.D.Ill.2008) .....................5

*Heriot v. Byrne*, 257 F.R.D. 645 (N.D.Ill.2009) .......................................................6,13

*In re Beisgen's Estate*, 387 Pa. 425 (1956)...............................................................1

*In re Bieter Co.*, 16 F.3d 929 (8th Cir.1994) ...................................................................13

*In re Bristol-Myers Squibb Sec. Litig.*, 2003 U.S. Dist. LEXIS 26985 (D.N.J. June 25, 2003)....13

*In re Burr's Estate*, 381 Pa. 547 (1955)......................................................................1

*In re Cridge's Estate*, 289 Pa. 331 (1927) .................................................................1

*In re Flonase Antitrust Litig.*, 879 F.Supp.2d 454 (E.D.Pa.2012) ........................................ *passim*

*In re: Investigating Grand Jury of Phila. Cnty.*, 593 A.2d 402 (Pa. 1991) ...................................8

*Joe v. Prison Health Servs., Inc.*, 782 A.2d 24 (Pa. Cmwlth. Ct. 2001).....................................7,11

*Johnston v. Johnston*, 346 Pa.Super. 427 (1985)..............................................................1

*LG Electronics USA Inc v. Whirlpool Corp.*, 661 F.Supp.2d 958 (N.D.Ill. 2009) ....................6,14

*Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216 (3d Cir.2005) ............................................6

*Loutzenhiser          v.          Doddo          ,          436          Pa.          512* (1970)..........................................................................................................................1
..................................................................................................................................

*Nationwide Mut. Ins. v. Fleming*, 924 A.2d 1259 (2007) ...........................................................7,8

*Pennsylvania Dept. of Educ. V. Bagwell*, 114 A.3d 1113 (Pa.Cmwlth. 2015)..................... *passim*

*Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629 (7th Cir.2007).................................................10

*R & J Dick Co. v. Bass*, 295 F.Supp. 758 (N.D.Ga.1968) ..............................................5

*Richter v. Goldberg*, 78 Pa.Super 309 (1921)..............................................................1,8

*RoDa Drilling Co. v. Siegal*, 552 F.3d 1203 (10th Cir. 2009).......................................13

*Smith v. Unilife Corp.*, No. 13–5101, 2015 WL 667432 (E.D.Pa. Feb. 13, 2015) ......................5,6

*Stafford Trading, Inc. v. Lovely*, No. 05 C 4868, 2007 WL 611252 (N.D.Ill. Feb. 22, 2007) ........6

*Stopka v. American Family Mut. Ins. Co., Inc .*, 816 F.Supp.2d 516 (N.D.Ill.2011) .....................6

*Trammel v. United States*, 445 U.S 40 (1980) ...........................................................7

*United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958 (3d Cir.1988) ........................................5,6

*United States v. Graf*, 610 F.3d 1148 (9th Cir.2010).................................................................13

*Upjohn Co. v. United States*, 449 US 383, 389, 101 S.Ct. 677, 66 L.ed.2d 584 (1981).................7

*Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414 (3d Cir. 1991)..................10

**OTHER AUTHORITIES**

42 Pa.C.S. § 5928..................................................................................................................1,7

Fed. R. Evd. 501 ...................................................................................................................4,6

Fed. R. Evd. 502 ....................................................................................................................5

The Dynamic Attorney–Client Privilege, 23 GEO. J. LEGAL ETHICS 201 (2010) ....................8

## INTRODUCTION

For nearly one hundred years, the appellate courts of Pennsylvania have consistently recognized that, "[c]ommunications made to an attorney for the purpose of being conveyed by him to others are stripped of the idea of a confidential disclosure, and, therefore, are not privileged." *Richter v. Goldberg*, 78 Pa.Super 309, 312 (1921) (citations omitted).[1]  This long established rule, notwithstanding, Defendant Auxilium Pharmaceuticals, Inc. contends that communications between a lawyer, her client, and a third-party marketing vendor is the "functional equivalent" of communication between the lawyer and Auxilium itself.  No court in the history of Pennsylvania jurisprudence has recognized this doctrine.  Despite that, Defendant endeavors to withhold fifteen documents produced by a third party marketing vendor (Heartbeat Ideas, Inc. ("Heartbeat")) contending the documents contain attorney-client privilege predicated upon the "functional equivalency" doctrine.  Ultimately, Defendant's argument fails for three reasons: 1) Auxilium's privilege log fails to establish that the communications are, in fact, privileged communications;[2] 2) assuming the communications are protected by the privilege, Defendant waived the privilege by disclosing the documents to a third-party vendor; and 3) even if this Court concludes the

