UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION | Case No. 1:14-CV-01748<br><br>MDL 2545<br><br>JUDGE MATTHEW F. KENNELLY |

This Document Relates to All Cases

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS PERTAINING TO THE SAFETY OF EXOGENOUS TESTOSTERONE**

Plaintiffs submit this reply in further support of the instant motion, which is essentially a motion to compel production of information that put defendants AbbVie, Abbott and Besins (collectively "AbbVie") on notice of safety issues relating to testosterone generally. AbbVie raises three points in opposition to Plaintiffs' motion to compel. Each fails.

*First*, AbbVie insists any notice of safety signals related to other testosterone products is not relevant because no Plaintiff in this MDL took any other AbbVie product. AbbVie anchors this argument to the district court's decision in *Sommerfield v. City of Chicago*, 613 F. Supp.2d 1004 (N.D. Ill. 2009). But the unique facts and extraordinary circumstances of *Sommerfield* make the case an outlier at best. There, the court denied the plaintiff's requested discovery against the backdrop of what it called "the lengthy and labyrinthine history of the case," including the plaintiff's attorney's "standard practice" of "excesses in and needless dilation of discovery." *Id.* at 1005. Indeed, taking the extreme step of calling the attorney by name in its opinion, the court cited to a number of other courts that had specifically criticized him, including the Seventh Circuit Court of Appeals' "extraordinary castigation" of his conduct in a putative class action case. *Id.* (citing and quoting *Greisz v. Household Bank (Illinois), N.A.*, 176 F.3d 1012, 1014 (7th Cir. 1999) (charging plaintiff's counsel as, *inter alia*, inept, frivolous, and

incompetent)). Denying the request at issue in *Sommerfield*, the court ultimately found that the attorney's discovery tactics were in direct contravention to two prior rulings in the case and amounted to a "studied avoidance of the record." *Sommerfield*, 613 F. Supp.2d at 1014. On the substance of the requests at issue, the court found them to be "oceanic" and unwarranted. *Id.* at 1016 (finding that harassment by other harassers in other police districts was not relevant to former police officer's Title VII claims of harassment and retaliation).

Here, neither the history of Plaintiffs' counsel's conduct nor the substance of the documents requested, which is very targeted and seeks one type of information, puts this case within the ambit of *Sommerfield*. Again, in the instant motion, Plaintiffs seek discovery of AbbVie's notice of safety signals relating to testosterone, an inquiry directly bearing on the state of knowledge of the company in allegedly acting unreasonably (or worse). To seek to know, through discovery of internal company documents and data, whether safety signals relating to some other similar testosterone product put AbbVie on notice of the same types of risks and injuries at issue here (heart attacks, blood clots, and strokes) is to seek information directly relevant to Plaintiffs' claims for negligence and punitive damages. That sort of request is not at all the "oceanic" tactic attempted by the attorney in *Sommerfield*.

AbbVie's reliance on *Steede v. General Motors, LLC*, No. 2:11-02351, 2012 WL 6846529 (W.D. Tenn. Jan. 11, 2013), is also misplaced. In *Steede*, the plaintiff's claims centered on alleged defects to the roof and seat belt systems of the subject 2002 Chevrolet Blazer. *Id.* at \*1. Importantly, in the course of discovery, GM—unlike AbbVie in the instant case—**agreed** to produce information about vehicles that were "substantially similar" to the subject 2002 Chevrolet Blazer, including the: "(1) 1995–2005 two-door Blazer; (2) 1995–2005 four-door Blazer; (3) 1995–2001 two-door Jimmy; (4) 1995–2001 four-door Jimmy; (5) 1996–2001 four-

door Bravada; (6) 1998–2001 four-door Envoy; and (7) 1999–2001 four-door TrailBlazer." *Id.* at *3. However, the plaintiff sought even more, requesting production of information related to vehicles with entirely different roof and seat belt systems under a theory that such information **might** be relevant to showing a safer alternative design. *Id*. In declining to extend discovery to these "non-substantially similar" vehicles, the court emphasized that the plaintiff had offered no evidence, factual basis, or meaningful show of relevance to indicate that discovery of entirely different roof and seat belt systems would **actually** provide information about a safer alternate design. *Id*. Moreover, the court found that because the plaintiff could not even provide evidence that her own vehicle's components were defective, then any attempt by plaintiff to collect evidence of a safer alternative design was merely the plaintiff "engaging in nothing more than a fishing expedition to find something on which to rest her otherwise unsubstantiated theory of liability." *Id*. at *5 - *7.

