**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

IN RE: TESTOSTERONE REPLACEMENT        Case No. 1:14-CV-01748
THERAPY PRODUCTS LIABILITY
LITIGATION                                 MDL 2545

                                                    JUDGE MATTHEW F. KENNELLY

This Document Relates to All Cases

**ABBVIE'S SUBMISSION IN SUPPORT OF ENTRY OF**
**PROPOSED CASE MANAGEMENT ORDER REGARDING *EX PARTE***
**COMMUNICATIONS WITH PHYSICIANS**

## INTRODUCTION

The Plaintiffs' Steering Committee ("PSC") wants the right to have unfettered *ex parte* conversations with their clients' doctors before those doctors are deposed as critical fact witnesses in the bellwether cases.  AbbVie does not object to counsel for Plaintiffs discussing privately the care and treatment of individual patients and what is memorialized in the medical records.  But the PSC wants much more. The PSC wants the right to preview their litigation themes and strategies and coach doctors on potential deposition questions.  They also want to preview to doctors, without AbbVie being able to offer any contrary or balancing information, their own hand-selected sets of litigation-produced documents.  Their goal is to prime the doctors to the Plaintiffs' case and create "opinions" and "impressions" the doctors may have never had in the course of their treatment of the patient.  In fact, many of the documents the PSC would likely show doctors are internal to AbbVie and of a type that no physician would ever see or rely upon in the ordinary course of his medical practice.

Although the PSC invokes "physician-patient" privilege as the basis for its proposed order, their ask goes well beyond any rational public policy goal underlying this doctrine. On the contrary, it unfairly distorts the litigation process and has potentially dangerous public health implications as Plaintiffs' lawyers put themselves as direct advisors to doctors about risks and benefits of AbbVie's FDA-regulated medicine. Finally, it fails to recognize that AbbVie has its own independent customer relations with these physicians who prescribe its medicines and threatens to cause AbbVie undue and unfair reputational harm beyond just AndroGel.

As for the PSC's insistence that they, not AbbVie, also should have primary control over scheduling all physician depositions, their position has no basis in any notion of fairness or practicality.  Because Plaintiffs' counsel can speak to the doctors about Plaintiffs' medical care

1

on an *ex parte* basis, they have much less incentive to schedule these depositions than does AbbVie. If these depositions are to be taken promptly, both sides should be able to work to get them scheduled.

The Case Management Order[1] proposed by AbbVie, Inc. & Abbott Laboratories, Inc. (collectively "AbbVie"),[2] allows Plaintiffs' counsel to communicate with their clients' physicians on an *ex parte* basis regarding medical care and treatment issues. At the same time it protects the integrity of the discovery process by prohibiting improper "woodshedding"[3] on other issues, and allows both parties to schedule depositions promptly. AbbVie asks that it be entered by the Court.

## ARGUMENT

Federal Rule of Civil Procedure 26(d)(3) provides that the Court may sequence the timing of discovery "for the parties' and witnesses' convenience and in the interests of justice." Rule 16(c) also authorizes the Court to adopt "special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems," or to take actions that facilitate "in other ways the just, speedy, and inexpensive disposition of the action." Finally, the Court has "the inherent power . . . to deter abuse of the judicial process." *Armament Sys. & Procedures, Inc. v. Suncoast Merch. Corp.*, No. 02-cv-5310, 2004 U.S. Dist. LEXIS 11778 (N.D. Ill. June 24, 2004). The Court should use these powers and limit *ex parte* communications as proposed by AbbVie.

---

[1] *See* AbbVie's Proposed Case Management Order regarding *Ex Parte* Communications with Plaintiffs' Physicians ("AbbVie's Proposed CMO") (attached as Ex. 1).

[2] AbbVie was established in January 2013 as an independent, publicly traded company from the innovative pharmaceutical business of codefendant Abbott Laboratories, which no longer sells AndroGel in the United States.

[3] *See, e.g.*, *In re Ortho Evra Products Liability Litigation*, 2010 WL 320064 at *2 (N.D. Ohio Jan. 20, 2010) (defining and describing the process by which Plaintiffs seek to unfairly coach or prejudice a witness during *ex parte* communications as "woodshedding").

