IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION | ) ) ) ) | Case No. 14 C 1748  MDL No. 2545 |
| This document relates to all cases | ) | |

CASE MANAGEMENT ORDER NO. 27
(CONTACT WITH PLAINTIFFS' TREATING PHYSICIANS)

MATTHEW F. KENNELLY, District Judge:

Defendant AbbVie has asked the Court to impose restrictions on pre-deposition contacts between both plaintiffs' and defendants' counsel and the physicians who treated or prescribed medications for plaintiffs. Plaintiffs oppose AbbVie's request.

In the motion and briefs it has filed with the Court on this issue, AbbVie has referred to pre-deposition contacts between counsel and the physicians as "*ex parte* contacts." Plaintiffs have adopted the same terminology in their response to AbbVie's request. The Court will not do so. The term "*ex parte* contact" may be literally correct, but it carries a pejorative connotation that is unfairly applied to activity that, when done appropriately, is part of what good trial lawyers do, and should do, in representing their clients.

In a typical case, there are no restrictions on a party's contacts with a fact witness—which is what the treating physicians are—prior to the witness's deposition. Either side's counsel may interview the witness and prepare him or her for the deposition by previewing the questions that may be asked, reviewing relevant documents, and so on. There is nothing at all improper about this. Indeed, adequate

witness preparation is a key element of good trial (and deposition) preparation.  The law recognizes this:  the pattern jury instructions adopted in this circuit for both civil and criminal cases include standard instructions advising juries that "[i]t is proper for a lawyer to meet with any witness in preparation for trial."  Fed. Civil Jury Instr. of the 7th Cir. 1.16; Pattern Crim. Jury Instr. of the 7th Cir. 3.02.  In short, in the usual situation there is no prohibition on pre-deposition or pre-testimony contacts between a lawyer and the ordinary fact witness.

 Rights can, of course, be abused.  Lawyers sometimes mislead or attempt to exert improper influence over witnesses while ostensibly preparing them to testify.  But the fact that abuses are possible is not grounds to prohibit otherwise appropriate witness preparation.  Rather, the law deals with such abuses in other ways:  the opposing party may question the witness about his contacts with the other side to shed light on improper attempts to influence or mislead; may, with some limitations, obtain discovery regarding those contacts; and may, if the circumstances warrant, seek sanctions.

 All of that said, some limited categories of fact witnesses are treated differently.  These include treating physicians, at least in some states.  Specifically, some states, including Illinois, prohibit a defendant's attorney from conferring with the plaintiff's treating physician unless the plaintiff's representative is also present—which in practical terms means that the defendant's attorney may question the physician only at a deposition or at trial.  The rationale for this is that communications between a defendant's attorney and the plaintiff's treating physician may jeopardize the confidential and fiduciary nature of the physician-patient relationship.  *See, e.g., Petrillo v. Syntex*

*Labs., Inc.*, 148 Ill. App. 3d 581, 588, 499 N.E.2d 952, 957 (1986). But even though some states restrict defense-to-physician communications, the Court is unaware of, and AbbVie has not identified, any such state that takes the step advocated by AbbVie here: imposition of a parallel prohibition (or some other form of restriction) on the plaintiff's attorney.

The plaintiffs in the bellwether cases in this multidistrict litigation hale from nineteen states. By AbbVie's calculation, roughly eight of the nineteen prohibit any contact between defense counsel and the plaintiff's treating physicians, and the other eleven permit varying degrees of contact under circumstances that vary from state to state. AbbVie says that because the law of multiple states is implicated, determining the precise and proper degree of contact permissible for each treating physician in each bellwether case would be cumbersome, and it would not be practical for the Court to police the process.

AbbVie says that it is willing to forego pre-deposition interviews of plaintiffs' treating and/or prescribing physicians, except as needed to schedule depositions and conduct ministerial tasks. In return, however, it asks the Court to significantly circumscribe pre-deposition communications with the physicians by plaintiffs' counsel. AbbVie argues that plaintiffs' counsel's pre-deposition communications with prescribing and treating physicians should be strictly limited to the subjects of plaintiffs' treatment, medical records, and conversations with their health care providers. AbbVie contends that the Court should bar plaintiffs' counsel from communications with the physicians

> regarding liability issues or theories, product warnings, interactions with any defendant or its employees (including sales representatives), medical literature, the medical care, treatment decisions or opinions of other physicians not independently known by the Physician and/or a part of the

3

> Physician's medical file, or any internal documents produced by any defendant in this litigation with any Physician. Similarly, counsel for any plaintiff in any case pending in the TRT MDL shall not show, display, or otherwise provide to any Physician a copy of any internal documents produced by any defendant in this litigation, except as provided . . . .

Defs.' Ex. 1, dkt. no. 1143-1, ¶ 2.

AbbVie says that unless the Court imposes substantial limitations on the plaintiffs' discussions with physicians, plaintiffs' counsel will engage in what AbbVie refers to as "woodshedding," that is, manipulating the physicians' recollections of events and tainting their eventual deposition testimony. It cites a number of cases in which restrictions similar to this have been imposed, including *In re Chantix (Varenicline) Prods. Liab. Litig.*, MDL No. 2092, No. 2:09–CV–2039–IPJ, 2011 WL 9995561 (N.D. Ala. June 30, 2011), *In re Ortho Evra Prods. Liab. Litig.*, MDL No. 1742, No. 1:06–40000, 2010 WL 320064 (N.D. Ohio Jan. 20, 2010), and *In re NuvaRing Prods. Liab. Litig.*, No. 4:08MD1964 RWS, 2009 WL 775442 (E.D. Mo. Mar. 20, 2009).

