IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re Testosterone Replacement | ) | |
| Therapy Products Liability Litigation | ) | No. 14 C 1748 |
| Coordinated Pretrial Proceedings | ) | MDL No. 2545 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The plaintiffs in this multidistrict litigation proceeding (MDL) allege that they suffered injuries caused by defendants' testosterone replacement therapy (TRT) drugs. Defendant Besins Healthcare, S.A. (Besins) is a Belgian corporation that manufacturers AndroGel, one of the TRT drugs at issue in the MDL. Besins moved to dismiss all claims against it for lack of personal jurisdiction, arguing that it lacks the requisite minimum contacts with any United States forum because it manufactures AndroGel in France and does not, itself, engage in any marketing or sale of the drug within the United States. In September 2015, the Court deferred ruling on Besins' motion to allow the parties to engage in limited discovery related to personal jurisdiction. *See In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proceedings ("In re TRT")*, 136 F. Supp. 3d 968, 976 (N.D. Ill. 2015). The Court concluded that plaintiffs' allegations regarding a high volume of AndroGel sales in the United States, as well as Besins' intention to sell AndroGel throughout the country, were too general to establish personal jurisdiction. But the Court determined that those allegations did present a "colorable" showing of jurisdiction, warranting further discovery. *Id.*

Discovery did not reveal any information about the volume of AndroGel sales in particular states or about attempts by Besins or its distributor to target particular states

for marketing or sales.  Plaintiffs have, however, produced evidence that AndroGel sales in the United States have been substantial.  Over the course of more than 16 years, billions of dollars worth of AndroGel has been sold nationwide, and Besins' revenues from United States AndroGel sales exceed $600 million.  In addition, though Besins does not appear to have considerable influence or control over sales and marketing, its employees receive periodic updates about the United States market for AndroGel and about sales and marketing generally.

Following discovery, plaintiffs submitted a supplemental brief opposing Besins' motion to dismiss, and Besins filed its own supplemental brief in response.  For the reasons discussed below, plaintiffs' new evidence is sufficient to establish a *prima facie* case of personal jurisdiction, and the Court therefore denies Besins' motion to dismiss.

**Discussion**

To establish that this Court has personal jurisdiction over Besins in this MDL proceeding, plaintiffs bear the burden of showing that the transferor courts where their cases originated would have personal jurisdiction over Besins.  *See In re TRT*, 136 F. Supp. 3d at 973.  Besins does not argue that state law in any of the transferor forums precludes jurisdiction.  Rather, as it did prior to discovery, Besins confines its jurisdictional argument to the contention that exercising jurisdiction would not comport with due process because plaintiffs have not shown that Besins had sufficient minimum contacts with any of the states in which the transferor courts sit.  Plaintiffs, for their part, again respond that Besins' suit-related conduct is sufficiently connected to those forum states to allow courts in those states—and therefore this Court—to exercise specific jurisdiction over Besins.  *See id.* at 973–74 (discussing difference between specific and

2

general personal jurisdiction). In the absence of a jurisdictional evidentiary hearing (and none has been requested in this case), plaintiffs need only make out a *prima facie* case that jurisdiction exists. *Id.* at 973.

The specific jurisdiction inquiry, as Besins emphasizes, is forum-specific, and the exercise of specific jurisdiction is proper only if the "defendant's suit-related conduct . . . create[s] a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). As a general rule, for the exercise of personal jurisdiction to be proper, "there [must] be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 254 (1958). In the products liability context, the Supreme Court has also determined that courts may properly exercise jurisdiction over a foreign corporation where the foreign defendant "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980). But following *World-Wide Volkswagen*, the Supreme Court has struggled to reach consensus about what constitutes "purposeful availment" in cases where a foreign defendant places its products into the stream of commerce.

