IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | Case No. 14-cv-1748 MDL No. 2545 <br><br> This document relates to: all actions |

### CASE MANAGEMENT ORDER NO. 43
**(AbbVie *Lone Pine* motion – preliminary order)**

As described below, the Court partially denies without prejudice AbbVie's motion to amend the case management order and takes the remainder of the motion under advisement, to be addressed at the April 13, 2017 case management conference.

### STATEMENT

Currently, Case Management Order (CMO) No. 9 requires plaintiffs to complete and serve a plaintiff's fact sheet (PFS) that provides information about the plaintiff's medical history, history of testosterone replacement therapy (TRT) treatment, and medical providers. Defendants AbbVie Inc. and Abbott Laboratories have moved the Court to amend CMO No. 9 (or, perhaps, to enter a separate order) to impose more stringent requirements. Specifically, AbbVie asks the Court to require each plaintiff to:

- regularly update his PFS to ensure its accuracy and completeness;
- demonstrate, with relevant records, product usage and the injuries claimed; and
- serve a certification from a treating physician or medical expert attesting to and supporting an opinion that the plaintiff has suffered an injury caused by the defendant's product.

In support of its request, AbbVie cites the fact that six cases were removed from the 34-case AbbVie bellwether pool when it became apparent that, contrary to disclosures on the plaintiff's PFS, the plaintiff had used other TRT products besides AbbVie's. AbbVie also cites the fact that one of the bellwether trial cases was dropped shortly before expert reports were due based on the plaintiff's inability to obtain supporting expert testimony. AbbVie also contends that plaintiffs are "parking" cases

"that might be of questionable merit or value" and that the Court should, in essence, put a stop to this by imposing the more stringent disclosure requirements. Motion [dkt. no. 1829] at 9.

The Court currently has under advisement extensive summary judgment and *Daubert* motions filed by AbbVie which address, among other things, the issue of causation in connection with the seven remaining AbbVie bellwether trials. AbbVie has described these motions as raising what its counsel refers to as "cross-cutting" issues, i.e., issues that will affect numerous cases in this MDL in addition to the seven bellwether trial cases. If this is correct, there is good reason to believe that the Court's rulings on these motions will provide significant information that will guide further proceedings in the MDL proceedings and that will have an impact on non-bellwether cases. The motions are, however, extensive; the briefs total something like 800 pages in the aggregate. The Court is nowhere near ruling on them and, in fact, does not even have any preliminary views, because the motions became fully briefed only yesterday, the same day AbbVie filed the present motion.

The Court acknowledges that there may be an appropriate basis to enhance the PFS process to require further supplementation, much as Rule 26(a)(1) disclosures and other discovery responses must be supplemented in a timely manner. *See* Fed. R. Civ. P. 26(e)(1)(A). The PFS currently requires supplementation if additional information or documents become known after it is served, *see* CMO No. 9, Ex. A, p. 1, but it may be appropriate to consider enhancing this requirement by imposing additional affirmative obligations on plaintiff and counsel. In addition, the PFS currently requires production of certain medical records, but it may be appropriate to consider imposing additional affirmative obligations here as well, regarding obtaining and producing records concerning particular issues. The plaintiffs' steering committee should be prepared to address these points at the April 13, 2017 case management conference.

The Court believes, however, that imposing an expert-certification requirement on the MDL as a whole is premature at this point. In the single instance cited by AbbVie where one of the eight bellwether cases was dismissed just before the expert disclosure date due to the plaintiff's inability to obtain an expert, the plaintiffs' steering

committee had advised AbbVie's counsel far earlier that this was likely and had, in fact, suggested that the case *not* be chosen for a bellwether trial. The Court says this not to minimize the concern raised by AbbVie but rather to put it in context. At this point, the Court does not believe that it should, in essence, move up the Rule 26(a)(2) disclosure process (or part of it) to the outset of each newly-filed member case or to impose it on a short-term basis in all of the thousands of cases currently on file, which were *deliberately* placed on hold pending the bellwether process to avoid imposing undue burdens on AbbVie, the plaintiffs, and the Court. The Court thus overrules AbbVie's request in this particular respect. This is, however, without prejudice to reconsideration of the issue after the Court rules upon the pending summary judgment motions (or, perhaps, after one or two bellwether trials, which are set for June and July 2017).

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 11, 2017