**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **In re: Testosterone Replacement Therapy Products Liability Litigation Coordinated Pretrial Proceedings** | ) ) ) ) | **No. 14 C 1748** |
| **This Document relates to all cases and to:** | ) ) ) | **MDL No. 2545** |
| ***Konrad v. AbbVie, Inc.*, Case No. 15 C 966 &** ***Mitchell v. AbbVie, Inc.*, Case No. 14 C 9178** | ) ) ) | |

**CASE MANAGEMENT ORDER NO. 60
(Rulings regarding punitive damages bifurcation and admissibility
of fact testimony from witnesses designated as experts by AbbVie)**

Because of questions that arose during the final pretrial conference in the *Konrad*

and *Mitchell* cases (Case Nos. 15-cv-966 and 14-cv-9178), the Court directed plaintiffs

to submit proffers regarding their proposed evidence relating to punitive damages and

on deposition testimony from two witnesses AbbVie designated as testifying experts but

does not intend to call as witnesses in the first two bellwether trials. AbbVie has

responded to those proffers.

**1.      Bifurcation of punitive damages issues**

Regarding punitive damages, the Court has already ruled that a reasonable jury

could find AbbVie's conduct "sufficiently willful or outrageous to support a claim for

punitive damages." *In re Testosterone Replacement Therapy Prod. Liab. Litig.*

*Coordinated Pretrial Proceedings*, No. 14 C 1748, 2017 WL 1836435, at *22 (N.D. Ill.

May 8, 2017). The purpose of the parties' proffers was to enable the Court to determine

whether it should bifurcate the question of punitive damages from the remainder of the

trials.

1

In their submissions, both plaintiffs and AbbVie agree that Konrad's and Mitchell's trials should not be bifurcated. The trials therefore will not be bifurcated, and as a result evidence that would only be admissible to establish the propriety or the amount of punitive damages will be admissible at trial. The Court reserves until trial its rulings on which particular items of evidence are admissible for purposes of punitive damages.

**2.    AbbVie expert witnesses whose fact-related testimony plaintiffs offer**

On the issue of witnesses AbbVie has designated as experts but does not intend to call, the parties are still in disagreement. In their cases in chief, plaintiffs wish to play excerpts of video deposition testimony from two witnesses, Drs. Adrian Dobs and Martin Miner, whom AbbVie previously designated as case-specific experts but does not intend to call as witnesses in the first two bellwether trials. Though retained as experts by AbbVie, Drs. Dobs and Miner also have personal knowledge of facts relevant to plaintiffs' cases because they acted as consultants, or "key opinion leaders," for AbbVie and other manufacturers of testosterone replacement therapy drugs. Both of them reside outside the geographic limits of the Court's subpoena power.

Plaintiffs do not seek to introduce expert testimony from either witness. Rather, they hope to play portions of the witnesses' deposition testimony concerning matters relating to their work as consultants and prescribing physicians. AbbVie objects that it would be unfair to allow plaintiffs to "convert" expert deposition testimony into fact testimony because neither AbbVie nor the witnesses were on notice at the time of the witnesses' depositions would be used to introduce fact testimony at trial. Without notice that the witnesses' deposition testimony would be used in that way, AbbVie contends, it

had no reason to prepare for and defend the depositions in a way that would ensure a complete and accurate factual record.

As another court in this circuit has recognized, there is no established standard for determining whether a party may call an opposing party's expert witness at trial where the opposing party, itself, does not intend to call the witness. *United States v. Cinergy Corp.*, No. 1:99-CV-1693-LJM-JMS, 2009 WL 1124969, at *2 (S.D. Ind. Apr. 24, 2009) (noting that the question is "unsettled in the law"). It is clear that generally a party may not discover, and thus may not present at trial, "facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(D). A party may discover an opinion of a witness in this category only upon a showing of "exceptional circumstances." *Id.* But where the opposing party *has* designated the expert to testify at trial, Rule 26(b)(4)(D) and its "exceptional circumstances" requirement do not apply. *See Cinergy*, 2009 WL 1124969, at *2.

Thus, in cases like this one, where a party has designated a witness as an expert witness, courts have looked at whether the probative value of the witness's testimony outweighs the danger of unfair prejudice to the opposing party. *See, e.g.*, *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, No. 08 CIV. 7508 SAS, 2013 WL 1155420, at *9 n.87 (S.D.N.Y. Mar. 20, 2013) (noting that party need not show exceptional circumstances to admit testimony of experts previously designated but that evidence must be relevant and non-cumulative under Federal Rules of Evidence); *Meharg v. I-Flow Corp.*, No. 1:08-CV-00184-DFH-TA, 2009 WL 1867696, at *1 (S.D. Ind. June 26,

3

2009) (weighing "probative value against the prejudice" in determining whether party could depose expert opposing party had designated but did not intend to call at trial); *Cinergy*, 2009 WL 1124969, at *2 (weighing probative value of evidence introduced through expert's testimony against (1) unfairness of allowing opposing party to reap benefits from other party's effort and expense and (2) risk of prejudice stemming from fact of expert's prior retention by opposing party); *Rubel v. Eli Lilly & Co.*, 160 F.R.D. 458, 461 (S.D.N.Y. 1995) (where expert had previously been designated and deposed, question of admissibility "governed principally by [Federal Rule of Evidence] 403").

