IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: TESTOSTERONE )<br>REPLACEMENT THERAPY )<br>PRODUCTS LIABILITY LITIGATION )<br>-------------------------------------------------- )<br>)<br>THIS DOCUMENT CONCERNS: )<br>)<br>*Robert Rowley v. AbbVie Inc.,* )<br>Case No. 15-cv-2760 ) | MDL No. 2545<br><br>Case No. 14-cv-1748 |

**CASE MANAGEMENT ORDER NO. 68**
**(Ruling on AbbVie's motion for**
**sanctions in *Rowley v. AbbVie, Inc.*)**

MATTHEW F. KENNELLY, District Judge:

    Robert Rowley's lawsuit against AbbVie Inc. is one of the "bellwether" cases selected for trial in this MDL proceeding. He alleges that in 2013, he suffered a deep vein thrombosis (DVT)—a blood clot—caused by AbbVie's drug AndroGel. Rowley submitted a plaintiff's fact sheet (PFS) in May 2015 in which, among other things, he disclosed Dr. Douglas Hyldahl as the only healthcare provider who had treated him for anti-coagulant therapy.

    In December 2015, Rowley's case was selected as one of the pool of cases from which cases would be selected for bellwether trials. Rowley's deposition was taken on March 9, 2016. At that deposition, he disclosed that his primary care provider was now Dr. Daniel Sharp (Dr. Hyldahl had retired from practice). On July 25, 2016, AbbVie proposed selection of Rowley's case to be tried. The Court selected Rowley's case along with others in early August 2016.

    On May 10, 2016—in other words, after Rowley's deposition was taken but

before the parties proposed which specific cases should be tried—Rowley was treated by Dr. Sharp and at a hospital for a second DVT. However, the May 2016 DVT was not disclosed to AbbVie until October 28, 2016, when Rowley submitted a supplement to his PFS. That same date was the deadline for plaintiffs in the AbbVie bellwether trial cases to make case-specific Rule 26(a)(2) disclosures. An expert retained by Rowley's counsel rendered an opinion that AndroGel was a substantial factor in causing both of Rowley's DVTs, including the May 2016 DVT. AbbVie received that expert's report on November 1, 2016. Later in November, records from a hospital and from Dr. Sharp regarding the May 2016 DVT were produced to AbbVie.

In late November 2016, AbbVie filed a motion for sanctions based on the belated disclosure of Rowley's May 2016. AbbVie pointed out that Rowley's expert obviously had the information about the second DVT long enough before October 28, 2016 to include it in his opinion and that this meant that Rowley's counsel had the information even earlier but had not disclosed it until October 28.

AbbVie argued in its motion that "[t]his lack of diligence by Plaintiff's counsel has hampered AbbVie's defense and could delay this carefully planned bellwether process. Plaintiff's actions have put the success of the MDL at risk," thus warranting imposition of sanctions. AbbVie's Mot. for Sanctions at 2. It sought "an order sanctioning Plaintiffs and excluding evidence of Mr. Rowley's alleged May 2016 clot." *Id.* at 7.

The record reflects that Rowley's counsel learned of the second DVT on October 24, 2016, got the records within a day or two, got them to her expert, and prepared an amended PFS for Rowley's signature. In other words, once Rowley's counsel learned of the second DVT, she acted very quickly. But this does not explain the five-month

2

delay between the occurrence of the DVT and counsel's learning of it. This delay suggests that there was no contact between counsel and Rowley during the seven and one-half months after his March 9, 2016 deposition or, at least, no discussion about events relevant to his lawsuit.

