**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: Testosterone Replacement | ) | |
| Therapy Products Liability Litigation | ) | **Case No. 14 C 1748** |
| Coordinated Pretrial Proceedings | ) | **MDL No. 2545** |
| | ) | |
| This document applies to all cases | ) | |
| and to *Holtsclaw v. Auxilium* | ) | |
| *Pharmaceuticals, Inc.*, Case No. 15 C 3941 | ) | |

**CASE MANAGEMENT ORDER NO. 77
(rulings on motions *in limine* in Auxilium
bellwether cases and case-specific motions *in limine*
in *Holtsclaw v. Auxilium Pharmaceuticals, Inc.*, Case No. 15 C 3941)**

MATTHEW F. KENNELLY, District Judge:

Auxilium Pharmaceuticals, Inc. is one of a number of defendants in this

multidistrict litigation (MDL) proceeding that manufacturers and sells testosterone

replacement therapy (TRT) drugs. The Court selected two of the cases involving

Auxilium for "bellwether" trials, but only one of those case survived Auxilium's motions

for summary judgment. *See In re: Testosterone Replacement Therapy Prod. Liab. Litig.

Coordinated Pretrial Proceedings* (Auxilium Summary Judgment Ruling), No. 14 C

1748, 2017 WL 4772759, at *9 (N.D. Ill. Oct. 23, 2017).

Steven Holtsclaw, the plaintiff in the remaining bellwether case, alleges that he

suffered a heart attack as a result of using Auxilium's TRT drug Testim. He contends

that Auxilium improperly marketed and promoted the drug as being safe and effective

for treating symptoms of aging that are also associated with declining testosterone

levels in the blood. According to Holtsclaw, Testim and other TRT drugs have been

proven to be safe and effective only for the treatment of "classical hypogonadism," a

disorder characterized by abnormally low testosterone levels resulting from some other

specified condition, such as a genetic disease or injury to the testicles. Holtsclaw also contends that Auxilium failed to provide adequate warnings of the cardiovascular risk Testim posed to users of the drug.

Both Auxilium and Holtsclaw have filed motions *in limine* in advance of the bellwether trial in which they seek to exclude certain evidence.[1] The Court has already addressed a number of similar issues in its ruling on motions *in limine* filed in the bellwether cases involving AbbVie Inc., another defendant in this proceeding. *See In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proceedings* (AbbVie MIL Ruling), No. 14 C 1748, 2017 WL 2313201 (N.D. Ill. May 29, 2017). In this opinion, the Court assumes familiarity with that ruling and other rulings issued in the bellwether cases involving AbbVie and Auxilium.

**A.    Evidence Auxilium has moved to exclude**

**1.    Marketing and promotional materials not seen or relied upon by Holtsclaw or his physician**

Auxilium has moved to exclude as irrelevant evidence of specific marketing or promotional materials to the extent Holtsclaw cannot show that he or his physician viewed the specific materials or relied upon them in deciding to take or prescribe Testim. It is undisputed that Holtsclaw does not recall viewing any promotional materials for Testim or other TRT drugs prior to using the drug. Auxilium also emphasizes that there is no evidence that Holtsclaw's physician, Dr. Dean McLaughlin, relied on any particular promotional material from Auxilium when deciding to prescribe the drug, and he specifically denied having received any misleading communications or

---

[1]     To the extent the parties' motions are specific to the Owens case, the motions are moot because the Court has granted summary judgment in favor of Auxilium and against Owens.

materials from the company.

The Court has already determined, in denying Auxilium's motion for summary judgment, that a reasonable jury could infer that Dr. McLaughlin relied on representations from Auxilium in making his prescribing decision and that "Auxilium's marketing material—at least the material that predates Holtsclaw's use of Testim— therefore is, in general, relevant." Auxilium Summary Judgment Ruling, 2017 WL 4772759, at *9. The Court also ruled previously, and repeats here, that even if a manufacturer's marketing material played no direct role in causing a plaintiff to take a TRT drug, the material may still be relevant "on the question of [the manufacturer's] knowledge that its marketing was misleading or its intent to create an off-label market." AbbVie MIL Ruling, 2017 WL 2313201, at *2.

