IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: TESTOSTERONE | ) | MDL No. 2545 |
| REPLACEMENT THERAPY | ) | |
| PRODUCTS LIABILITY LITIGATION | ) | Case No. 14 C 1748 |

CASE MANAGEMENT ORDER NO. 78
(Supplementation / enhancement of plaintiff's fact sheets;
reconfiguration of bellwether trial schedules;
<u>meetings with settlement master</u>)

   This MDL proceeding, which involves (with one exception) products liability suits against several manufacturers of testosterone replacement therapy (TRT) drugs, has been before the Court for just under three and one-half years. General fact discovery is complete or virtually complete. "Bellwether" trial schedules have been established for suits against all of the defendants, including cases in which the plaintiff alleges that he used more than one defendant's product. This year, the Court has conducted two bellwether trials involving AbbVie (which has the largest number of pending cases), an Illinois state court conducted a trial in a similar case involving AbbVie, and this Court is about to start a third bellwether trial involving a different defendant, Auxilium. Additional bellwether trials are scheduled at regular intervals through January 2019, and some trial dates remain to be set. The Court has, thus far, deferred to defense counsel in not setting trial dates that overlap with trial dates in state court cases pending, for the most part, in Illinois and Pennsylvania.

   On a parallel track, the Court has appointed a settlement master, attorney Randi Ellis, who is tasked with meeting with the parties regularly regarding the prospects for settlement of some or all of the cases involving particular defendants.

In this order, the Court first addresses two points that are, in the Court's view, two sides of the same coin. The first is the need for enhanced information regarding the claims of individual plaintiffs—specifically, disclosures beyond those provided in the current version of the plaintiff's fact sheet. The second is the relatively slow pace of the current schedules for bellwether trials in light of the overall size and scope of the MDL and the amount of time it has been pending. The Court is, via this order, directing the parties to confer promptly and make an appropriate proposal or proposals for modification of existing case management orders on these subjects.

Finally, at the end of the order, the Court will address various points regarding the parties' meetings with the court-appointed settlement master. Ms. Ellis has made considerable progress, but the Court believes it is appropriate to enhance the tools available to her and the parties in connection with her work.

1. **Plaintiff's fact sheets**

Given the current status of proceedings, the Court believes it is appropriate to require the plaintiffs to provide additional information regarding their claims, beyond what they have been required to produce under the current regime of plaintiff's fact sheets. The Court continues to believe that a "Lone Pine" order—requiring plaintiffs to produce at an early date expert reports or the equivalent—is not called for at this stage. But requiring additional factual information will enable both sides to evaluate the pending cases both individually and in the aggregate. In addition, the current fact sheet process, together with the bellwether selection process, has already resulted in weeding out cases that lack merit or in which the plaintiff is not able or willing to prosecute the case in a reasonably diligent way. The Court anticipates that enhanced requirements to

provide basic information supporting the plaintiffs' claims will result in further appropriate winnowing of the cases that remain pending.

The Court directs the parties to promptly meet and confer and to propose a case management order requiring supplementation or enhancement of the information required from all plaintiffs. The Court will leave the specifics of this proposal to the parties in the first instance, but any proposal should include a requirement for all plaintiffs to provide information and documentation regarding the particular TRT product(s) they used, when, and how frequently, as well as information and documentation regarding the date and nature of any injury the plaintiff claims to have suffered as a result of TRT usage. Any proposal should also include a reasonably prompt deadline for production of this information following entry of the relevant case management order. Finally, the Court anticipates that the process of ensuring compliance and sanctioning non-compliance should be shortened and simplified from that contemplated in the current version of Case Management Order 9.

**2. Bellwether trials**

The Court has determined that the schedule for bellwether trials should be expanded and accelerated. This will enhance the likelihood that the process of working up and trying bellwether cases and will provide the parties, within a reasonably prompt time frame, valuable information regarding the viability and value of the cases still pending in the MDL. It will also advance the overall progress of the MDL in a way that will lead to its conclusion within a reasonable period of time.

Acceleration of the trial schedule almost certainly will require the parties to enlarge the pools for selection of bellwether cases and to work up many more cases

than those currently designated for bellwether trials.[1] This will require the parties and counsel to do more work, but this is a reasonable imposition given the overall size and scope of the MDL and the length of time it has been pending.

Acceleration of the trial schedule also will entail advancing and shortening the existing schedules for working up bellwether trial cases involving a number of the defendants, including the "mixed-use" cases. Again, the Court believes that this is a reasonable imposition given the overall size and scope of the MDL and the length of time it has been pending.

The Court anticipates continuing to set strict time limits on the length of any given trial, likely shorter than those set for the most recent trials. The Court also anticipates that there will be shorter intervals between the trial dates in cases to be tried by the undersigned judge. In addition, the Court is contemplating asking other judges to try cases so that multiple cases, including multiple cases involving a particular defendant, can be tried at the same time. Finally, the Court also is considering the possibility of multiple-plaintiff trials. The parties' proposals should include their respective positions on this last point, including any relevant legal authorities.

The Court directs the parties to promptly meet and confer and propose one or more case management orders that will increase the number of cases available for bellwether trials, accelerate the schedule for selecting and preparing bellwether cases, enable *multiple* additional cases to be ready for trial by no later than June 1, 2017, and

---

[1] It is conceivable that this can be accomplished, at least in part, via the cases that will be or are being selected for the mixed-use bellwether pool. In this regard, the Court anticipates that any case selected for that pool that might otherwise drop out because it is not a true mixed-use case will be retained as a potential single-defendant bellwether trial case.

advance the current schedule of dates for bellwether trials.

**3.      Settlement process**

Henceforth, each defendant and the appropriate plaintiffs' steering committee (PSC) representatives must meet in person with the settlement master no less than once every 30 days, or more frequently as requested by the settlement master. On the plaintiffs' side, no more than two persons should be designated to attend. On the defendants' side, each of these meetings must be attended by the defendant's designated settlement counsel as well as a designated in-house counsel at the vice president level or above with decision-making authority, along with any other in-house attorneys the particular defendant wishes to participate. In this regard, the in-house settlement counsel must be a single person designated for this purpose, not alternating representatives, and must have full authority to settle all pending cases involving that defendant.

The settlement master will provide monthly written reports to the Court regarding these meetings and the status of settlement negotiations. To preserve the confidentiality of the settlement process, these reports will be prepared on a defendant-by-defendant basis, and reports regarding a particular defendant will be provided by the settlement master only to the PSC settlement representatives, designated settlement counsel for that defendant, and the Court.

The Court also anticipates holding, at each future case management conference held after December 1, 2017, brief *in camera* meetings on a defendant-by-defendant basis including the settlement master, the PSC settlement representatives, and the designated inside and outside settlement counsel for each defendant. Any request to

be relieved of this requirement must be made by a written request to the Court no later than 14 days before the case management conference.

**4.     Timing of proposal**

The proposals contemplated by this case management order are to be included in a joint status report to be filed by no later than November 22, 2017.  A case management conference for the exclusive purpose of dealing with these proposals is set for November 30, 2017 at 11:00 a.m.

Date:  November 4, 2017

                                                                      _____
                                                                                    MATTHEW F. KENNELLY
                                                                                    United States District Judge