IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION | ) ) ) ) | Case No. 14 C 1748<br><br>MDL No. 2545 |
| This document relates to: *Mitchell v. AbbVie*, No. 14 C 9178 | ) ) ) | |

CASE MANAGEMENT ORDER NO. 99
(Scope of new trial in *Mitchell v. AbbVie*;
rulings on *Mitchell* motions *in limine*;
trial time allocation for *Mitchell* retrial)

MATTHEW F. KENNELLY, District Judge:

In this order, the Court rules on various pretrial matters concerning the retrial in *Mitchell v. AbbVie, Inc.*, Case No. 14 C 9178.

1. *Scope of new trial*

The Court concludes that a new trial is required on all of Mitchell's claims, not just on the fraudulent misrepresentation claim as the Court previously ordered. AbbVie itself argued in briefing the post-trial motions after the previous trial that "[i]f the Court were to order a new trial, the new trial must extend to all issues," Defs.' Reply (dkt. 109) at 1 n.1, and that "if this Court concludes that the verdict is inconsistent, the proper remedy would be to order a new trial on *all* issues." *Id.* at 15 n.25. And the default rule if a Court finds verdicts inconsistent is a new trial on all claims. *See Deloughery v. City of Chicago*, 422 F.3d 611, 617 (7th Cir. 2005); *see generally Gasolene Prod. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931). In this case, there is a reasonable likelihood that (perhaps among other things) the jury's inconsistent verdicts resulted

from confusion or misunderstanding regarding the causation requirement, which was common to or overlapping on all of Mitchell's claims. The Court also overrules AbbVie's contention, made in its motion for judgment as a matter of law filed during the previous trial, that the evidence was insufficient to permit a reasonable jury to find in Mitchell's favor on the strict liability and negligence claims. For these reasons, the Court vacates the prior judgment in its entirety and orders a new trial on all claims.

2. *AbbVie's motions in limine*

a. In light of the Court's ruling that the new trial will concern all of Mitchell's claims, the Court denies as moot AbbVie's first motion *in limine*, in which it seeks exclusion or limitation of evidence on the ground that the new trial was expected to involve only the fraudulent misrepresentation claim.

b. The Court denies AbbVie's second motion *in limine*, concerning recent supplementation of the reports of two of Mitchell's experts. The supplemental reports were timely, and for the reasons discussed in Mitchell's response to the motion, they were neither inappropriate nor harmful (unfairly or otherwise) to AbbVie.

c. The Court also denies AbbVie's third motion *in limine*, in which it seeks to bar certain testimony by Mitchell's expert Dr. David Kessler. At most, AbbVie's contentions go to the weight to be given to Dr. Kessler's testimony, not its admissibility.

3. *Mitchell's motions in limine*

a. The Court adopts its previous *in limine* and other evidentiary rulings in this case as well as its ruling in the *Holtsclaw v. Auxilium* case concerning evidence or argument regarding the purported negative impact of a jury verdict in Mitchell's favor. AbbVie does not oppose the motion.

b.    The Court will hear argument at the final pretrial conference regarding Mitchell's second motion *in limine*, concerning presentation of cumulative and allegedly improper opinion testimony on the issue of causation.

c.    The Court has given instructions in all of the AbbVie bellwether trials—without objection by AbbVie—that AbbVie is legally responsible for the conduct of its predecessor entities, including Unimed, Solvay, and Abbott Laboratories.  The Court has also precluded evidence and argument inconsistent with these instructions. Mitchell contends that AbbVie's counsel have made arguments in previous trials, including the previous trial in this case and the trial in the *Konrad v. AbbVie* case, that is inconsistent with the Court's instructions and ruling.  The Court sees no need to revisit this point in detail; AbbVie acknowledges that evidence or argument tending to disavow or limit responsibility for the acts and omissions of its predecessors is inappropriate. Mitchell cites in his motion three arguments, one in the *Konrad* trial and two in the previous trial in this case.  Counsel's statement in *Konrad* that "[t]his case is not about 20/20 hindsight" was neither contrary to the Court's instructions nor otherwise inappropriate, at least given the surrounding context in which the statement was made. But the other two statements by AbbVie's counsel during opening statement in the previous trial cited by Mitchell are much closer to the line and may have been on the wrong side of it.  These include statements to the effect that Solvay "is a different company" and that the various companies "are not the same."  Despite counsel's couching of these statements with acknowledgments that AbbVie is responsible for the conduct of the other entities, reasonable jurors might well understand such statements as suggesting differentiation between the various entities for purposes of the issues and

jury's decision in this case. AbbVie must avoid arguments suggesting differentiation between itself and the predecessor entities; a party may not make arguments contrary to the Court's instructions.

