IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION ) ) ) ------------------------------------------------- ) ) This document relates to: ) ) MEDICAL MUTUAL OF OHIO, ) ) Plaintiff, ) ) v. ) ) ABBVIE INC., et al., ) ) Defendants. ) | | MDL No. 2545 Case No. 14 C 1748 Case No. 14 C 8857 |

**CASE MANAGEMENT ORDER NO. 104**
(Memorandum Opinion and Order on defendants' motion
for order that plaintiff may not claw back documents
in <u>Med. Mutual of Ohio v. AbbVie Inc.</u>, No. 14 C 8857)

MATTHEW F. KENNELLY, District Judge:

The defendants in this civil RICO case—AbbVie Inc. and other manufacturers of testosterone replacement therapy drugs—have moved for an order barring plaintiff Medical Mutual of Ohio (MMO) from clawing back six documents it produced to defendants. Defendants argue that the attorney-client privilege does not protect the documents and that even if it does, MMO has waived the privilege. Defendants alternatively ask the Court to order MMO to produce redacted versions of the documents, leaving visible the unprivileged facts they contain. For the following reasons, the Court denies defendants' motion.

## Background

Between March 2017 and September 29, 2017, MMO produced to defendants approximately 180,000 documents totaling more than 1.4 million pages. MMO produced the documents pursuant to the parties' agreed protective order, which the Court entered on January 18, 2017. The protective order's purpose is to "facilitat[e] the exchange of information between the Parties to this Action without involving the Court unnecessarily in this process." D.E. 194 ¶ 4.

Paragraphs Seventeen and Eighteen of the protective order contain what the parties describe as claw-back procedures for inadvertent production of confidential or privileged material. Paragraph Seventeen states:

> If a Producing Party inadvertently or unintentionally produces a document or information without marking it as Designated Confidential or Highly Confidential Information or marking it with the incorrect Confidentiality designation, the Producing Party shall, within twenty (20) business days of discovering the inadvertent production, give notice to the Receiving Party in writing, and thereafter the Receiving Party shall treat the document according to its new designation. Inadvertent or unintentional disclosure shall not be deemed a waiver in whole or in part of the Producing Party's claim of restriction either as to specific documents and information disclosed or on the same or related subject matter.

*Id.* ¶ 17.

Paragraph Eighteen states that if a producing party inadvertently or unintentionally produces any document(s) or information that it determines is protected from discovery by, among other things, the attorney-client privilege, the producing party must notify the receiving party and the MDL plaintiffs' co-lead counsel in writing within twenty business days of discovering the inadvertent production. *Id.* ¶ 18. Paragraph Eighteen sets forth the procedures that the receiving party and plaintiffs' co-lead counsel must follow to sequester the document(s), determine whether to challenge the

2

producing party's claim of privilege or protection from discovery, and, if applicable, destroy the document(s). *Id.* Paragraph Eighteen also states:

> Inadvertent or unintentional production may not be deemed a waiver in whole or in part of the Producing Party's claim of privilege or immunity from discovery either as to specific documents and information disclosed or on the same or related subject matter based on the facts constituting the inadvertent production. This provision is, and shall be construed as, an Order under Rule 502(d) of the Federal Rules of Evidence. Accordingly, as is explicitly set forth in Rule 502(d), a Party's production of documents, whether inadvertent or intentional, is not a waiver of any privilege or protection "in any other federal or state proceeding." Fed. R. Evid. 502(d).

*Id.* ¶ 18.

Paragraph Four of the protective order likewise contains a non-waiver provision. It states that "[n]othing in this Protective Order, nor the production of any documents or disclosure of any information pursuant to this Order, shall be deemed to have the effect of (a) an admission or waiver, including waiver under the Federal Rules of Evidence or applicable Local Rules." *Id.* ¶ 4.

The present dispute arose when MMO invoked the protective order to claw back six documents that MMO claims it produced inadvertently. MMO represents that it discovered the inadvertent productions in a piecemeal fashion. First, on October 3, 2017, MMO discovered that it had produced six privileged documents, including three of the documents (e-mails) at issue here. The e-mails contain an inquiry from one of MMO's in-house attorneys, Timothy Kibler, to three non-attorney employees of MMO. The inquiry seeks information about an AbbVie account manager that Kibler and Brien Shanahan, another of MMO's in-house attorneys, believe is relevant to this litigation. The e-mails also contain the employees' responses to the inquiry. Goroff Decl., Exs. B, C, D ("Goroff Ex(s)."). On the day it discovered the disclosures, MMO wrote to

3

defendants and the MDL plaintiffs' co-lead counsel to ask defendants to destroy the documents.

