**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION | MDL No. 2545<br>Master Docket Case No. 1:14-cv-01748<br>Honorable Matthew F. Kennelly |
| This document applies to:<br>All cases | |

**PLAINTIFFS' STEERING COMMITTEE'S RESPONSE IN OPPOSITION TO ABBVIE'S SECOND AND THIRD NOTICES OF DEFICIENCY PURSUANT TO CMO 115 AND MOTION FOR SANCTIONS**

AbbVie Inc. and Abbott Laboratories ("AbbVie") filed a Second and Third Notice of Deficiency Pursuant to Case Management Order No. 115. In its Second Notice, AbbVie has alleged 317 profile form deficiencies. (Dkt. No. 2703). Upon review, it appears that AbbVie posits 213 allegations that certain medical records were not provided, 82 allegations that Plaintiff alleged AndroGel usage during a period of time but that the pharmacy records reflect different dates, and 75 allegations that no records show AndroGel dispensation.[1] In its Third Notice, AbbVie has alleged 303 deficiencies. (Dkt. No. 2720). It appears that AbbVie puts forth 21 allegations that certain medical records were not provided, 158 allegations that Plaintiff alleged AndroGel usage during a period of time but the pharmacy records reflect different dates, 113 allegations that no records show AndroGel dispensation.

**I.  PLAINTIFF PROFILE FORMS ARE NOT DEFICIENT WHERE PLAINTIFFS PROVIDE SOME BUT NOT ALL PHARMACY AND MEDICAL RECORDS**

As Plaintiffs did before, the PSC wishes to call the Court's attention to certain categories of deficiencies brought forth by AbbVie.

---

[1] It also asserts in *Kusto-Jackson*, 15-cv-3348 that the profile form is deficient purely because medical records "are not in English." Second Notice at 14. Plaintiff died from a heart attack while vacationing in Quebec – that hospital record is in French. That is not a profile form deficiency.

A. **Gaps in Pharmacy Records**

AbbVie alleges that 240 profile forms are deficient because there are gaps in the pharmacy records that Plaintiffs have provided to AbbVie. To take one example, AbbVie asserts a deficiency in *Charles Camp*, 16-cv-9834, because "Plaintiff alleges AndroGel usage up to February 2015 but records show last AndroGel dispensed in March 2014." *See* Resp. to Third Notice by Schachter Hendy Johnson (Dkt. No. 2724) at 1. Counsel represents that Plaintiff filled prescriptions for AndroGel in January 2012 and March 2014 before suffering a myocardial infarction on February 8, 2015. Plaintiff Profile Forms are not deficient and their underlying actions are not subject to summary judgment where plaintiffs have provided pharmacy records evidencing some but not all of the AndroGel usage alleged in the case.

B. **Lack of Pharmacy Records Where Usage is Evidenced by Medical Records and Future Testimony**

AbbVie alleges that 188 profile forms are deficient because plaintiffs did not provide any pharmacy records evidencing AndroGel dispensation, even where medical records indicate that AndroGel was a current medication. In *Charles Johns*, 15-cv-420, for example, AbbVie asserts: "No records showing dispensation of AndroGel produced." *Id.* at 1. Counsel for Mr. Johns represents that "[o]ver 27 different records" attached to the profile form document Plaintiff's use of AndroGel. Counsel also represents that the "medical records establish use and in fact reflect the treating physicians' belief that this use caused Mr. Johns' pulmonary embolism." *Id.* at 1-2. AbbVie continues to assert that the profile form is deficient because they do not have any *pharmacy* records for the case. AbbVie is not entitled to a premature summary judgment where they have been provided multiple medical records evidencing proof of AndroGel usage, *especially* when that proof of using is concomitant with the injury hospitalization. Moreover, AbbVie could have ordered the records

2

itself. Even in the absence of pharmacy records, AbbVie is not entitled to summary judgment where, as here, the medical records create a question of fact regarding usage.

    **C.**    **Subsequent Injuries**

AbbVie asserts up to 234 profile forms are deficient where plaintiffs have provided medical records confirming diagnosing of some injuries, but not all of the alleged injuries caused by AndroGel.

