**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION <br><br> THIS DOCUMENT RELATES TO ALL CASES | MDL No. 2545 <br><br> Master Docket Case No. 1:14-cv-01748 <br><br> Honorable Matthew F. Kennelly |

**MOTION TO AMEND CASE MANAGEMENT ORDER NO. 16
(Establishing Common Benefit Fee and Expense Funds)**

Approximately four years ago, this Court entered CMO 16 establishing guidelines for a common benefit fee and expense fund. At that time, the Order set a holdback of "10% (8% for attorneys' fees and 2% for expenses)" in each case in the MDL, noting that the amount could be altered by further order. CMO 16, D.N. 486, 10 (11/23/2014). After four and a half years prosecuting claims against five corporate defendants, the Plaintiffs' Steering Committee requests that this Court amend CMO 16 to increase the assessment to 19.5% (14.5% for attorneys' fees and 5% for expenses).[1]

In a common-fund case, trial courts have the ultimate decision to award fees and approve allocations. The United States Court of Appeals for the Seventh Circuit has "held repeatedly that, when deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate

---

[1] It is worth noting that the only increase that will come from clients' recovery is the additional three percent for expenses. The six and a half percent increase for attorneys' fees will be taken from the already contracted for attorneys' fees in a case.

of compensation in the market at the time." *In re: Synthroid Marketing Lit.*, 264 F.3d 712 (7th Cir. 2001). The Seventh Circuit has previously recognized that the percentage method is appropriate for determining attorneys' fees and expenses in a common-fund case like an MDL. *Matter of Continental Illinois Securities Litigation*, 962 F.2d 566, 572 (7th Cir. 1992). "Attorneys' fees awarded under the percentage method are often between 25% and 30% of the fund." Federal Judicial Center, *Manual for Complex Litigation* § 14.121 at 216 (2015). Using the percentage method, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re: Bluetooth Headset Prods. Liab. Lit.*, 654 F.3d 935, 942 (9th Cir. 2011). Accord Federal Judicial Center, *Manual for Complex Litigation* § 14.121 at 216 (2015).

In this case, the Plaintiffs' Steering Committee is asking for an adjustment from a total assessment of 10% to 19.5%, which is still well less than the 25% benchmark just for attorneys' fees. When the initial holdback was set, the amount of work and expenses that would be required to prosecute this case could not be adequately assessed. This is common in MDLs. District Courts routinely adjust initial assessments to more properly reflect the expenses and amount of work contributed by the Plaintiffs' Steering Committee. See *In re: Guidant Corp. Implantable Defibrillators Prods. Liab. Lit.*, 2008 WL 682174, *2, 14 (D. MN 2008) attached as Exhibit A (The District Court increased the initial assessment of 4% to 19.166%.); *In re: Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830 (E.D. LA 2007) (The District Court increased the initial assessment of 12% to 18.36%); *In re: Vioxx Prods. Liab. Lit.*, 760 F. Supp. 2d 640 (E.D. LA 2010) (The District Court more than doubled the initial assessment of 3% to a total of 6.5% of a $4.85 billion settlement.)

As this Court is well aware, this case involves 10 different pharmaceutical products and five different groups of corporate defendants. Each group of defendants, and in fact each product, had its own set of documents, corporate witnesses and facts that have required document review, depositions, and expert development. Two of the defendants required full blown bellwether trials. While these factors were anticipated to an extent when setting the initial assessment, the more than four and a half years of litigation, six bellwether trials, and preparation of three additional waves of bellwether cases were not. These circumstances have led to a greater than expected amount of work being performed by expert witnesses, vendors and the 30 law firms in the Plaintiffs' Steering Committee, as evidenced by the total hours of common benefit work performed and expenses incurred.[2]

The inadequacy of the initial holdback is evident when you look at the final assessments for other common-fund litigations. In a litigation involving the rupture of an oil refinery tank, Judge Fallon, who has presided over many common-fund litigations, made an initial assessment of 12% (10% for attorneys' fees and 2% for expenses). *Turner v. Murphy Oil USA Inc.*, 472 F. Supp. 2d 830, 861 (2007). After settlement, Judge Fallon found that an assessment of 15% for attorneys' fees was an appropriate benchmark. *Id.* at 864. In a litigation that lasted just 13 months, involved no trials, included only 34,000 hours of work and 50 legal motions, Judge Fallon determined that the benchmark of 15% for attorneys' fees should be adjusted up to 17%. *Id.* at 836, 838, 865, 869. The amount of work in the Turner case pales in comparison to the amount of work that has been performed in this litigation and yet in that case a 17% fee for attorneys' fees alone was deemed appropriate.

