**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION | MDL No. 2545<br><br>Master Docket Case No. 1-14-cv-01748 |

THIS DOCUMENT RELATES TO THE FOLLOWING CASE:

*Michelle Guinn on behalf of Guinn et al. v. AbbVie Inc. et al/ Case No.: 1:15-cv-06296*
*Mason Shell v. AbbVie Inc. et al/ Case No.: 1:15-cv-06297*
*Ronald Barnes v. AbbVie Inc. et al/ Case No.: 1:15-cv-06302*
*Williams Jones v. Endo Pharmaceuticals, Inc./ Case No.: 1:15-cv-06318*

**OBJECTION TO MOTION TO AMEND CASE MANAGEMENT ORDER NO. 16 AND REQUEST FOR FURTHER INFORMATION PERTINENT TO THIS OBJECTION**

Plaintiffs, Christopher Guinn, Mason Shell, Ronald Barnes, and William Jones, and their undersigned counsel (hereinafter "the subject Plaintiffs") file this objection to the Motion to Amend Case Management Order No. 16 and make this request for further information pertinent to this objection[1]:

1. Undersigned counsel represents four individual Plaintiffs in this litigation and have attorney fee agreements with each of them.

2. Plaintiffs filed their initial Complaints in this MDL after the current CMO 16 was entered.

3. Plaintiffs and their counsel respectfully request that they be provided with specific information regarding the settlement, if any, that has been reached in this case both specifically and on a proposed per Plaintiff-basis so that undersigned and their clients can know and understand the result(s) achieved in this case or in the individual cases or both.

---

[1] In the event additional information is provided, the subject Plaintiffs would ask for additional time to supplement this Objection as necessary.

1

4. Preliminarily and before that information is provided, Plaintiffs submit that the subject Motion and request to amend CMO 16 and increase the assessment to 19.5% (14.5% for attorneys' fees and 5% for expenses) is premature and also seeks fees and costs that are not typical in MDL litigation or appropriate in this case.

5. The subject Plaintiffs also request that they be provided – for the time and expenses the Plaintiffs' Steering Committee seeks compensation for – 1) time entries (including amounts of time billed, dates, etc.), 2) descriptions of time entries, 3) descriptions of expenses, 4) identities of the lawyers, paralegals, etc. requesting payment for such time entries, and 5) descriptions for the tasks, events, expenses, or other charges for which payment is requested, including specifically any that benefit the case as a whole.[2]

6. This information is important for a number of reasons, including that fee requests are analyzed carefully by the Courts and because here the information ("documents showing the amounts of hours and amount of expenses) was provided to the Court for *in camera* review. *See generally In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d 907, 924–26 (N.D. Ohio 2003) (wherein the parties and the Court reserved a maximum of $50 million, out of a total settlement of over $1 billion, for the payment of Common Benefit Attorney Fee Awards and costs).

7. In *Sulzer*, which undersigned counsel both participated in, the fees and costs were set at 5% and the Court refused to allow alleged common benefit fees unless they were specific (non-specific requests were not allowed), only if the work "actually advanced the interest of the entire Plaintiff Class." Further, fees that were charged for counsel's efforts taken primarily for the

---

[2] Likely, this information was already provided; however as noted herein it was submitted *in camera*, thus undersigned and the subject Plaintiffs have not seen it.

2

benefit of a given plaintiff, or even a small group of plaintiffs, and not the entire class of plaintiffs as a whole, did not qualify for reimbursement, as they did not provide a true Common Benefit. In *Sulzer*, a given attorney fee was reimbursable only if it actually advanced the interests of the *entire* Plaintiff Class. Fees that were charged for counsel's efforts taken primarily for the benefit of a given individual plaintiff, or even a smaller group of plaintiffs, and not the entire class of plaintiffs as a whole, did not qualify for reimbursement, as they did not provide a true "Common Benefit." Next, fees charged by an attorney merely to attend a meeting or conference related to the Multi–District Litigation, when the attorney's presence was not reasonably necessary, were not reimbursable.

    8.  It is important to note how carefully the fee application was reviewed by the court in the Sulzer hip implant litigation. Examples of attorney fees disallowed in the *Sulzer* litigation under this rule include: (1) fees related to attendance at the initial MDL Panel hearing in Washington, D.C., unless the attorney actually presented argument in relation to the Motion to Consolidate the Sulzer cases; (2) fees related to attendance at conferences sponsored by ATLA, Mealey's, or similar groups, unless the attorney was authorized to make a presentation to the group by MDL lead counsel or the Special State Counsel Committee; (3) fees related to attendance at depositions by more than one attorney per law firm, unless the law firm actually conducted the deposition; (4) fees related to attendance at any meeting that was related primarily to an individual case, and not the MDL; and (5) fees related to attendance at any MDL conference or hearing, unless the attorney: (a) was Class Counsel, Special Counsel, a member of the Plaintiffs' Steering Committee, or a member of the Special State Counsel Committee, or (b) actually engaged in material, substantive participation at the conference or hearing. *Id.*

9. Third, the Court disallowed fees to the extent that: (1) "the amount of 'review' time [was] excessive as a whole when judged in reference to the role which the Attorney, or other timekeeper, had in the litigation"; (2) the amount of time listed was "grossly excessive on its face, when considered as a whole in light of the role which the Attorney, or other timekeeper, had in the litigation"; and (3) the amount of time it took for a given task was more than was reasonable or necessary. *Id.*

