UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: TESTOSTORONE | ) | |
| REPLACEMENT THERAPY | ) | MDL No. 2545 |
| PRODUCT LIABILITY LITIGATION | ) | Case No. 2014-cv-1748 |
| | ) | |
| | ) | Hon. Mathew F. Kennelly |
| | ) | |
| This Document Relates To: | ) | |
| ALL CASES , | ) | |

_____

**OBJECTION OF CHERYL GRIFFIN individually and as PERSONAL REPRESENTATIVE for THE ESTATE OF EMMETT GRIFFIN, AND FOR LATORI GRIFFIN AND TREVON GRIFFIN AND ALL PLAINTIFFS IN THIS MDL TO THE PLAINITFF'S STEERING COMMITTEE'S MOTION TO AMEND CASE MANAGEMENT ORDER NO. 16**

**PRELIMINARY STATEMENT**

Objector Cheryl Griffin is a Plaintiff in the case against Abbvie and the other related Defendants in this TRT ligation. Griffin's case was originally filed in the Southern District of Florida and was consolidated as part of the ongoing TRT under MDL no. 2545. Mrs. Griffin brought her suit against the Abbvie, Abbott Laboratories Defendants as personal representative for her husbands Estate and un behalf of herself individually and their children. Mrs. Griffin is not a professional objector and is objecting because she is concerned that because of the volume of case filed under this MDL and against these Defendants specifically that to allow the Plaintiff's Steering Committee and members of the lead counsel for the Plaintiffs to double their fees and cost from 10% to 19.5% will leave the Plaintiffs at a disadvantage. Mrs. Griffin's husband Emmett was only 49 years old when he died of complications related to her husband's use of Androgel 1.62. His last prescription for the drug was December 13, 2013 and by April of

1

2014 he had suffered a stroke. Since that day he never fully recovered and subsequently died in 2015 form complications related to his use of the androgel after a 30 day stay in the hospital where he was on life support during the last days of his life.

 This has been a very difficult journey for Mrs. Griffin who was married to her husband for 26 years and was not expecting to be a widow so young herself. Mr. Griffin was a Navy Veteran and had served this country. Following his retirement from the Military he went back to school obtain certain certificates and later obtained a job with the United States Post Office. Mrs. Griffin has expressed her appreciation for all the work the members of the Plaintiffs Steering Committee, and the Lead Trial Lawyers who diligently litigated this case to a point where a settlement can be reached because this will give her closure and allow her to move on with her life. However, she also believes that but for the death of her husband and others and the injuries to other TRT users who were lucky enough to survive the use of these TRT drugs, there would be no lawsuit and hence no monies to be had by these attorneys. She believes the additional 9.5% the Plaintiff Steering Committee (PSC) seeks is unreasonable, unfair and reflects self-interest and self-dealing and is not in the best interest of the Plaintiffs.

 Griffin contends she does not know the amount of the propose settlement as neither the Lead counsel nor anyone from the PSC will provide that information. The only information provided by Lead Counsel is that the global settlement for all Defendants combined is under 500 million dollars. The PSC seeks to increase their costs from 2% to 5%, Mrs. Griffin through counsel have requested that the PSC provide a copy of the costs billing statement that was provided to the Court in camera on September 3, 2018. The PSC has failed to provide those records but has only indicated they are seeking in excess of 16 million in costs. Mrs. Griffin and the other Plaintiffs are being asked to object to the PSC request for additional fees and costs

blindly as she does not know the amount of the Global settlement not the actual costs. Mrs. Griffin believes that as a Plaintiff in this action she should be provided with information regarding the total settlement and the itemized costs requested by the PCS. She believes the PSC refusal to provide said information breaches their duty to her as a member in this MDL and suggest self-interest and self-dealing and is unfair.

## ARGUMENT

1. **The Request to Increase the Fees and Costs reflects self interest, self-dealing is unfair and unreasonable**

The PSC is seeking and increase in fees and costs and now claim the initial holdback of 10% is inadequate.[1] However, members of the MDL has no actual way to dispute the claims of the PSC, since the PSC has failed to provide any actual information regarding their fees and cost to the Plaintiff even after several request by Plaintiff Griffin and have failed to provide the dollar amount of the actual settlement[2].

The PSC has cited to several cases in support of their Motion to Amend and to increase their fees. One of the cases cited by the PSC is In Re Vioxx[3]. The PSC is essentially asserting that since the fees and cost in the Vioxx case was doubled the Court should double their fees and cost in this case too. However, in the Vioxx case the initial hold back was only, 2% for attorney's fees and 1% percent for cost. Here the initial hold back of 10% is almost is a little more than 3 times that of the Vioxx case and almost 2 times what the Vioxx court eventually awarded. The Court in Vioxx increased the fees and costs from 3% to 6.5%. The PSC points to

---

[1] Page 3 Paragraph 2 of PSC Motion
[2] Fed. R. Civ. Proc. 23(h)
[3] "In re: Vioxx Prods. Liab. Lit., 760 F. Supp. 2d 640, 644 (E.D. LA 2010). The Court approved an assessment of 6.5%. ......" In the Vioxx MDL, an initial assessment of 3% (2% for attorneys' fees and 1% for expenses). " See Page 4 Paragraph 2 of PSC Motion

3

the fact that they tried 6 bellwether cases, conducted more than 160 depositions for the common benefit of all litigants in the MDL, conducted more than 100 case specific depositions, reviewed millions of documents and prepared for a second wave of bellwether trials.   In the Vioxx case there were also 6 bellwether trials, and as the PSC points to in their Motion, in the Vioxx case "Thousands of deposition were taken and Millions of documents were reviewed"[4], not the 260 depositions taken by the PSC in this case.   Without being able to review the PSC costs sheet, Griffin is unable to determine what the actual costs were or to even determine weather the cost expended were for the benefit of the MDL, or for the benefit of the PSC and Steering Committee's own clients.  Griffin is also not able to address whether the cost sought for a particular item is reasonable.

