UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE: TESTOSTERONE            MDL No. 2545
REPLACEMENT THERAPY
PRODUCTS LIABILITY LITIGATION      Master Docket Case No. 1:14-cv-01748

_____/

**NONPARTY GEMINI INSURANCE COMPANY'S
MOTION TO INTERVENE IN SETTLEMENT ALLOCATION PROCEEDINGS**

Gemini Insurance Company ("Gemini"), pursuant to Fed. R. Civ. P. 24, and as the insurer for Endo Pharmaceuticals Inc. ("Endo"), moves to intervene in this action for the limited purpose of participating in the process of allocating the settlement funds to the defendants, and in support states:

**INTRODUCTION**

Endo settled this matter without Gemini's participation and without Gemini's consent; nonetheless, Endo expects Gemini to fund its entire settlement. Endo's motivation is plain. Endo purchased Auxilium Pharmaceuticals, LLC ("Auxilium") in 2015. Gemini does not insure Auxilium, which to Gemini's knowledge is uninsured. Endo settled jointly with Auxilium, and the settlement does not differentiate between claims involving Endo products (insured claims) and claims involving Auxilium products (uninsured claims).[1] For its part, Endo is incentivized to continue to keep Gemini "in the dark" and otherwise steer the exposure to Endo, rather than Auxilium. As explained below, how the settlement funds are ultimately allocated between the

---

[1] By filing this motion and participating in the allocation process, which is necessary to protect Gemini's interests, Gemini does not intend to waive any of its coverage defenses, including that Endo voided coverage by breaching the policy's consent to settle, voluntary payments, and cooperation provisions.

two entities and their products could prejudice Gemini because Endo expects Gemini to fund the entire settlement.

Upon information and after considerable diligence, Gemini believes the supposed Endo product claims are worth significantly less than the Auxilium claims. By way of example, based on the limited information made available to Gemini, only 92 of the supposed Endo product claimants were using confirmed Endo products at the time of an alleged adverse event. The overwhelming majority of the claimants are Auxilium claims. There are too many other notable differences between Endo's exposure and Auxilium's liability to address here, and despite Gemini's repeated requests, Endo continues to withhold critical information that stifles Gemini's efforts from meaningfully scrutinizing the claims. Because Gemini understands the allocation process is now underway, Gemini respectfully cannot wait on Endo any longer and is accordingly seeking to intervene to protect its interests.

## THE UNDERLYING DISPUTE
## BETWEEN ENDO AND GEMINI REGARDING ENDO'S UNILATERAL SETTLEMENT AND INCENTIVE TO STEER THE PROCESS

1. This MDL includes numerous lawsuits filed against Endo and Auxilium for injuries resulting from the ingestion of testosterone replacement therapy ("TRT") products.

2. Endo manufactured TRT products Fortesta and Delatestryl ("Endo products").

3. Auxilium manufactured Testim, Testopel, and Striant ("Auxilium products").

4. Endo acquired Auxilium in 2015 and assumed its liabilities, but Gemini does not insure Auxilium.

*Gemini insures Endo products only; Gemini does not insure Auxilium products.*

5. Gemini issued a claims-made Liability Policy to Endo, effective from 09/26/2013 through 09/26/2014, and bearing Policy No. GL_12089-1. The policy provides a $10 Million aggregate limit excess of a $10 Million Self-Insured Retention (SIR).

6. It cannot be overstated that the Gemini policy covers *only* Endo, and only for Endo products. It is undisputed that Auxilium products are not covered.

7. Because of the $10 Million SIR, Endo controlled all aspects of the defense and, as a result, is the gatekeeper of all information relevant to settlement, liability, and damages, including how the settlement is steered between it and Auxilium.

*Endo settled without Gemini's participation or consent.*

8. Throughout the MDL proceedings, Gemini has understood that the Endo product claims—unlike the Auxilium product claims—were largely worthless and that plaintiffs' counsel had difficulty finding any Endo claims worthy of selection for bellwether trial.

9. On February 20, 2018, without Gemini's knowledge or participation, Endo and Auxilium reached a settlement in principle with plaintiffs.

10. The settlement failed to distinguish between Endo product claims (insured) and Auxilium product claims (uninsured) and collectively referred to Endo and Auxilium as "Endo," which is precisely what Endo wants the settlement to be postured.

