IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: TESTOSTERONE<br>REPLACEMENT THERAPY<br>PRODUCTS LIABILITY LITIGATION | )<br>)<br>) | Case No. 14 C 1748 |
| ----------------------------------------------------------- | ) | MDL No. 2545 |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | )<br>) | |

CASE MANAGEMENT ORDER NO. 139
(Memorandum Opinion and Order on Non-Party Gemini Insurance Company's
Motion to Intervene in Settlement Allocation Proceedings)

MATTHEW F. KENNELLY, District Judge:

Plaintiffs in this multidistrict litigation (MDL) proceeding allege that they suffered either arterial cardiovascular injuries or injuries related to blood clots in the veins as a result of taking prescription testosterone replacement therapy (TRT) drugs. Defendants—AbbVie, Inc., Actavis, Inc., Auxilium Pharmaceuticals, Inc. (Auxilium), Eli Lilly & Company, Endo Pharmaceuticals, Inc. (Endo), GlaxoSmithKline, LLC (GSK), and affiliated entities—are manufacturers of TRT drugs. More than 7,800 individual products liability cases have been filed in the MDL, and after more than four years of litigation, a little under 6,000 remain. As of September 10, 2018, the Court has stayed all proceedings in the products liability cases, except as ordered by the Court, based on the parties' reports that they have finalized or are in the process of finalizing master settlement agreements (MSAs). Auxilium, Endo, and GSK (the Endo defendants) have reached a final MSA with plaintiffs. The MSA gives a court-appointed settlement master, Randi Ellis, the exclusive responsibility for allocating settlement funds to plaintiffs. In making allocation decisions, the settlement master carefully reviews case-

specific information including records proving plaintiffs' use of TRT products. The settlement master has already spent a great deal of time on the allocation process.

Non-party Gemini Insurance Company (Gemini) is one of Endo's insurers. Gemini has moved to intervene in this MDL so that it can participate in the allocation process for claims involving the Endo defendants. For the following reasons, the Court denies Gemini's motion.

**Background**

The Court assumes familiarity with its prior orders and discusses only the facts necessary to resolve Gemini's motion.

Endo manufactures and sells two TRT products at issue in this MDL: Fortesta and Delatestryl (the Endo Products). Endo acquired Auxilium in January 2015. Auxilium manufactures and sells three TRT products at issue in this MDL: Testim, Testopel, and Striant (the Auxilium Products). Gemini insures Endo under a primary liability insurance policy. In relevant part, the policy requires Gemini, in some circumstances, to cover claims for damages allegedly caused by certain Endo pharmaceutical products and defense costs relating to such claims. Gemini has a $10 million aggregate limit of liability under the policy, which is subject to a $10 million per-event and aggregate self-insured retention. In other words, as the Court understands it, Gemini's coverage obligations do not kick in until Endo incurs $10 million in defense costs and / or payouts relating to claims that fall within the coverage provided by the policy. Gemini reimburses Endo for expenditures that exceed the $10 million retention, up to Gemini's $10 million policy limit. It is undisputed that the insurance policy does not cover claims arising from alleged use of the Auxilium Products.

Gemini has moved for intervention as of right under Federal Rule of Civil Procedure 24(a)(2) and permissive intervention under Federal Rule of Civil Procedure 24(b).  In its motion, Gemini contends that "[b]ecause of the $10 million [retention], Endo controlled all aspects of the [MDL] defense and, as a result, is the gatekeeper of all information relevant to settlement, liability, and damages[.]"  Gemini Mot. ¶ 7.  According to Gemini, "Endo and Auxilium reached a settlement in principle with plaintiffs" on February 20, 2018 "without Gemini's knowledge or participation."  *Id.* ¶ 9.  Gemini further contends that throughout the MDL proceedings, it has understood that claims relating to the Endo Products are "largely worthless" whereas claims relating to the Auxilium Products are potentially "high-value."  *Id.* ¶¶ 8, 11 n.2.  Gemini complains that the MSA does not "distinguish between Endo product claims (insured) and Auxilium product claims (uninsured)."  *Id.* ¶ 10.  Endo, Gemini argues, must therefore be "attempting to improperly shift Auxilium's uninsured liability" to Gemini.  *Id.* ¶ 11 n.2.  Gemini seeks to intervene so that it can "participat[e] in the allocation proceedings and . . . ensur[e] that the Special Master is fully advised of the circumstances and presented with all relevant information prior to rendering her decisions."  *Id.* ¶ 15.  Gemini also contends that Endo has refused to hand over documents Gemini believes it needs to evaluate the terms of the settlement.  During a hearing on October 25, 2018, Gemini stated that if the Court grants its motion, it will formally seek discovery from Endo.

