IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: TESTOSTERONE REPLACEMENT THERAPY PRODUCTS LIABILITY LITIGATION | MDL No. 2545 <br><br> Master Docket Case No. 1:14-cv-1748 |
| THIS DOCUMENT RELATES TO: *All cases* | Honorable Matthew F. Kennelly |

## UNOPPOSED MOTION FOR APPROVAL OF AXIRON QUALIFIED SETTLEMENT FUND

Negotiating Plaintiff Counsel ("NPC"), as counsel for certain plaintiffs in this MDL 2545 and other claimants, hereby move the Court to enter an Order Establishing a Qualified Settlement Fund ("QSF") as required under the Confidential Master Settlement Agreement ("MSA") between NPC and defendant Eli Lilly and Company ("Lilly"; together with NPC, "the Parties") and establishing Providio MediSolutions, LLC, and any later Court-approved successors and/or assigns ("Providio") as the Qualified Settlement Fund Administrator ("QSF Administrator"). In support of this Motion, NPC state as follows:

1. Plaintiffs and other claimants represented by NPC and by Participating Law Firms, as defined under the MSA ("Claimants"), are seeking damages from Lilly for injuries allegedly arising from their use of "Axiron," which refers to all products containing testosterone.

2. Lilly denies any and all liability to Claimants. In an effort to resolve these disputes, NPC and Lilly entered into the MSA to resolve all claims arising out the use of Axiron.

3. An Order establishing the QSF will benefit Claimants and Lilly by assuring finality to the litigation upon fulfillment of the conditions of the MSA. NPC have conferred with counsel for Lilly, and Lilly has no objection to this filing and to entry of the proposed Order based hereon.

4. Lilly will be paying the sum agreed upon in the MSA ("Settlement Funds") into the QSF in accordance with the terms of the MSA.

5. This Court has jurisdiction over this matter under Treas. Reg. Section 1.468B-1(c)(1), which states in relevant part that a QSF "is established pursuant to an order of, or is approved by, the United States, any state (including the District of Columbia), territory, possession, or political subdivision thereof, or any agency or instrumentality (including a court of law) . . . and is subject to the continuing jurisdiction of that governmental authority."

6. By order of this Court, the QSF shall be established within the meaning of section 468B of the Internal Revenue Code of 1986, as amended ("Code") and Treasury Regulation sections 1.468B-1, *et seq.*, and remain subject to the continuing jurisdiction of this Court.

7. NPC request that the Court approve the engagement of Providio as the QSF Administrator. Providio possesses the requisite resources and experience to properly and effectively set-up and administer the QSF. Providio's address is 5613 DTC Parkway, Suite 610, Greenwood Village, CO 80111. Providio submits personally to the jurisdiction of this Court. Providio, as the QSF Administrator, will be authorized to make disbursements from the QSF consistent with this Motion, the Court's Order, and the MSA. Should Providio experience dissolution or bankruptcy, its appointment as QSF Administrator shall terminate and NPC, with the consent of Lilly, will seek Court approval of a successor QSF Administrator.

8. The Settlement Funds are the sole property of the QSF. The Settlement Funds shall only be made available to the eligible Claimants, as defined and determined under the MSA, as specifically set forth in the MSA. Until such time as monies are disbursed from the QSF pursuant to the terms of the MSA, the Claimants and NPC shall not possess any rights to demand or receive any portion of the Settlement Funds or to mortgage, pledge, or encumber the

same in any manner. To the extent possible, the terms of this Motion and the Court's Order establishing the QSF shall be construed so as to prevent the Claimants and NPC from being in constructive receipt, as determined under federal income tax principles, of any amounts held by the QSF.

9. NPC request that no bond be required, provided that all settlement proceeds, which include all principal and interest earned thereon, shall be deposited in an account held in custody at Esquire Bank (the "Bank"), a financial institution with headquarters in the state of New York, for the benefit of, and titled in the legal name of, the Axiron Qualified Settlement Fund. The Bank shall invest monies deposited pursuant to the instructions of the QSF Administrator. Such investments may be (a) with third parties in instruments/securities comprised of United States Agency, Government Sponsored Enterprises or Treasury debt securities or obligations (maturities not to exceed five years at a time of purchase) or mutual funds invested solely in such instruments (average maturity not to exceed five years); (b) with third parties in cash equivalent securities, including SEC registered money market funds and collateralized money market accounts; (c) in one or more checking accounts at the Bank up to current FDIC insurance limits; and (d) certificates of deposit that are fully insured by the Federal Deposit Insurance Corporation ("FDIC") through use of the Certificate of Deposit Account Registry Services ("CDARS"), and/or Insured Cash Sweep ("ICS") pursuant to the CDARS/ICS Deposit Placement Agreement with the Bank. The Bank shall be responsible for following the written investment instructions of the QSF Administrator. The QSF Administrator shall be responsible for ensuring that a principal preservation investment policy is implemented. The QSF Administrator may remove the Bank with or without cause, subject to the Parties' approval and further Order of this Court. The QSF Administrator may designate a replacement bank upon

the written consent of NPC and Lilly, to be appointed by further Order of this Court. In the event of such replacement, the terms and conditions of this paragraph, including without limitation, those addressing bond requirements, investments, and disbursements from the QSF, shall apply to any such replacement bank. The QSF Administrator shall not be liable for any losses as a result of investing the Settlement Funds as directed by the Court, except to the extent that it is finally determined by this Court that the QSF Administrator was negligent or acted with willful misconduct in connection with the investment of the Settlement Funds.

