IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: TESTOSTERONE<br>REPLACEMENT THERAPY<br>PRODUCTS LIABILITY LITIGATION<br>-----------------------------------------------------------<br><br>This document relates to:<br><br>*Roberto v. AbbVie, Inc.*, No. 15 C 7085 | MDL No. 2545<br><br>Case No. 14 C 1748 |

CASE MANAGEMENT ORDER NO. 147
(Memorandum Opinion and Order on Plaintiff Armando Roberto and Plaintiff
Elizabeth Roberto's Motion to Vacate Dismissal
in *Roberto v. AbbVie, Inc.*, No 15 C 7085)

MATTHEW F. KENNELLY, District Judge:

Plaintiffs in this multidistrict litigation (MDL) proceeding allege that they suffered either arterial cardiovascular injuries or injuries related to blood clots in the veins as a result of taking prescription testosterone replacement therapy (TRT) drugs. Defendants, including AbbVie, Inc. and affiliated entities, are manufacturers of TRT drugs. More than 7,800 individual cases have been filed in the MDL, and a little under 5,600 remain pending as of mid-March 2019. As of September 10, 2018, the Court has stayed all proceedings in the products liability cases, except as ordered by the Court, based on the parties' reports that they have finalized or are in the process of finalizing master settlement agreements.

On May 11, 2018, the Court dismissed more than 150 cases with prejudice after plaintiffs in those cases—including plaintiffs Armando and Elizabeth Roberto (the Robertos)—failed to (1) comply with a case management order setting forth certain

discovery obligations and (2) respond to an order to show cause why their cases should not be dismissed with prejudice due to noncompliance. Between May and September 2018, thirty-nine plaintiffs asked the Court to vacate the dismissal order and reinstate their cases. The Robertos were not part of that group. On November 15, 2018, the Court granted thirty-seven of the motions and denied two. *See In re Testosterone Replacement Therapy Prods. Liab. Litig.*, No. 14 C 1748, MDL No. 2545, 2018 WL 6003391 (N.D. Ill. Nov. 15, 2018) (*CMO 140*).

On March 3, 2019, nearly ten months after the Court dismissed their case, the Robertos filed a motion asking the Court to vacate the dismissal and reinstate their case. For the following reasons, the Court denies the Robertos' motion.

**Legal Standard**

Federal Rule of Civil Procedure 60(b) "delineates six grounds upon which relief from a judgment can be granted," including "(1) mistake, inadvertence, surprise, or excusable neglect" and "(6) any other reason that justifies relief." *Pearson v. Target Corp.*, 893 F.3d 980, 984 (7th Cir. 2018); Fed. R. Civ. P. 60(b)(1), (6). "Rule 60 relief is limited to 'extraordinary' situations where a judgment is the inadvertent product of special circumstances and not merely [the] erroneous application[ ] of law." *Kennedy v. Schneider Elec.*, 893 F.3d 414, 419 (7th Cir. 2018) (internal quotation marks omitted).

For purposes of Rule 60(b)(1), the Seventh Circuit applies the Supreme Court's *Pioneer* factors in determining whether neglect (which can include negligence) is "excusable." *Moje v. Fed. Hockey League*, 792 F.3d 756, 759 (7th Cir. 2015). The determination whether neglect is excusable

> is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include ... the danger of prejudice

2

> to the [opponent], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 395 (1993)).

To obtain relief under Rule 60(b)(1), "a litigant must show that both its own conduct and its lawyer's fit the category of 'excusable' neglect." *Moje*, 792 F.3d at 758. In other words, "a lawyer's errors are imputed to the client." *Id.* Rules 60(b)(1) and (6) "are mutually exclusive—Rule 60(b)(6), as a residual catchall, applies only if the other specifically enumerated rules do not." *Pearson*, 893 F.3d at 984. A motion for relief under Rule 60(b)(6) "must be made 'within a reasonable time.'" *Arrieta v. Battaglia*, 461 F.3d 861, 865 (7th Cir. 2006) (quoting Fed. R. Civ. P. 60(c)(1)). A court "may consider a wide range of factors" to determine whether "extraordinary circumstances" warrant relief under Rule 60(b)(6), including "the risk of injustice to the parties" and "the risk of undermining the public's confidence in the judicial process." *Buck v. Davis*, 137 S. Ct. 759, 778 (2017) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-64 (1988)).