---

[1]  *See generally In re Beisgen's Estate*, 128 A.2d 52, 54 (Pa. 1956); *In re Burr's Estate*, 113 A.2d 712, 714 (Pa. 1955); *In re Cridge's Estate*, 137 A.2d 455, 457 (Pa. 1927); *Bonds v. Bonds*, 689 A.2d 275, 278 (Pa. Super. Ct. 1997) ("[T]he appellate courts of this jurisdiction have found waiver when the communication is made in the presence of or communicated to a third party or to the court"); *Johnston v. Johnston*, 346 Pa.Super. 427, 433 (1985) ("The privilege does not extend to communications made by an attorney to a third party or to the court"); *Loutzenhiser v. Doddo* , 436 Pa. 512, 519 (1970); *Pennsylvania Dept. of Educ. V. Bagwell*, 114 A.3d 1113, 1124 (Pa.Cmwlth. 2015) (citing *Commonwealth v. Chmiel*, 558 Pa. 478, 738 A.2d 406 (1999)) (holding, "It is well-established that once attorney-client communicates are disclosed to a third party, the attorney-client privilege is waived.").

[2]  In making this argument, the PSC is not challenging the sufficiency of that narrative Auxilium supplied in connection with the privilege log.  As such, the PSC expressly reserves the right to challenge the adequacy of the narrative description as it relates to future privilege logs.  Instead, the PSC is challenging whether or not communication—that is wholly between non-lawyers—meets the minimum threshold under Pennsylvania law to establish privileged communication.  *See* 42 Pa.C.S. § 5928.

---

Pennsylvania Supreme Court would overturn nearly a century of law by extending the privilege to so-called "functionally equivalent" consultants, the relationship between Defendant and Heartbeat is not the type that falls within the doctrine. As such, the Court ought to grant the PSC's Motion to Compel.[3]

## FACTS

In 2010 (or earlier), Auxilium retained Heartbeat to assist with the creation of Auxilium's "Low T Facts" campaign.[4] The assignment included logo design and brand development in connection with the Testim.com website. *See Privilege Log* Attached hereto as Exhibit A. Heartbeat's website describes the company's approach as "[b]ringing the best minds together to solve a problem." *See* www.heartbeatideas.com/approach.php#tools (last visited July 15, 2015). Their services include market research, strategy and campaign conception. *Id.* While they represent a number of life sciences companies (including Auxilium, Endo Pharmaceuticals, and Lilly), nothing on their website provides any evidence they assist life science companies with complex regulatory actions, patent protection, or FDA approval of new drugs. *See generally* www.heartbeatideas.com (last visited July 15, 2015). In short, Auxilium merely retained Heartbeat to assist it with marketing Testim.

On February 4, 2015, the Plaintiffs' Steering Committee ("PSC") subpoenaed documents from Heartbeat related to the "Low-T Facts" marketing campaign. *See Letter and Subpoena to*

---

[3] The PSC brings this motion, in part, given the impact the Court's Order will have on future privilege productions. Specifically, document production is starting and inevitable claims of privilege will follow. Some of those claims will relate to communications between defendant employees and outside consultants. While the PSC is mindful that the Court is not empowered to provide "advisory opinions", resolution of this issue will—even though limited to Auxilium—inform the Parties' to future privilege challenges in this MDL.

[4] The Master Complaint alleges Defendant's marketing campaign and brand promotion included substantial off-label promotion issues including the "Low-T Fact". *See* Master Complaint at ¶¶ 58-73.

*Heartbeat* attached hereto as Exhibit B. Heartbeat produced documents responsive to the subpoena to Auxilium who, in turn, withheld fifteen documents contending they were subsumed within the attorney-client privilege. *See Letter from Danelco Moxey to Maury Herman*, dated May 15, 2015 attached hereto as Exhibit C. All the parties involved in the alleged privileged documents are employees of Auxilium, Endo Pharmaceuticals, or Heartbeat Ideas. Of the fifteen documents: a) arguably *none* appear to be *from* or *to* an attorney; b) fourteen of the fifteen do not evidence *any* attorney on the distribution list;[5] c) *all* reflect communications between Auxilium employees and Heartbeat (the marketing vendor), d) eight designate the "Privileged Party" as Isabell Duffy, Esq. (former Associate General Counsel of Auxilium) despite the fact she does not appear on any of the distribution lists, and e) six designate the purported "Privileged Party" as "Legal Counsel". *See generally* Exhibit A. In detail, the log reflects the following:[6]

- *General Updates:* Log Entry No. 3, dated 3/2/2011 is an email with the subject "RE: Update." The email is FROM: Meghan Medlock Abraham (Account Director—Heartbeat Ideas), written TO: Itiya Wolman (Associate Director of Production—Heartbeat Ideas) and Mark McCullough (Associate Director of Marketing at Auxilium). It includes CCs to Ian Ehrhart (a Marketing Manager of the Specialty Business Unit at Endo). No attorneys are present in the chain of communication.