So *Steede* actually supports the Plaintiffs' requests for production of documents pertaining to non-commercialized testosterone products. First, GM agreed to produce information related to all "substantially similar" products, which is precisely what AbbVie is refusing to do here.[1] And here, the purpose of the Plaintiffs' requests is not to show a safer alternative design theory, but rather to show AbbVie's actual and constructive knowledge of risk and safety information relating to any of their exogenous testosterone-based products. The relevance of such information is not even remotely attenuated; rather, it is directly relevant to Plaintiffs' claims for, *inter alia*, negligent failure to warn, negligent misrepresentation, fraud, and

---

[1] Despite AbbVie's allegation that differences in dose and delivery mechanism (i.e. oral, injection, topical, etc.) create "fundamentally" different products, AbbVie tellingly does not dispute that that the physiological consequences of testosterone generally, whether in endogenous or exogenous form, are substantially similar.

3

punitive damages. Had the Plaintiffs' solicited information related to hormone products other than exogenous testosterone, such as estrogen products, then AbbVie's application of *Steede* might cut in their favor.[2]

AbbVie's argument that no Plaintiff used any non-commercialized TST product is similarly misplaced. The operative question is not whether any Plaintiff used any of these predecessor testosterone products. Rather, the question is whether the design and testing of those other testosterone products informed AbbVie, in small or large part, about the safety and risks of exogenous testosterone-based products generally prior to it commercializing AndroGel, which Plaintiffs did use. Further still, AbbVie's feeble attempt to disguise the issue with a discussion of generic and competitor products being "chemically similar medicines" with "different physiological results" ignores the obvious counterpoint that those products were not designed and studied by AbbVie and therefore do not establish AbbVie's basis of knowledge related to the risks associated with the use of testosterone. As AbbVie's arguments about the breadth of the discovery requests fail, it is clear that these discovery requests are reasonably calculated to lead to the production of admissible evidence.

*Second*, AbbVie returns to its illusory and entirely vague claim of "considerable burden." Notably, it is AbbVie's burden to demonstrate to this Court that good cause exists to limit discovery by alleging particular and specific facts. *Bell v. Woodward Governor Co.,* No. 03-50190, 2005 WL 3299179, *2 (N.D.Ill. 2005); *see also Graham v. Casey's Gen. Stores, Inc.,* 206

---

[2] AbbVie also attacks Plaintiffs' reliance on the *Hexum* case (regarding Cymbalta and Prozac), claiming the outcome there was unclear. In fact, a member of the Plaintiffs' Steering Committee, T. Matthew Leckman, was lead counsel in *Hexum*. And although AbbVie is correct that the *Hexum* court ordered the parties to meet-and-confer relating to what Prozac documents would be produced, the parties did just that and the defendant ultimately produced Prozac documents per the court's directives.

F.R.D. 251, 254 (S.D.Ind. 2002) ("The party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant." (citation omitted)). Indeed, that burden cannot be met by "a reflexive invocation of the same baseless, often abused litany that the requested discovery is …. overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." *Burkybile v. Mitsubishi Motors Corp.,* No. 04-4932, 2006 WL 2325506, *6 (N.D.Ill. Aug. 2, 2006) (internal quotations and citations omitted).

In light of its burden, AbbVie – rather than first addressing the **actual** burden of the requested discovery –begins its argument with a self-serving assumption that the benefit to Plaintiffs must be minimal in light of sizable production to be produced and then simply concludes that the burdens must therefore outweigh the benefits. *See* AbbVie Memo in Opposition ("AbbVie Opp.") at 8. In addition to being an entirely unsupported conclusion about the value of the requested information, this argument fails simply because AbbVie chose to not identify any **particular or specific** burdens of producing the information about non-commercialized TST products. Indeed, AbbVie only generally refers to the burden of having to review, redact, mark for confidentiality, log for privilege, and produce additional documents. AbbVie Opp. at 8. The obvious explanation for the generality is that AbbVie is either (a) unable to articulate any additional burden that exists, or (b) has yet to actually investigate whether any additional burden in fact exists. In either event, AbbVie has not shown that the burden outweighs the benefit of discovery in this instance.

Importantly, AbbVie has already agreed to the search terms to use for ESI discovery. All results of the search using these terms will be reviewed, redacted, and marked for confidentiality, logged for privilege by AbbVie. In fact, as part of this review, AbbVie proposes to actually

F.R.D. 251, 254 (S.D.Ind. 2002) ("The party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant." (citation omitted)). Indeed, that burden cannot be met by "a reflexive invocation of the same baseless, often abused litany that the requested discovery is …. overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." *Burkybile v. Mitsubishi Motors Corp.,* No. 04-4932, 2006 WL 2325506, *6 (N.D.Ill. Aug. 2, 2006) (internal quotations and citations omitted).