A. **AbbVie's Proposed Order Regarding *Ex Parte* Contacts Balances the Parties' Interests and Maintains the Integrity of the Discovery Process.**

Plaintiffs' treating physicians, especially those who prescribed AndroGel, are crucial non-party fact witnesses with important historical knowledge relevant in every bellwether case. The testimony of Plaintiffs' physicians concerning their knowledge of Plaintiffs' medical history, their prescribing decisions, and their understanding of the risks and benefits of AndroGel at the time they prescribed AbbVie's medicine has the potential to greatly impact individual trials. These treating doctors are not, however, the same as the plaintiffs' litigation experts. They are not being deposed to offer opinions formed during litigation or based only on information provided by lawyers meeting *ex parte* during litigation.[4] The goal of their depositions is and should be to get the doctors' best, most honest and unbiased recollection of events, opinions, and impressions formed during the course of treatment.[5]

Plaintiffs rely on the "physician-patient" privilege to justify their proposed rule that they should have unfettered *ex parte* access to physicians while AbbVie should be completely

---

[4]    Although it varies state to state, most jurisdictions limit the expert testimony a treating physician may give to those opinions that were developed during the care and treatment of a patient. Generally, when a treating physician bases his opinion on additional information beyond the scope of his care and treatment, the physician becomes an expert subject to expert disclosure rules. *See, e.g., Dozier v. Shapiro*, 199 Cal. App. 4th 1509, 1520-21 (Cal. Ct. App. 2011) ("[W]hen [a treating physician] receive[s] additional materials from counsel . . . to enable him to testify to opinions . . . on which he had formed no opinions in connection with his physician-patient relationship . . . his role was not that of a treating physician, but became that of a retained expert."); *Palmer v. The Doctors, PLLC*, 2014 WL 5786543, at *4 (Ky. Ct. App. Sep. 16, 2015) (holding that treating physician's opinions need not be disclosed when they were "formed based upon first-hand knowledge and observation during his treatment of" the plaintiff); *Duquette v. Superior Court In and For County of Maricopa*, 161 Ariz. 269, 271 n.2 (Ariz. 1989) ("A plaintiff's treating physician is not an 'expert witnesses' with the meaning of [the expert disclosure rules] because the facts known and opinions held by a treating physician are not 'acquired or developed in anticipation of litigation for trial.'"). The depositions of treating and prescribing doctors at this stage of the bellwether trial process, thus, should be approached as fact discovery.

[5]    This is even more important where, as here, the trials are intended to act as bellwethers for a much larger litigation. As discussed in the Manual for Complex Litigation, "[i]f individual trials, sometimes referred to as bellwether trials or test cases, are to produce reliable information about other mass tort cases, the specific plaintiffs and their claims should be representative of the range of cases." *Manual for Complex Litig.* § 22.315 (4th ed. 2004).

3

forbidden from contacting them.[6]  But different states have different rules regarding whether and to what extent a physician-patient privilege exists in the context of litigation where the plaintiff puts his own medical history and relations with his doctors squarely at issue.  Where the privilege exists, a defendant like AbbVie may be prohibited to a greater or lesser extent from contacting a Plaintiff's treating physicians on an *ex parte* basis.[7]  By the same token, many states have no such prohibition and AbbVie would be permitted to freely contact the physicians in those jurisdictions.[8]  Moreover, even where the privilege exists, the rationale that gave rise to it provides no justification to allow Plaintiffs' counsel to exercise undue influence on fact testimony unrelated to Plaintiffs' care and treatment.  "The privilege was never intended . . . to be used as a trial tactic by which a party entitled to invoke it may control to his advantage the timing and circumstances of the release of information he must inevitably see revealed at some time." *In re Chantix (Varenicline) Prods. Liab. Litig.*, 2011 WL 9995561, at *3 (quoting *Doe v. Eli Lilly & Co.*, 99 F.R.D. 126, 128 (D.D.C.1983)).

In the context of bellwether discovery in an MDL, AbbVie knows that it is not practicable to approach the privilege on a case-by-case or state-by-state basis.  At the same time, AbbVie is not prepared to let the PSC push the privilege beyond any rational, public policy goal and use it as a tool to exercise undue influence over fact testimony unrelated to Plaintiffs' care and treatment.  Moreover, AbbVie is not willing to entirely cede the process for communicating

---

[6]     *See* Plaintiffs' Proposed Case Management Order regarding *Ex Parte* Communications with Plaintiffs' Physicians ("Plaintiffs' Proposed CMO") (attached as Ex. 2)

[7]     *See, e.g.*, *Duquette v. Superior Court,* 778 P.2d 634, 637, 642 (Ariz. App. 1989) (no *ex parte* contact permitted); *State ex rel. Kitzmiller v. Henning*, 437 S.E.2d 452, 455 (W. Va. 1993) (same); *Samms v. District Court*, 908 P.2d 520, 526 (Colo. 1995) (*ex parte* interviews permissible only after notice to plaintiff and limited to medical matters waived by plaintiff in litigation).