The Court is unpersuaded by AbbVie's contentions. As plaintiffs correctly note, no statute or established rule requires or even counsels in favor of these sorts of restrictions. AbbVie contends that it is fair and appropriate to impose parallel restrictions on plaintiffs' counsel in return for AbbVie's agreement not to have pre-deposition contacts with the physicians. The short answer to this, however, is that plaintiffs have not asked the Court to restrict AbbVie's conduct at all beyond the restrictions that state law already imposes.[1] The Court sees no proper basis to permit

---

[1] In its opening brief, AbbVie cited Illinois law restricting defense communications with plaintiffs' treating physicians in a way that suggested that it was contending that Illinois law would govern in all of the bellwether cases. That is not the case. As another court in this district has observed, the governing law is determined by the choice-of-law rules of each suit's underlying forum state, which typically provide that the applicable law is

4

AbbVie to leverage a voluntary undertaking on its part into an imposed restriction on otherwise permissible actions by plaintiffs' counsel.

In declining to impose the restrictions sought by AbbVie, the Court finds itself in agreement with those courts in MDL litigation that have similarly declined to preclude plaintiffs' attorneys from unsupervised pre-deposition contacts with their clients' treating physicians. *See, e.g., In re E.I. Du Pont de Nemours & Co. C-8 Pers. Injury Litig.*, No. 2:13-MD-2433 (S.D. Ohio May 16, 2014); *In re C.R. Bard, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:10-md-2187, Pretrial Order No. 48, (S.D.W. Va. Aug. 3, 2012); *In re Kugel Mesh Hernia Repair Patch Litig.*, No. 07-1842ML, slip op. at 3 (D.R.I. Jan. 12, 2012); *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 230 F.R.D. 473 (E.D. La. 2005).

There is nothing un-evenhanded about this approach. The Court is simply relying on the restrictions, or the absence thereof, imposed by state laws and precedents that are aimed at protecting the physician-patient relationship. And as Judge Eldon Fallon aptly noted in the *Vioxx* case, this "does not leave the Defendants without any access to information":

> The Defendants still are entitled to all of the medical records of the Plaintiffs as well as the Plaintiff [Fact Sheets] setting forth each Plaintiff's detailed medical history. The Defendants can also continue to exercise their right to depose the Plaintiffs' treating physicians or confer with them in the presence of Plaintiffs' counsel. Furthermore, as a practical matter, the Defendants already have information, including documentation, regarding what its representatives told the treating physicians about [the Defendants' products].

*In re Vioxx*, 230 F.R.D. at 477.

In addition, defendants will, of course, be free to explore with the physicians

---

the law of the state where the plaintiff received treatment from the physician. *See In re Zimmer NexGen Knee Implant Prods. Liab. Litig.*, 890 F. Supp. 2d 896, 901–04 (N.D. Ill. 2012).

5

during their depositions, and at trial if appropriate, the nature of their pre-deposition contacts with plaintiffs' attorneys. The Court will facilitate this by ordering disclosure of such communications prior to each physician's deposition. Specifically, plaintiffs' counsel will be required to document the following regarding any pre-deposition communications they have with the treating physicians, other than communications that involve obtaining production of the physician's records or scheduling of the physician's deposition: the date of the communication, its means (in person, by telephone, by e-mail, etc.), its approximate duration, the participants, and the identity of any documents or electronically stored information (as that term is used in Federal Rule of Civil Procedure 34) shown, provided, or described to the physician in connection with the communication. *See generally In re Kugel Mesh, supra*, slip op. at 3-4. This information must be produced in full to defense counsel no less than 48 hours prior to the start of the physician's deposition. The Court declines to impose AbbVie's proposed restrictions on directing the physician's attention to particular portions of a document or showing the physician highlighted, underscored, marked-up, or redacted versions of documents. The former is an undue restriction on appropriate witness preparation, and the latter is unnecessary, because plaintiffs' counsel will be required to produce with their pre-deposition disclosures the materials they showed, provided, or described to the physician, including any highlighting, underscoring, tabbing, markings, and redactions.

      The Court rejects AbbVIe's request, made in its reply brief, to permit it to examine each treating physician first, irrespective of which party served the deposition notice. As the Court has stated, disclosure of plaintiffs' counsel's pre-deposition contacts, combined with the opportunity to cross-examine, is sufficient to allow appropriate

determination of the weight to be given to a physician's testimony.

The parties have also unable been to agree on how physicians' depositions should be scheduled. The Court rules that either party may contact a treating physician directly, and unsupervised, to arrange for scheduling of the physician's deposition. The Court declines plaintiffs' request for a one-week exclusive period to make contact for this purpose and for further exclusivity after one week if plaintiffs have a "reasonable reason" for inability to set a date within that period. As AbbVie correctly points out, the proposed standard is somewhat vague. The Court is confident that counsel on both sides will act professionally in scheduling physicians' depositions. It does not intend to police that process unless and until its expectations are shown to be unwarranted.

Finally, nothing in this order is intended to preempt the Rules regarding expert discovery. To the extent a party retains or uses any physician as an expert, the applicable Rules of Civil Procedure regarding expert disclosure and discovery will apply. Further, nothing in this order precludes defendants from retaining as an expert a physician who may have treated a plaintiff who has filed a lawsuit against any of the defendants, provided that defendants do not discuss with the physician any matters related to any such plaintiff. Defendants will not use a treating physician as a consulting or testifying expert in a particular case in which a current or former patient of the physician is a plaintiff.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 7, 2016