The Court grappled with that issue in *Asahi Metal Industry Co. v. Superior Court of California, Solano County*, 480 U.S. 102 (1987), where a plaintiff who was injured in a motorcycle accident in California brought suit in California state court against the Japanese manufacturer of his allegedly defective motorcycle tires. Though the Court unanimously agreed that the California court lacked jurisdiction over the foreign manufacturer, the case produced competing formulations of the appropriate test for

purposeful availment in stream-of-commerce cases, and none of the formulations gained the support of a majority of the justices. Justice O'Connor, joined by three other justices, reasoned that "placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Id.* at 112. Under Justice O'Connor's approach, a court may exercise jurisdiction in such circumstances only if the defendant has engaged in some "additional conduct" indicating an intent to serve the market in the forum state, such as state-specific design, advertising, communication, or distribution agreements. *Id.*

A majority of the justices in *Asahi* did not endorse Justice O'Connor's proposed approach, however. Justice Brennan, whose concurring opinion was also joined by three other justices, rejected the notion that "additional conduct" was necessary to establish a defendant's purposeful availment of the forum state's market. *Id.* at 116 (Brennan, J., concurring in part and concurring in judgment). Instead, under his approach, a participant in the stream of commerce—that is, in "the regular and anticipated flow of products from manufacture to distribution to retail sale"—is properly subject to jurisdiction as long as that participant is "aware that the final product is being marketed in the forum State." *Id.* at 117. Justice Stevens, for his part, believed it was unnecessary to articulate a test for "purposeful availment," concluding that the case before the Court could be decided on the basis that exercising jurisdiction under the circumstances would be "unreasonable and unfair." *Id.* at 122 (Stevens, J., concurring in part and concurring in judgment). Yet, in a concurring opinion joined by two other justices, Justice Stevens still offered his opinion that whether a defendant's conduct rises to the level of purposeful availment will be affected by "the volume, the value, and

4

the hazardous character of the components" being placed into the stream of commerce. *Id.* Thus Justice Stevens "would be inclined to conclude that a regular course of dealing that results in a deliveries of over 100,000 units annually over a period of several years would constitute 'purposeful availment'" of the forum's market. *Id.*

Following *Asahi*, some circuit courts decided to adopt one of Justice O'Connor's or Justice Brennan's competing approaches. *See, e.g.*, *Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 614 (8th Cir. 1994) (adopting an approach consistent with Justice Brennan's opinion); *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 480 (6th Cir. 2003) (adopting Justice O'Connor's "stream of commerce 'plus'" approach). Other circuits have declined to adopt either approach. *See, e.g.*, *Pennzoil Prod. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 207 (3d Cir. 1998) (applying both Justice O'Connor's and Justice Brennan's standards, without choosing between them). In the Seventh Circuit, the court has said that it would continue applying the "more permissive stream of commerce theory," instead of Justice O'Connor's "more stringent" test, because a majority of the Supreme Court has not rejected the more permissive approach. *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 947 (7th Cir. 1992). In a more recent opinion, however, the Seventh Circuit expressly declined to resolve the question of "whether a plaintiff making a stream-of-commerce argument needs to make an additional showing that the defendant purposefully directed its business activities toward the forum state." *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 552 (7th Cir. 2004).

In *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011), the Supreme Court had the opportunity to revisit the issue of the appropriate test to apply in

conducting the stream-of-commerce analysis. But, as in *Asahi*, no opinion in *Nicastro* commanded a majority of the justices. The defendant in *Nicastro* was a British corporation that manufactured scrap metal machines in England and sold them throughout the United States via an independent distributor. *Id.* at 878. The plaintiff in that case injured his hand while using one of the machines in New Jersey, and he brought suit in New Jersey state court. *Id.* Though no more than four of the defendant's machines—and possibly only one—ended up in New Jersey, the New Jersey Supreme Court ultimately ruled that jurisdiction was proper under the "stream-of-commerce doctrine" because (1) the injury occurred in New Jersey, (2) the defendant knew or reasonably should have known that distributing its products through a nationwide distribution system might lead to those products being sold in any of the fifty states, and (3) the defendant took no steps to prevent distribution of its products in New Jersey. *Id.* at 879. The Court reversed the judgment of the New Jersey Supreme Court. Writing for a plurality of the Court, Justice Kennedy denied that a personal jurisdiction rule "based on general notions of fairness and foreseeability" could be consistent with "the premises of lawful judicial power." *Id.* at 883. Justice Kennedy thus rejected the New Jersey Supreme Court's stream-of-commerce analysis, as well as Justice Brennan's approach in *Asahi*. *Id.* According to Justice Kennedy, the "authority to subject a defendant to judgment depends on purposeful availment, consistent with Justice O'Connor's opinion in *Asahi*." *Id.* at 885.