In a case where a party seeks to introduce deposition testimony from an opposing party's uncalled expert, a primary source of potential unfair prejudice is admission of the fact that the opposing party had previously retained the expert. *See Cinergy*, 2009 WL 1124969, at *3; *Rubel v. Eli Lilly & Co.*, 160 F.R.D. 458, 460 (S.D.N.Y. 1995). In this case, however, that concern can be addressed easily, by excluding any testimony about the fact that AbbVie retained Drs. Dobs and Miner as experts for this litigation. And because none of the testimony designated by plaintiffs from the two depositions involves opinions the witnesses formulated in connection with their retention by AbbVie in these cases, there would be no risk that the jury might figure out that AbbVie had retained them as testifying experts but decided not to call them.

Instead, the risk of unfair prejudice posed by admission of the witnesses' fact-related testimony in this case is the other one discussed in *Cinergy*—namely, that AbbVie "did not really have notice before the deposition was taken that [the witnesses'] testimony . . . would be used by Plaintiffs in their case in chief and, therefore, had little reason to aggressively pursue this line of questioning." *Cinergy*, 2009 WL 1124969, at

4

*3. Plaintiffs contend that AbbVie did have notice that plaintiffs intended to elicit fact testimony from Drs. Dobs and Miner because the relevance of their personal experiences to this case is obvious and because plaintiffs served both witnesses with subpoenas during the period for fact discovery. Both witnesses, however, objected to those subpoenas. And when the Court addressed the establishment of a firm fact discovery cutoff date for the AbbVie bellwether cases in November 2016, plaintiffs did not identify either witness among the non-party fact discovery they wished to pursue prior to the cutoff date that the Court intended to establish. *See* Nov. 23, 2016 letter by plaintiffs' counsel, dkt. no. 1616, at 4. Perhaps more importantly, communications from plaintiffs' counsel prior to and during the witnesses' depositions indicated that the purpose of plaintiffs' questioning about the witnesses' personal experiences was to challenge the witnesses' expert opinions, not to develop factual testimony for trial. *See, e.g.*, Reply in Further Support of Pls.' Mot. to Compel, dkt no. 1715, at 4 (Dr. Dobs's communications and compensation during her work for testosterone manufacturers "can be used to impeach Dr. Dobs' expert opinions"); Dep. of Adrian Dobs, dkt. no. 1965-1, at 108:1–17 (plaintiffs' counsel responding to objection about improper fact discovery by stating that he is "asking questions based on [Dr. Dobs's expert report]").

In short, when plaintiffs' counsel took the depositions of Drs. Dobs and Miner, they took them as expert witness depositions, not fact witness depositions. Thus although AbbVie reasonably might be expected to be on notice that plaintiffs would attempt to offer at trial any unfavorable *opinions* within the scope of their disclosures should AbbVie decide not to call them, it is far less reasonable to expect AbbVie to be on notice that plaintiffs might attempt to offer unfavorable *facts* known by the witnesses.

5

As a result, AbbVie had little incentive to cross-examine the witnesses during their depositions in order to develop fact-related testimony that would contradict, explain, or put into context the fact-related testimony plaintiffs' counsel elicited.

Given these considerations, there is a risk of unfair prejudice to AbbVie if the deposition testimony of Drs. Dobs and Miner is admitted at trial. Specifically, the risk is that deposition testimony will be admitted that AbbVie had no incentive to develop or explain at the time of the deposition and will be unable to develop or explain at trial because the witnesses are unavailable.

On the probative value side of the balance, a good deal of the deposition testimony by Drs. Dobs and Miner designated by plaintiffs appears to be somewhat cumulative of other evidence that they will introduce—including, for example, testimony about marketing of TRT drugs and about "normal" blood-serum levels for testosterone. But some of the deposition testimony designated by plaintiffs appears to be non-cumulative. This includes testimony by Dr. Dobs regarding involvement by consultants paid by AbbVie in certain guidelines set by the Endocrine Society regarding prescription of TRT drugs—guidelines that AbbVie intends to introduce as evidence favorable to its position. The apparently non-cumulative testimony also includes evidence about involvement by AbbVie-paid consultants in the Androgen Study Group, which weighed in to oppose enhanced labeling by the FDA, another topic that AbbVie intends to introduce as evidence favorable to its position.[1]

In short, plaintiffs have a viable argument regarding the degree of probative value of at least certain aspects of the designated testimony by Drs. Dobs and Miner, and

---

[1] The Court does not intend this as an exhaustive list of the non-cumulative aspects of the two witnesses' designated deposition testimony.

6

AbbVie has a viable argument on the question of unfair prejudice. The Court is not prepared to say at this point which way the balance would tip were those the only points considered. Because the unfair prejudice on AbbVie's side arises entirely from its lack of a fair opportunity to develop these witnesses' testimony, the prejudice would disappear were they to appear at trial to testify as fact witnesses. And even though the two physicians reside outside the geographic scope of the Court's subpoena power, it is not all that clear that they are *actually* unavailable to AbbVie as live fact witnesses given their status as paid consultants and retained experts.

For these reasons, the Court directs AbbVie to immediately make its best efforts to secure the appearance of Drs. Dobs and Miner at trial.[2] AbbVie is to file a status report in this regard by 4:30 p.m. on Tuesday, June 6. The Court will make whatever further rulings are necessary following receipt of the status report and further inquiry of counsel. That aside, and in the event the Court ultimately determines to preclude the expert-witness deposition testimony designated by plaintiffs, the Court is contemplating directing fact-witness depositions of these two witnesses to be conducted during the period following the second bellwether trial so that this issue will not arise in future bellwether trials relating to AbbVie and the other defendants.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 4, 2017

---

[2] The logistics, including exactly when these witnesses would testify and how this would interact with plaintiffs' desire to introduce testimony from their depositions, are matters the Court can address later.