In view of the fact that Rowley's case had been chosen from several thousand cases as one of seven or eight bellwether trial cases, this was not reasonably diligent conduct on counsel's part. Given the importance of the bellwether trial process, it was and is incumbent upon counsel on both sides to maintain regular contact with their clients in order to satisfy the party's and counsel's obligation to supplement discovery responses "in a timely manner," Fed. R. Civ. P. 26(e)(1)(A), and their corresponding duty under Case Management Order 9, which establishes the requirement for plaintiff's fact sheets and expressly imposes "a continuing duty to supplement the information provided in the PFS pursuant to Fed. R. Civ. P. 26(e)." 2d Am. Case Mgmt. Order 9, ¶ II.C.1. The Court acknowledges that it is not particularly unusual or surprising that plaintiffs in cases of this type may have post-lawsuit health-related events that may impact the case in one way or another. It is also not particularly unusual or surprising that the plaintiff himself might not understand the need for prompt disclosure. But the fact that these matters are neither unusual nor surprising is exactly why counsel for the plaintiff must be reasonably diligent in maintaining contact with his or her client and inquiring about developments in the client's health or medical care that might impact the case. In this regard, the Court emphasizes that Rowley's case was not merely one of the 7,000-plus cases that have been part of this MDL proceeding; rather, it was (at the time of Rowley's second DVT) one of just thirty-two cases specifically selected for

3

possible bellwether trials. At a minimum, this information should have been obtained and disclosed *very* promptly after the Court selected the case as a bellwether trial case on August 4, 2016. But counsel did not obtain and disclose the information until nearly three months after that.

That said, AbbVie's contention that the delay in disclosure of Rowley's second DVT could "delay [the] carefully planned bellwether process" and "put the success of the MDL at risk" was and is exaggerated, to put it mildly. As of the date AbbVie filed its motion, the first AbbVie-only bellwether trial was still over six months in the future: the first trial was set to begin on June 5, 2017 and the last in January 2018 (the schedule has since been elongated somewhat). And the specific date for the Rowley trial had not been set. Indeed, the Court had not yet selected the sequence of the cases—that did not happen, and was not even scheduled to happen, until March 2017. In short, contrary to AbbVie's contention in its motion, there was not even the ghost of a possibility that the bellwether trial process would be delayed or disrupted, and there was even less of a chance of disrupting the overall MDL. Indeed, at the Court's direction after AbbVie filed its motion, AbbVie was able to obtain the relevant records and take Dr. Sharp's deposition, and AbbVie's expert was able to incorporate issues relating to the second DVT into his opinion. All of that was easily obtained and, in all likelihood, could have been easily obtained by conferring with plaintiffs' counsel even without filing a motion.

When a party seeks sanctions for failure to make or timely supplement discovery, it invokes Federal Rule of Civil Procedure 37(c)(1), which calls for exclusion of the undisclosed or belatedly disclosed information "unless the failure was substantially

justified or is harmless." In this case, the delayed disclosure was not substantially justified, but it was almost entirely harmless. AbbVie obtained the relevant records reasonably promptly; it was able to take the deposition of Dr. Sharp without undue delay; and it was able to incorporate the second DVT into its own expert's report. The only discovery that had to be *redone* to any extent was Rowley's deposition. AbbVie is entitled to be compensated for the retaking of the deposition, *see* Fed. R. Civ. P. 37(c)(1)(A) (authorizing monetary sanctions in lieu of preclusion), but that is it. And AbbVie is not entitled to be compensated for preparing and filing the motion for sanctions. The relief sought in the motion and the surrounding discussion before the Court—in which AbbVie argued that this and an incident in another case supported imposing a *Lone Pine*-type requirement on an MDL-wide basis—was far disproportionate to any actual or potential prejudice.

The Court therefore grants AbbVie's motion for sanctions, but only in part. The Court directs plaintiff's counsel to pay AbbVie $1,500 within 14 days after entry of this order. This represents, in the Court's view, a reasonable estimate of the attorney time reasonably needed to prepare for and take a second deposition of Mr. Rowley. (The Court could ask for further briefing regarding attorney's fees, but the time and effort that would be required to do that is unwarranted under the circumstances.)

Date: September 24, 2017

_____
MATTHEW F. KENNELLY
United States District Judge