Auxilium's marketing material is likely to be relevant in this case for similar reasons. At some point, as the Court noted previously, Rule 403 may require exclusion of certain marketing evidence based on cumulativeness or danger of unfair prejudice. *Id.* And because there is no evidence in this case that Holtsclaw viewed any Testim or TRT marketing material, the probative value of evidence concerning Auxilium's direct-to-consumer marketing material may be more limited than the evidence about material aimed at physicians. Thus only a limited amount of evidence of that sort may be admitted before the Rule 403 balance favors exclusion. The extent to which such evidence is admissible will have to be determined during the trial.

### 2.     Evidence related to other pharmaceutical manufacturers

Auxilium has moved to exclude evidence concerning promotional activities of other TRT manufacturers, citing the Court's prior determination that evidence regarding

other manufacturers has the "potential for confusion or unfair prejudice," because the different products have different marketing and regulatory histories and because the plaintiffs have access to information about the defendants in this MDL that each individual defendant might not have about each other.  AbbVie MIL Ruling, 2017 WL 2313201, at *3.  In response to Auxilium's motion, Holtsclaw has agreed not to introduce evidence of marketing material from other manufacturers, and Auxilium has therefore withdrawn its motion.

### 3.    Testim sales figures

Auxilium moves to exclude evidence of the sales (i.e., revenue) figures for Testim, arguing that it is irrelevant and misleading, especially when not accompanied by evidence of the various economic and market factors that affect the price of a prescription drug and a manufacturer's ability to profit from drug sales.  Holtsclaw responds that the evidence is relevant on the issue of motive; the relationship between Auxilium's promotion of Testim and the drug's sales, he argues, suggests a motive for Auxilium's alleged off-label marketing campaign.  With respect to whether the sales figures are potentially misleading, Holtsclaw notes that Auxilium only sold one product for most of its existence.  Thus evidence of Auxilium's *profits* would not be misleading, according to Holtsclaw, because those profits would almost exclusively be profits earned from Testim sales, as opposed to sales of other products.  But although that argument supports the admission of evidence concerning Auxilium's profits, it is not responsive to the concern raised about the potential for *sales* figures to mislead. Holtsclaw does not address, for example, Auxilium's contention that evidence of sales figures is misleading without a discussion of the costs of producing Testim.  The Court

concludes that evidence of profits derived from Testim is relevant and admissible, but evidence of sales figures is excluded under Rule 403.

### 4. References to the presence, absence, or identify of a corporate representative

Auxilium moves to preclude Holtsclaw from making reference to Auxilium's corporate representative at trial and, in particular, commenting on whether a corporate representative is present or absent. Holtsclaw responds that "the presence or absence of a party at trial is a matter of fact that the jury is entitled to know." Pls.' Resp. to Auxilium's Mots. at 12. But he does not explain how an Auxilium representative's absence or presence at trial "has any tendency to make a fact more or less probable than it [otherwise] would be" or how that fact would be "of consequence in determining the action." Fed. R. Evid. 401. The Court finds this irrelevant and grants Auxilium's motion.

### 5. Regional sales strategies

Auxilium has moved to exclude evidence of internal regional sales strategies that were not used in Tennessee, where Holtsclaw lived, visited his physician, and used Testim. Specifically, Auxilium seeks exclusion of evidence regarding a sales strategy known as the "Turnips initiative," which Auxilium says was developed by a regional sales manager from Texas and was not used in Tennessee or in connection with any communications between Auxilium and Dr. McLaughlin. In response to this motion, Holtsclaw has agreed not to introduce evidence in his case regarding the Turnips initiative, and Auxilium has therefore withdrawn its motion on this matter.