4.   *Trial time allocation*

The Court has previously determined to set reasonable limits on the amount of time for the parties to present their claims and defenses during the bellwether trials in this MDL proceeding, to prevent delay, ensure efficient presentation of the evidence and arguments, avoid unnecessary, cumulative, and repetitive evidence and arguments, and minimize undue burden on the jurors. It is well-established that a court has the authority to impose reasonable time limits on the parties at trial. *See* Fed. R. Civ. P. 16(c)(4) & (15); Fed. R. Evid. 611(a).

The Court has developed a good deal of familiarity with the cases from presiding over extended pretrial proceedings and, in particular, from trying several previous bellwether cases to verdict, including three AbbVie-only bellwether cases and one Auxilium-only case. For the *Konrad v. AbbVie* trial, the Court allocated a total of seventy-eight hours, and the parties used seventy-three hours (thirty-six used by plaintiff, thirty-seven used by defendants). For the previous trial in this case, *Mitchell v. AbbVie*, the Court allocated a total of seventy hours, and the parties came in right about that figure (thirty-five hours used by each side).[1] For the *Holtsclaw v. Auxilium* bellwether trial that was tried in November 2017, the Court likewise allocated seventy

---

[1] About two hours of the time used by the parties in the previous *Mitchell* trial involved the Court's review of objections to testimony designated from depositions and time used for mini-closing arguments. The latter will not be used during the upcoming retrial, and the former likely will not be required because the Court's evidentiary rulings made before and during the previous trial continue to govern.

4

hours, but the parties used a total of only about forty hours (twenty-two used by plaintiff and eighteen used by defendant). Finally, for the *Nolte v. AbbVie* bellwether trial that was tried in January 2018, the Court allocated sixty-four hours, and the parties came in right about that figure (thirty-two hours used by each side). It is also reasonable to expect that future trials should take less time as the parties and the Court learn from earlier trials, even where the parties and the types of injuries may differ.

The parties originally estimated that the early bellwether trials should take approximately three weeks. Based on the Court's experience in presiding over the four previous bellwether trials, that was an overly generous estimate that essentially assumed unnecessary repetition of points and presentation of unnecessarily cumulative evidence. The Court also notes that even with the shorter-than-three-weeks limits imposed in the previous bellwether trials, there has been a significant amount of unnecessary repetition in each trial, even as the Court's time limitations have shortened with successive trials. The Court believes that the trials in this MDL proceeding reasonably can and should be tried in a period of no more than two weeks.

The length of an average trial day in this courthouse is, and long has been, five hours. Thus a three week (fifteen day) trial typically would involve no more than seventy-five hours, and a two-and-one-half week (twelve or thirteen day) trial typically would involve no more than sixty or sixty-five hours.

The Court allocates a total of sixty hours to the March 7, 2018 bellwether trial in *Mitchell v. AbbVie*, not counting jury selection. Given the ordinary allocation of five hours per trial day, this would amount to about twelve full trial days, not including jury selection. Because, however, the Court will set a longer-than-normal trial day, fewer

5

than twelve days will be required.

The Court sets aside the following dates for trial to the extent necessary: March 7-9, 2018, March 12-14 and March 16, 2018 (the Court will be unavailable on March 15), and March 19-22, 2018, plus further dates after March 22 as necessary. The trial day typically will extend from 9:30 or 9:45 a.m. to 12:30 p.m. and from 1:30 p.m. to 5:00 p.m., with mid-morning and mid-afternoon breaks. The Court notes that this is longer than its typical trial day and will result in a trial day of about six hours. The Court reserves the right to extend any given trial day to 5:15 or 5:30 if warranted in order to complete the trial within the dates set aside.