MMO states that it did a quality check of its production after discovering the above disclosures. On October 20, 2017, while doing the quality check and preparing for depositions, MMO discovered that it had inadvertently produced another e-mail chain, which is the fourth document in dispute. In the e-mail chain, Kibler sends questions from Shanahan to three non-attorney MMO employees. The questions relate to Shanahan's work with outside counsel on the present litigation. One of the employees replies to Kibler, Shanahan, and the others with responses to the questions. Goroff Ex. A. On October 25, 2017, MMO notified defendants and the MDL plaintiffs' co-lead counsel of the disclosure and asked defendants to destroy the document.

The fifth document in dispute is an e-mail chain between two non-attorney MMO employees, Dr. Kathryn Canaday and Dr. Marko Blagojevic. In the first e-mail, Dr. Blagojevic relays statements and an inquiry from attorney Kibler regarding a defense in this litigation. Dr. Blagojevic also requests information from Dr. Canaday for Kibler's inquiry. The second e-mail contains Dr. Canaday's response. Goroff Ex. E.

Defendants used Goroff Exhibit E in questioning Dr. Canaday during her deposition on November 29, 2017. Defense counsel questioned Dr. Canaday about the document for approximately ten minutes without objection by MMO's counsel. Several days later, an attorney for MMO who had not attended the deposition identified the document as privileged and inadvertently produced. On December 6, 2017, MMO notified defendants and the MDL plaintiffs' co-lead counsel of the disclosure and asked defendants to destroy the document.

The sixth document in dispute is an e-mail from Dr. Blagojevic to Dr. Canaday that appears in Goroff Exhibit E, but that MMO produced under a different Bates number. Goroff Ex. F. MMO learned that it had produced this document when defendants used it (along with Goroff Exhibit E) during Dr. Blagojevic's deposition on December 7, 2017. MMO's counsel objected during the deposition on the basis of privilege and invoked the protective order's claw-back provisions, but allowed questioning subject to this alleged reservation of rights. On December 15, 2017, MMO contacted defendants and the MDL plaintiffs' co-lead counsel in writing and asked defendants to destroy the document.

Defendants state that in addition to Goroff Exhibits A through F, MMO has produced hundreds of other documents "that contain or describe exchanges with MMO's inside and outside counsel," some of which are marked "TRT MDL Lawsuit—Attorney Client Privileged Communication." Defs.' Mot. at 1-2. Defendants attach several such documents as exhibits to their reply. Second Goroff Decl., Exs. 1-6.

Based on these facts, defendants argue that none of the documents at issue are protected by the attorney-client privilege.[1] Defendants further argue that even if the attorney-client privilege once protected the documents, and notwithstanding the parties' protective order, the Court should find that MMO has waived the privilege because (1) MMO's document production was not inadvertent; (2) MMO failed to take reasonable steps to prevent the disclosures; and (3) MMO failed to take reasonable steps to rectify

---

[1] Defendants also argue that the documents are not work product, and that even if they are, defendants have demonstrated a substantial need for the documents. MMO has stated that it "is not asserting work-product protection" over these documents. Pl.'s Opp. at 10 n.9. Accordingly, this Court need not address defendants' work product arguments.

5

its errors.  *See* Fed. R. Evid. 502(b).  Defendants separately argue that even if the parties' protective order precludes the Court from applying Federal Rule of Evidence 502(b), MMO waived the privilege for Goroff Exhibits E and F by failing to timely object when defendants used Goroff Exhibit E during Dr. Canaday's deposition.  Finally, defendants argue that allowing MMO to preserve the privilege would be fundamentally unfair.  More specifically, defendants state that "the documents in question show that MMO knowingly made false assertions in its pleadings and other filings that go to the core of its claims."  Defs.' Mot. at 15.  Defendants argue that they need to use Goroff Exhibits A through F in order to rebut MMO's claims, because when they questioned MMO's witnesses about non-privileged facts in the documents, "the witnesses were either unable or unwilling to answer truthfully."  Defs.' Reply. at 12.