Taking *Bruce Longson*, 16-cv-4505 as one example, AbbVie asserts the profile form is deficient because "Medical records not provided confirming alleged CVA." Counsel for Plaintiff asserts that they have provided medical records confirming the alleged cerebrovascular accident with direct citations to the records. *Id.* at 2. In *Steven Kokotos*, 16-cv-10009, AbbVie argues that the profile form is deficient because there are no medical records showing ischemic brain injury. Counsel for Plaintiff has responded that Plaintiff also alleged two other injuries – a DVT and PE – and has already provided the medical records showing those diagnoses. *See* Resp. to Third Notice by Schachter Hendy Johnson (Dkt. No. 2726) at 2. Profile forms are not deficient where, as here, plaintiffs provide medical records evidencing some but not all injuries.[2] The profile forms are "substantially complete." Moreover, AbbVie is free to use the medical authorizations provided to it to order the records itself.

## II.    ABBVIE MUST BE SANCTIONED

AbbVie's continued abuse of the Plaintiff Profile Form process must end. The PSC is mindful that sanctions must be sought advisedly but without any sanction, AbbVie's conduct is

---

[2] To make matters worse, counsel for *Kokotos* relates that Plaintiff *did* provide medical records evidencing the CVA that is at issue. *See* Dkt. No. 2726 at 2. ("But, what is even more egregious is that Mr. Kokotos did provide an MRI record that showed white matter abnormality consistent with chronic ischemic brain injury").

likely to continue. Plaintiffs respectfully submit that a sanction is necessary to prevent the continued waste of the Court's and Plaintiffs' time and resources. As this Court has pointed out, discovery violation sanctions are to be "proportionate to the party's violation." *Wilson v. Sundstrand Corp.* No. 99-cv-6944, 2003 WL 21961359, *14 (N.D. Ill. Aug. 25, 2003). AbbVie has brought forth about 1,000 case deficiencies that have resulted in an incalculable amount of time and resources expended in investigating and defending those motions. Accordingly, Plaintiffs respectfully request that the Court sanction AbbVie as set forth below.

### A. Legal Standards

The Court may sanction AbbVie under Rule 37, Section 1927 and under the Court's inherent powers. The Court has "wide latitude in fashioning appropriate sanctions." *Johnson v. Kakvand*, 192 F.3d 656, 661 (7th Cir. 1999).

Rule 37(b)(2)(A) empowers the Court to issue "further just orders" where a party has violated an order of the Court. Violation of a discovery order triggers Rule 37(b)(2)(C), requiring sanctions on the disobedient party or counsel for costs and fees caused by an unjustified failure to comply.

Under 28 U.S.C. § 1927, any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The Court may sanction an attorney "where that attorney has acted in an objectively unreasonable manner by engaging in a 'serious and studied disregard for the orderly process of justice'" *Fields v. City of Chicago*, No. 10 C 1168, 2015 WL 12806567, at *4 (N.D. Ill. Nov. 6, 2015), *citing Dowe v. Nat'l RR. Passenger Corp.*, No. 01 C 5808, 2004 WL 1375692, at *5 (N.D. Ill. May 28, 2004). Sanctions may be imposed under § 1927 for vexatious conduct based on a showing of either subjective or objective bad faith. *Id.*, *citing Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 120 (7th Cir. 1994). The objective

4

standard is satisfied by "extremely negligent conduct, like reckless and indifferent conduct." *Id.* at 120.

Federal Courts are empowered to "protect the administration of justice by levying sanctions in response to abuse litigation practices." *Kovilic Const. Co. v. Missbrenner,* 106 F.3d 768, 772-73 (7th Cir. 1997). The Court's inherent power to punish violations of its orders requires a showing of a willful disobedience or "subjective bad faith." *Id.*, *citing Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (inherent power authorizes sanction against party or attorney who "acted in bad faith, vexatiously, wantonly, or for oppressive reasons" (internal quotation marks omitted)); *Badillo v. Cent. Steel & Wire Co.*, 717 F.2d 1160, 1165 (7th Cir. 1983).

The Court has been clear and unambiguous in its discussions with counsel regarding the profile form process, with its Orders, and most recently with its comments at the last case management conference. A monetary sanction against AbbVie is an appropriate remedial measure under the bases cited herein. Plaintiffs have suffered a clear and unmistakable harm, consisting of wasted time and effort by counsel; a monetary sanction can effectively remedy this; and the harm was preventable by compliance with the Court's clear directives.