---

[2] Documents showing the amount of hours and amount of expenses were previously provided to the Court for in camera review.

In a closer parallel to this litigation, the NuvaRing MDL lasted for approximately five and a half years. *In re: NuvaRing Prods. Liab. Lit.*, 2014 WL 7271959, * 1 (E.D. MO 2014) attached as Exhibit B. Although that MDL did involve bellwether trials, only 34,440 attorney and support staff hours were spent prosecuting the litigation against the two defendants. *Id.* at *3. Based on these factors the 15.5% assessment (11% for attorneys' fees and 4.5% for expenses) was deemed reasonable. *Id.* at *3. Again, by contrast, the Plaintiffs' Steering Committee in this litigation has worked multiples of the hours that were worked in the NuvaRing litigation. Given the much more extensive amount of work required in this MDL, an additional 3.5% for fees is not unreasonable.

In the Vioxx MDL, an initial assessment of 3% (2% for attorneys' fees and 1% for expenses) was more than doubled after 6 bellwether trials were conducted in the MDL, thousands of depositions were taken and millions of documents were reviewed. *In re: Vioxx Prods. Liab. Lit.*, 760 F. Supp. 2d 640, 644 (E.D. LA 2010). The Court approved an assessment of 6.5%. *Id.* at 662.

Finally, the Guidant implantable defibrillator MDL had an initial assessment of 4% (2% attorneys' fees and 2% expenses). *In re: Guidant Corp. Implantable Defibrillators Prods. Liab. Lit.*, 2008 WL 682174, *2 (D. MN 2008) attached as Exhibit A. The MDL lasted just over two years and settled before any of the scheduled bellwether trials occurred. *Id.* at *1, *3. A total of 98,540 hours were reportedly spent to litigate and resolve the case. *Id.* at *7. In light of the substantial amount of work that occurred in the case, the Court approved an assessment of 19.166% (15% for attorneys' fees and 4.166% for expenses). *Id.* at *4, *14. Although that case did not involve the financial burden of any bellwether trial (much less six bellwether trials in this MDL) and lasted for a significantly shorter period of time, it comes closest to replicating the

number of hours worked by the Plaintiff Steering Committee in this MDL (likely because there were fifty-four different devices at issue and variations in the types of injuries involved). *Id.* at *8. Despite the fact that the NuvaRing MDL involved markedly fewer hours of time worked, Plaintiffs' Steering Committee is asking for .5% less in fee assessments than was awarded in that case.

When this litigation began, the amount of expenses and time that would be required to prosecute this multidistrict litigation was difficult to predict. Over the past four and a half years, the 30 law firms comprising the Plaintiffs' Steering Committee have expended substantial time and money to review 68,572,516 pages of 3,699,017 documents, conduct more than 160 depositions for the common benefit of all litigants in the MDL, conduct more than 100 case specific depositions for Bellwether cases, develop more than a dozen expert witnesses with multiple reports and supplements for each expert, file extensive briefs on multiple issues ranging from discovery disputes to motions for summary judgment, conduct six bellwether trials, and prepare for three additional waves of bellwether trials. Given the 7th Circuit's guidance that courts should "do their best to award counsel the market price for legal services" and the higher than expected amount of expenses and time required to prosecute this case, the Plaintiffs' Steering Committee asks that the Court increase the assessment in this litigation to a total of 19.5% (14.5% for attorneys' fees and 5% for expenses). *In re: Synthroid Marketing Lit.*, 264 F.3d 712 (7th Cir. 2001). This request is reasonable particularly in light of other Courts' holdings in common-fund litigations that often involved far less work and awarded higher assessments than what the Plaintiffs' Steering Committee is requesting in this litigation.

Dated: September 10, 2018

Respectfully Submitted,


/s/ Ronald E. Johnson
Ronald E. Johnson , Jr.
Schachter Hendy & Johnson PSC
909 Wright's Summit Parkway
Suite #210
Ft. Wright, KY 41011
(859) 578-4444
Email: rjohnson@pschachter.com

And

Christopher A Seeger
Seeger Weiss LLP
55 Challenger Road
6th Floor
Ridgefield Park, NJ 07660
(212) 584-0700
Email: cseeger@seegerweiss.com

And

Trent B. Miracle
Simmons Hanly Conroy
One Court Street
Alton, IL 62002
618-259-2222
Email: tmiracle@simmonscooper.com

*Plaintiffs' Co-Lead Counsel*


**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was electronically filed with the Court through CM/ECF on the 10th day of September 2018. Notice of this filing will be sent to all parties through CM/ECF and all parties may access this filing through the Court's system.


/s/Ronald E. Johnson
Ronald E. Johnson, Esq.