10. Similarly, in *Sulzer* just as the Court did not allow reimbursement of fees for certain *hours* listed by several applicants, the Court also did not allow reimbursement of fees at certain *rates* listed by several applicants. Because the hourly rates submitted by attorneys of the same experience varied substantially, the Court "equalized" the attorneys' lodestar calculations by substituting the following hourly rates, depending on years of practice: 1–5 years, $200/hour; 6–9 years, $300/hour; 10–14 years, $400/hour; and 15 years and over, $500/hour. This recalculation worked to reduce the hourly rate of about 1/6 of the attorneys who applied for common benefit fees. *Id.*

11. Fourth, fees were not reimbursable if the attorney did not document them properly. Among other things, the Final Guidelines required attorneys to submit daily, monthly, and total time sheet summaries that: (1) followed a particular format, including organization by timekeeper and listing of cumulative totals; (2) included hourly rates and description of professional status (e.g., partner, paralegal, and so on); and (3) described in sufficient detail the nature and purpose of the legal service provided. *Id.*

12. Fifth, the Court examined the amount of fees each attorney expects to receive in connection with this litigation from other sources. Specifically, the Court examined: (1) arrangements under which an attorney expects to pay to, or receive from, other persons any portion

of any Common Benefit Fee Award; and (2) the net amount of contingent fees the attorney or his law firm will receive pursuant to their own contracts with class members. With regard to this latter issue, the Settlement Agreement in *Sulzer* stated explicitly, in Section 5.5, that "the Court shall consider, among other factors, any contingent fee paid to a Common Benefit Attorney pursuant to Section 5.1 and Section 5.2 when making an award of a fee." *Id.*

13. As the *Sulzer* Court explained in the Final Guidelines:

> When the Court approved the Settlement Agreement in this case, which included payment of a substantial portion of those contingency fees owed by represented claimants to their individual counsel, the Court took into consideration the fact that counsel's efforts on behalf of these individual claimants also conferred a measurable benefit upon the class as a whole. Having taken the unusual step of authorizing the payment of contingency fees out of settlement proceeds—thereby spreading the cost of those contingency fees across the entire class, including unrepresented claimants—the Court concludes it is inappropriate to also award out of common benefit funds any item of time or expense incurred in connection with the trial of individual cases or groups of cases, or the case-specific preparation of those cases for trial.

14. The Northern District of Ohio also considered other factors in awarding fees and costs in the *Sulzer* litigation. *Id.* at 923-28.

15. Courts have employed various methods for determining the reasonableness of an award of attorneys' fees. These methods include (1) the "lodestar" method, which entails multiplying the reasonable hours expended on the litigation by an adjusted reasonable hourly rate, (2) the percentage method, in which the court compensates attorneys who recovered some identifiable sum by awarding them a fraction of that sum, or (3) a combination of both methods, the blended method, in which a percentage is selected and cross checked for reasonableness by utilizing the lodestar method. *See Cooper Liquor, Inc. v Adolph Coors Co.,* 624 F.2d 575 (5th Cir. 1980) (providing an analysis and discussion of the lodestar method); *Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1271 (D.C. Cir. 1993) (establishing the percentage method as the sole means

to calculate attorney's fees in common fund cases in the D.C. Circuit); *In re Vioxx Prods. Liab. Litig.,* 760 F. Supp. 640, 652 (E.D. LA 2010) (finding the blended method to be in line with Fifth Circuit precedent and the best means to calculate common benefit attorney fees in the case). Here, without knowing either the results of the litigation and without having been provided the details of the billing or expenses sought to be recovered through a common benefit analysis, it is nearly impossible to respond to this request with detail.

16.   Nonetheless, undersigned counsel and their clients do not understand what justifies such a significant fee and cost award in this MDL (note, that this is not a class action filed under Fed. R. Civ. 23 or otherwise), in light of fee awards in other MDLs ranging up to 6.75 percent in certain M.D.L. cases. *See e.g. In re Vioxx Prod. Liab. Litig.*, 802 F. Supp. 2d 740 (E.D. La. 2011) (value of fees was fixed at 6.5% of the 4.85 billion settlement); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, 553 F. Supp. 2d 442 (E.D. Pa. 2008) (6.75%); *see also Sulzer* (5%). Because undersigned counsel have no idea what the overall settlement amount is in this case, or what the individual clients will be offered, it is impossible to determine whether the percentage amount requested will result in a unwarranted windfall.

17.   Plaintiffs and their counsel respectfully request that they be provided additional information as requested herein and also be given additional time to brief any further objections as may be necessary. Finally, they ask that the Court keep the fees and costs reimbursements in line with other M.D.L. cases wherein the total fee/cost award was in the range of 6-6.75%.

WHEREFORE, Plaintiffs and their counsel request that the Court enter an order sustaining this objection and/or ordering production of the information requested herein so that undersigned and their clients can further evaluate this matter and/or file an additional response or objection as

necessary, and awarding any and all other relief that the Court may find reasonable under the circumstances.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 28, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this member case.

Respectfully submitted,

By*: /s/Sean M. Cleary*
Sean M. Cleary, Esquire
Florida Bar No. 146341
LAW OFFICES OF SEAN M. CLEARY, P.A.
19 West Flagler St., Suite 618
Miami, Florida 33130
Telephone: (305) 416-9805
Facsimile: (305) 416-9807
Email: sean@clearypa.com

&

By: */s/Andres Pereira*
Andres Pereira, Esq.
Texas Bar No.: 00794440
ANDRES PEREIRA LAW FIRM, P.C.
Austin, TX 78734
Telephone: (713) 305-6188
Email: pereira713@gmail.com