     The PSC also points to *In Re:* the Guidant Corp. Implantable Defibrillators Prods. Liab. Lit, 2008, WL 682174, *2, 14(D MN 2008) for reasons to increase their fees and costs and suggest that their litigation of these cases were more costly that the Guidant case because it only lasted for 2 and a half years.  However, the PSC failed to recognized that the Guidant case involved (54) fifty four different devices and various different injuries, where as this case only involved 10 different products and the injuries were the same regardless of the who the manufacturer of the particular product was.   The fact that the Guidant case lasted only 2 and half years does not negate the fact that they could have expended more time that this case and the issues in that case could have been far more complicated than the issues in this case.   As the bellwether trials progressed in this case the Court here entered certain orders that effectively streamlined the future cases for trial.   As the court already know the first case took approximately three weeks and as the case were tried the trial time was reduced down to

---

[4] "….thousands of depositions were taken and millions of documents were reviewed."
 PSC Motion Page 4 Paragraph 2  line 3

approximately one week.

    2.    **Request for Lodestar Cross Check**

Griffin also seeks a "lodestar" cross check to ensure that the fees sought by the PSC are reasonable. While it is true that the fees sought by the PFC will be taken from the individual Plaintiff's counsel fees and not from the Plaintiffs' proceed, Griffin still believes the PSC is not entitled to a windfall. As stated before Griffin understands and appreciates the work that the PSC has done in moving this case through the litigation process and to a settlement, however Griffin still believes the fess awarded to the PSC should be fair and reasonable. The request for 14.5% reduction to individual Plaintiff's fee could also have a chilling effect on future Plaintiff's counsel who may not want to participate in MDLs or may seek to opt out of the MDL.

While the PSC asserts that the additional fees requested would not affect the individual Plaintiffs, the request for an additional 3% in cost will affect all of the Plaintiffs. The PSC stated that settlement is under 500 million dollars, if for instance the settlement is 450 million dollars, a 5% costs request would equate to $22, 500, 000.00. That could amount to a loss to the Plaintiff of approximately $13,000,000. According to one of the Member of the PSC, they are seeking in excess of 16 million in fees that accounts to only 5% of the total settlement. The problem is that Plaintiff does not know the amount of the global settlement nor the amount of the actual costs so Plaintiff cannot agree with the request and must object to the request. Furthermore, if as the PSC suggest their cost is in excess of $16,000,000 awarding a 5% would exceed their actual costs which they would not be entitled to payments over and above their actual costs.

The PSC asserts that is was difficult to estimate the time and expenses required to litigate this Multi District Case[5]. Griffin believes that argument is disingenuous. It appears that the

---

[5] PSC Motion Page 5 Paragraph 2

business model of the members of the PSC and the Lead Counsel is to engage in MDL cases. For this reason Griffin believes that the members of the PSC should be able to more accurately assess the time and costs it will take to litigate an MDL given their experience. The now seek a almost 50% increase is not justifiable under the circumstances. The PSC complains about the risk to doing MDL cases. However, Griffin suspect that the members of the PSC take the risk of these type of cases because all things considered it is more likely than not to results in a substantial fee to these counsel and their Firms as these cases are ore likely to settle. As courts have pointed out inherent in these types of cases are the potential for self dealing and even conflict with their own clients on whose behalf they have not filed an objection or perhaps have not even advised of their right to object to the additional cost increase. MDL cases leads to a windfall for these attorney's and law firms to the detriment of the individual Plaintiff's and their counsel and to their own clients, thus to award them a windfall over and above what they have earned would be unreasonable, unfair and would only bolster the self-dealing of members of the PSC such as this one. This self-dealing is evident in the fact that the PSC has refused to, or is unwilling to provide the cost ledger to support their Motion or to advise of the amount of the settlement. The PSC is treating the cost as if it is confidential and subject only to their review, yet they are asking the Court to Award and additional 3% in costs.

## **CONCLUSION**

The PSC's Motion to Amend Case Management Order No. 16 to increase the fees and cost from 10% to 19.5% should be denied as that request is unreasonable, excessive and unfair and is against the best interest of the Plaintiff's within the MDL. The request on its face indicates self-interest and self-dealing. Further, Griffin would request that the Court permits her to inspect the costs ledger submitted to the Court by the PSC and that the PSC discloses to Griffin the settlement amount before any increase is considered.

**DATED** this 28th day of September 2018

Respectfully Submitted,

By: **/S/ J.E. Spence, Esquire**
J.E. SPENCE, P.A.
Janet E. Spence, Esq.
**Florida Bar No. 100218**
1900 N. University Drive, Suite 203
Pembroke Pines, Florida 33024
Broward (786)262-0207
Email: pleadings@jespencelaw.com
COUNSEL FOR PLAINTIFFS

**CERTIICATE OF SERVICE**

**I HEEBY CERTIFY** that a true and correct dopy of the foregoing Objection was transmitted electronically the Clerk of Court for the Northern District Court of Illinois through the CM/ECF and served on members of the PSC and all other Plaintiff's and their counsel registered to receive service this 28th day of September 2018.

Respectfully Submitted,

By: **/S/ J.E. Spence, Esquire**
J.E. SPENCE, P.A.
Janet E. Spence, Esq.
**Florida Bar No. 100218**
1900 N. University Drive, Suite 203
Pembroke Pines, Florida 33024
Broward (786)262-0207
Email: pleadings@jespencelaw.com
COUNSEL FOR PLAINTIFFS