11. Gemini objected to the unilateral agreement and insisted that any settlement differentiate between Endo and Auxilium claims because of their disparate settlement values.[2]

---

[2] It was evident to Gemini that by lumping together the low-value Endo claims with the separate and distinct high-value Auxilium claims, Endo was attempting to improperly shift Auxilium's uninsured liability to its insurance carriers.

12. Gemini also objected because it has insufficient information to meaningfully evaluate the settlement and needs greater transparency in the process.

13. Despite Gemini's requests, as of the date of this filing, the following information critical to Gemini's ability to evaluate the claims, settlement, and allocation between Auxilium and Endo claims remains outstanding:

- Identity of billers on the APKS budget, including their level of seniority/experience and hourly rate.
- Identity of, credentials, specialties, and rates for the medical, FDA regulatory, and marketing experts retained.
- A copy of the Cost-Sharing Agreement entered into by Endo for a 50/50 split between the Endo/Auxilium cases.
- A list of cases APKS submitted for "Endo Only" bellwether trials and the rationale for selection of these cases.
- The original and any amended FDA approval letters that listed the approved indications for the two Endo products, Fortesta and Delatestryl.
- Internal Endo information regarding prototype promotional/marketing material utilized for the Endo products.
- The promotional/marketing material utilized for the Auxilium products.
- The final list of confirmed "Endo only" exposure plaintiffs, *i.e.*, Aaron Smith, Bosko, and Tonnaer.
- A list of mixed use Endo/Auxilium products or mixed use Endo/other company products.
- The January 28, 2018 email attachment from Michelle Pingor to Cindy Khin attaching a list of Endo exposure cases.
- TRT Market-share data regarding Fortesta, Delatestryl, and Testim – broken down by calendar year.
- Fortestra label – January 2011 through June 2014.
- Fortestra label updated June 19, 2014, adding a venous thromboembolism warning.
- Fortestra label updated May 11, 2015 adding a cardiovascular injury warning.
- Delatestryl label from acquisition through June 2014.

- A list of factors utilized by APKS and the weight assigned to these factors for calculation of the global settlement.

- Exhibit A to the Master Settlement Agreement listing all TRT claimants.

- Deposition summaries of parties and non-party witnesses (treaters/prescribers).

- Deposition summaries of Endo 30(b)(6) witnesses.

- Deposition summaries of Endo sales representative witnesses.

- Medical summaries prepared and utilized to evaluate the cases.

- Case evaluation as to how bellwether cases were selected.

- Backup information utilized for evaluation for case values for the 300 Endo cases.

- Newer scientific studies which were positive for Endo.

- Copies of the direct-to-consumer advertising ads utilized for Endo products, if any.

- Copies of the direct-to-consumer advertising ads utilized for Auxilium products, if any.

- Prototype advertisements published in medical journals by Endo and/or Auxilium for their testosterone replacement therapy products.

- Any proof of marketing materials or detail person representations which went beyond the FDA-approved indications, which would expose the company to over-promotion claims.

14. Over Gemini's clear objections, Endo entered into a definitive Master Settlement Agreement.

15. Gemini now seeks to intervene for the limited purpose of participating in the allocation proceedings and, specifically, ensuring that the Special Master is fully advised of the circumstances and presented with all relevant information prior to rendering her decisions.

## ARGUMENT AND CITATION OF AUTHORITY

**I.  Gemini is entitled to intervene as a matter of right.**

Under Rule 24(a), "[i]ntervention as a matter of right is warranted if the party seeking intervention can demonstrate: (1) a timely request; (2) an interest in the subject matter of the action; (3) that disposition of the action without its presence would impair its ability to protect its interests; and (4) its interests are not adequately represented by the existing parties to the action." *Liberty Mut. Fire Ins. v. Lumber Liquidators, Inc.*, 314 F.R.D. 180, 183 (E.D. Va. 2016) (citing *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir.1999)).