Endo presents a different version of the events.  The first plaintiff to assert a claim regarding an Endo Product did so in February 2014.  According to Endo, it reported the lawsuit to Gemini in April 2014.  Gemini responded in September 2014 by issuing a reservation of rights letter, meaning that it warned Endo it might deny

3

coverage for some or all claims.[1]  Nevertheless, Gemini actively monitored the MDL, including by approving Endo's selection of defense counsel, requesting and receiving documents, and participating in regular conferences and strategy sessions with Endo and its defense counsel.  In January 2018, Endo informed Gemini that settlement negotiations "were making progress" and asked Gemini to help draft a memorandum of understanding (MOU) regarding settlement.  Endo Opp. at 4-5.  Gemini refused.  The Endo defendants and plaintiffs reached an MOU, and on February 23, 2018, the Court stayed proceedings against the Endo defendants so that the parties could focus on finalizing an MSA.  Gemini "chose not to participate in the negotiation or drafting of" the MSA, which was finalized in June 2018.  *Id.* at 5.

What Gemini did next bears emphasis:  on July 17, 2018, it disclaimed any coverage of Endo for all claims in this MDL, including those arising from alleged use of the Endo Products.  This fact appears nowhere in Gemini's motion, but Gemini confirmed it during the hearing on October 25, 2018.  According to Endo, Gemini stated its intention to intervene in this MDL on July 17, 2018 and again on September 11, 2018.  But Gemini did not file a motion to intervene until October 12, 2018.  Ten days later, Endo filed a declaratory judgment action in the Court of Common Pleas for Chester County, Pennsylvania.  In the declaratory judgment action, Endo seeks, among other things, a ruling that "Gemini owes Endo the full $10 million limits of liability under the [insurance policy] for all loss and associated defense costs covered by [the policy], now that the $10 million SIR has been satisfied."  Endo Mot., Ex. A (October 22, 2018

---

[1] Endo and Gemini have not provided a copy of the letter to the Court, nor have they described the scope of the reservation of rights.

4

Declaratory Judgment Complaint (Endo DJ Compl.)) ¶ 80.

## Discussion

A.  **Intervention as of right (Fed. R. Civ. P. 24(a)(2))**

"A party has a right to intervene when: (1) the motion to intervene is timely filed; (2) the proposed intervenors possess an interest related to the subject matter of the action; (3) disposition of the action threatens to impair that interest; and (4) the named parties inadequately represent that interest." *Wisconsin Educ. Ass'n Council v. Walker*, 705 F.3d 640, 657-58 (7th Cir. 2013); *see also* Fed. R. Civ. P. 24(a)(2). "The burden is on the party seeking to intervene of right to show that all four criteria are met." *Reid L. v. Illinois State Bd. of Educ.*, 289 F.3d 1009, 1017 (7th Cir. 2002). "A failure to establish any of the[] elements is grounds to deny the petition." *Ligas ex. rel. Foster v. Maram*, 478 F.3d 771, 773 (7th Cir. 2007); *see also Reid L.*, 289 F.3d at 1017. The Court addresses each element in turn.

   1.  **Timeliness**

"The timeliness requirement forces interested non-parties to seek to intervene promptly so as not to upset the progress made toward resolving a dispute." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 797 (7th Cir. 2013); *see also, e.g.*, *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000). "A prospective intervenor must move to intervene as soon as it knows or has reason to know that [its] interests might be adversely affected by the outcome of the litigation." *CE Design Ltd. v. King Supply Co.*, 791 F.3d 722, 726 (7th Cir. 2015) (internal quotation marks omitted). A court "look[s] to four factors to determine whether a motion is timely: (1) the length of time the intervenor knew or should have known of his interest in the

5

case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; (4) any other unusual circumstances." *Grochocinski*, 719 F.3d at 797-98 (internal quotation marks omitted); *see also, e.g.*, *Sokaogon*, 214 F.3d at 949.