10. The Bank shall not be allowed to disburse any income or principal from the QSF except upon written instructions of the QSF Administrator that are supported by a written joint authorization signed by NPC and on behalf of Lilly, specifying the payment(s) and payee(s) consistent with the MSA, or upon an order of this Court following the joint motion of the Parties. Only the QSF Administrator, upon such joint instruction, is permitted to authorize a disbursement or make any withdrawal from the QSF.

11. All interest or investment income earned on the account(s) of the QSF shall inure to the benefit of the QSF and shall be used first to pay any taxes and tax return administration/preparation costs for the QSF Administrator to pay taxes on gains in the QSF, tax return/accounting fees, and any other costs associated with administration of the QSF. The QSF Administrator shall direct any and all payments of such interest or investment income and any interest accrued on the QSF account, pursuant to a written joint authorization signed by NPC and on behalf of Lilly.

12. Within fifteen (15) days after the end of each calendar quarter, the QSF Administrator will prepare and deliver QSF Statements ("Statements") to NPC and Lilly. The Statements shall include a statement of receipts, investment earnings, and disbursements.

13.     The QSF Administrator shall have the right to rely upon any affidavit, certificate, letter, notice, electronic mail or other document believed by the QSF Administrator to be genuine and sufficient, and upon any other evidence believed by the QSF Administrator, in its reasonable judgment, to be genuine and sufficient, which may be provided to the QSF Administrator by NPC or Lilly.

14.     The QSF Administrator shall be indemnified and held harmless by NPC and Claimants and/or their counsel, (current and/or future, as applicable) from any claims made by any alleged lien holder, or other person or entity that attempts to assert a right of payment, reimbursement or garnishment against the QSF.  Should the QSF Administrator be named as a party to, or threatened to be made a party to, any threatened, pending or completed action, suit or proceeding of any kind, whether civil, administrative or arbitrative, and whether brought by or against or otherwise involving the QSF, by reason of the QSF Administrator having served in any capacity on behalf of the QSF, the QSF Administrator shall be indemnified and held harmless by NPC and any Claimants against reasonable expenses, costs and fees (including attorney fees), judgment, awards, costs, amounts paid in settlement, and liabilities of all kinds incurred by the QSF Administrator in connection with or resulting from such actual or threatened action, suit or proceeding, except to the extent that it is finally determined by this Court that the QSF Administrator was negligent or acted with willful misconduct in connection with the administration of the QSF.

15.     The QSF, by and through the QSF Administrator, may purchase and assign any structured settlements created under any Release agreements with individual Claimants.  Any structured settlement annuity contract shall be issued by a life insurance company that is rated

A+ or better by A.M. Best Company.[1] The claims made by individuals who suffered (or will suffer) personal injury allegedly caused by Lilly's products are (or will be) made on account of physical bodily injury and/or wrongful death and arise out of alleged liability in tort or violation of law. Such Claimants (and their attorneys, as applicable), shall agree in writing to a discharge of the proceeds from the QSF and the QSF Administrator's liabilities in the making of any structured settlement payments, also known as periodic payments, by executing, along with the QSF Administrator, any necessary documents required or related to the discharge of those liabilities.

16. Upon final disbursement of all monies paid into the QSF, the QSF Administrator shall take appropriate steps to wind down the QSF and, thereafter, be discharged from any further responsibility with respect to the Settlement Funds.

17. The QSF Administrator will obtain a Federal Taxpayer Identification Number for the QSF upon the execution of an Order by this Court establishing the Fund.

**WHEREFORE,** NPC respectfully request that the Court consent to take jurisdiction over the QSF pursuant to Treas. Reg. Section 1.468B-1(c)(1), and issue an Order which:

1. Establishes the Axiron Qualified Settlement Fund as a QSF within the meaning of Treas. Reg. § 1.468B-1 and pursuant to the jurisdiction conferred on this Court by Treas. Reg. § 1.468B-1(c)(1).

2. Appoints Providio as QSF Administrator pursuant to the terms, conditions, and restrictions of this Motion and the MSA, thereby granting the QSF Administrator the authority to

---

[1] Structured Settlement Payments are assigned to a qualified assignee by entering into qualified assignments of such structured settlement payments within the meaning of Section 130(c) of the Code. The qualified assignee shall, respecting each person who is to receive periodic payments under a settlement agreement, purchase one or more qualified funding assets within the meaning of Section 130(d) of the Code to fund any structured settlement payments assigned to the qualified assignee.

conduct any and all activities necessary to administer and ultimately wind down the QSF as described herein and in the MSA (including, without limitation, being authorized to make disbursements from the QSF consistent with the MSA).

3. Appoints Esquire Bank as the financial institution at which the QSF Administrator will establish bank and investment accounts for the QSF in accordance with this Order.

Dated: March 8, 2019      Respectfully submitted,

*/s/ Trent B. Miracle*
Trent B. Miracle
Simmons Hanly Conroy
One Court Street
Alton, IL 62002
618-259-2222
Email: tmiracle@simmonsfirm.com

Ronald E. Johnson, Jr.
Schachter Hendy & Johnson PSC
909 Wright's Summit Parkway
Suite #210
Ft. Wright, KY 41011
(859) 578-4444
Email: rjohnson@pschachter.com

Christopher A Seeger
Seeger Weiss LLP
55 Challenger Road
6th Floor
Ridgefield Park, NJ 07660
(212) 584-0700
Email: cseeger@seegerweiss.com

*Plaintiffs' Co-Lead Counsel*

-8-

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 8, 2019, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will automatically serve and send a notice of electronic filing to all registered attorneys of record.

                                      */s/ Brendan A. Smith*
                                      Brendan A. Smith