## Background

**A.     The Plaintiff Fact Sheet and Plaintiff Profile Form requirements**

Case Management Order No. 9, which has been in effect since October 2014, requires all plaintiffs in the MDL to, among other things, complete a plaintiff fact sheet (PFS), serve it on defendants, produce to defendants all responsive, non-privileged documents in their possession that the PFS requests, and provide executed authorizations for the release of certain medical records. The PFS requests information

3

that is highly relevant to the resolution of a plaintiff's claims. A detailed description of the type of information the PFS requests can be found in *CMO 140. See* 2018 WL 6003391, at *1.

In December 2017, the Court issued Case Management Order No. 85 (CMO 85), which required all plaintiffs in the MDL to supplement and update their PFS with a submission called a supplemental plaintiff profile form (PPF). The PPF also requires disclosure of information that is highly relevant to the resolution of a plaintiff's claims. *See CMO 140*, 2018 WL 6003391, at *1 (describing the type of information the PPF requests). The Court imposed the requirement for submission of a PPF to ensure the disclosure of relevant information needed for the preparation and litigation of the thousands of cases remaining in the MDL, as well as their ultimate resolution by settlement, ruling on a dispositive motion, remand to the appropriate transferor district, or trial before this Court.

CMO 85 gave each plaintiff a reasonable time—90 days—to submit a substantially complete PPF. CMO 85 further provided as follows:

> C. Should any Plaintiff fail to serve an executed PPF or if a Defendant deems a Plaintiff's PPF deficient, Defendant's counsel shall notify the Court of the alleged deficiency and the Court shall issue an "Order To Show Cause Why the Case Should Not Be Dismissed and/or Sanctions Ordered." Plaintiff's counsel shall have twenty-one (21) days to respond to said Order To Show Cause, which includes the ability to cure the alleged discovery deficiency. There shall be no imposition of a sanction for any plaintiff who cures a deficiency following issuance of an Order to Show Cause.
>
> D. If the Plaintiff fails to show cause within 21 days of entry of the Court's Order To Show Cause, the Court may dismiss the Plaintiff's case with prejudice, or impose another appropriate sanction.

CMO 85, ¶ III.B-C.

On May 11, 2018, the Court dismissed more than 150 cases with prejudice after defendants identified PPF deficiencies in those cases; the Court issued a show-cause order (CMO 110) to those plaintiffs as provided in CMO 85; and the plaintiffs failed to provide any response whatsoever to the show cause order by the specified deadline. *See* CMO 118 at 1-3. The Court entered judgment of dismissal with prejudice in those cases, including the Robertos' case, on May 14, 2018.

## B. The Court's November 15, 2018 order

Thirty-six plaintiffs filed motions for relief from CMO 118 within twenty-eight days after the entry of judgment, most of them immediately after entry of judgment. The Court held a hearing on those motions on May 31, 2018. Three plaintiffs filed motions for relief after the hearing and more than twenty-eight days after the entry of judgment.

On November 15, 2018, the Court granted the motions that plaintiffs filed within twenty-eight days after the entry of judgment. The Court determined that five of those cases should be reinstated because, put simply, defendants had erroneously identified them for dismissal. *See CMO 140*, 2018 WL 6003391, at *3. Reinstating the others, the Court determined, was appropriate under Federal Rule of Civil Procedure 59(e) "to correct the Court's 'own error[] and thus avoid unnecessary appellate procedures.'" *Id.* at *4. Specifically, the Court explained that "at the time of the dismissals," and until it heard attorney argument during the May 31, 2018 hearing, "the Court did not fully appreciate that the PPF process essentially required plaintiffs to resubmit information they had already served." *Id.* The Court further explained that with certain minor caveats, "defendants already had the requested information for" the plaintiffs who had timely moved for reinstatement. *Id.* Accordingly, "[p]laintiffs' delay in serving the same

5

information again did not impede defendants in the least in developing litigation strategy." *Id.*