- *Logo Development:* Log Entry No. 8, dated 3/29/2011 is an email and attachment with the subject "FW: Revised Auxilium Logo". The email is FROM: Ian Ehrhart, (Marketing Manager of the Specialty Business Unit at Endo Pharmaceuticals); TO: Cat (Catherine) Mariakakis, (Project Manager at Heartbeat Digital LLC), Itiya Wolman (Associate Director of Production at Heartbeat Ideas), John Washburn, (Creative Director at Heartbeat Ideas), and Wendy Hook, (Group Account Director at Heartbeat Ideas). No attorneys are identified in the chain of communication.

- *General Reports:* Log Entry No. 9, dated 4/14/2010 is a report AUTHORED BY: Steve Hartzell (Producer—Heartbeat Digital), TO: Eric Karas (Senior Director of Marketing—Endo International) and Brian Rosenburg (Senior Director of New

---

[5] The email from Kathleen McCormick is unclear as to if she is a lawyer or the company she works for.

[6] All of the documents represent communication between Auxilium and a third party vendor. As such, Defendant asserts the "functional equivalency" shields the documents from production. The documents set forth below, are set forth to identify both the type of communication and employees involved.

Product Marketing & Commercial Analytics—Auxilium). No attorneys are listed in the chain of communication.

- *Website Review:* Log Entry No. 11, dated 7/19/2012 is an email with entitled: "FW: For Your Independent Review: Testim.Com Website Staging Server," is From Kathleen McCormick—who may or may not be an attorny, TO: Mark McCullough (Associate Director of Marketing—Auxilium), Ian Ehrhart (Marketing Manager of Specialty Business Unit—Endo), and CC'd to Jill Bonawitz (Product Director for Testim at GlaxoSmithKline).[7]

*See generally* Exhibit A. None of these emails appear to be *from* or *to* an attorney. Nor do the emails appear to even include attorneys in the distribution list. At best, six of the emails denote a "FW" designation meaning they were forwarded from some person—ostensibly a lawyer. Even in those cases, the log does not evidence any indication that the communication was *directly* between a client and a lawyer, while at the same time evidencing that the communication was between the client (i.e., Auxilium) and a third party (Heartbeat). Because Pennsylvania *does not* recognize the so-called "functional equivalency" doctrine, the disclosure of the material is a waiver of the privilege. Accordingly, the Court should grant the PSC's Motion to Compel.

## <u>ARGUMENT</u>

I. **THIS COURT SHOULD LOOK TO THE APPLICATION OF PENNSYLVANIA STATE COURT LAW TO EVALUATE WHETHER THE "FUNCTIONAL EQUIVALENCY" DOCTRINE IS RECOGNIZED IN PENNSYLVANIA.**

Since *Erie*, Federal Courts sitting in diversity have applied state law precedent to claims involving substantive issues of law. *See Erie R.R. v Tompkins*, 304 U.S. 64 (1938). Rule 501 of the Federal Rules of Evidence effectively codified *Erie* providing, "In civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision

---

[7] Log 11 is particularly interesting. None of the recipients are denoted as Heartbeat employees. In short, it is unclear whether there is a Heartbeat employee listed on the document. Nonetheless, somehow Heartbeat gained access to the document in that it was produced by them in response to the subpoena.

thereof shall be determined in accordance with State law." Fed. R. Evid. 501. In other words, *if* issues of attorney-client privilege are substantive—which they clearly are—then this Court is bound by Pennsylvania's *state* appellate courts' rules on privilege in determining whether the "functional equivalency" doctrine exists. *See e.g., R & J Dick Co. v. Bass*, 295 F.Supp. 758, 761 (N.D.Ga.1968) ("Matters of privilege and competency are ordinarily considered as being substantive within the meaning of *Erie v. Tompkins*, so that, at least where a state statute is involved, a federal court will, in a diversity case, follow the law of the state where it sits"); *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 965–66 (3d Cir.1988) (same); *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 321 (N.D. Ill. 2008) (same). In short, the applicable law for purposes of this motion is Pennsylvania state court precedent.