In light of its burden, AbbVie – rather than first addressing the **actual** burden of the requested discovery –begins its argument with a self-serving assumption that the benefit to Plaintiffs must be minimal in light of sizable production to be produced and then simply concludes that the burdens must therefore outweigh the benefits. *See* AbbVie Memo in Opposition ("AbbVie Opp.") at 8. In addition to being an entirely unsupported conclusion about the value of the requested information, this argument fails simply because AbbVie chose to not identify any **particular or specific** burdens of producing the information about non-commercialized TST products. Indeed, AbbVie only generally refers to the burden of having to review, redact, mark for confidentiality, log for privilege, and produce additional documents. AbbVie Opp. at 8. The obvious explanation for the generality is that AbbVie is either (a) unable to articulate any additional burden that exists, or (b) has yet to actually investigate whether any additional burden in fact exists. In either event, AbbVie has not shown that the burden outweighs the benefit of discovery in this instance.

Importantly, AbbVie has already agreed to the search terms to use for ESI discovery. All results of the search using these terms will be reviewed, redacted, and marked for confidentiality, logged for privilege by AbbVie. In fact, as part of this review, AbbVie proposes to actually

**remove** from production any documents on non-commercialized TST products that might turn up in the search. AbbVie admits as much in its "proposed compromise." AbbVie Opp. at 9. Accordingly, as to those documents, the only additional "burden" on AbbVie would be to produce these documents instead of withhold them. Although AbbVie claims that it would also have to search "additional sources" for responsive documents, it continuously and curiously avoids giving Plaintiffs or this Court any specific information about what/where these additional unique sources are, how many locations would need to be searched to identify just safety information, or why searching these sources places additional burden on AbbVie. Without identifying any specific burdens of cost, time, or effort, AbbVie's cursory argument – that the benefits of production are outweighed by the burdens of production –should be rejected.

*Third*, for the reasons discussed above, AbbVie's proposed compromise, while a good starting point and an admission that they recognize the relevance of this information, it is simply not sufficient to fulfill AbbVie's discovery obligations in this case. Moreover, given AbbVie's stated position on the relevance of non-commercialized TST products, their alleged compromise does not actually guarantee the production of any additional information about AbbVie's knowledge of the risks/safety of testosterone. Specifically, AbbVie says that it will produce "any document … that includes information regarding the purported safety of other non-commercialized TRTs … in unredacted form **if they are otherwise relevant and responsive regarding AndroGel 1% or 1.62%**." AbbVie Opp. at 9 (emphasis added). In other words, AbbVie will produce the documents that it was already going to produce, but it will agree not to redact the portions of those documents that discuss non-commercialized TRTs. Such documents would have necessarily been created following the design and production of AndroGel, and could not possibly address Plaintiffs' desire to locate information that reveals that AbbVie had

6

actual and constructive knowledge of risk and safety information relating generally to exogenous testosterone-based products even before designing, manufacturing and distributing AndroGel. Accordingly, this proposed compromise is unacceptable and insufficient to address Plaintiffs' stated purpose in collecting the requested information.

## CONCLUSION

Based on the foregoing, again, Plaintiffs respectfully request that this Honorable Court grant the instant motion to compel and require AbbVie to: (1) produce any documents uncovered by its ESI search that contain information relating solely to other, "non-commercialized" testosterone products; and (2) search ESI for, and produce, data from clinical trials conducted to study other "non-commercialized" TRT products.

Dated: July 24, 2015

Respectfully submitted,

*/s/ Trent B. Miracle*
Trent B. Miracle
**SIMMONS HANLY CONROY**
One Court Street
Alton, IL 62002
Telephone: (618) 259-2222
Facsimile: (618) 259-2251
tmiracle@simmonsfirm.com

Ronald Johnson, Jr.
**SCHACHTER, HENDY & JOHNSON PSC**
909 Wrights Summit Parkway, Suite 210
Ft. Wright, KY 41011
Phone: (859) 578-4444
Fax: (859) 578-4440
rjohnson@pschachter.com

Christopher A. Seeger
**SEEGER WEISS LLP**
77 Water Street
New York, NY 10005

Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com
*Plaintiffs' Co-Lead Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2015, the foregoing document was filed via the Court's CM/ECF system, which will automatically serve and send email notification of such filing to all registered attorneys of record.

*/s/ Trent B. Miracle*