[8]     *See, e.g.*, *Heller v. Norcal Mutual Insurance Co.*, 876 P.2d 999, 1005 (Cal. 1994) (permitting informal interviews provided counsel comply with the state's confidentiality of medical information act); *In re Collins*, 286 S.W.3d 911, 919-20 (Tex. 2009) (permitting *ex parte* contacts by defendants); *Stempler v. Speidell*, 495 A.2d 857, 864-65 (N.J. 1985) (same).

safety and risk information regarding its approved pharmaceutical medicine to the PSC. AndroGel remains on the market as an FDA approved medicine and is prescribed by doctors – including potentially treating physicians in this case. AbbVie's communications regarding the risks and benefits of AndroGel remain highly regulated as a matter of public health and safety. For Plaintiffs' lawyers to be in a position of exerting direct, unfettered, and largely undiscoverable influence over doctors' medical impressions is troubling, to say the least. So is the notion that such lawyers should be given unrestricted rights to taint AbbVie's customer relationships, not just with regard to AndroGel but also generally.

To address these issues, AbbVie has proposed an order that essentially assumes a privilege applies to all cases by giving Plaintiffs' counsel the right to have *ex parte* contacts with their client's doctors limited to their clients' medical care and treatment, and limiting AbbVie to contacts on ministerial and/or deposition scheduling issues. Specifically, AbbVie's proposed Case Management Order expressly permits Plaintiffs (and Plaintiffs' counsel) to engage in *ex parte* discussions consistent with the goals of a physician patient privilege, provided they do not:

> engage in *ex parte* discussions regarding liability issues or theories, product warnings, interactions with any defendant or its employees (including sales representatives), medical literature, the medical care, treatment decisions or opinions of other physicians not independently known by the Physician and/or part of the Physician's medical file, or any internal documents produced by any defendant in this litigation with any Physician.[9]

If AbbVie's proposal is adopted, Plaintiffs would be permitted to freely discuss the physician's care and treatment of Plaintiff as needed while avoiding ***only*** litigation specific issues. Moreover, Plaintiffs' counsel will still have the opportunity to show a prescribing physician litigation related documents should they so choose. They simply must do so in the context of an on-the-record proceeding and in the presence of AbbVie's counsel who can hear

---

[9]    *See* AbbVie's Proposed CMO at ¶ 2.

5

the characterization of company-related "facts," interpose appropriate objections and put any representations or characterizations of documents in their proper context during the course of the deposition.[10]  AbbVie's proposal provides a balanced approach that avoids any arguable interference with the patient-physician relationship while simultaneously protecting both parties from prejudice at the deposition or future court proceeding.

This Court is far from the first MDL to be faced with this issue.  In fact, the problem of "woodshedding" has been addressed by several pharmaceutical product liability MDLs.  For example, in *In re Ortho Evra Products Liability Litigation*, the Court noted its expectation that "capable and mature attorneys such as Plaintiffs' counsel will not act in a manner which would result in woodshedding or gaining an unfair advantage by ambush when engaged in *ex parte* contact with treating physicians" and that "[s]uch conduct w[ould] not be tolerated."  2010 WL 320064 at *2.  The Court then adopted the exact rule AbbVie seeks to employ here.  The Court held that "Plaintiffs' counsel may meet *ex parte* to discuss the physicians' records, course of treatment and related matters, but not as to liability issues or theories, product warnings, Defendant research documents or related materials. Violations of this approach, as stated above, will result in sanctions."  *Id.*

The Court in *In re Chantix (Varenicline) Products Liability Litigation* similarly held that plaintiffs' *ex parte* communications "are limited to the individual **care** of the individual plaintiffs, such as the plaintiffs' **treatment, medical records** and **conversations with their health care providers.**  Plaintiffs' counsel shall **not discuss defendant's internal documents** with plaintiffs' health care providers outside of a deposition or other on the record setting."  2011 WL 9995561, at *4 (emphasis in original).

---

[10]    *See* AbbVie's Proposed CMO at ¶ 3.