Because a majority of the justices did not support Justice Kennedy's opinion, it is not controlling. Rather, Justice Breyer's narrow concurrence provides the Court's holding in *Nicastro*. *See In re TRT*, 136 F. Supp. 3d at 975 n.1. In that concurrence,

6

joined by Justice Alito, Justice Breyer declined to endorse any of the separate opinions from *Asahi*. *See Nicastro*, 564 U.S. at 889 (Breyer, J., concurring in judgment). In Justice Breyer's view, the "single isolated sale" in New Jersey would be an insufficient basis for jurisdiction under any of the *Asahi* opinions. *Id.* at 888–889. Jurisdiction would be improper under the approaches of Justice Brennan and Justice Stevens, he explained, because the record showed no "regular . . . flow of products," *Asahi*, 480 U.S. at 117 (Brennan, J., concurring in part and concurring in judgment), and no "regular course" of sales, *id.* at 122 (Stevens, J., concurring in part and concurring in judgment), in New Jersey. *Nicastro*, 564 U.S. at 889 (Breyer, J., concurring in judgment). And the record revealed "no 'something more,' such as special state-related design, advertising, advice, marketing, or anything else," as would be required under Justice O'Connor's approach. *Id.* Justice Breyer's narrow holding thus makes clear that "at a minimum, a plaintiff trying to establish jurisdiction over a foreign corporation must show a 'regular flow or regular course of sales' in the forum state, or some additional efforts directed toward the forum state." *Williams v. Romarm, SA*, 756 F.3d 777, 785 (D.C. Cir. 2014). But apart from this clarification, as the Federal Circuit has explained, "the crux of Justice Breyer's concurrence was that the Supreme Court's framework applying the stream-of-commerce theory—including the conflicting articulations of that theory in *Asahi*—had not changed . . . ." *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1363 (Fed. Cir. 2012). The Federal Circuit concluded, therefore, that it must continue to apply its own precedents after *Nicastro*. *Id.* at 1364.

As indicated above, the Seventh Circuit has not taken a position on the appropriate stream-of-commerce test, except to the extent that the court in *Dehmlow*

7

indicated that it would continue applying Justice Brennan's "more permissive" stream-of-commerce approach until a majority of the Supreme Court rejected it. *See Dehmlow*, 963 F.2d at 947. Thus both *Nicastro* and Seventh Circuit precedent leave open the possibility that a foreign manufacturer, who places its product into the stream of commerce in the United States, may be subject to jurisdiction in a state where that product causes an injury and where there is a regular flow of its product or regular course of sales in that state.

Based on the evidence plaintiffs have presented in this case, the Court concludes that plaintiffs have made a *prima facie* showing that Besins purposefully availed itself of the privilege of conducting activities in each of the forum states at issue. Plaintiffs' discovery revealed that AndroGel has been sold in the United States for over sixteen years, with over $4 billion in net sales in the country between 2011 and mid-2015. Besins itself has received over $600 million in AndroGel royalty payments from sales in the United States. Such a high volume of sales over many years is a far cry from the "isolated sale" at issue in *Nicastro*. *Nicastro*, 564 U.S. at 888 (Breyer, J., concurring in judgment). From these figures, as well as from plaintiffs' evidence that Besins employees received regular updates on the United States market and sales of AndroGel, the Court can reasonably infer that Besins knew that a regular and significant flow of the AndroGel it manufactured would end up in each of the forum states. Such an inference is sufficient to support plaintiffs' *prima facie* case for jurisdiction in this case.

Besins argues that a large volume of *national* sales is insufficient to establish that there was a regular flow in plaintiffs' particular forum states. *See Fleming v. Janssen*

*Pharm., Inc.*, No. 2:15-CV-02799-JPM-dkv, 2016 WL 3180299, at *4 (W.D. Tenn. May 6, 2016). And it is true that the Court's earlier ruling anticipated that discovery might reveal the volume of AndroGel sales in each particular forum state. *See In re TRT*, 136 F. Supp. 3d at 976. Plaintiffs report, however, that they requested both state-specific sales data and regional compilations of sales data from Besins, but Besins argued that sales data compilations were beyond the scope of the court-ordered discovery and that, in any event, it did not maintain any state-specific sales data. It would be manifestly unfair to allow Besins to defeat jurisdiction on the basis of missing state-specific data to which Besins has considerably easier access than plaintiffs. That aside, the very high volume of national sales for a non-state-specific product that was marketed nationwide supports a strong inference that significant amounts of AndroGel were sold in each of the forum states. Besins has not produced any evidence that would tend to rebut that inference.