6. **Evidence related to an FDA division's 2008 requirement to evaluate cardiovascular risk for the class of drugs indicated to treat diabetes**

Auxilium moves to prohibit Holtsclaw from offering testimony and argument about a letter the FDA's Division of Metabolism and Endocrinology (DMEP) sent to Auxilium in November 2008. In the letter, DMEP notified Auxilium that it was requiring manufacturers of a class of new anti-diabetic drugs to demonstrate that the therapy would not result in an unacceptable increase in cardiovascular risk. Auxilium concedes that it had submitted an application for Testim as a drug that could treat diabetes but notes that the last clinical study under the application ended over two years before DMEP sent its letter to Auxilium. That clinical study, Auxilium explains, did not show that Testim effectively treated diabetes, and Auxilium abandoned its attempt to obtain approval for Testim to treat diabetes. Auxilium maintains that FDA's Division of Reproductive and Urologic Products (DRUP) is the agency that ended up regulating Testim, not DMEP. Thus, according to Auxilium, evidence concerning a letter sent from DMEP regarding treatment of diabetes is irrelevant and has the potential to confuse the jury.

Holtsclaw responds that evidence of the DMEP's 2008 letter is relevant because Auxilium intentionally marketed Testim to the diabetic population both before and after the letter and because Holtsclaw, himself, has type 2 diabetes. According to Holtsclaw, a central feature of the Turnips initiative was to educate doctors on the relationship between diabetes and low testosterone in order to increase prescriptions for patients like Holtsclaw, who had type 2 diabetes and a low testosterone level. He contends that Auxilium's failure to conduct cardiovascular testing even after the 2008 letter shows that it disregarded an FDA requirement.

Auxilium appears to be correct that the 2008 letter required the company to establish the cardiovascular safety of Testim only if it wished to pursue an indication for the treatment of diabetes. Auxilium never followed through on obtaining that indication, and thus it would be somewhat misleading for Holtsclaw to argue that Auxilium deliberately disregarded or ignored the FDA's requirement by failing to prove the cardiovascular safety of Testim. Nevertheless, to the extent Auxilium continued to market Testim for the treatment of diabetes, the 2008 letter tends to establish that Auxilium was on notice that it should not market a drug for treatment of diabetes without establishing its safety with respect to cardiovascular risk. The letter is therefore relevant on the issues of notice and Auxilium's knowledge that it was marketing Testim for uses for which the drug's safety had not been established. In addition, the Court does not believe that the regulatory context for the 2008 letter is so complicated that introduction of the evidence would be confusing or unfairly prejudicial to Auxilium. Thus, although Holtsclaw may not argue that Auxilium's response to the 2008 letter shows that it ignored or disregarded an FDA requirement, the evidence is admissible for the reasons discussed above.

### 7. Evidence relating to bad conduct of other pharmaceutical manufacturers

Auxilium moves to exclude evidence concerning a Corporate Integrity Agreement (CIA) that GlaxoSmithKline LLC (GSK) entered into with the United States as a result of allegedly unlawful conduct unrelated to this litigation. In response to Auxilium's motion, Holtsclaw has represented that he does not intend to introduce evidence of the terms of the CIA or of GSK's underlying conduct that gave rise to the agreement. Auxilium has therefore withdrawn its motion, and the parties agree that evidence regarding the

content of the agreement or of GSK's underlying conduct will not be introduced at trial without first raising the issue with the Court and opposing counsel.

### 8. Inflammatory language

Auxilium has moved to exclude testimony or argument using unfairly prejudicial and inflammatory language. The Court has already ruled on the admissibility of the particular phrases with which Auxilium takes issue, and those rulings will apply in Holtsclaw's case. Auxilium Summary Judgment Ruling, 2017 WL 4772759, at *9 (expert witness' comparison of Auxilium's marketing and sales practices to a "mass, uncontrolled experiment" not so inflammatory or prejudicial to warrant exclusion); *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proceedings*, No. 14 C 1748, 2017 WL 1836443, at *17 (N.D. Ill. May 8, 2017) (precluding expert witness from using terms "disease mongering," "predatory practice," and "unconscionable").