The Court will allocate half of the trial time to plaintiff and half to defendants. Time will count against a side's allocation whenever it is questioning a witness, arguing an objection or other matters to the Court, making an opening statement or closing argument, or otherwise presenting its case. <u>Time spent arguing evidentiary or other *in limine* matters, as well as matters relating to jury instructions, including the Court's review of written submissions on such matters,[2] will count against a side's allocation</u>. Time used for questions to witnesses by jurors will not be allocated to either side.

If a party intends to read or play deposition testimony before the jury, this may require the Court to rule on objections to designated testimony. The reading of deposition testimony will, of course, constitute trial time. Time will count against a side's allocation for all testimony that side has designated to be read. The parties are directed to confer prior to the presentation of any deposition testimony to attempt to agree upon

---

[2] Time the Court spends reviewing written *in limine* submissions prior to or during the final pretrial conference will not count against a party's allocation.

how the time spent reading or playing the deposition should be allocated. In this regard, the Court encourages the parties to do their best to pare down deposition testimony to significant and non-repetitive matters. In addition, all such time the Court spends before or during trial considering each party's objections to deposition testimony is time that would be spent in court were the witnesses being presented live. For this reason, that time will count against the side making the objection, unless and to the extent that the Court determines that the party designating the objected-to testimony has designated testimony of limited probative value or that is otherwise unduly repetitive or cumulative.

The allocation of sixty hours is subject to reduction based on rulings barring or limiting claims, precluding opinion witness testimony, and excluding or limiting evidence via *in limine* rulings and rulings made during trial. In addition, based on its observation and review of the opening statements and closing arguments at the previous bellwether trials, the Court has determined that the length of those parts of the trial should have specific time limitations. Opening statements may not exceed 45 minutes per side, and closing arguments may not exceed a total of 75 minutes per side (plaintiff may allocate its time between opening and rebuttal as it wishes).

The Court reserves the right to adjust the total time and each side's allocation upward or downward for good cause. Good cause to adjust an allocation downward may include, among other things, presenting unduly cumulative testimony or evidence, unduly presenting evidence of minimal probative value, or making unwarranted objections to testimony or exhibits. With regard to exhibits, consistent with the Court's comments in connection with earlier trials, the Court directs the parties to confer promptly to attempt to pare down their exhibit lists, resolve foundational objections to

7

exhibits by stipulation or otherwise, and attempt to narrow objections to exhibits to the extent reasonably possible. The Court reserves the right to impose an overall limit on the number of exhibits introduced by each side.

Further particulars of the rules for time allocation may be addressed at or before the trial.

In addition, the Court will exercise its authority pursuant to Federal Rule of Evidence 611 to require that each witness will be called only once and will not be recalled later in the case, except to rebut evidence offered later that the party wishing to recall the witness could not reasonably have anticipated. Consistent with this directive, there will be no restriction on the scope of cross-examination of a witness called by an adverse party.

Consistent with the Court's practice in several recent bellwether trials, examination of a witness beyond redirect (beyond "recross," for a witness called by an adverse party) will not be permitted absent a showing at sidebar—for which the requesting party will be charged time—that the immediately preceding examination by the other side raised new points that the party has been unable to address adequately.

The Court also advises that to minimize interruptions in the jury's receipt of evidence, it will conduct fewer sidebar conferences than in previous bellwether trials. If a party anticipates that a matter may come up during a witness's testimony that will require discussion outside the jury's presence, the party should raise the matter beforehand at a break. Where this does not occur, and discussion outside the jury's presence is requested or is necessary, the Court may require the testimony to proceed while holding to the next break the issue to be discussed.

Finally, the Court reminds the parties that it expects and directs counsel for both sides to advise witnesses in advance of their testimony of *in limine* rulings that may impact the witness's testimony – in particular, rulings that preclude or limit admission of evidence about which the witness might otherwise testify.

Date: February 24, 2018

_____
MATTHEW F. KENNELLY
United States District Judge