## Discussion

**1.    Attorney-Client Privilege**

The purpose of the attorney-client privilege is "'to encourage clients to make full disclosure to their attorneys.'"  *United States v. Leonard-Allen*, 739 F.3d 948, 952 (7th Cir. 2013) (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)).[2]  "Because the privilege may operate in derogation of the search for truth," the Seventh Circuit "construe[s] the privilege to apply only where necessary to achieve its purpose."  *Id.* at 953 (internal quotation marks and citation omitted).  Thus the privilege protects

---

[2] "When applying federal law . . . the transferee court in an MDL proceeding applies the law of the circuit in which it sits."  *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proceedings*, No. 14 C 1748, 2017 WL 1833173, at *5 n.4 (N.D. Ill. May 8, 2017), *reconsideration denied*, No. 14 C 1748, 2017 WL 2953703 (N.D. Ill. July 11, 2017).  The parties' briefing implies they agree that Seventh Circuit law governs the issues in dispute.

confidential communications between client and attorney that "reflect the lawyer's thinking [or] are made for the purpose of eliciting the lawyer's professional advice or other legal assistance." *Id.* at 953 (alteration in original) (internal quotation marks and citation omitted); *see also Sandra T.E. v. South Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010). "[F]actual investigations performed by attorneys *as attorneys* fall comfortably within the protection of the attorney-client privilege." *Sandra T.E.*, 600 F.3d at 619. These include factual investigations performed by a corporation's in-house counsel. *Id.* Finally, although business advice itself is not protected by the attorney-client privilege, discussions about business issues are privileged when they "indicate[] that legal advice was sought and obtained and indirectly reveal[] the inquiry that was made." *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 415, 428 (N.D. Ill. 2006). "The party seeking to invoke the privilege bears the burden of proving all of its essential elements." *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997).

Defendants argue that the disputed e-mails are not privileged because they merely contain attorneys' names, discuss only business concerns, discuss underlying facts that MMO has stated are not privileged, and/or do not otherwise reflect legal advice. The Court disagrees and finds that MMO has met its burden of proving that all six documents at issue are protected by the attorney-client privilege.

Goroff Exhibit A contains communications between MMO's employees and MMO's in-house attorneys who, along with outside counsel, were conducting an investigation relating to this litigation. The attorneys request information; the request reveals their legal thinking; and one of the employees provides information in response. This document is privileged. *See Leonard-Allen*, 739 F.3d. at 953; *Sandra T.E.*, 600

F.3d at 619.  Goroff Exhibits B, C, and D contain communications between MMO's in-house attorney (Kibler) and MMO's employees.  The communications reveal Kibler's legal thinking – as well as Shanahan's – and aid their investigation into the role of an AbbVie account manager in the present litigation.  These documents, too, are privileged.  *See Leonard-Allen*, 739 F.3d at 953; *Sandra T.E.*, 600 F.3d at 619.  Finally, although Goroff Exhibits E and F contain e-mails exchanged only between non-attorney MMO employees, they reflect Kibler's legal thinking and forward-looking strategy for the present litigation.  They also contain a relevant response from an employee.  These e-mails do relate to a business issue, but they "indicate[] that legal advice was sought and obtained," and they directly and indirectly reveal the communications made to that end. *See Leonard-Allen*, 739 F.3d at 953; *In re Sulfuric Acid*, 235 F.R.D. at 428.  Goroff Exhibits E and F are privileged.

Despite defendants' position that the underlying facts in Goroff Exhibits A through F are not privileged, the Court finds that the facts and the privileged information are "too intertwined to make redaction possible."  *Cont'l Cas. Co. v. Marsh*, No. 01 C 0160, 2004 WL 42364, at *3 (N.D. Ill. Jan. 6, 2004).  The Court therefore denies defendants' alternative request for an order directing MMO to produce redacted versions of the documents.[3]

## 2.      Applicability of Federal Rule of Evidence 502(b)

Because the Court has found that the attorney-client privilege protects all six

---

[3] MMO's attorney declaration indicates that MMO might have provided a redacted version of Goroff Exhibit A to defendants.  Hilton Decl. ¶¶ 28-30.  Neither party, however, provided a redacted version of Exhibit A to the Court.  Accordingly, the Court's order denying defendants' redaction request applies to all six documents in dispute.

documents in dispute, it must determine whether MMO waived the privilege, an inquiry that begins with determination of what standard governs the determination of waiver.