### B. Plaintiffs Respectfully Request the Court Sanction AbbVie

Months before AbbVie filed its First Notice of Deficiency with this Court, AbbVie had tried the *exact same* tactic in state court. AbbVie moved to dismiss 70 cases based on profile form deficiencies, asserting identical complaints as it has in the MDL. *See* Ex. 1, Cook County Notice of Deficiency, filed on March 27, 2018. The PSC is informed that those 70 cases make up a significant portion of the totality of AndroGel cases pending in Cook County. Plaintiffs in those cases unsuccessfully conferred with counsel for AbbVie and filed responses in opposition that put forth identical arguments to those made in the MDL – that this subverted the profile form process and

was an untimely, insufficient, and improper request for summary judgment on a large swath of cases that only amounted to questions of fact best left for a jury. *See, e.g.,* Ex. 2, Pl.'s Cook County Opp. At the April 9, 2018 hearing, Judge Propes denied the majority of AbbVie's motions, instructing that they were questions of fact best reserved for a later date. Counsel for the PSC, who attended that hearing, hoped that this might help AbbVie see the error in its ways and not waste this Court's time with the same kind of ploy. The PSC was wrong.

On May 16, 2018, AbbVie filed its First Notice of Deficiency Pursuant to Case Management Order No. 115, listing 374 cases that were allegedly deficient. AbbVie's First Notice, and deficiencies alleged therein, was substantially similar to its Cook County Notice of Deficiency. Thus, it became clear that AbbVie had not learned its lesson from Judge Propes that gaps in pharmacy records, for example, did not entitle AbbVie to summary judgment. Upon conferring with AbbVie on those cases, it was determined that only 11 of those cases had been dismissed – or 2.9%. *See* PSC Opp. (Dkt. No. 2686) at 1. It was at this time that members of the PSC felt that AbbVie was subverting the profile form process such that motion practice against counsel was warranted. Still, cooler heads prevailed and the PSC decided that the high road was the best strategy. The PSC continued to instruct counsel that they should confer with AbbVie, point them to the records that they had likely already served to AbbVie, explain that questions of fact like these are best reserved for another time, and respectfully ask AbbVie to withdraw its request to dismiss the case. The PSC was rewarded for that approach, it thought, when this Court firmly addressed AbbVie at the status hearing, when the Court told AbbVie in no uncertain terms that:

> This process was not intended to be some sort of a mini summary judgment process where well plaintiffs show that he got the drug here and he didn't have the heart attack for three years later and therefore something is wrong. That's not what this is … You're not even going to get out of the batter's box on those, let alone the first

>baseline. This was not a mini summary judgment process. It was a process ill-advised, of getting information into people's hands.

5/31/18 Rough Tr. at 59-60.[3]

Rather than heeding the Court's direction, on June 5, 2018, AbbVie filed its Second Notice of Deficiencies, accusing an additional 317 Plaintiffs of providing deficient profile forms. *See* AbbVie Second Notice (Dkt. No. 2703) at 2. AbbVie's Second Notice of Deficiencies alleges the same deficiencies as it did before. *See* PSC Opp. (Dkt. No. 2686) at 2-4 (identifying three deficiency categories: gaps in pharmacy records, lack of pharmacy records where usage is evidenced by medical records and future testimony, and subsequent injuries). Six days later, AbbVie filed its Third Notice of Deficiencies, identifying an additional 303 Plaintiffs of providing deficient profile forms.

In total, AbbVie has asserted 994 case deficiencies. Plaintiffs' counsel have invested a tremendous amount of valuable time and resources over the course of the last month into deficiency investigation, record review, liaising with Plaintiffs' leadership, conferring with counsel for AbbVie (on AbbVie's time), and filing responses with the Court. Plaintiffs' leadership likewise has allocated significant time, beyond their own case-specific responses as described above, in communicating with the various plaintiffs' counsel and in drafting its Response in Opposition to AbbVie's First Corrected Notice of Deficiencies and the instant motion. The Court, too, has likely invested some of its extremely valuable time in reviewing these submissions.