**(1) Gemini's motion is timely and is being filed proactively despite incomplete information due to Endo's delays.**

Gemini's request for intervention is timely and being exercised as a final resort because all other efforts have failed. On September 26, 2018, Gemini learned from Endo that "allocations" are scheduled to be released "late in Quarter 4 of 2018." Gemini immediately prepared this motion, despite lacking critical information that Endo has withheld. Gemini advised Endo prior to filing this motion that it cannot wait any longer.[3]

While "[t]here is no bright-line rule delineating when a motion to intervene is or is not timely," Gemini has acted with all deliberate speed. *Banco Popular de Puerto Rico v. Greenblatt,* 964 F.2d 1227, 1230 (1st Cir.1992). Gemini has been proactive. Since first learning of the settlement it has made numerous attempts to obtain the information needed to evaluate the settlement, including multiple correspondences with Endo. When Endo recently informed Gemini that allocation would occur in the fourth quarter of 2018, Gemini immediately filed this

---

[3] On October 10, 2018, in an effort to further delay, Endo conveniently raised waiver of privilege as a basis for not releasing additional information.

motion. Indeed, courts have found intervention timely in situations even where, unlike here, there was a substantial lapse, especially where there is no prejudice. *See Bridge v. Air Quality Tech. Servs., Inc.*, 194 F.R.D. 3, 8 (D. Me. 1999) ("Although Gulf filed its motion just four days before the hearing on damages, the Court finds that the motion is timely"); *Meltinos v. Botts*, 2017 WL 465674, at *2 (N.D. Ind. Feb. 3, 2017) ("Turning to the first factor under Rule 24(a), Frankenmuth's motion is timely. It moved to intervene within four months after Plaintiffs filed their complaint, and there is no indication that any of the parties would be prejudiced by this brief delay"); *see also Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995) (finding that delay of nineteen months from time suit was filed to time intervention was sought was not untimely).

In evaluating timeliness, the question of prejudice is paramount. As one court noted, "[t]he passage of time is not determinative; rather, 'the most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case.'" *Maxum Indem. Co. Sec. Ins. Co. of Hartford v. Eclipse Mfg. Co.*, 2008 WL 4831734, at *3 (N.D. Ill. Nov. 5, 2008) (quoting *Nissei Sangyo Am. v. U.S.*, 31 F.3d 435, 438 (7th Cir.1994)).[4]

Here, there is no prejudice to Endo. The allocation process has only recently started. Moreover, Gemini is intervening for the limited purpose of ensuring that the Special Magistrate is fully informed regarding the totality of the circumstances and is presented with all relevant

---

[4] The inquiry regarding timeliness focuses on the proceedings, as opposed to the lawsuit as a whole. Gemini is seeking to intervene in a post-settlement process that only recently started. *See Frank Betz Assocs., Inc. v. J.O. Clark Const.,* 2010 WL 2375871, at *2 (M.D. Tenn. June 4, 2010) ("Despite the fact that this matter has been pending now for more than two years, the Court does not find that AIC's motion is untimely under the particular circumstances [intervention to introduce a special interrogatory at trial] presented here.").

information. Where there is no prejudice, a motion to intervene is timely as a matter of law. *See Aurora Loan Servs. v. Craddieth*, 442 F.3d 1018, 1027 (7th Cir. 2006) ("[I]n the absence of any indication of prejudice to the [existing parties] ... the motion cannot be adjudged untimely as a matter of law."). Intervention should be granted to Gemini as a matter of right.

### (2) As Endo's insurer being asked to fund the settlement; consequently, Gemini has a direct and immediate interest in the allocation process.

"When seeking to intervene as of right, a movant must demonstrate that its interest in the litigation is 'direct and concrete' and 'accorded some degree of legal protection.'" *Chicago Imp., Inc. v. Am. States Ins. Co.*, No. 09-C-2885, 2010 WL 3385539, at *4 (N.D. Ill. Aug. 24, 2010) (citing *Diamond v. Charles*, 476 U.S. 54, 75 (1986)). "While such an interest is difficult to define with particular precision, it is something more than a mere 'betting' interest, but less than a property right." *Id.* (citing *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1380–81 (7th Cir.1995)).

It is difficult to imagine a more direct and concrete interest in these proceedings than Gemini's interest. Gemini is being asked to fund Endo's settlement. Depending on how the funds are allocated there could be a difference of millions of dollars. Motions to intervene are routinely granted to insurers with direct pecuniary interests in the outcome of legal proceedings such as this. In *Napoli v. City of Brunswick*, 2009 WL 805140 (N.D. Ohio Mar. 26, 2009), for example, the insurer provided homeowners' insurance to one of the defendants in a breach of privacy suit. The insurer sought to intervene on the basis that it had a "direct pecuniary interest in the outcome of the case." The court found that the insurer may be liable for a judgment against its insured, and found the insurer had a legal interest in the outcome of the case. *Id.* at *2; *see also Bridge*, 194 F.R.D. at 7–8 (holding insurer can intervene to protect its interest, since "at the

damages stage of the proceedings, the insurer's interest becomes less contingent and more direct"); *Levenfeld v. Clinton*, 674 F. Supp. 255, 257 (N.D. Ill. 1987) (allowing liability insurers to intervene to protect their interest).