Gemini argues that its motion to intervene is timely because it filed the motion soon after September 26, 2018, when Gemini contends it learned that allocations are scheduled to be released in late 2018. Gemini also appears to argue that it could not have filed its motion sooner because it lacked information necessary to evaluate the terms of the settlement. Although Gemini, by its account, still lacks that information, it argues that the anticipated allocation schedule forced it to file the motion "as a final resort." Gemini Mot. at 6.

On February 23, 2018, however, the Court issued a publicly available order stating that plaintiffs and the Endo defendants had entered into an MOU regarding a potential global settlement. Gemini contends that it objected to the MOU around that time because Endo allegedly (1) agreed to it "without Gemini's knowledge or participation" and (2) "lump[ed] together the low-value Endo claims with the separate and distinct high-value Auxilium claims[.]" Gemini Mot. ¶¶ 9, 11 & n.2. By Gemini's own admission, it knew eight months ago about the exact risk it seeks to avert by intervening now. Even accepting as true Gemini's allegations that Endo "controlled all aspects of the defense" and has refused to provide relevant documents, Gemini Mot. ¶ 7, the timeliness scale does not tip in Gemini's favor. Among other reasons, Gemini admits that it hopes to use intervention as a discovery mechanism. But Gemini does not explain why it waited eight months to test this strategy.

6

Additionally, Gemini admitted during the hearing on October 25, 2018 that it had a coverage attorney in February or March of 2018.  A coverage attorney reasonably may be expected to know that when parties reach a settlement in a mass-tort MDL, a defendant will likely seek coverage from its liability insurer(s) to the fullest extent possible.  *Cf. CE Design*, 791 F.3d at 724-25, 727 (holding that insurers' motion to intervene in a class action after "learning of the proposed settlement" was untimely, including because insurers "should have begun worrying when the suit was filed" that defendant might negotiate a settlement that left insurers on the hook for most of the cost).

Under the court's logic in *CE Design*, and given Endo's unrebutted contention that Gemini actively monitored the MDL proceedings, Gemini likely "knew or should have known of [its] interest" in the settlement allocation process months (or even years) before Gemini learned about the allocation schedule in September 2018.  *Grochocinski*, 719 F.3d at 797.  And Gemini certainly knew or should have known of its interest by February 2018, when it objected that the settlement in principle did not distinguish between claims concerning Endo or Auxilium products.

Alternatively, Gemini knew or should have known that the settlement allocations could jeopardize its interests by June 20, 2018, when Endo gave Gemini notice that it had exhausted the self-insured retention and requested $2 million for defense costs.  *See* Endo DJ Compl. ¶¶ 43-45.  Finally, Gemini unquestionably knew of the risk to its interests by July 17, 2018, when it disclaimed coverage of Endo for any claims in the MDL and, according to Endo, stated its intention to intervene.  In sum, Gemini delayed its motion to intervene for a minimum of three months, and arguably for more than four

years.  *See CE Design*, 791 F.3d at 724-25, 727.

Allowing Gemini to intervene after its long delay would prejudice the original parties to the MDL.  *See Grochocinski*, 719 F.3d at 798.  After more than four years of litigation that has required, among other things, voluminous fact and expert discovery, complex motion practice, eight bellwether trials, almost 140 case management orders, and more than a year of collaboration with the settlement master, all parties have finalized, or are in the process of finalizing, MSAs.  Granting Gemini's motion and effectively allowing it to conduct additional discovery would delay, and could potentially derail, each of the separate settlement efforts.  Either scenario would severely "upset the progress made toward resolving [this] dispute."  *See id.* at 797.  By contrast, Gemini will not suffer prejudice if it cannot intervene.  *See id.*  If Gemini objects to the ultimate settlement allocations, it can protect itself in a separate proceeding against Endo regarding the scope of its coverage obligations—a proceeding that is now pending in Pennsylvania state court, even though Gemini, for whatever reason, chose not to initiate such a proceeding on its own.  For all of these reasons, the Court concludes that Gemini's motion to intervene is untimely.