By contrast, the Court denied motions that plaintiffs Dustin Saunders (Saunders) and Felix Levya (Levya) filed more than twenty-eight days after the entry of judgment. *See id.* at *5. Saunders and Levya's filing delays precluded relief under Federal Rule of Civil Procedure Rule 59(e), and the Court was unpersuaded by those plaintiffs' arguments for relief under Rules 60(b)(1) and 60(b)(6). *CMO 140*, 2018 WL 6003391, at *5. Saunders and Levya, for example, argued that one reason for their filing delays was their attorney's failure to update his ECF notifications and check plaintiffs' dockets. *See id.* The Court determined that these lapses did not constitute "excusable neglect" for an attorney under Rule 60(b)(1). *See id.* The Court declined to reinstate Saunders and Levya's cases under Rule 60(b)(6) not only because those plaintiffs had "failed to exercise due diligence," but also because granting their motions so late in the litigation "would present a 'risk of injustice to the parties.'" *Id.* (quoting *Buck*, 137 S. Ct. at 778). Specifically, reinstating the cases could have invited other plaintiffs to file similar motions and "inject[ed] uncertainty into the settlement process, which is dependent on the parties' understanding of the maximum universe of potential claims."[1]

## C. Procedural history in the Robertos' case

The Robertos filed their lawsuit on August 12, 2015. They timely submitted a PFS and accompanying records to defendants on December 13, 2015. According to the Robertos, they did not receive a deficiency notice from defendants. On January 18,

---

[1] The Court granted one motion that was filed more than twenty-eight days after the entry of judgment because the plaintiff, who is incarcerated and indigent, faced significant logistical obstacles in obtaining information about the MDL. *See id.* at *6.

6

2019, after plaintiffs had reached a global settlement with the AbbVie defendants, the Robertos submitted claim information, including a completed PPF, to the settlement master so that she could determine whether the Robertos were eligible to participate in the settlement. On February 19, 2019, the settlement master determined that the Robertos were ineligible to participate because their case had been dismissed pursuant to CMO 118. The Robertos' counsel, Cyrus F. Rilee, III (Mr. Rilee), first learned of the settlement master's determination on March 2, 2019. "On that same date, after spending hours sorting through hundreds of ECF emails and underlying pleadings" in the MDL, Mr. Rilee "learned, *for the first time*," that the Court had dismissed the Robertos' case. Roberto Mot. ¶ 5 (emphasis in original). Mr. Rilee also discovered CMOs 85 and 110 for the first time on that date.

D.  **The Plaintiffs' Steering Committee's efforts to communicate case deadlines to the Robertos' counsel**

In their motion, the Robertos point to the following language in a minute entry that the Court issued with CMO 110: "The Plaintiffs' Steering Committee [PSC] is directed to make best efforts to ensure that this order is brought to the attention of counsel in the identified cases." *Id.* ¶ 5(c) (quoting Case No. 14 C 1746, ECF No. 2434). According to the Robertos, the PSC "did not contact [Mr. Rilee] at any time between December 8, 2017 and May 11, 2018." Roberto Mot. ¶ 6. The Court ordered the PSC to respond to this contention.

The PSC states that it "sent two emails to counsel for the Roberto Plaintiffs regarding the need to timely submit a PPF and to respond to the Court's Order to Show Cause Pursuant to CMO No. 85." PSC Resp. at 1. The PSC has provided copies of those e-mails to the Court, which are both dated April 26, 2018. One e-mail, addressed

to a list-serv titled "All TRT Plaintiffs Counsel," states that CMO 85 is attached and reminds plaintiffs' attorneys to ensure that plaintiffs' PPFs comply with the order. *See* PSC Resp., Ex. 1. The other e-mail is addressed to individual attorneys, including "Rus Rilee." *Id.* It attaches CMO 110 and states that responses in cases "subject to" that order "are still due tomorrow." *Id.* According to the PSC, it "did not receive a bounce back email indicating that [Mr. Rilee] did not receive th[e] messages." PSC Resp. at 1.

Separately, the PSC states that Mr. Rilee "has been registered to receive ECF notifications" regarding activity on the Robertos' individual case docket since August 12, 2015. PSC Resp. at 1-2. The PSC further states that, based on a discussion it had with the Clerk of Court, Mr. Rilee has been registered to receive ECF notifications regarding activity on the master MDL docket since August 2015.

The Robertos' response to the PSC's submission is internally inconsistent. First, the Robertos initially appear to contend that the PSC did not necessarily send the April 2018 e-mails to Mr. Rilee because "All TRT Plaintiffs Counsel" and "Rus Rilee" are not e-mail addresses. But if the Court is correctly understanding the Robertos, they next concede that the PSC *did* send the e-mails to Mr. Rilee because, if one clicks on "All TRT Plaintiffs Counsel" and "Rus Rilee" in the native documents, Mr. Rilee's e-mail address appears. Finally, the Robertos state that Mr. Rilee searched for but could not find the e-mails in his inbox. It must follow, the Robertos argue, that the PSC made a data entry error and sent the e-mails to the wrong address. The Robertos do not dispute the PSCs' contention that Mr. Rilee has been registered to receive ECF notifications for the individual and master case dockets since August 2015.