In response, Auxilium will rely, in part, upon two federal cases—*In re Flonase Antitrust Litig.*, 879 F.Supp.2d 454, 457–58 (E.D.Pa. 2012) and *Smith v. Unilife Corp.*, No. 13–5101, 2015 WL 667432, at *3 (E.D.Pa. 2015)—to support its contention that Pennsylvania recognizes the functional equivalency doctrine.[8] At the outset, even if these cases were binding, which they are not, the precedential value is nominal at best given the Third Circuit has yet to evaluate the functional equivalency doctrine. *See Unilife Corp.*, WL 667432, at *3. More important, while each case endorsed the doctrine, they did so in vastly different procedural postures than that in this case; namely, both *Flonase* and *Unilife* involved federal causes of actions (Sherman Act and whistleblower actions under Sarbanes-Oxley). *See Flonase*, 879 F.Supp.2d at 545; *Unilife*, 2015 WL 667432 at *1. Federal courts overseeing cases involving federal questions (whether they sit in diversity or not), however, do not look to the defendant's domicile to determine the applicable

---

[8] During the course of the Parties' good faith meet and confer, Counsel for Auxilium identified the two cases discussed herein as dispositive. As such, the PSC anticipates Defendant will rely on these cases in their opposition and discusses them here.

standard for privilege. Instead, these courts look to Rule 502 and the corresponding federal common law governing attorney-client privilege. *See generally* Fed. R. Evid. R. 502; *see also Budinich v. Becton Dickinson & Co.,* 486 U.S. 196, 198 (1988) ("[S]tate law generally supplies the rules of decision in federal diversity cases"); *United Coal Cos. v. Powell Constr. Co.,* 839 F.2d 958, 965–66 (3d Cir.1988) ("In this diversity case Fed.R.Evid. 501 refers the district court, on questions of privilege, to state law"); *Stopka v. American Family Mut. Ins. Co., Inc., 816 F.Supp.2d 516, 524* (N.D.Ill.2011) ("When a civil action arises under a court's diversity jurisdiction, a court determines most privileges in accordance with state law"). For this reason, the Court's overseeing *both* the *Flonase* and *Unilife* litigation looked to *federal law* as opposed to Pennsylvania's application of its privilege statue. Accordingly, there is not one citation to a *single* Pennsylvania statute, rule or case in either the *Flonase* or *Unilife* opinion.[9] Ultimately, the Eastern District's use of the functional equivalency doctrine is neither dispositive nor compelling given the proper choice of law requires analysis of Pennsylvania's statutory scheme and corresponding case law.

## II. THE DOCUMENTS ARE NOT PRIVILGED BECAUSE AUXILIUM FAILED TO ESTABLISH THEY CONTAIN PRIVILEGED COMMUNICATIONS OR IN THE ALTERNATIVE THAT IF THEY DO, THAT IT DID NOT WAIVE THE PRIVILEGE.

Each of the documents includes communications between Auxilium and its third-party marketing vendor, Heartbeat. In Pennsylvania the privilege extends *only* to communication

---

[9]  And, of course if there were, the *only* way for those courts to rely on *federal precedent* is *vis-à-vis* the second prong of the choice of law test; namely, *if* the issue is procedural the court evaluating the issue relies upon federal precedent. *See Gasperini v. Center for Humanities, Inc*., 518 U.S. 415, 428-9 (1996) ("Under 'Erie doctrine', federal courts sitting in diversity apply state substantive law and federal procedural law"); *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 229 (3d Cir.2005). But, if that were the law, then this Court would apply precedent from this Circuit and this District which squarely rejects the functional equivalency doctrine in this context. *See LG Electronics USA Inc v. Whirlpool Corp*., 661 F.Supp.2d 958, 961 (N.D.Ill. 2009); *Stafford Trading, Inc. v. Lovely*, No. 05 C 4868, 2007 WL 611252, at *7 (N.D.Ill. Feb. 22, 2007); *Heriot v. Byrne*, 257 F.R.D. 645, 656–66 (N.D.Ill.2009); *Flagstar Bank, FSB v. Freestar Bank*, N.A., No. 09 C 1941, 2009 WL 2706965, at *5 (N.D.Ill. Aug. 25, 2009).

between a lawyer and a client. As such, communication that extends to third parties is expressly beyond the scope of the privilege. Accordingly, Defendant's claim of privilege fails for two reasons: 1) the documents do not contain communication between a lawyer and a client; and 2) even if the communications were between a lawyer and a client, the dissemination of the communications to a third party waived the privilege.

A. **The Attorney-Client Privilege in Pennsylvania Only Protects Communication Directly between a Lawyer and a Client. Because the Communication Defendant Seeks to Protect is—At Best—Indirect Communication it is Not Protected under Pennsylvania Law.**

While Pennsylvania recognizes that the attorney-client privilege has "deep historical roots" and is "the oldest of the privileges" it construes that privilege narrowly because it results in withholding relevant information from the jury. *See Nationwide Mut. Ins. v. Fleming*, 924 A.2d 1259, 1263-64 (Pa. Super. Ct. 2007) (citing *Upjohn Co. v. United States*, 449 US 383, 389 (1981)); *see also Ebner v. Ewiak*, 484 A.2d 180, 183 (Pa. Super. Ct. 1984) (citing *Trammel v. United States,* 445 U.S 40, 50 (1980)) (holding, "Testimonial exclusionary rules and privileges . . . must be strictly construed . . . .").[10] Pennsylvania protects attorney-to-client and client-to-attorney communication when—but only when—the communications are "made for the purpose of obtaining or providing professional legal advice." *Gillard*, 15 A.3d at 59; *see also* 42 Pa.C.S.A. § 5928 ("Counsel shall not be competent or permitted to testify to confidential communications *made to him* by his client . . . ."). "The privilege only applies where the client's ultimate goal is