Many other Courts have taken similar approaches. *See, e.g.*, *In re Nuvaring Prods. Liab. Litig.*, 2009 WL 775442 (E.D. Mo. Mar. 20, 2009); Order, *In re Actos Prod. Liab. Cases*, LASC Case No. BC411687, (Mar. 20, 2015);[11] Order *In re Pelvic Mesh/Gynecare Litig.*, Dkt. No. ATL-L-6341-10 at 6-7 (N.J. Super. Ct. Dec. 3, 2013).[12]  Even courts that have allowed Plaintiffs' counsel to discuss litigation documents with Plaintiffs' physicians in advance of a deposition have placed important limitations on those contacts.  *See, e.g.*, *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, 2011 WL 9996459 at *2 (S.D. Ill. Mar. 4, 2011) (holding that "[d]ocuments provided to treating physicians during such *ex parte* communications may not contain notes, highlighting, underlining, Plaintiff supplied redactions or any other markings that modify the document or direct a reader's attention to a particular portion of the document" and that "[p]laintiffs must provide the Defendants precise designations, descriptions or copies of all documents provided to treating physicians during such *ex parte* communications at least 72 hours prior to the treating physician's deposition.").[13]

AbbVie's proposal tracks the approaches adopted by the *In re Ortho Evra* and *In re Chantix (Varenicline)* MDL Courts and is an appropriate compromise between the interests of the two parties.  Plaintiffs, including their counsel, retain the ability to speak freely with their physicians concerning their care and treatment and any medical issue they may be having.  AbbVie will refrain from contacting Plaintiffs' physicians in jurisdictions where such

---

[11]    Excerpts attached as Ex. 3.

[12]    Attached as Ex. 4.

[13]    Should the Court determine that Plaintiffs' counsel be permitted to discuss litigation matters with Plaintiffs' physicians in advance of the physician's deposition, at a minimum the documents shown should be disclosed to AbbVie in advance of the deposition.  The Court should also Order that AbbVie's counsel be allowed to question Plaintiffs' physicians first at their depositions, regardless of which party served the original deposition notice.  In this fashion the prejudice to AbbVie from Plaintiffs' woodshedding will be reduced as AbbVie will have an opportunity to place those documents in context prior to Plaintiffs' potentially biased direct examination.

communications are typically permitted. As a result, the physician witnesses will come into their deposition unbiased and neither party will gain an "unfair advantage by ambush." The Court should adopt AbbVie's proposal.

### B. AbbVie Should Be Permitted To Contact Physicians For The Purpose Of Scheduling Depositions.

Plaintiffs' Proposed Order also seeks to prohibit AbbVie from contacting physicians' offices for the exclusive purpose of scheduling until a seven day exclusive scheduling period has passed.[14] Such limitation serves no purpose apart from potentially delaying the scheduling of physician depositions. To be clear, AbbVie's counsel would not be directly communicating with physicians. Paralegals or other staff members would be contacting the physician's staff for the exclusive purpose of scheduling and no lawyers would be involved in those communications.[15] Furthermore, AbbVie's interest in scheduling and completing these depositions is far greater than Plaintiffs' because unlike Plaintiffs, AbbVie will ***only*** be permitted to discuss the physicians' care and treatment at their deposition. The Court should reject Plaintiffs' unnecessary limitation and permit parties equal ability to contact physician's offices for the purpose of scheduling to ensure that they are scheduled as efficiently as possible.[16]

---

[14] Plaintiffs' Proposed CMO at ¶ 4.

[15] The PSC understands this and are not seriously concerned about AbbVie using scheduling as a means to improperly influence physicians, otherwise they would not agree to any contact at all as opposed to proposing their arbitrary seven day waiting period.

[16] AbbVie believes both parties should be free to contact the physicians for purposes of scheduling freely. However, AbbVie has proposed a compromise solution to the PSC where the parties would divide the scheduling in half on a random basis and allow each side a seven day exclusive scheduling period for their physicians.

**CONCLUSION**

For the foregoing reasons, AbbVie requests the Court adopt its proposed Case Management Order regarding *ex parte* communications and reject Plaintiffs' counter-proposal.

Dated: January 25, 2016                                      Respectfully submitted,

                                                    By:    */s / David M. Bernick*
                                                           David M. Bernick
                                                           DECHERT LLP
                                                           1095 Avenue of the Americas
                                                           New York, NY 10036-6797
                                                           Tel: (212) 698-3500
                                                           Fax: (212) 698-3599
                                                           david.bernick@dechert.com

                                                           Hope S. Freiwald
                                                           DECHERT LLP
                                                           2929 Arch St., Cira Centre
                                                           Philadelphia, PA 19104-2808
                                                           Tel: (215) 994-2514
                                                           Fax: (215) 655-2514
                                                           hope.freiwald@dechert.com

                                                           ***Attorneys for AbbVie Inc. and
                                                           Abbott Laboratories***

## <u>CERTIFICATE OF SERVICE</u>

I, Christopher R. Boisvert, hereby certify that on January 25, 2016, the foregoing document was filed via the Court's CM/ECF system, which will automatically serve and send email notification of such filing to all registered attorneys of record.

*/s/ Christopher R. Boisvert*