In arguing against the exercise of jurisdiction, Besins relies on a number of cases that are inapplicable to the facts in this case. Besins maintains that "[f]ollowing *Nicastro*, courts in the Seventh Circuit also have held that contacts through a third party are insufficient to confer jurisdiction." Besins Supp. Br. at 6. But one of the cases cited in support of that claim expressly states that "*Nicastro* does not stand for the proposition that if a defendant places goods into the stream of commerce via a third-party distributor who causes those goods to be sold in [the forum state], it can never be subject to personal jurisdiction in [the forum state]." *Appjigger GmbH v. Blu Prod., Inc.*, No. 14 C 9650, 2015 WL 3463413, at *5 (N.D. Ill. May 29, 2015). The court in *Appjigger*, for example, found that jurisdiction was lacking on the basis of a "scant" record that did not

9

support the plaintiff's contention that the defendants knew their products would end up in the forum state. *Id.* at *6. As discussed above, plaintiffs' evidence—the sales figures, in particular—does support an inference of knowledge in this case.

Besins also relies on two trademark infringement cases, which have limited applicability to this case. The Seventh Circuit's opinion in *Advanced Tactical Ordinance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014), which Besins cites, emphasized that the relationship between the defendant and the forum must arise out of contacts the defendant *himself* creates with the forum. But the court emphasized that point in ruling that a defendant's trademark-infringing activities outside of Indiana could not create a connection with Indiana merely because the defendant knew its activities would harm the plaintiff, an Indiana company. *Id.* Thus the court took no position at all on the extent to which a defendant manufacturer could create a connection with a forum state by distributing its products *to the forum state* through a third party. Besins also points to this Court's statement in *Eco Pro Painting, LLC v. Sherwin-Williams Co.*, 807 F. Supp. 2d 732, 737 (N.D. Ill. 2011) (Kennelly, J.), that "[a]s a general rule, personal jurisdiction does not exist over a licensor by virtue of its status if it does not exercise control over the licensee's sales activities and has no dealings with the licensee beyond the receipt of royalty income." But *Eco Pro Painting* involved a trademark license, and the Court in that case addressed the question of whether a trademark licensee's contacts could be imputed to the trademark's licensor. *Id.* Plaintiffs in this case do not contend that jurisdiction exists "by virtue of Besins' status" as a licensor of AndroGel, but rather by virtue of its manufacturing a product for nationwide distribution within the United States. The Court's general statement about

10

the exercise of personal jurisdiction over trademark licensors in *Eco Pro Painting* is thus not relevant to the stream-of-commerce analysis in this products liability case.

In addition to the cases discussed above, Besins points to two statements from other district courts in support of its argument, but neither provides a reason for the Court to alter its conclusion that jurisdiction is proper in this case. Besins cites the court's conclusion in *Shrum v. Big Lots Stores, Inc.*, No. 3:14-CV-03135-CSBDGB, 2014 WL 6888446, at *5 (C.D. Ill. Dec. 8, 2014), that minimum contacts with a forum cannot be established entirely through a third-party distributor's "unilateral actions." But in that case, the defendant was the tester—not the manufacturer—of the product at issue. *Id.* at *2. Thus the defendant had not entered into a distribution agreement, and so the distributor's actions truly were "unilateral" vis-à-vis the defendant. The same cannot be said in this case, where Besins contracted with the third-party distributor to have its products marketed and sold nationwide. Besins also relies on a statement from another court in this district that "there is a difference between a corporation's targeting of a forum State and its indifference as to where a distributor ultimately sends it." *Tile Unlimited, Inc. v. Blanke Corp.*, 47 F. Supp. 3d 750, 758 (N.D. Ill. 2014). That statement from *Tile*, however, is drawn from that court's express attempt to paraphrase or explain a quotation from Justice Kennedy's plurality opinion in *Nicastro*. As the Court has already discussed, that opinion did not garner a majority and does not control the outcome in this case. It seems likely that a foreign manufacturer of a nationally distributed product would want its product to be sold in all states and thus would be indifferent about where a distributor ultimately sends its product. But as discussed above, the evidence in this case supports an inference that Besins knew and intended

that its products would be sold in each of the forum states. Plaintiffs have, therefore, established a *prima facie* case for exercising personal jurisdiction over Besins in this proceeding.

## Conclusion

For the reasons stated above, the Court denies Besins' motion to dismiss [dkt. no. 876]

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 10, 2016