### 9. Statements contained in documents of Auxilium's licensee

Auxilium moves to exclude evidence or argument concerning a document from a Testim licensee that appears to contain a description of the licensee's marketing plan for Testim, including a reference to the fact that TRT use is still experimental for the treatment of late-onset or age-related hypogonadism. According to Auxilium, the document comes from Ipsen, a French pharmaceutical company that had a license from Auxilium to market Testim outside the United States, Canada, Mexico, and Japan. Auxilium contends that there is no evidence in the record concerning the origins of the document, let alone any evidence tending to show that Auxilium authored or authorized the statements contained in the document. According to Auxilium, the document is

inadmissible because it cannot be authenticated, it contains hearsay statements, and it concerns marketing activities outside the United States that are not relevant to Holtsclaw's case.

Holtsclaw contends that each of Auxilium's objections lacks merit. There is no genuine question of the document's authenticity, Holtsclaw maintains, because the Auxilium executive whose custodial file contained the document testified that he had no reason to doubt that it was in his custodial file and suggested that it could have come to him through an email. The statements contained in the document are not hearsay, Holtsclaw argues, because Ipsen acted as Auxilium's agent for purposes of selling Testim outside the United States, making the statement the admission of an opposing party. *See* Fed. R. Evid. 801(d)(2)(D). The document is relevant, argues Holtsclaw, because it contains a statement that TRT use is still experimental for the treatment of age-related hypogonadism and is thus relevant on the issues of notice and intent. Holtsclaw also argues that admitting the document would not be inconsistent with the Court's prior ruling limiting evidence of foreign regulatory actions and labeling because the document does not refer to foreign regulations or labeling.

Regardless of whether the statements in the document constitute inadmissible hearsay, the Court concludes that the document is inadmissible under Rule 403. Holtsclaw contends that the document tends to show that Auxilium was on notice that treatment of age-related hypogonadism with TRT is experimental and unsupported by data. But his counsel acknowledged during oral argument that Holtsclaw intends to offer other items of evidence that tend to establish the same point, and thus this particular document has only marginal probative value in the Court's view. The

probative value is reduced further by the fact that plaintiff has no evidence that anyone at Auxilium actually reviewed the document. The evidence's limited probative value is significantly outweighed by the potential for confusion about the relationship between Auxilium and Ipsen and the extent to which Auxilium was responsible for, or agreed with, the statements contained in the document. Evidence about the document is therefore inadmissible under Rule 403.

### 10. Evidence of foreign regulatory actions and labeling

Auxilium has moved to exclude evidence of drug labeling in foreign countries or actions taken by foreign regulatory bodies. In response, Holtsclaw has agreed that it will not introduce any evidence of foreign regulatory actions or labeling, and Auxilium has therefore withdrawn its motion.

### 11. Evidence of alleged fraud on the FDA

Auxilium moves to exclude evidence or argument that it defrauded the FDA or that the FDA would have acted differently had other information been provided. The Court has repeatedly ruled that plaintiffs in this MDL "may not assert a claim that [the manufacturer] defrauded the FDA or that the FDA would have acted differently on the basis of other information." *Id.* at *1. But the Court has also determined that plaintiffs may introduce evidence of the information a manufacturer provided to, and withheld from the, FDA, in support of a claim that the manufacturer misled the public by submitting, or withholding, certain information. *Id.* Those rulings will apply in Holtsclaw's case as well.