In general, Federal Rule of Evidence 502(b) governs whether a party inadvertently disclosed a document and whether the disclosure waived privilege. *See Excel Golf Prods. v. MacNeill Eng'g Co.*, No. 11 C 1928, 2012 WL 1570772, at *2 (N.D. Ill. May 3, 2012). Under Rule 502(b), a disclosure made in a federal proceeding does not waive the privilege if (1) the disclosure is inadvertent; (2) the privilege-holder took reasonable steps to prevent disclosure; and (3) the privilege-holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B). Fed. R. Evid. 502(b). "Determining whether a party took reasonable steps to prevent disclosure and to rectify the error requires considering a variety of factors including the procedures followed to avoid producing privileged material, the volume and timing of the production, and overriding issues of fairness." *Excel*, 2012 WL 1570772 at *3. The burden is on the producing party to show compliance with Rule 502(b). *Id.* at *2.

Rule 502(d), however, allows a federal court to enter an order that the attorney-client or work product privilege "is not waived by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other federal or state proceeding." Fed. R. Evid. 502(d). In this case, the parties' agreed, court-entered protective order provides that the claw-back and non-waiver provisions for inadvertent disclosures are and "shall be construed as, an Order under Rule 502(d)." D.E. 194 ¶ 18. MMO argues that because the parties obtained a Rule 502(d) order to govern inadvertent production of privileged material, the Court should not apply Rule

9

502(b) to analyze waiver.

Defendants argue that the protective order does not override Rule 502(b). They cite a litany of out-of-circuit cases to argue that "[a]lthough Rule 502 recognizes that the default test set forth in subsection (b) may be superseded by court order or agreement of parties, *see* Fed. R. Evid. 502(d), (e), such an order or agreement must provide concrete directives" that correspond to each element of Rule 502(b). Defs.' Reply at 5 (quoting *Maxtena, Inc. v. Marks*, 289 F.R.D. 427, 444 n.16 (D. Md. 2012)). If the parties fail to provide such directives, "Rule 502(b) will be used to fill in the gaps in controlling law." *Maxtena*, 289 F.R.D. at 444 n.16.[4]

The Seventh Circuit has not addressed this issue. Nor have courts in the Northern District of Illinois taken a uniform approach. For example, in *DeGeer v. Gillis*, No. 09 C 6974, 2010 WL 3732132, at *8 (N.D. Ill. Sept. 17, 2010), the court entered a stipulated protective order that "expressly addresse[d] inadvertent production of privileged documents" and contained a non-waiver clause. The court found that because a party's production "was inadvertent, paragraph 24 of the Stipulated Protective Order controls and DeGeer has not waived his privileged [sic] as to these communications." *Id.*; *cf. In re Sulfuric Acid Litig.*, 235 F.R.D. 407, 418-419 (N.D. Ill. 2006) (stating that the "obvious purpose" of the parties' protective order regarding inadvertent production – which the parties obtained before Rule 502's enactment – "was

---

[4] *Maxtena* and the other out-of-circuit cases that defendants cite are unpersuasive given the protective order's language in the present case, as further discussed below. Finally, in one of the cases that defendants rely upon heavily, the parties did not have a court-entered protective order pursuant to Rule 502(d), and the claw-back agreement they made among themselves did not demonstrate an intent to replace the Rule 502(b) analysis. *See Irth Solutions LLC v. Windstream Commc'ns LLC*, No. 2:16-cv-219, 2017 WL 3276021, at *1, *12 (S.D. Oh. Aug. 2, 2017).

10

to avoid the uncertainty that would have existed without it," and finding that the protective order should "foreclose[] application of inadvertent production case law") (quoting *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, No. IP 96-1718-C H/G, 2001 U.S. Dist. LEXIS 8320, at *1 (S.D. Ind. May 30, 2001). By contrast, in *Viamedia, Inc. v. Comcast Corp.*, No. 16-cv-5486, 2017 WL 2834535 (N.D. Ill. June 30, 2017), the court applied Rule 502(b) even though the parties had obtained a court-entered protective order containing a non-waiver provision for inadvertent disclosure of privileged documents. *Id.* at *5-7 & n.5. Notably, however, the parties in *Viamedia* did "not dispute the relevant test under Rule 502." *Id.* at *6 n.7.

The Court concludes that the parties' protective order governs inadvertent disclosures; Rule 502(b) does not. Paragraph 18 of the protective order states that it "is, and shall be construed as, an Order under Rule 502(d)." D.E. 194 ¶ 18. It also reiterates the non-waiver language from Rule 502(d) and quotes from the Rule. *Id.* Paragraphs Four and Seventeen of the protective order likewise contain non-waiver language, and Paragraph Four states that the purpose of the protective order is to "facilitat[e] the exchange of information . . . without involving the Court unnecessarily." *Id*. ¶ 4. These drafting choices reflect the parties' intent to create their own guidelines to address inadvertent disclosure and to avoid waiver-related litigation under Rule 502(b).