AbbVie's implementation of the profile form process has provided very limited benefit. While it is true that AbbVie has been successful in soliciting a handful of case dismissals, there is zero indication that it was the profile form process that specifically allowed it to do so. It is also true that AbbVie has been able to secure additional records from Plaintiffs' counsel, but it certainly could

---

[3] Plaintiffs note that the final version of the transcript is not available yet as of the time of this filing.

have done so by conferring with counsel in due course. If Plaintiffs' counsel had ignored their requests for additional case information, they would have had other avenues of recourse. The profile form process is definitively *not* the only way for AbbVie to secure these records, information, and dismissals.

The Court has already provided a stern and explicit ruling. It is clear that AbbVie did not, and will not, get the message unless it is sanctioned. Plaintiffs have expended a substantial and likely incalculable amount of time and resources in case investigation, record review, meet and confer, drafting and filing of responses, in the PSC's response in Opposition to AbbVie's First, Second, and Third Notices of Deficiency, in briefing the instant motion for sanctions, and in Plaintiffs' leadership's consultations with individual counsel regarding their cases and responses. Accordingly, and despite the fact that the PSC believes there is precedent to request a far greater sanction, the PSC respectfully requests that the Court sanction AbbVie and award the PSC $500 for each of the 994 profile form deficiencies AbbVie has brought forward for a total of $497,000.[4]

## III. CONCLUSION

The majority of plaintiffs identified in AbbVie's notices have met their obligation under the operative orders to provide signed fact sheets, authorizations, medical records, pharmacy records, and profile forms. AbbVie has improperly subverted the profile form process and it has failed to get the message: from hundreds of plaintiffs' lawyers, from Judge Propes, and now from this Court. AbbVie's continued and improper use of the profile form process has wasted a tremendous amount of time and resources and will continue to do so unless and until it is sanctioned. Plaintiffs respectfully request that the Court award the PSC $497,000.

---

[4] *See, e.g.,* Ex. 3, Sanctions Order filed on May 8, 2018 (awarding $2,500 sanction in one case for frivolous sealing requests).

Dated: June 13, 2018　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　*/s/ Trent B. Miracle*
　　　　　　　　　　　　　　　　　　　　　　Trent B. Miracle
　　　　　　　　　　　　　　　　　　　　　　SIMMONS HANLY CONROY
　　　　　　　　　　　　　　　　　　　　　　One Court Street
　　　　　　　　　　　　　　　　　　　　　　Alton, IL 62002
　　　　　　　　　　　　　　　　　　　　　　Phone: (618) 259-2222
　　　　　　　　　　　　　　　　　　　　　　Fax: (618) 259-2252
　　　　　　　　　　　　　　　　　　　　　　Email: tmiracle@simmonsfirm.com

　　　　　　　　　　　　　　　　　　　　　　Ronald Johnson, Jr.
　　　　　　　　　　　　　　　　　　　　　　SCHACHTER, HENDY & JOHNSON PSC
　　　　　　　　　　　　　　　　　　　　　　909 Wrights Summit Parkway, Suite 210
　　　　　　　　　　　　　　　　　　　　　　Ft. Wright, KY 41011
　　　　　　　　　　　　　　　　　　　　　　Phone: (859) 578-4444
　　　　　　　　　　　　　　　　　　　　　　Fax: (859) 578-4440
　　　　　　　　　　　　　　　　　　　　　　Email: rjohnson@pschacter.com

　　　　　　　　　　　　　　　　　　　　　　Christopher A. Seeger
　　　　　　　　　　　　　　　　　　　　　　SEEGER WEISS LLP
　　　　　　　　　　　　　　　　　　　　　　55 Challenger Rd., 6FL
　　　　　　　　　　　　　　　　　　　　　　Ridgefield Park, NJ 07660
　　　　　　　　　　　　　　　　　　　　　　Phone: (212) 584-0700
　　　　　　　　　　　　　　　　　　　　　　Fax: (212) 584-0799
　　　　　　　　　　　　　　　　　　　　　　Email: cseeger@seegerweiss.com

　　　　　　　　　　　　　　　　　　　　　　Plaintiffs' Co-Lead Counsel *on behalf of* Plaintiffs'
　　　　　　　　　　　　　　　　　　　　　　Steering Committee

**CERTIFICATE OF SERVICE**

I hereby certify that on June 13, 2018, I electronically transmitted the foregoing document to the Clerk of the United States District Court using the CM/ECF system for filing and service to all parties/counsel registered to received copies in this case.

*/s/ Brendan A. Smith*
Brendan A. Smith