### (3) Based on Endo's unauthorized settlement, its control of all aspects of the defense, and its incentive to weight the settlement towards Endo product claims, Gemini's interest are not adequately represented in these proceedings.

Gemini's interests are not represented in the settlement allocation proceedings and, in fact, Endo is incentivized to have the allocation weighted in favor of Endo product claims. By way of background, Gemini believes Endo crafted its settlement with insurance in mind. By lumping Auxilium and Endo product claims together, Endo intended to shift liability for the uninsured, high-value Auxilium claims to the insured, low-value Endo claims. This is presumably why Endo excluded Gemini from negotiations, reached an agreement in principle without Gemini's knowledge, and to this day continues to withhold important information from Gemini needed to evaluate the settlement. Under these circumstances, it is clear that, unless Gemini is permitted to intervene, its interests will not be adequately represented. *See Meltinos v. Botts*, 2017 WL 465674, at *3 (N.D. Ind. Feb. 3, 2017) ("Finally, the Court agrees that Frankenmuth's interests are not adequately represented by Plaintiffs. The characterization of any settlement or judgment awarded to Plaintiffs could affect Frankenmuth's ability to fully recover the payments it made to Plaintiffs for medical expenses and indemnity."). By participating, Gemini will ensure that the Special Master is aware of the circumstances, that she has all relevant information, and that the information is presented fairly. In short, Gemini's involvement will prevent the potential for an unfair process and prejudicial result.

## II. The factors for a permissive intervention are also satisfied.

If the Court finds that Gemini is not entitled to intervene as a matter of right, it should be permitted permissive intervention under Fed. R. Civ. P. 24(b). "[F]or permissive intervention, a proposed intervenor must show that: (1) its motion is timely; (2) it has questions of law or fact in common with the pending action; and (3) intervention will not cause undue delay or prejudice for the original parties." *Cont'l Cas. Co. v. Nat'l Union Fire Ins.*, 2013 WL 12225980, at *2 (D. Minn. Aug. 29, 2013). As detailed above, Gemini's motion is timely and no existing parties would be prejudiced by its intervention. Moreover, Gemini certainly has questions of law and fact in common with the allocation proceedings. Gemini's involvement directly aligns with the Special Master's inquiry into the merits and value of each individual claim. Finally, Gemini's intervention will not cause undue delay since the allocation process is not scheduled to be completed until the end of this year.

## CONCLUSION

For all these reasons, Gemini respectfully requests that it be permitted to intervene for the limited purpose of participating in the settlement allocation proceedings, which is necessary to protect its interests, and any further relief the Court deems just and proper.[5]

---

[5] Gemini requests the Court dispel any requirement of serving a "pleading" under Rule 24(c). In situations involving intervention, the pleading requirement is routinely waived. *See Cmty. Vocational Sch. of Pittsburgh, Inc. v. Mildon Bus Lines, Inc.*, 2017 WL 1376298, at *3 (W.D. Pa. Apr. 17, 2017) ("Given that Erie seeks to intervene in order to submit special interrogatories, not to file a pleading, and there is no evidence that Erie's failure to submit a pleading along with its motion to intervene caused prejudice to the existing parties, the court will exercise its discretion and waive the pleading requirement.").

Dated: October 12, 2018

Respectfully submitted,

s/ Patrick M. Grand
Patrick M. Grand
CLYDE & CO US LLP
55 West Monroe Street, Suite 3000
Chicago, IL 60603
(312) 635-7000
Patrick.Grand@clydeco.us

Case: 1:14-cv-01748 Document #: 2892 Filed: 10/12/18 Page 11 of 12 PageID #:76111

## **CERTIFICATE OF SERVICE**

  I CERTIFY that on October 12, 2018, I e-filed this document using the CM/ECF system.

I further certify that I am unaware of any non-CM/ECF participants.

s/ Patrick M. Grand
Patrick M. Grand
CLYDE & CO US LLP