### 2. Interest

"Intervention as of right requires a direct, significant[,] and legally protectable interest in the question at issue in the lawsuit."  *Walker*, 705 F.3d at 658 (internal quotation marks omitted).  The interest "must be unique to the proposed intervenor," *id.*, and must be "something more than a mere betting interest."  *Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1380 (7th Cir. 1995) (internal quotation marks omitted).  The question whether a prospective intervenor "has an interest sufficient to warrant

intervention as a matter of right is a highly fact-specific determination, making comparison to other cases of limited value." *Walker*, 705 F.3d at 658 (internal quotation marks omitted).

In this case, despite representing in is motion that claims regarding the Endo Products are "insured," Gemini Mot. ¶ 10, Gemini in fact notified Endo more than three months ago that it intends to deny coverage even for those claims. Because Gemini will deny coverage for any settlement allocation, no matter the amount, it does not have a "direct, significant, and legally protectable" interest in participating in the allocation process. *Walker*, 705 F.3d at 658 (internal quotation marks omitted); *see also CE Design*, 791 F.3d at 726 (stating that "[h]aving denied coverage" to defendant, insurers "would have no skin in the game. So even if the insurers had filed a timely motion to intervene, their interest might well have been deemed too contingent on uncertain events to justify granting their motion" (citing *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 638-39 (1st Cir. 1989))); *Dingwell*, 884 F.2d at 638 (concluding that prospective insurer-intervenors lacked a direct interest in the action because they had "reserve[d] the right to deny coverage," making their "interest in the liability phase of the proceeding . . . contingent on the resolution of the coverage issue").

In addition, Gemini's purported interest in ensuring that allocations properly differentiate between the Endo Products and the Auxilium Products is based on an unsupported and highly speculative assumption. Under the MSA, only the settlement master can make allocation decisions. And she must consider what TRT product(s) each plaintiff used, as well as proof that he used them, before allocating settlement funds. Gemini's interest in differentiation is contingent on the patently ridiculous

9

assumption that the settlement master will collude with Endo to improperly shift costs to Gemini, or that the settlement master will otherwise abrogate her duties. It is also contingent on the unsupported assumption that claims arising from alleged use only of the Endo Products, plus defense costs associated with those claims, would not exhaust Gemini's $10 million liability limit. Gemini's theory of nefarious cost-shifting articulates a "mere betting interest" that cannot satisfy Rule 24(a)(2). *Schipporeit*, 69 F.3d at 1380 (internal quotation marks omitted).

### 3. Impairment of interest

"The existence of 'impairment' depends on whether the decision of a legal question involved in the action would as a practical matter foreclose rights of the proposed intervenors in a subsequent proceeding." *Am. Nat'l Bank & Trust Co. of Chicago v. City of Chicago*, 865 F.2d 144, 147-48 (7th Cir. 1989) (internal quotation marks omitted); *see also, e.g.*, *Shea v. Angulo*, 19 F.3d 343, 347 (7th Cir. 1994). "The possibility of foreclosure is measured by the standards of *stare decisis*." *Am. Nat'l Bank & Trust Co.*, 865 F.2d at 148.

Even assuming Gemini has a direct, legally protectable interest in the allocation process, a ruling that keeps Gemini out of the process does not threaten to impair it. The underlying issue in this MDL, as it relates to the Endo defendants, is whether those defendants are liable for claims arising from the alleged use of their TRT products. Relatedly, the allocation process concerns the apportionment of funds the Endo defendants have agreed to pay to settle the claims. Gemini's obligations to Endo under its insurance policy never have been, and never will be, litigated or decided in this MDL. *Cf. Dingwell*, 884 F.2d at 639-40 ("The proper place to raise [substantive issues of

insurance law] . . . is during an action to determine whether the claim is covered by the policy or during an action to enforce the consent judgment against the insurer."). Accordingly, the allocation decisions in this MDL will not have any *res judicata* effect on Gemini, nor will they establish precedent that a different court determining Gemini's coverage obligations will be compelled to follow under the doctrine of *stare decisis*. In short, Gemini will be free bring a separate action against Endo, or to assert counterclaims in Endo's declaratory judgment action, to enforce its rights under the insurance policy. *See Am. Nat'l Bank & Trust Co.*, 865 F.2d at 147-48.