8

**Discussion**

The Robertos argue that dismissal with prejudice is a "severe sanction" that is unwarranted in the circumstances. Roberto Mot. at 4. They move for relief under Federal Rules of Civil Procedure 59(e), 60(b)(1) and 60(b)(6). The Robertos cannot obtain relief under Rule 59(e) because they filed their motion more than twenty-eight days after the entry of judgment. *See* Fed. R. Civ. P. 59(e). The Court, therefore, addresses only their arguments for relief under Rules 60(b)(1) and (6).

The Robertos contend that the Court should vacate the dismissal order and reinstate their case under Rule 60(b)(1) because their "failure to comply with CMO No. 85 was caused by inadvertence and excusable neglect, and was not the result of contumacious conduct or . . . persistent disobedience of court orders." Roberto Mot. at 4. According to the Robertos, Mr. Rilee belatedly discovered CMO 85 and subsequent related orders because he got lost in the "voluminous flurry of pleadings and orders in this case." *Id.* The Robertos also contend that because Mr. Rilee continued to receive ECF notifications after the Court dismissed the case, he "had no reason to suspect that [the Robertos'] lawsuit had been dismissed." *Id.* at 4-5.

These arguments were unpersuasive when Saunders and Levya advanced them months ago, and they are even less persuasive now. As this Court has determined, "[f]ailure to check the docket or to update one's ECF notifications is not 'excusable neglect' for an attorney, and no attorney could reasonably have believed that the MDL was completely inactive." *CMO 140*, 2018 WL 6003391, at *5; *see also Dzik v. Bayer Corp.*, 846 F.3d 211, 216 (7th Cir. 2017) ("[A]ttorney inattentiveness to litigation is not excusable, no matter what the resulting consequences the attorney's somnolent

behavior may have on a litigant."); *Thomas v. Bridgeview Bank Grp.*, 716 F. App'x. 537, 538 (7th Cir. 2018) ("Failure to check one's email is 'neglect,' but it is not 'excusable.'"); *see also Acosta v. DT&C Mgmt., LLC*, 874 F.3d 557, 559-61 (7th Cir. 2017); *Moje*, 792 F.3d at 759. Here, the Robertos admit that Mr. Rilee saw activity in the MDL even after the Court dismissed their case. But Mr. Rilee assumed, without conducting due diligence, that nothing was happening in the Robertos' case. No reasonable attorney would behave in this manner. The Court also notes that the prospect of a settlement payment was sufficient to catch Mr. Rilee's (or the Robertos') attention. On the other hand, numerous orders conveying crucial deadlines, and an order dismissing the Robertos' case, apparently were not. There is no excuse for Mr. Riley's—or the Robertos'—inattentiveness to this litigation. The fact that the Robertos have not missed other case deadlines, *see* Roberto Mot. at 5, does not assist them.

The Robertos next contend that their neglect is "excusable" because, they say, the PSC failed to notify Mr. Rilee of CMO 110. *See* Roberto Mot. at 4 (stating that if the PSC had notified Mr. Rilee of CMO 110, the Robertos "would have *immediately* complied with CMO 85, submitted the PPF, and cured the defect" (emphasis in original)); Roberto Reply ¶ 5 (arguing that it would be "fundamentally unfair" for the Robertos to "bear the burden" of the PSC's alleged error in entering Mr. Rilee's e-mail address into its system). This argument is also unavailing. In the minute entry accompanying CMO 110, the Court ordered the PSC to "make best efforts" to ensure that the relevant plaintiffs' lawyers knew about CMO 110. But it is not the PSC's responsibility to monitor individual cases; Mr. Rilee had an independent duty to do so, and he breached it. *See CMO 140*, 2018 WL 6003391, at *5 (rejecting Saunders and

Levya's similar attempt to shift blame to the PSC). That aside, the PSC's submission shows, at the very least, that it attempted to send CMOs 85 and 110 to Mr. Rilee. The PSC, therefore, complied with the Court's directive in the minute entry accompanying CMO 110.