---

[10] Four years later, in *Gillard v. AIG Ins. Co.*, 15 A.3d 44, 57 (Pa. 2011), the Pennsylvania Supreme Court rejected the "one-way" doctrine outlined in *Fleming*. In doing so, the Court expressly noted *Fleming* predicated its holding on the doctrine of waiver—which by definition—required the Court to conclude the privileged extended to the communication at issue. Thus, while the Court concluded that "a broader range of derivative protections is implicated" by the privilege, it did so *exclusively* in the context of communication *between a lawyer and a client. Id.* at 57-58. (emphasis supplied). *Nothing* in the opinion extends the privilege to persons who are not directly the client (a point reinforced by the Court's observation that its holding created the opportunity for abuse that "ordinary business matters [be] disguised as relating to legal advice"). *Id.*

legal advice." *Joe v. Prison Health Servs., Inc.*, 782 A.2d 24, 31-32 (Pa. Commw. Ct. 2001). Furthermore, no privilege extends to the "'ruse abuse,' in which ordinary business matters are disguised as relating to legal advice." *Gillard*, 15 A.3d at 58 (*quoting* The Dynamic Attorney– Client Privilege, 23 Geo. J. Legal Ethics 201, 230–35 (2010)). In other words, under Pennsylvania's privilege law, communication is only protected *if* the communication is *direct* communication between a lawyer and her client.

     *1.*      *Auxilium cannot satisfy its burden that the communication is privileged.*

The proponent of the privilege bears the burden of *proving* it properly invoked the privilege, and only then does "the burden shifts to the party seeking disclosure to set forth facts showing that disclosure will not violate the attorney-client privilege. . . ." *In re: Investigating Grand Jury of Phila. Cnty.*, 593 A.2d 402, 406-07 (Pa. 1991). Pennsylvania's statutory regime, in turn, establishes communication is privileged if—and only if:

> The communication relates to a fact of which the attorney was informed by his client, *without the presence of strangers*, for the purpose of securing either an opinion of law, legal service or assistance in legal matter, and not for the purpose of committing a crime or tort.

*Fleming,* 924 A.2d at 1264 (citing *Commonwealth v. Mrozek*, 657 A.2d 997, 998 (Pa. Super. Ct. 1995)) (emphasis supplied). Following *Gillard,* the privilege extends to communication both to and from an attorney. However, while *Gillard* extended the privilege *between lawyer and client,* it did nothing to undermine the State's long-held rule that communication *to a third party* is beyond the scope of the privilege. *See Richter v. Goldberg*, 78 Pa.Super 309, 312 (1921); *Bonds v. Bonds*, 455 Pa.Super. 610, 616 (1997) ("[T]he appellate courts of this jurisdiction have found waiver when the communication is made in the presence of or communicated to a third party or to the court"). In *Pennsylvania Dept. of Educ. v. Bagwell*, 114 A.3d 1113, 1124 (Pa.Cmwlth.2015) the court expressly reconfirmed this proposition. Specifically, *Bagwell*—decided four years *after Gillard*—

reconfirmed that: "It is well-established that once attorney-client communications are disclosed to a third party, the attorney-client privilege is waived." *Id.* at 1124 (citing *Commonwealth v. Chmiel*, 738 A.2d 406 (Pa. 1999)). In short, the rule in Pennsylvania is that the privilege *only* protects communication between a lawyer and a client.

Here, it is undisputed that the communication in question is *not* between a lawyer and client. Even assuming somewhere along the road the communication was between an Auxilium employee and legal counsel *and* that it was for the purposes of seeking legal advice, the withheld documents clearly evidence that the communication was not *directly* with a client; as such, it is beyond the scope of the privilege. For example, fourteen of the fifteen withheld documents are neither authored by nor sent to a lawyer. Further, *none* of the documents carbon copy a lawyer. *Supra* at 3-4. The *only* document that *might* be from a lawyer is Log Entry No. 11 authored by Kathleen McCormick—who may or may not be a lawyer.[11] Further, nine of the documents (Log Nos. 1-6, 9-10 and 12) are original communications written between non-lawyers. Because none of these communications are *directly from* or *to* a lawyer, they fall beyond the scope of Pennsylvania's privilege law. As such, Defendant is unable to satisfy its burden that the documents fall within the scope of the privilege and, as a result they must be produced.