### 12. Evidence of the total number of TRT lawsuits against Auxilium or other defendants

Auxilium moves to exclude evidence of the other lawsuits brought against

Auxilium or other TRT manufacturers in this proceeding or elsewhere. Holtsclaw concedes that evidence of other lawsuits is generally not admissible but argues that Auxilium could open the door to the introduction of that evidence by eliciting misleading testimony about the amount of compensation plaintiffs' experts have received for their work in this litigation. Much of that work, of course, was not confined to Holtsclaw's case but was general work performed for the benefit of multiple plaintiffs in multiple cases. As in the AbbVie cases, the Court directs the parties to confer and attempt to reach agreement on how, if at all, the issue of each expert's compensation should be presented to the jury.

### 13. Evidence concerning Auxilium's moral or ethical duties

Auxilium moves to exclude testimony about a pharmaceutical manufacturer's moral or ethical duties, as opposed to its legal duties. The morality of Auxilium's behavior is irrelevant, it argues, on the question of whether the company satisfied its obligations under the law. Specifically, Auxilium objects to the testimony of Dr. Peggy Pence that Auxilium's alleged off-label promotion for untested uses of Testim "violates all of the ethical principles upon which the standards for development of products for us in humans have been established to protect those patients, essentially to protect the public health." Pence. Dep., Ex. 20 to Defs.' Omnibus Mem. of Law at 393:2–6. The Court agrees that the duties imposed by morality or business ethics are generally not relevant. Dr. Pence's use of the phrase "ethical principles" carries a risk of unfair prejudice to Auxilium and will not be permitted at trial. But the general substance of Dr. Pence's testimony—her understanding, based on her experience, of industry standards and the principles underlying FDA regulations—is relevant and is admissible when not

presented in the language of ethics or morality.

**14.    Punitive damages**

Auxilium moves to exclude any references to Holtsclaw's claim for punitive damages until the Court determines whether there is sufficient evidence to submit that claim to the jury.  After briefing on this motion, Auxilium separately moved to bifurcate the issue of punitive damages from the rest of the trial.  The Court therefore takes the motion *in limine* under advisement pending ruling on the motion to bifurcate.

**15.    Holtsclaw's testimony concerning a comment made by a member of his medical team**

During his deposition, Holtsclaw testified that a man who was working with his medical team following his heart attack told him that he should "just go home and throw that damn stuff [Testim] away."  Holtsclaw Dep., Ex. 3 to Defs.' Omnibus Mem. of Law, at 236: 18–20.  Auxilium contends that this testimony should be excluded because the out-of-court statement is hearsay and is otherwise inflammatory.  Whether or not the statement is hearsay, the Court agrees that the risk of unfair prejudice to Auxilium outweighs the probative value of a remark from an unidentified person present during Holtsclaw's medical treatment.  The Court grants Auxilium's motion.

**B.    Evidence Holtsclaw has moved to exclude**

**1.    Evidence or argument suggesting that FDA has ultimate responsibility for adequacy of a prescription drug's label**

Holtsclaw moves to exclude evidence or argument that improperly suggests that the FDA is the party ultimately responsible for the adequacy of a prescription drug's warning label.  In the cases against AbbVie, the Court precluded AbbVie from arguing or suggesting that the FDA has ultimate responsibility for the content of a drug's label.

*See* AbbVie MIL Ruling, 2017 WL 2313201, at *8.  That general ruling will also apply in Holtsclaw's case.  In the cases against AbbVie, the Court also read an instruction to the jury concerning the FDA's role regarding the approval and labeling of a prescription drug.  *See* Instructions to the Jury (Oct. 3, 2017), *Konrad v. AbbVie Inc.*, Case No. 15 C 966, Dkt. no. 109, at 19.  The Court intends to provide a similar instruction in Holtsclaw's case, subject to the input and objections of the parties.