Defendants argue that this result "allow[s] parties to act negligently in their privilege review as long as the governing protective order contains the most generic claw-back provision." Defs.' Reply at 6. Similarly, defendants argue that in *Excel*, which MMO cites to argue that the parties' claw-back agreement displaces Rule 502(b), the court "require[d] the producing party to prove reasonable efforts were taken to

11

protect privileged information before invoking a claw back provision." *Id.* at 6 n.1 (citing *Excel*, 2012 WL 1570772, at *3). The Advisory Committee Notes to Rule 502(d), however, state that the court order contemplated by the Rule "may provide for return of documents without waiver irrespective of the care taken by the disclosing party." Fed. R. Evid. 502(d) advisory committee's note (2007).[5]

Because the Court concludes that the protective order governs, it does not address defendants' arguments under Rule 502(b). This includes defendants' appeal to fairness, which is not a factor under the protective order. The Court observes, however, that the proposition that one or more of the privileged documents at issue is arguably damaging, even highly damaging, to MMO's case does not provide a basis to disregard the attorney-client privilege. The Court notes in this regard that defendants do not invoke any exception to the attorney-client privilege.

**3.  Inadvertent Disclosure**

Because the Court has held that the parties' protective order governs the issue of waiver for inadvertently produced privileged documents, the Court must decide whether MMO's production was inadvertent. The protective order does not define "inadvertent," so the Court follows its plain meaning. *See In re Sulfuric Acid*, 235 F.R.D. at 419 (assigning plain meaning to the term "discovery" in protective order). The dictionary

---

[5] Furthermore, in *Excel*, the parties' protective order stated that inadvertent disclosures should be handled "consistent with Fed. R. Evid. 502" *generally*, and the defendant rejected the plaintiff's request for a specific claw-back agreement that would "assure that such production would not result in waiver." *Excel*, 2012 WL 1570772, at *1. The court found that the plaintiff could have interpreted the defendant's position as "reassurance that inadvertently produced privileged materials would be returned without dispute." *Id.* at *3. Applying Rule 502(b), the court found that "overriding fairness concerns preclude[d]" waiver even though the plaintiff had "not produced sufficient information regarding its review procedures." *Id.*

12

defines inadvertent as "not focusing the mind on a matter," or "unintentional." *See, e.g.*, Merriam-Webster Dictionary Online, *available at* https://www.merriam-webster.com/dictionary/inadvertent (last visited Mar. 13, 2018). This definition is consistent with the standard that the majority of courts in this District use to determine whether a disclosure is inadvertent under Rule 502(b)(1). *See, e.g.*, *Excel*, 2012 WL 1570772 at *2 ("[T]he inadvertence inquiry asks merely whether the production was unintentional.").

Defendants argue that MMO's "conduct in this case goes far beyond mere inadvertence" because MMO has produced—without seeking to claw back—approximately 360 documents that are marked privileged or confidential, that refer to MMO's attorneys by name, or that contain exchanges with MMO's in-house and outside counsel. Defs.' Mot. at 1-2, 5; *see also* Goroff Exs. 1-6. The Court rejects this argument because it conflates the inadvertence inquiry with the logically distinct question whether, under Rule 502(b)(2), the party took reasonable steps to prevent disclosure. *See, e.g.*, *Thorncreek Apartments III, LLC v. Vill. of Park Forest*, Nos. 08 C 1225, 08-C-0869, 08-C-4303, 2011 WL 3489828, at *7 (N.D. Ill. Aug. 9, 2011) (citation omitted) (finding that "a screening procedure that fails to detect confidential documents that are actually listed as privileged is patently inadequate," and is "compelling evidence that [the disclosing party] did not take reasonable precautions" to prevent disclosure); *see also* Defs.' Mot. at 12 (citing same).

Defendants also argue that MMO's disclosures were not inadvertent because MMO waited until a week after Dr. Canaday's deposition to claw back Exhibit E. The Court similarly rejects this argument because it conflates the inadvertence inquiry with

13

the question whether, under Rule 502(b)(3), the party took prompt steps to rectify the error. *See, e.g.*, *Kmart Corp. v. Footstar, Inc.*, No. 09 C 3607, 2010 WL 4512337, at *5 (N.D. Ill. Nov. 2, 2010) (finding that party failed to take reasonable steps to rectify its error by waiting twelve days to file a claw-back motion for a document used during deposition); *see also* Defs'. Mot. at 14 (citing same).