### 4. Adequacy of representation

"[I]ntervention requires only a minimal showing of inadequate representation," but "when the prospective intervenor and the named party have the same goal, a presumption [exists] that the representation in the suit is adequate." *Walker*, 705 F.3d at 659 (internal quotation marks omitted). "The prospective intervenor must then rebut that presumption and show that some conflict exists." *Id*.

Because Gemini has disclaimed any coverage of Endo for claims in this MDL and has accused Endo of improperly seeking coverage for claims relating to the Auxilium Products, Gemini and Endo have conflicting interests. As a result, Endo cannot adequately represent Gemini in the allocation process. Nor can the settlement master, who by design does not represent any party in this MDL. Gemini, therefore, has made a showing of inadequate representation. *See id.* But because Gemini has failed to satisfy the other Rule 24(a)(2) requirements, the Court denies its motion to

intervene. *See Ligas*, 478 F.3d at 773.[2]

## B. Permissive intervention (Fed. R. Civ. P. 24(b))

"Permissive intervention is within the discretion of the district court where the applicant's claim and the main action share common issues of law or fact and where there is independent jurisdiction." *Ligas*, 478 F.3d at 775; *see also Sokaogon*, 214 F.3d at 949. A motion to intervene must also be timely. *See Sokaogon*, 214 F.3d at 949. The timeliness considerations for permissive intervention are the same as those for intervention under Rule 24(a)(2). *See id.* Finally, a court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Because Gemini has disclaimed any coverage of Endo for liability arising out of this MDL, Gemini's claim does not share common issues of law or fact with the MDL. Rather, it relates only the scope, if any, of its insurance coverage obligations. *See Ligas*, 478 F.3d at 775; *Sokaogon*, 214 F.3d at 949; *cf. CE Design*, 791 F.3 at 727 (Hamilton, J., concurring) (agreeing with district court that "[h]aving denied coverage for both defense and indemnification," insurers "lacked 'a claim or defense that shares with the main action a common question of law or fact' needed for permissive intervention" (quoting Fed. R. Civ. P. 24(b))). Gemini's motion to intervene is untimely and unfairly prejudicial to the original parties for reasons already discussed. *See* Fed. R. Civ. P. 24(b)(3). Accordingly, the Court denies Gemini's motion for permissive intervention.

---

[2] Although "[s]tanding is required for intervention as of right and for permissive intervention under most circumstances," *McMillan v. Hyzy*, 738 F. App'x 365, 366 (7th Cir. 2018), the Court need not address the issue of standing because Gemini's motion to intervene fails under Rule 24(a)(2) and, as discussed below, Rule 24(b)-(c).

12

### C. Notice and pleading requirement (Fed. R. Civ. P. 24(c))

Under Federal Rule of Civil Procedure 24(c), a motion to intervene must "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). This requirement "is unambiguous." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 595 (7th Cir. 1993); *see also Shevlin v. Schewe*, 809 F.2d 447, 450 (7th Cir. 1987). A court need not "take an inflexible view of this rule; if no prejudice would result, a district court has the discretion to accept a procedurally defective motion." *Retired Chicago Police Ass'n*, 7 F.3d at 595. "[T]hat does not mean," however, "that intervenors may totally ignore the rule." *Shevlin*, 809 F.2d at 450.

Gemini did not provide a pleading but argues that the Court should excuse this defect because "the pleading requirement is routinely waived." Gemini Mot. at 10 n.5. For this proposition, Gemini cites a single out-of-circuit district court case. The Court will not waive the pleading requirement in the circumstances presented here. For reasons already discussed, Gemini has had more than enough time to prepare a complaint. Additionally, Gemini has misrepresented its proposed claim in intervention by omitting from its motion even a hint that it disclaimed all coverage of Endo more than three months ago. Accepting Gemini's motion without the required pleading could cause unfair prejudice because its stated reasons for intervention are unreliable and largely inapplicable. And without a pleading that sets forth its claim in detail, Gemini could move the goalpost again. The Court, therefore, denies Gemini's motion to intervene because Gemini has not satisfied Rule 24(c).

**Conclusion**

For the foregoing reasons, the Court denies Gemini Insurance Company's motion to intervene in settlement allocation proceedings [dkt. no. 2892].

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  November 8, 2018