Other *Pioneer* factors—the length of the Robertos' delay and its potential impact on the judicial proceedings, the reasons for the delay, and whether the Robertos acted in good faith—also weigh against granting Rule 60(b)(1) relief due to "excusable neglect." The Robertos waited nearly ten months to file their motion. By comparison, more than thirty plaintiffs who moved for the same relief did so almost immediately after the Court dismissed their cases. *See CMO 140*, 2018 WL 6003391, at *5 (faulting Saunders and Levya for waiting three and four months longer than the other plaintiffs to file for relief, and for ignoring that fact in their motions). The Robertos make little attempt to explain why they could not timely discover and respond to the Court's dismissal order, whereas other plaintiffs, who faced the same circumstances, could. Their motion can be interpreted to suggest that the PSC successfully communicated deadlines to other plaintiffs' attorneys, but not to Mr. Rilee. As just discussed, however, Mr. Rilee had an independent duty to keep himself apprised of relevant deadlines. Furthermore, the fact that the Robertos first learned about the dismissal through the settlement master raises doubts about their contention that they would have complied with the PPF requirement "immediately" if the PSC had communicated it to Mr. Rilee. More likely, that communication, too, would have been lost in the "flurry" of MDL docket notifications. Indeed, the PSC's response to the Robertos' motion provides evidence suggesting that is exactly what happened.

11

Separately, the length of the Robertos' delay impacts the MDL proceedings. The Robertos state that they have until April 12, 2019 to file an eligibility appeal in the settlement, and that if the Court vacates the dismissal order, they will "be able to immediately become eligible to participate in the settlement process." Roberto Mot. at 6. Accordingly, they argue, there will be no "need for any amendments to the timeline or any other special accommodations for" them. *Id.* The Robertos ignore that by reinstating their case and allowing them to file an eligibility appeal, the Court would be creating extra work for the settlement master. The settlement master's need to re-review the Robertos' claim would be attributable solely to the Robertos' neglect and would delay her review of claims for plaintiffs that complied with the Court's orders. In addition, the settlement master is making allocations using a methodology that is based on an understanding of the total number of settlement claims. Granting the Robertos' motion could complicate and slow the allocation process, particularly if other plaintiffs who similarly neglected their cases try to get in on the settlement now.

Another *Pioneer* factor is the potential for prejudice to defendants. The Robertos argue that defendants will not suffer prejudice if the Court reinstates their case because the Robertos' PPF and accompanying records contain the same information as their timely submitted PFS, which defendants have had since December 2015. The Robertos also argue that if the Court allows them to participate in the settlement process, defendants will not suffer prejudice because their "global liability exposure for AndroGel claims" is capped. Roberto Mot. at 5. Even assuming these contentions are correct, the other *Pioneer* factors weigh heavily against the Robertos. Accordingly, the Court denies their motion to vacate the dismissal order and reinstate their case under

Rule 60(b)(1).

The Court likewise denies the Robertos' motion to vacate the dismissal order under Rule 60(b)(6). The Robertos do not advance any separate arguments for relief under this provision. Even if their motion could be read to contend that the effect of the PPF process—requiring the Robertos to submit the same information twice—is an "other reason" justifying relief under Rule 60(b)(6), this argument is meritless. The Robertos "could have recognized this issue, cured the[] PPF deficienc[y], and filed their motion for relief in May 2018," just as more than thirty other plaintiffs did. *CMO 140*, 2018 WL 6003391, at *5. Instead, they waited ten months. The Court has "wide discretion" to determine whether relief under Rule 60(b)(6) is appropriate. *Buck*, 137 S. Ct. at 777. Here, the Court finds that the Robertos failed to exercise due diligence and did not seek relief "within a reasonable time," as required for a Rule 60(b)(6) motion. Fed. R. Civ. P. 60(c)(1). Granting Roberto's motion could also invite requests for relief from similarly situated plaintiffs. As previously referenced, an influx of such requests could slow the settlement process and present "a risk of injustice to the parties." *Buck*, 137 S. Ct. at 778. For these reasons, the Court declines to vacate the dismissal order and reinstate the Robertos' case under Rule 60(b)(6).

## Conclusion

For the foregoing reasons, the Court denies the Robertos' Motion to Vacate Order of Dismissal [Case No. 14 C 1748, dkt. no. 2946].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 29, 2019