>    **B.      Even if the Documents Fall within the Scope of Pennsylvania's Privilege Law they Must Still be Produced Because Auxilium Waived the Privilege by Disclosing them to its Third-Party Marketing Vendor—Heartbeat.**

Irrespective of whether this Court concludes the documents fall within the scope of the privilege, Defendant must still produce the documents because: 1) it waived the privilege, given Pennsylvania has not recognized the functional equivalency doctrine; and 2) that even if the

---

[11] And the mere fact that the PSC cannot determine Ms. McCormick's bar status from the face of the privilege log is further indication Auxilium as failed to carry its burden.

functional equivalency doctrine were applied in Pennsylvania, the doctrine does not extend to communication between a pharmaceutical company and marketing vendor.

> 1. *Pennsylvania does not recognize the "Functional Equivalency" doctrine; as such, Defendant's disclosure of the documents to its third party marketing vendor resulted in a waiver of the privilege.*

Even assuming the documents contained privileged information, they must be produced because Auxilium waived the privilege by disclosing them to Heartbeat. The proponent of a claim of waiver bears the burden of establishing waiver occurred. *See Pennsylvania Dept. of Educ. v. Bagwell*, 114 A.3d 1113, 1124 (Pa.Cmwlt. 2015). Pennsylvania law is clear that disclosure of privileged information amounts to a waiver *even if* the receiving party agrees to keep the information confidential. *Supra* at 8. As the Third Circuit noted:

> If clients themselves divulge such information to third parties, chances are that they would also have divulged it to their attorneys, even without the protection of the privilege. Thus, once a client has revealed privileged information to a third party, the basic justification for the privilege no longer applies . . . . Consequently, it is well-settled that when a client voluntarily discloses privileged communications to a third party, the privilege is waived.

*Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1424 (3d Cir. 1991) (internal citations omitted). Each and every one of the contested documents purports to withhold privileged information shared with Defendant's third party marketing company (Heartbeat). As such, Auxilium waived the privilege.

Recognizing as much, Auxilium contends its waiver is protected by the so-called "functional equivalency" doctrine. The gist of the doctrine is that where the third party is a "functional equivalent" of the client's employee, the communication with the outside consultant falls within the scope of the privilege. *See e.g., In re: Flonase Antitrust Litigation*, 879 F.Supp.2d 454, 458 (E.D.Pa.2012). And, if Pennsylvania recognized the doctrine Defendant may have a

point. However, for nearly one hundred years, Pennsylvania has declined to expand the privilege to encompass outside vendors or consultants.[12]

The absence of an opinion to expand the privilege to encompass the functional equivalency doctrine *does not* mean that no Pennsylvania court has been presented with an opportunity to apply the doctrine. On the contrary, in *Pennsylvania Dept. of Educ. v. Bagwell*, 114 A3d 1113 (Pa. Cmwlth. 2015), the Commonwealth Court evaluated whether the privilege was waived amongst entities that were far more integrated than the relationship Auxilium shares with Heartbeat. *Bagwell* involved an effort to obtain certain communications between the Office of the General Counsel, Secretary of Education and Board of Trustees of Penn State related to the Gerry Sandusky scandal. *Id.* at 1118. Specifically, Bagwell sought to obtain three emails between the Secretary of Education and his attorneys at OCG. *Id.* The emails were unquestionably direct communication between a lawyer (OCG) and client (the Secretary of Education). Nonetheless, Bagwell argued that he was entitled to the documents because the *content* of the privileged communications was later described in an email between the Secretary of Education and a third party (i.e., a Trustee of the Board of Trustees at PSU). *Id.* 1117. The disclosure of the information contained in the three emails to PSU, Bagwell argued, amounted to a waiver.

In evaluating Bagwell's claim, the Commonwealth Court noted, "[Bagwell] contends the communications here were not maintained between the Department and OGC 'without the presence of strangers.' To the contrary, he asserts the Department waived the attorney privileges by disclosing the E-mails to third parties." *Id.* at 1124. Based on this argument, the Court

---

[12] It is black letter law that Federal courts sitting in diversity, when ruling on state law, should apply the state law as they believe the highest court of the state would apply it. *See Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 635 (7th Cir.2007) ("Our duty, therefore, as in every diversity case, is to apply state substantive law, as we believe the highest court of the state would apply it"). In short, in the absence of binding precedent, this Court must apply the law as it believes the Pennsylvania Supreme Court would.

observed, "It is well-established that once attorney-client communications are disclosed to a third party, the attorney-client privilege is waived." *Id.* (*citing Co. v. Chmiel*, 738 A.2d 406 (Pa. 1999); *Joe v. Prison Health Servs. Inc.*, 782 A.2d 24 (Pa.Cmwlth. 2001)). In other words, the *Bagwell* court refused to extend the privilege to third party entities predicated upon the relationship between the client and the third party. That is particularly relevant here given the nature of the relationship in *Bagwell* compared to that between Auxilium and Heartbeat. Specifically, the Secretary of Education is an *ex officio* member of the PSU Board of Trustees. If Pennsylvania courts were to adopt the functional equivalency doctrine, they most certainly would do it in a situation where the "client" (in the case the Secretary) is a member of the third party's (PSU) Board of Trustees. Given the opportunity to do so, however, the Commonwealth Court opted not to extent the privilege to third parties who were the "functional equivalent" of the client. Instead, the Court remanded for consideration of whether the Secretary shared the privilege information with PSU so as to cause a waiver.