### 2. Evidence or argument regarding litigation abuse

Holtsclaw moves to exclude evidence or argument regarding "'litigation abuse, litigation or tort reform, broader societal costs of litigation, and/or any purported litigation crisis."  Pls.' Omnibus Mot. at 1–2.  He contends that evidence or argument concerning those matters is irrelevant.  Auxilium responds that it should be permitted to introduce evidence concerning the motives or reasons for bringing a lawsuit and to argue that Holtsclaw's claims are "fabricated or exaggerated."  Defs.' Opp'n to Pls.' Omnibus Mot. at 3.  The Court, however, does not understand Holtsclaw to be seeking exclusion of any argument that his claim is meritless or is motivated by a desire for an award of damages.  As in any case, Auxilium is permitted to make arguments of that sort.  Holtsclaw appears to be seeking exclusion of commentary about broader litigation effects or trends.  The Court agrees that evidence or argument along these lines is irrelevant and inadmissible.

### 3. Statements about potential impact of verdict in Holtsclaw's favor

Holtsclaw moves to preclude argument about how a verdict in his favor might negatively affect Auxilium, the price or availability of medications, or the economy as a whole, among other things.  He contends that argument about collateral effects of the

jury's verdict is irrelevant, inflammatory, and unfairly prejudicial to him. Auxilium

responds that to the extent the jury will be able to consider the company's net worth in

determining the appropriate punitive damages level to deter its conduct, the jury should

be able to consider other ways in which the level of punitive damages might affect

Auxilium or society at large. Without a clear understanding of the specific evidence

Auxilium would introduce on this matter, the Court defers ruling on this motion until the

issue is raised at trial. Auxilium may not, however, introduce any evidence along these

lines without obtaining the Court's advance approval.

### 4. Holtsclaw's use of other prescription drugs

Holtsclaw moves to exclude evidence that he used prescription drugs other than

Testim. The Court has previously ruled that evidence concerning a plaintiff's use of

other prescription drugs has significant potential to confuse or mislead the jury. *See*

AbbVie MIL Ruling, 2017 WL 2313201, at *10 (also noting that plaintiff's willingness to

take unrelated drug had little probative value on the issue of whether he would take a

TRT drug when accompanied by a stronger warning label).

In Holtsclaw's case, he specifically seeks exclusion of evidence that he used the

prescription weight-loss drug phentermine seven years prior to his heart attack.

Auxilium argues that evidence of Holtsclaw's phentermine use is relevant because he

took the drug in attempt to treat his obesity, which is one of the medical conditions that

Auxilium contends was a cause of his heart attack. But Holtsclaw took phentermine

only for a brief period of time seven years before his heart attack, and Auxilium does not

identify any evidence that his use of the drug could have increased his chances of a

heart attack. Though evidence of Holtsclaw's obesity is relevant and admissible,

evidence of his taking of a medication to treat his obesity is not. Even if this evidence is somehow relevant, the risk of confusion and unfair prejudice to Holtsclaw outweighs its probative value. The Court excludes the evidence under Rule 403.

### 5. Evidence related to Holtsclaw's disagreement with a family member prior to his heart attack

Eighteen days prior to his heart attack, Holtsclaw had a physical altercation with one of his nephews. The nephew began to argue with Holtsclaw after he told the nephew to stop riding his motorcycle on the road leading to the family graveyard. During the course of the argument, Holtsclaw struck his nephew on the head, knocking off his helmet, and tried to throw a punch before Holtsclaw's wife intervened. Holtsclaw's nephew filed a police report against him, but no charges or criminal proceedings followed. Holtsclaw has moved to exclude evidence of the incident, contending that a family disagreement is irrelevant to his case and that any probative value is far outweighed by the risk of unfair prejudice to him. Auxilium argues that the incident is relevant because one of its experts opines that the psychological stress resulting from the incident could have caused Holtsclaw's heart attack.