MMO's attorney has filed a sworn declaration describing the circumstances and timeline of MMO's discovery of the disclosures. The Court is satisfied that MMO did not make a knowing choice to produce the documents and that the disclosures were inadvertent. *Excel*, 2012 WL 1570772, at *2; *see also DeGeer v. Gillis*, No. 09 C 6974, 2010 WL 3732132, at *8 (N.D. Ill. Sept. 17, 2010) (crediting affidavits of plaintiff and plaintiff's attorney to find that disclosure was inadvertent).

**4.     Compliance With Protective Order**

Defendants suggest that even if MMO's disclosures were inadvertent, MMO did not comply with the "timing provision of the Protective Order's claw back clause" because MMO had discovered the first inadvertent disclosures by October 3, 2017 but did not make made its last claw-back request until December 15, 2017. Defs.' Mot. at 13 n.14. The protective order, however, does not state that once the producing party discovers an inadvertent production, it has only twenty business days to give notice of every *subsequent* inadvertent production. Rather, it simply requires that the producing party give notice "within twenty (20) business days of discovering the inadvertent production." D.E. 194 ¶¶ 17, 18. MMO made a claw-back request for each disputed document within twenty business days of discovering that document's disclosure. It complied with the timing provision in the protective order.

14

Defendants also suggest that MMO did not comply with the protective order because it failed to timely serve a privilege log. But nothing in the protective order suggests that failure to serve a privilege log—or late service of a log—waives privilege.

The Court finds that MMO complied with the protective order's provisions governing inadvertent disclosure. Therefore, MMO did not waive privilege for Goroff Exhibits A through F.

**5.      Waiver During Deposition**

Defendants argue that even if the parties' protective order supersedes Rule 502(b), MMO separately waived the privilege for Exhibit E (and by extension Exhibit F) by failing to object when defendants used Exhibit E during Dr. Canaday's deposition, allowing Dr. Canaday to testify about it for approximately ten minutes, and waiting seven days to claw it back. Defendants support their argument with a district court decision holding that "failure to timely object to the introduction of an exhibit [during deposition] waives any privilege, regardless of the presence of a claw-back provision" that is "intended to override the common law as to inadvertent disclosure." *Hologram USA, Inc. v. Pulse Evolution Corp.*, No. 2:14-v-00772-GMN-NJK, 2016 WL 3654285, at *2 (D. Nev. July 5, 2016). Defendants also cite *Kmart Corp. v. Footstar, Inc.*, No. 09 C 3607, 2010 WL 4512337, at *5 (N.D. Ill. Nov. 2, 2010), but in that case, there was no claw-back agreement.

The Court finds the decision in *In re Sulfuric Acid Antitrust Litigation* more convincing. There, much like in the present case, the protective order contained a claw-back provision for inadvertently produced documents and information and gave the disclosing party thirty days to exercise it. *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D.

15

at 417-18. The court stated that the "obvious purpose of the protective order was to avoid the uncertainty that would have existed without it." *Id.* at 418. It then cited with approval a case in which the court declined to apply a waiver balancing test and held that, but for a claw-back provision nearly identical to the one in *In re Sulfuric Acid*, a party would have waived privilege by inadvertently producing documents and waiting thirteen days to claw them back after opposing counsel used one of them during a deposition. *In re Sulfuric Acid*, 235 F.R.D. at 418-19 (citing *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, No. IP 96-1718-C H/G, 2001 U.S. Dist. LEXIS 8320, at *1-2 (S.D. Ind. May 30, 2001)). Although *In re Sulfuric Acid* and *Cardiac Pacemakers* were decided before Rule 502 was enacted, the availability of Rule 502(d) today renders the logic in those cases even stronger.

Furthermore, the Court believes that assessing defendants' separate waiver argument would amount to performing a Rule 502(b)(3) analysis under a different name. Doing so would be inconsistent with the Court's determination that the parties intended for their protective order to override Rule 502(b). The Court therefore rejects defendants' separate waiver argument for Goroff Exhibits E and F.

## Conclusion

For the foregoing reasons, the Court denies defendants' motion seeking an order that MMO may not claw back certain produced documents [dkt. no. 303].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 14, 2018