The fact the *Bagwell* Court remanded the issue to the lower court for additional review is not relevant to the issue here. Specifically, the remand was to determine *whether* the content of the three privileged emails were shared with PSU, *not* whether they contained attorney-client information. Each party conceded the three emails clearly were privileged communications. As such, *if* Pennsylvania recognized the functional equivalency doctrine, the *Bagwell* court would have concluded the relationship shielded the documents from any disclosure. Its failure to do so provides strong guidance to this Court that Pennsylvania does not recognize the doctrine. Given the fact, Auxilium's relationship with Heartbeat is far more attenuated than that between the Secretary of Education and PSU (particularly in that the Secretary is a member of the Board of Trustees for PSU), it is highly unlikely the Pennsylvania Supreme Court would recognized the

doctrine in the context of a vendor-vendee relationship. Accordingly, this Court ought to conclude Auxilium waived the privilege and require production of the Heartbeat documents.

> 2. *Even if the Court were inclined to conclude that the Pennsylvania Supreme Court would adopt the functional equivalency test, the doctrine still does not apply.*

Even if this Court were to conclude that the Pennsylvania Supreme Court would recognize the functional equivalency doctrine, the documents are still subject to production given Heartbeat is not the type of entity that falls within the doctrine. As noted above, Pennsylvania courts consistently hold that evidentiary privileges must be narrowly construed. *See generally Commonwealth v. Simmons*, 719 A.2d 336, 340 (Pa. Super. Ct. 1998) ("As a general matter, Pennsylvania law does not favor evidentiary privileges"); *Commonwealth v. Stewart*, 547 Pa. 277, 283 (1997) ("[E]xceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth"). In the context of the functional equivalency doctrine, two primary schools of thought exist: those courts which tend to conclude the doctrine extends to all (or most) independent consultants,[13] versus those that employ a limited multi-factor approach to the doctrine.[14] Those courts employing the narrow doctrine

---

[13]  *See United States v. Graf*, 610 F.3d 1148, 1158–59 (9th Cir. 2010); *Fed. Trade Comm'n v. GlaxoSmithKline*, 294 F.3d 141, 147–48 (D.C.Cir.2002); *In re Bieter Co., 16 F.3d 929* (8th Cir.1994); *In Re Flonase Antitrust Litigation*, No. 08-CV-3149 (E.D. Pa. July 2, 2012); *Banco Do Brasil v. 275 Washington St. Corp.*, No. 09-11343-NMG, 2012 U.S. Dist. LEXIS 51358 (D. Mass. Apr. 12, 2012); *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203 (10th Cir. 2009).

[14]  *See e.g., Heriot v. Byrne*, 257 F.R.D. 645, 665–66 (N.D. Ill. 2009) (documents that involve a client and an unprotected third party are not subject to attorney-client privilege); *A.H. ex rel. Hadjih v. Evenflo Co., Inc.*, No. 10-cv-02435-RBJ-KMT, 2012 WL 1957302, at *3 (D. Colo. May 31, 2012) (attorney-client communications in the presence of a third party not the agent of either are generally not protected by privilege); *Exp.-Imp. Bank of the U.S. v. Asia Pulp & Paper Co.*, 232 F.R.D. 103 (S.D.N.Y. 2005) (attorney-client privilege did not apply to communications that included debtor's financial advisor); *In re Bristol-Myers Squibb Sec. Litig.*, 2003 U.S. Dist. LEXIS 26985 (D.N.J. June 25, 2003) (privilege does not apply to a third party where they did not act for the corporation and possess the information needed by attorneys in rendering legal advice).

---

reason that third parties are generally not covered by the attorney client privilege, as they are not agents of the lawyer, nor are they necessary in the rendering or obtaining of legal advice.[15]  In short, even where a court recognizes the functional equivalency doctrine, if the advice is not integral to the consultant's assignment, the doctrine is seldom applied.  It is for this reason that courts in this District refuse to apply the doctrine to marketing companies and advertising agencies. *See LG Electronics USA Inc v. Whirlpool Corp*., 661 F.Supp.2d 958, 961 (N.D. Ill. 2009) (holding that attorney-client discovery privilege does not extend to protect defendants' corporate communications with third party advertising agencies).