The Court agrees with Holtsclaw that the risk of unfair prejudice to him significantly outweighs any probative value of the evidence concerning the altercation. The event took place eighteen days prior to Holtsclaw's heart attack, and the only evidence that the incident produced any lingering psychological stress is Dr. McLaughlin's testimony that Holtsclaw told him about the altercation and that it "bothered him," McLaughlin Dep., Ex. 4 to Pls.' Omnibus Mot., at 77:16, and Holtsclaw's testimony that the incident "ticked [him] off," Holtsclaw Dep., Ex. 2 to Pls.' Omnibus Mot., at 216:6. The statement by Auxilium's expert, Dr. Michael Davidson, in his report

that Holtsclaw was under "significant emotional and psychological stress in the months and weeks immediately prior to his heart attack" is conclusory and speculative, Davidson Rep., Ex. 3 to Pls.' Omnibus Mot., at 30, and the same is true of his deposition testimony attempting to connect this incident to Holtsclaw's heart attack. For these reasons, the probative value of evidence about the incident is quite limited and significantly outweighed by the risk that the evidence would cause the jury to view Holtsclaw in a bad light and be unfairly prejudiced against him.

### 6. Argument or testimony suggesting that stress contributed to Holtsclaw's heart attack

Because the record does not contain evidence of any particular stressors in Holtsclaw's life apart from the altercation with his nephew, he moves to exclude any argument or testimony suggesting that stress contributed to his heart attack. The Court agrees that Auxilium should not be permitted to speculate about any particular psychological or emotional stressor that may have contributed to Holtsclaw's heart attack. But psychological and emotional stress are sufficiently common among all people that general evidence about the possible role stress can play in causing a heart attack is relevant and admissible. This does not, however, authorize admission of evidence about the altercation with Holtsclaw's nephew.

### 7. Holtsclaw's use of chewing tobacco

Holtsclaw moves to exclude testimony or evidence regarding his use of chewing tobacco. He argues that the evidence is irrelevant. He also contends that it constitutes improper character evidence inadmissible under Rule 404, because its purpose is to portray him in a negative light and bias the jury against him. According to Auxilium, Holtsclaw's use of chewing tobacco is relevant because nicotine raises blood pressure.

Auxilium argues that it should be allowed to ask Dr. Hossein Ardehali, one of Holtsclaw's experts, why he did not consider Holtsclaw's chewing tobacco use as a risk factor for his heart attack. But even if Dr. Ardehali did not consider Holtsclaw's use of chewing tobacco, he has already discussed Holtsclaw's blood pressure, and whether or not it contributed to Holtsclaw's heart attack, in his expert report. And Dr. Davidson, Auxilium's own expert, does not list chewing tobacco use as one of the possible cardiovascular risk factors for Holtsclaw in his expert report. Given those facts, Holtsclaw's use of chewing tobacco appears to have little to no probative value, but it does pose a substantial risk of unfair prejudice to Holtsclaw. *See* Fed. R. Evid. 403.

In response to Holtsclaw's Rule 404 argument, Auxilium contends it may properly use evidence of his use of chewing tobacco for impeachment purposes. Should Holtsclaw testify that he would not have used Testim if the warning had included a stronger warning about cardiovascular risks, Auxilium contends that it should be allowed to argue that Holtsclaw's testimony is inconsistent with his prior disregard for the warning labels on chewing tobacco products. Auxilium maintains that Rule 607 allows a party to use character evidence to attack a witness's credibility. But Rule 607 concerns which parties may impeach a witness. *See* Fed. R. Evid. 607. Rule 608(b), which concerns the use of specific instances of conduct to challenge or support a witness's character for truthfulness, says that it is admissible on cross-examination only if it is "probative of the character for truthfulness or untruthfulness" of the witness. Fed. R. Evid. 608(b). Holtsclaw's use of chewing tobacco is not probative of his character for truthfulness or untruthfulness.

For these reasons, the Court concludes that evidence of Holtsclaw's use of

chewing tobacco is inadmissible.

## Conclusion

As discussed in the body of this opinion, the Court grants in part and denies in part both Holtsclaw's [71] and Auxilium's [73] motions *in limine*.


Date:  November 3, 2017

_____
MATTHEW F. KENNELLY
United States District Judge