Wherever the line of demarcation is, it is clear Heartbeat does not cross it.  Specifically, Heartbeat's own website underscores it is little more than a run-of-the-mill marketing company.  It boasts no FDA involvement, no regulatory expertise, no experience with the NDA/INDA process and no history of defending patent or intellectual property rights.  Instead, its primary (if not only) mission is to assist with developing brand strategies.  *See generally* http://www.heartbeatideas.com.  And, of course, the withheld documents readily demonstrate that this is Heartbeat's role.  For example, the log notes Heartbeat worked on revising the Testim logo and reviewing the Testim website.  *See Exhibit A.*  Nor does the information implicate the early stages of developing the Testim marketing campaign when one might anticipate some limited regulatory scrutiny: Auxilium retained Heartbeat in 2010, eight years after it received NDA

---

[15]  Equally important, even in those courts adopting a "broad approach" the analysis whether to extend the privilege ultimately turns on the nature of relationship between the consultant and the client.  That relationship, unlike here, typically involves detailed activity *requiring* legal advice to complete the assignment.  For example, in *In re Flonase* the consultant did the following (*see Flonase*, 879 F.Supp.2d at 457):
> • Assessment and assertion of GSK's patent and other intellectual property rights;.
> • Application for and receipt of "pediatric exclusivity" period;
> • Direct contact with FDA on OTC status;
> • Submission of comments to FDA's Draft Guidance for bioequivalent nasal sprays; and
> • Assistance with the application to FDA for permission to market line extensions.

approval (and ostensibly developed its brand promotion). In short, even if the Court were to conclude that the Pennsylvania Supreme Court would adopt the functional equivalency doctrine, Heartbeat is not the type of "consultant" that is a "functional equivalent" of an Auxilium employee. This Court ought to require Defendant produce the Heartbeat documents.

> 3. *At a minimum this Court should conduct an in camera review of the documents.*

Finally, if this Court concludes the doctrine applies *and* that Heartland falls within it, the Seventh Circuit requires the Court conduct an *in camera* review of *every document* to assess whether it falls within the doctrine. *Am. Nat'l Bank & Trust Co. of Chicago v. Equitable Life Assurance Soc'y of the U.S.*, 406 F.3d 867, 879–880 (7th Cir.2005) (holding that a court must review all of the documents claimed as privileged and cannot rely on a "random sampling" of documents to determine privilege). Of course, given Pennsylvania would likely neither adopt the doctrine nor conclude it extends to third-party marketing vendors this Court need not undertake an *in camera* review and may order Auxilium produce the documents to the PSC.

## CONCLUSION

Analysis of the scope of the attorney-client privilege in diversity cases is dependent on state law. Here, for nearly one hundred years, Pennsylvania has consistently concluded that the privilege *only* extends to *direct* communication between a lawyer and client. Further, those courts routinely and repeatedly conclude dissemination of legal advice to *any* third party amounts to a waiver. For these reasons, it is highly unlikely the Pennsylvania Supreme Court would adopt the "functional equivalency" doctrine. Given the communications in this case were not between an attorney and client, and, worse, were exclusively between employees of different companies (Auxilium, Endo, and Heartbeat), Auxilium's invocation of privilege is improper.

Dated: July 21, 2015

Respectfully submitted,

/s/ Timothy J. Becker
Timothy Becker
JOHNSON BECKER PLLC
33 S. 6th Street, Suite 4530
Minneapolis, MN 55402
Phone: (612) 436-1804
Fax: (612) 436-1801
Email: tbecker@johnsonbecker.com

Ronald Johnson, Jr.
SCHACHTER, HENDY & JOHNSON PSC
909 Wrights Summit Parkway, Suite 210
Ft. Wright, KY 41011
Phone: (859) 578-4444
Fax: (859) 578-4440
Email: rjohnson@pschacter.com

Trent B. Miracle
SIMMONS HANLY CONROY
One Court Street
Alton, IL 62002
Phone: (618) 259-2222
Fax: (618) 259-2252
Email: tmiracle@simmonsfirm.com

Christopher A. Seeger
SEEGER WEISS LLP
77 Water Street
New York, NY 10005
Phone: (212) 584-0700
Fax: (212) 584-0799
Email: cseeger@seegerweiss.com

*Plaintiffs' Co-Lead Counsel*

**Certificate of Service**

I hereby certify that on **July 21, 2015**, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Timothy J. Becker
Timothy J. Becker, Esq.
JOHNSON BECKER, PLLC
33 South Sixth Street, Suite 4530
Minneapolis, MN 55402
Phone: (612) 436-1800
Fax: (612) 436-1801
Email: tbecker@johnsonbecker.com